## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| The Estate of Gene B. Lokken and The Estate of Dale Henry Tetzloff, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITEDHEALTH GROUP, INC., UNITEDHEALTHCARE, INC., NAVIHEALTH, INC., and DOES 1-50, inclusive,<br><br>Defendants. | Civil File No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

### PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiffs, the Estate of Gene B. Lokken and the Estate of Dale Henry Tetzloff ("Plaintiffs"), individually and on behalf of all others similarly situated (the "Class" or "Classes"), by and through their attorneys, bring this class action against Defendants UnitedHealth Group, Inc., UnitedHealthcare, Inc., naviHealth, Inc., and Does 1-50, inclusive (collectively, "Defendants" or "UnitedHealthcare") and allege as follows:

### INTRODUCTION

1.     This putative class action arises from Defendants' illegal deployment of artificial intelligence (AI) in place of real medical professionals to wrongfully deny elderly patients care owed to them under Medicare Advantage Plans by overriding their treating physicians' determinations as to medically necessary care based on an AI model that Defendants know has a 90% error rate.

1

2.      Despite the high error rate, Defendants continue to systemically deny claims using their flawed AI model because they know that only a tiny minority of policyholders (roughly 0.2%)[1] will appeal denied claims, and the vast majority will either pay out-of-pocket costs or forgo the remainder of their prescribed post-acute care. Defendants bank on the patients' impaired conditions, lack of knowledge, and lack of resources to appeal the erroneous AI-powered decisions.

3.      The fraudulent scheme affords Defendants a clear financial windfall in the form of policy premiums without having to pay for promised care, while the elderly are prematurely kicked out of care facilities nationwide or forced to deplete family savings to continue receiving necessary medical care, all because an AI model 'disagrees' with their real live doctors' determinations.

4.      Defendant UnitedHealth Group, Inc. is the nation's largest insurance company.[2] UnitedHealthcare, Inc., the insurance arm of UnitedHealth Group, Inc., provides health insurance plans for 52.9 million Americans.[3]

---

[1] Karen Pollitz, et al., *Claims Denials and Appeals in ACA Marketplace Plans in 2021*, KFF (Feb. 9, 2023) https://www.kff.org/private-insurance/issue-brief/claims-denials-and-appeals-in-aca-marketplace-plans/ (last visited Nov. 13, 2023).

[2]      *UnitedHealth Group*, FORTUNE (Aug. 2, 2023), https://fortune.com/company/unitedhealth-group/global500/ (last visited Nov. 13, 2023).

[3] *Id*.

5.      Defendants state that their "mission" is "to help people live healthier lives and make the health system work better for everyone."[4] In reality, Defendants systematically deploy an AI algorithm to prematurely and in bad faith discontinue payment for healthcare services for elderly individuals with serious diseases and injuries. These healthcare services are known as post-acute care.

6.      Defendants' AI Model, known as "nH Predict," determines Medicare Advantage patients' coverage criteria in post-acute care settings with rigid and unrealistic predictions for recovery.[5] Relying on the nH Predict AI Model, Defendants purport to predict how much care an elderly patient 'should' require, but overrides real doctors' determinations as to the amount of care a patient in fact requires to recover. As such, Defendants make coverage determinations not based on individual patient's needs, but based on the outputs of the nH Predict AI Model, resulting in the inappropriate denial of necessary care prescribed by the patients' doctors. Defendants' implementation of the nH Predict AI Model resulted in a significant increase in the number of post-acute care coverage denials.

7.      Defendants intentionally limit their employees' discretion to deviate from the nH Predict AI Model predication by setting up targets to keep stays at skilled nursing

---

[4] *About us*, UNITEDHEALTHCARE. https://www.uhc.com/about-us (last visited Nov. 13, 2023).

[5] Casey Ross and Bob Herman, *Denied by AI: How Medicare Advantage plans use algorithms to cut off care for seniors in need*, STAT (Mar. 13, 2023), https://www.statnews.com/2023/03/13/medicare-advantage-plans-denial-artificial-intelligence/ (last visited Nov. 13, 2023).

facilities within 1% of the days projected by the AI Model[6]. Employees who deviate from the nH Predict AI Model projections are disciplined and terminated, regardless of whether a patient requires more care[7].

8.     The nH Predict AI Model saves Defendants money by allowing them to deny claims they are obligated to pay and otherwise would have paid by eliminating the labor costs associated with paying doctors and other medical professionals for the time needed to conduct an individualized, manual review of each of its insured's claims.

9.     Defendants also utilize the nH Predict AI Model to aggressively deny coverage because they know they will not be held accountable for wrongful denials.

10.     In many instances, Defendants purposefully shift the financial responsibilities of funding post-acute care of their insureds to American taxpayers. In their coverage denial letters, Defendants inform patients who qualify for Medicare that their coverage is being denied solely due to their Medicare eligibility. Defendants direct these patients to enroll in the government-subsidized Medicare program while failing to cover care for which they are contractually and statutorily obligated to cover.

11.     Plaintiffs and Class members had their post-acute care coverage wrongfully terminated by Defendants using the nH Predict AI Model. Defendants failed to use

---

[6] UnitedHealth used algorithms to deny care, staff say – STAT Investigation (statnews.com) (last accessed on Nov. 14, 2023)

[7] *Id.*

reasonable standards in evaluating the individual claims of Plaintiffs and Class members and instead allowed their coverage needs to be wholly determined by AI.

12.     By engaging in this misconduct, Defendants breached their fiduciary duties, including their duties of good faith and fair dealing, because their conduct serves Defendants' own economic self-interest and elevates Defendants' interests above the interests of the insureds.

13.     By bringing this action, Plaintiffs seek to remedy Defendants' past improper and unlawful conduct by recovering damages to which Plaintiffs and the Class are rightfully entitled and enjoin Defendants from continuing to perpetrate its scheme against its Medicare Advantage insureds.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1332(d)(2). This is a class action in which there is a diversity of citizenship between at least one Plaintiff Class member and one Defendant; the proposed Classes each exceed one hundred members; and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

15.     In addition, under 28 U.S.C. §1367, this Court may exercise supplemental jurisdiction over the state law claims because all claims are derived from a common nucleus of operative facts and are such that Plaintiffs would ordinarily expect to try them in one judicial proceeding.

16.     This Court has personal jurisdiction over Defendants because Defendants are headquartered in Minnesota, have sufficient minimum contacts with Minnesota, and

otherwise purposefully avail themselves of the benefits and protections of Minnesota law, so as to render the exercise of jurisdiction by this Court proper and consistent with traditional notion of fair play and substantial justice.

17.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Defendants regularly conduct business in this District, and a substantial part of the events giving rise to the claims asserted herein occurred in this District. Defendants United Health Group and United Healthcare are residents of this District, being headquartered at 9800 Health Care Ln, Minnetonka, MN.

## THE PARTIES

18.    **Plaintiff, the Estate of Gene B. Lokken.** Gene B. Lokken, deceased, was at all times relevant to this action a citizen of Wisconsin, residing in Lincoln County. At all relevant times mentioned herein, Mr. Lokken was covered by a Medicare Advantage Plan policy provided by Defendants.

19.    **Plaintiff, the Estate of Dale Henry Tetzloff.** Dale Henry Tetzloff, deceased, was at all times relevant to this action a citizen of Wisconsin, residing in Portage County. At all relevant times mentioned herein, Mr. Tetzloff was covered by a Medicare Advantage Plan policy provided by Defendants.

20.    **Defendant UnitedHealth Group, Inc. ("UnitedHealth Group").** UnitedHealth Group is a Delaware corporation, headquartered at 9800 Health Care Ln, Minnetonka, MN 55343. UnitedHealth Group conducts insurance operations throughout the country, representing to consumers that UnitedHealth Group and its subsidiaries "help

people live healthier lives and help make the health system work better for everyone."[8] UnitedHealth Group has a license to use the federally registered service mark "UNITEDHEALTH GROUP," markets and issues health insurance and insures, issues, administers, and makes coverage and benefit determinations related to the health care policies nationally through its various wholly owned and controlled subsidiaries, controlled agents and undisclosed principals and agents, including Defendants UnitedHealthcare, Inc. and naviHealth, Inc. Defendant UnitedHealth Group is licensed and registered to conduct business in all 50 states, and does conduct business in all 50 states, and is thereby subject to the laws and regulations of all 50 states.

21. **Defendant UnitedHealthcare, Inc. ("UnitedHealthcare").** UnitedHealthcare, incorporated in Delaware, is a wholly owned subsidiary of Defendant UnitedHealth Group, Inc., with its principal place of business at 9800 Health Care Ln, Minnetonka, MN 55343. Defendant UnitedHealthcare markets and issues health insurance and insures, issues, administers, and renders coverage and benefit determinations related to the health care policies. Defendant UnitedHealthcare is licensed and registered to conduct business in all 50 states, and does conduct business in all 50 states, and is thereby subject to the laws and regulations of all 50 states.

22. **Defendant naviHealth, Inc. ("naviHealth").** naviHealth, incorporated in Delaware, is a wholly owned subsidiary of Defendant UnitedHealth Group, with its

---

[8] *Priorities for advancing a modern health system*, UNITEDHEALTH GROUP, https://www.unitedhealthgroup.com/driven-by-our-mission/what-we-do.html (last visited Nov. 13, 2023).

principal place of business at 210 Westwood Pl #400, Brentwood, TN 37027. naviHealth developed its algorithm nH Predict in response to the enactment of the Affordable Care Act in 2010.[9] The creator of the nH Predict AI Model specifically intended for it to save insurance companies money in the post-acute care setting, which had previously been a highly unprofitable aspect of Medicare services.[10] UnitedHealth Group acquired naviHealth in 2020 for $2.5 billion.[11]

23.    In addition to the Defendants named above, Plaintiffs sue fictitiously named **Defendants Does 1 through 50**, inclusive, pursuant to Section 474 of the California Civil Procedure, because their names, capacities, status, or facts showing them to be liable to Plaintiffs are not presently known. Plaintiffs are informed and believe, and based upon allege, that each of the fictitiously named Defendants are responsible in some manner for the conduct alleged herein. Plaintiffs will amend this complaint to show these Defendants' true names and capacities, together with appropriate charging language, when such information has been ascertained.

---

[9] Casey Ross and Bob Herman, *Denied by AI: How Medicare Advantage plans use algorithms to cut off care for seniors in need*, STAT (Mar. 13, 2023), https://www.statnews.com/2023/03/13/medicare-advantage-plans-denial-artificial-intelligence/ (last visited Nov. 13, 2023).

[10] *Id*.

[11] *Id*.

## FACTUAL ALLEGATIONS

### A. Background

24.     Defendant UnitedHealthcare offered and sold Medicare Advantage health insurance plans to consumers, including Plaintiffs and Class members.

25.     A Medicare Advantage plan is a type of health plan offered by private companies that contract with Medicare. Medicare Advantage is a taxpayer-funded alternative to traditional Medicare that covers 30.8 million people.[12] Medicare Advantage accounts for more than half (51 percent) of the eligible Medicare population, and $454 billion (or 54 percent) of total federal Medicare spending.[13]

26.     Plaintiffs and Class members enrolled with Defendants to receive Medicare Advantage health insurance coverage. Medicare Advantage Plans must follow the rules set by Medicare.[14] Defendants provided Plaintiffs and members of the Class with written terms explaining the plan coverage UnitedHealthcare offered to them. According to these terms, Defendants are obligated to provide benefits for covered health services and must pay all reasonable and medically necessary expenses incurred by a covered member.

27.     From at least November 14, 2019, to the present (the "Relevant Period"), Plaintiffs and Class members were referred to and received "post-acute care"—medically

---

[12] Nancy Ochieng, et al., *Medicare Advantage in 2023: Enrollment Update and Key Trends*, KFF (Aug. 9, 2023), https://www.kff.org/medicare/issue-brief/medicare-advantage-in-2023-enrollment-update-and-key-trends/ (last visited Nov. 13, 2023).

[13] *Id.*

[14] *Your health plan options*, MEDICARE.GOV, https://www.medicare.gov/health-drug-plans/health-plans/your-health-plan-options (last visited Nov. 13, 2023).

necessary care for patients recovering from serious illnesses and injuries. Post-acute care is covered by the terms of their insurance agreements provided by Defendants.

28.     Post-acute care encompasses skilled care, therapy, and other services provided by home health agencies (HHAs), skilled nursing facilities (SNFs), inpatient rehabilitation facilities (IRFs), and long-term care hospitals (LTCHs), collectively known as post-acute care (PAC) providers because they typically furnish care after an inpatient hospital stay.

29.     Medicare Advantage providers use a prospective payment system for each type of PAC provider. Under this system, insurers pay PAC providers an upfront fee that is based on estimates of the national average cost of providing covered care for a specified period of time.

30.     Due to the nature of the prospective payment system, insurers' coverage decisions occur before or during a patient's post-acute care. When the insurer decides to end coverage before the doctor's requested discharge date for the patient, the patients are left with an impossible choice: to either forgo their post-acute care despite not being well enough to function without it, or pay out-of-pocket to continue receiving care they were wrongfully denied.

31.     Defendants have deliberately failed to fulfill their statutory, common law, and contractual obligations to have a doctor determine individual coverage for post-acute care in a thorough, fair, and objective manner, instead using the nH Predict AI Model to supplant real doctors' recommendations and patients' medical needs. Defendants' use of the nH Predict AI Model, which directs Defendants' medical review employees to

prematurely stop covering care without considering an individual patient's needs, is systematic, illegal, malicious, and oppressive.[15]

32.    The nH Predict AI Model attempts to predict the amount of post-acute care a patient "should" require, pinpointing the precise moment when Defendants will cut off payment for a patient's treatment. The nH Predict AI Model compares a patient's diagnosis, age, living situation, and physical function to similar patients in a database of six million patients it compiled over the years of working with providers to predict patients' medical needs, estimated length of stay, and target discharge date[16].

---

[15] Casey Ross and Bob Herman, *Denied by AI: How Medicare Advantage plans use algorithms to cut off care for seniors in need*, STAT (Mar. 13, 2023), https://www.statnews.com/2023/03/13/medicare-advantage-plans-denial-artificial-intelligence/ (last visited Nov. 13, 2023).

[16] https://www.statnews.com/2023/03/13/medicare-advantage-plans-denial-artificial-intelligence/ (last visited Nov. 13, 2023.)

33.    The following is a true and correct representation of a sample nH Predict

Outcome sheet, taken from a naviHealth presentation:[17]



34.    Defendants wrongfully delegate their obligation to evaluate and investigate claims to the nH Predict AI Model. The nH Predict AI Model spits out generic recommendations that fail to adjust for a patient's individual circumstances and conflict with basic rules on what Medicare Advantage plans must cover.

35.    Upon information and belief, the nH Predict AI Model applies rigid criteria from which Defendants' employees are instructed not to deviate. The employees who deviate from the nH Predict AI Model prediction are disciplined and terminated, regardless of whether the additional care for a patient is justified.

36.    Under Medicare Advantage Plans, patients who have a three-day hospital stay are typically entitled to up to 100 days in a nursing home. With the use of the nH Predict AI Model, Defendants cut off payment in a fraction of that time. Patients rarely stay in a nursing home more than 14 days before they start receiving payment denials.[18]

37.    Upon information and belief, the outcome reports generated by nH Predict are rarely, if ever, communicated with patients or their doctors. When patients and doctors request their nH Predict reports, Defendants' employees deny their requests and tell them that the information is proprietary.

---

[17]    *NaviHealth Guiding the Way – Animated Explainer*, ECG PRODUCTIONS https://www.ecgprod.com/navihealth-guiding-the-way-animated-explainer/ (last visited Nov. 13, 2023).

[18]    Casey Ross and Bob Herman, *Denied by AI: How Medicare Advantage plans use algorithms to cut off care for seniors in need*, STAT (Mar. 13, 2023) https://www.statnews.com/2023/03/13/medicare-advantage-plans-denial-artificial-intelligence/ (last visited Nov. 13, 2023).

38.     Upon information and belief, over 90 percent of patient claim denials are reversed through either an internal appeal process or through federal Administrative Law Judge (ALJ) proceedings. This demonstrates the blatant inaccuracy of the nH Predict AI Model and the lack of human review involved in the coverage denial process.

39.     Defendants fraudulently misled their insureds into believing that their health plans would individually assess their claims and pay for medically necessary care.

40.     Had Plaintiffs and Class members known that Defendants would evade the legally required process for reviewing patient claims and instead delegate that process to its nH Predict AI Model to review and deny claims, they would not have enrolled with Defendants and/or would not have paid for their plan the amount they had to pay to be enrolled.

41.     Defendants' use of the nH Predict AI Model to deny its insureds' claims undermines the principles of fairness and meaningful claim evaluation, which insureds expect from their insurers.

**B.  Plaintiff the Estate of Gene B. Lokken**

42.     Plaintiff, the Estate of Gene B. Lokken, represents the interests of Gene B. Lokken, deceased.

43.     During the relevant period, Mr. Lokken was enrolled in the Medicare Advantage Plan provided by Defendants.

44.     On or around May 5, 2022, 91-year-old Mr. Lokken fell at home and fractured his leg and ankle. He was admitted to the Aspirus Tomahawk Hospital.

45.    Prior to discharge from the hospital, Mr. Lokken's doctor recommended that Mr. Lokken be admitted to Aspirus hospice care because his health began to deteriorate.

46.    On or around May 11, 2022, Mr. Lokken was admitted to Tomahawk Health Services ("THS") as a hospice resident. Mr. Lokken was very weak, not communicative, and in constant pain from his fractured leg and ankle.

47.    After a month of skilled nursing care with no physical activity, because his fractured leg and ankle were still healing, Mr. Lokken began to show signs of mental and medical improvement.

48.    On or around June 24, 2022, Mr. Lokken's orthopedic doctor assessed his fractured leg, removed a splint, and placed him into a removable ankle boot. The doctor indicated that physical therapy could start working with Mr. Lokken weight bearing as tolerated for ambulation and transfers as long as the boot was on at all times.

49.    Initial visits to physical therapy began over the next two to three weeks. The physical therapists indicated that Mr. Lokken was slowly building his strength and mobility, but continued intensive physical therapy was medically necessary.

50.    From July 1, 2022 to July 20, 2022, Defendants covered the cost of Mr. Lokken's post-acute care at THS. However, on or around July 20, 2022, Defendants terminated Mr. Lokken's coverage, explaining, "More inpatient days at the skilled nursing facility are not medically necessary. A safe discharge plan has been recommended."

51.    Defendants' denial of coverage dumbfounded Mr. Lokken and his treating physician because Mr. Lokken was still recovering from the fall and had only been receiving physical therapy for two and a half weeks. Mr. Lokken's muscles lacked strength

after a month of physical inactivity, and he was learning again to balance while being fully weight-bearing.

52.    Medical records submitted to Defendants for review indicated that Mr. Lokken was not ready to go home. Specifically, the physical therapist's notes stated, "Neuromuscular: Decreased movement/mobility. Musculoskeletal: Paralysis/Weakness." However, Defendants did not review these records when deciding whether Mr. Lokken required additional post-acute care.

53.    Mr. Lokken and his family immediately appealed the Defendants' decision to deny coverage. On or around August 1, 2022, Mr. Lokken received a letter from Defendants stating that his appeal was rejected. In the letter, Defendants explained that there were no acute medical issues because the patient was self-feeding and required minimal help for hygiene and grooming. This determination went against the physical therapist's recommendation and notes describing Mr. Lokken muscle functions as paralyzed and weak.

54.    Mr. Lokken and his family continued to vigorously appeal Defendants' denial of coverage. But Defendants refused to cover the treatment, repeatedly and wrongfully denying Mr. Lokken's coverage for his medically necessary needs.

55.    Mr. Lokken's family had no choice but to pay out of pocket in order to continue providing care for Mr. Lokken.

56.    Mr. Lokken's out-of-pocket expenses during his stay at the skilled nursing facility amounted to $12,000-$14,000 per month from July 2022 until July 2023.

57.     Mr. Lokken remained in the skilled nursing facility until he passed away on July 17, 2023.

### C.  <u>Plaintiff the Estate of Dale Henry Tetzloff</u>

58.     Plaintiff, the Estate of Dale Henry Tetzloff, represents the interests of Dale Henry Tetzloff, deceased.

59.     On or around October 4, 2022, 74-year-old Mr. Tetzloff suffered a stroke and was admitted to the hospital. At the hospital, his doctor referred Mr. Tetzloff to SNF to receive post-acute care, determining that he required post-acute care for at least 100 days.

60.     In or around November 2022, Defendant notified Mr. Tetzloff that his coverage was denied. He had only been at the SNF for 20 days at that point.

61.     Mr. Tetzloff had no choice but to pay for his medical expenses out-of-pocket.

62.     Mr. Tetzloff and his wife, Kathleen Tetzloff, appealed the coverage denial. After their second appeal, one of the Defendants' doctors finally reviewed Mr. Tetzloff's medical records and agreed with the referring doctor that Mr. Tetzloff required additional time to recover from his medical condition.

63.     However, after 40 days at the SNF, Defendant again denied Mr. Tetzloff's coverage, determining that he was ready for discharge.

64.     Mr. Tetzloff's doctor contacted Defendants to inform them that Mr. Tetzloff was not ready for discharge and required additional care, including occupational therapy and physical therapy, to recover. Nonetheless, Defendants failed to reverse its decision to deny coverage.

65.     Mr. Tetzloff contacted Defendants to inquire about the reason for denying his claim. Defendant refused to provide any reason, stating that it is confidential.

66.     Mr. Tetzloff and his wife continuously appealed Defendants' denial of coverage, but Defendant failed to reinstate Mr. Tetzloff's coverage.

67.     Mr. Tetzloff's out-of-pocket expenses exceeded $70,000 over approximately ten months.

68.     Mr. Tetzloff was discharged in June 2023 to an assisted living facility, where he passed away on October 11, 2023.

## CLASS ALLEGATIONS

69.     Plaintiffs bring this action on their own behalf and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Class which Plaintiffs seek to represent comprises:

> "All persons who purchased Medicare Advantage Plan health insurance from Defendants in the United States during the period of four years prior to the filing of the complaint through the present."

Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

70.     The Multi-State subclass which Plaintiffs seek to represent comprises:

> "All persons who purchased Medicare Advantage Plan health insurance from Defendants during the period of four years prior to the filing of the complaint through the present in the following states: Arizona, California, Colorado, Delaware, Hawaii, Iowa, Kentucky, Massachusetts, Nebraska, North

Carolina, North Dakota, Ohio, Oklahoma, Rhode Island, South Carolina, South Dakota, Vermont, Washington, West Virginia, Wisconsin, and Wyoming."

Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

71.    The Wisconsin Subclass which Plaintiffs seek to represent comprises:

"All persons who purchased Medicare Advantage Plan health insurance from Defendants in the state of Wisconsin during the period of four years prior to the filing of the complaint through the present."

Said definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

72.    The Class is so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands throughout the United States and the named states. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party retailers and vendors.

73.    Common questions of fact and law predominate over questions that may affect individual class members, including the following:

a.    Whether Defendants' delegation of coverage determinations to an automated procedure resulted in a failure to diligently conduct a thorough,

fair, and objective investigation into determinations of claims for medical expenses submitted by insureds and/or healthcare providers;

b.      Whether Defendants automatically denied coverage for claims submitted by insureds and/or healthcare providers without adhering to Medicare's detailed coverage criteria;

c.      Whether Defendants' denials of coverage are based on its use of nH Predict AI Model to determine a patients' care needs based on Defendants' internally-generated criteria;

d.      Whether Defendants failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies; and

e.      Whether Defendants have a practice of relying on the nH Predict AI Model to make coverage denials instead of engaging in good-faith individual coverage determinations.

74.    Plaintiffs' claims are typical of the claims of the Class and arise from the same common practice and scheme used by Defendants to deny coverage for the members of the Class. In each instance, Defendants used the nH Predict AI Model to review, process, and reduce coverage without adhering to the coverage determination standards set by Medicare. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained competent and experienced counsel in class action and other complex litigation.

75.    Plaintiffs and the Class have suffered injury, in fact, and have lost money as a result of Defendants' misconduct. Plaintiffs and the Class had their coverage automatically and illegally diminished by Defendants' nH Predict AI Model without individualized evaluation of their medical records by Defendants' medical directors.

76.    A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually.

77.    The trial and litigation of Plaintiffs' claims are manageable. Individual litigation of the legal and factual issues raised by Defendants' conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economics of scale, and comprehensive supervision by a single court.

78.    Defendants have acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendants.

79.    Absent a class action, Defendants will likely retain the benefits of their wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class will continue to suffer losses and Defendants will

be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT—NATIONWIDE**
**AGAINST ALL DEFENDANTS**
***(On Behalf of Plaintiffs and the Nationwide Class)***

80.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

81.     Defendants formed an agreement and entered into a contract of insurance ("insurance agreement") with Plaintiffs and Class members including offer, acceptance, and consideration.

82.     Pursuant to that insurance agreement, Plaintiffs and the Class paid money to Defendants in exchange for Defendants providing a health insurance policy to Plaintiffs and the Class. Defendants received premiums in exchange for the issuance of a policy of health insurance.

83.     Each insurance agreement included, without limitation, Defendants' duty to exercise its fiduciary duties to policyholders, abide by applicable state laws, and adequately review and inform policyholders prior to a claim denial.

84.     Plaintiffs and the Class performed their obligations under the contract by paying the amounts due under the contract timely.

85.     Defendants breached each insurance agreement by, without limitation, failing to keep its promise to fulfill its fiduciary duties to policyholders, abide by applicable state laws, provide a thorough, fair, and objective investigation of each submitted claim

prior to a claim denial, and provide written statements to Plaintiffs and the Class, accurately listing all bases for Defendants' denial of claims and the factual and legal bases for each reason given for such denial.

86.     By using the nH Predict AI Model to unreasonably deny Plaintiffs' and Class members' claims without an adequate individualized investigation, Defendants breached the insurance agreement.

87.     As a direct and proximate result of Defendants' breach of contract, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING—NATIONWIDE**
**AGAINST ALL DEFENDANTS**
***(On Behalf of Plaintiffs and the Nationwide Class)***

88.     Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

89.     Plaintiffs and Class members entered into written insurance agreements with Defendants and that provided for coverage for medical services administered by healthcare providers.

90.     Pursuant to the contracts, Defendants implied and covenanted that they would act in good faith and follow the law and the contracts with respect to the prompt and fair payment of Plaintiffs' and Class members' claims.

91.     Defendants have breached their duty of good faith and fair dealing by, among other things:

a. Improperly delegating their claims review function to the nH Predict system which uses an automated process to improperly deny claims;

b. Failing to require its agents to conduct a thorough, fair, and objective investigation of each submitted claim, such as examining patient records, reviewing coverage policies, and using their expertise to decide whether to approve or deny claims to avoid unfair denials.

92.    Defendants' practices as described herein violated their duties to Plaintiffs and Class members under the insurance contracts.

93.    Defendants' practices as described herein constitute an unreasonable denial of Plaintiffs' and Class members' rights to a thorough, fair, individualized, and objective investigation of each of their claims in breach of the implied covenant of good faith and fair dealing arising from Defendants' insurance agreements.

94.    Defendants' practices as described herein further constitute an unreasonable denial to pay benefits due to Plaintiffs and Class members in breach of the implied covenant of good faith and fair dealing arising from the Defendants' insurance agreements.

95.    The Defendants' wrongful denial of Plaintiffs' and Class members' right to a thorough, fair, and objection investigation and a wrongful denial of claims damaged Plaintiffs and Class members.

96.    As a direct and proximate result of Defendants' breaches, Plaintiffs and Class members have suffered and will continue to suffer in the future, economic losses, including the benefits owned under the health insurance plans in the millions, the interruption in Plaintiffs' and Class members' businesses, and other general, incidental,

and consequential damages, in amounts according to proof at trial. Plaintiffs and Class members are also entitled to recover statutory and prejudgment interest against Defendants.

97.    Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, and oppressive manner, entitling Plaintiffs and Class members to punitive damages against Defendants.

**THIRD CAUSE OF ACTION**
**UNJUST ENRICHMENT—NATIONWIDE**
**AGAINST ALL DEFENDANTS**
***(On Behalf of Plaintiffs and the Nationwide Class)***

98.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

99.    By delegating the claims review process to the nH Predict system, Defendants knowingly charged Plaintiffs and Class members insurance premiums for a service that Defendants failed to deliver; this was done in a manner that was unfair, unconscionable, and oppressive.

100.    Defendants knowingly received and retained wrongful benefits and funds from Plaintiffs and Class members. In so doing, Defendants acted with conscious disregard for the rights of Plaintiffs and Class members.

101.    As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

102.    Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

103.    Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits they received, without justification, from arbitrarily denying its insureds medical payments owed to them under Defendants' policies in an unfair, unconscionable, and oppressive manner. Defendants' retention of such funds under such circumstances making it inequitable to retain the funds constitutes unjust enrichment.

104.    The financial benefits derived by Defendants rightfully belong to Plaintiffs and Class members. Defendants should be compelled to return in a common fund for the benefit of Plaintiffs and members of the Class all wrongful or inequitable proceeds received by Defendants.

105.    Plaintiffs and members of the Class have no adequate remedy at law.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF Wis. Adm. Code Ins. § 6.11**
**INSURANCE CLAIM SETTLEMENT PRACTICES**
**AGAINST ALL DEFENDANTS**
*(On Behalf of Plaintiffs and the Wisconsin Class)*

106.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

107.    Defendants failed to initiate and conclude a claims investigation into Plaintiffs' and Class member's claims with all reasonable dispatch. Instead, Defendants relied on the nH Predict AI Model to deny Plaintiffs' claims in bad faith and without an individualized investigation.

108.    Defendants made no good faith attempt to effectuate a fair and equitable settlement of Plaintiffs' and Class members' claims, for which liability would have been reasonably clear had Defendants conducted an adequate investigation.

109.    As a direct and proximate result of Defendants' violation of Wis. Adm. Code Ins. § 6.11, Plaintiffs and the Class have suffered damages in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
### INSURANCE BAD FAITH—WISCONSIN
### AGAINST ALL DEFENDANTS
### *(On Behalf of Plaintiffs and the Multi-State Class)*

110.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

111.    Defendants used and continue to use the nH Predict AI Model to unreasonably refuse coverage for medically necessary post-acute care. The nH Predict AI Model does not account for individuals' unique circumstances or the statutorily required coverage determination criteria. The nH Predict AI Model denies coverage that is legally guaranteed to Defendants' insureds.

112.    Defendants lacked a reasonable basis for refusing to cover policyholders' post-acute care. Defendants' use of previous patients' data to determine its insureds' future care without regard for individual circumstances, doctors' recommendations, and patients' actual conditions is unreasonable.

113.    Defendants' denials breach the insurance agreement and are made in bad faith to save money on costly post-acute care coverage. Defendants ignored patients'

27

medical records, individual circumstances, and physicians' notes while strictly adhering to whatever recommendations the nH Predict AI Model issued.

114.   Defendants knew or reasonably should have known that the nH Predict AI Model was not a suitable substitute for individual holistic review of Plaintiffs' and the Class members' claims. Due to the enormous increase in the number of coverage denial appeals, as well as the 90 percent success rate of those appeals, Defendants have been put on notice that their nH Predict AI Model wrongly denies coverage in the vast majority of cases.

115.   By using nH Predict to predict Plaintiffs' and the Class members' required coverage for post-acute care, Defendants failed to conduct an adequate investigation before denying their claims. Defendants did not consider individual factors that may affect the recovery period or amount of care a patient requires, and routinely ignored the recovery time or treatment prescribed by Plaintiffs' and the Class members' physicians.

116.   As a direct result of Defendants' insurance bad faith, Plaintiffs and the Class have sustained damages in an amount to be determined at trial.

117.   Defendants have engaged in insurance bad faith and are liable to Plaintiffs and the Class for any and all damages that they sustained as a result of their bad faith conduct.

118.   Defendants' bad faith conduct is the actual and proximate cause of the damages sustained by Plaintiffs and the Class.

119.   As a result of Defendants' bad faith conduct, Class members suffered severe emotional distress. Class members did not know whether they would be able to receive

necessary care, whether they would be forced to pay out of pocket for said care, or whether they would be financially able to pay for said care, causing severe emotional distress.

120.    Class members' emotional distress caused pecuniary loss whereby they had to pay out of pocket for treatment, by disrupting Class members' lives and schedules, by causing Class members to miss work and lose wages, and by other means.

121.    Defendants' bad faith conduct, as alleged herein, was and continues to be malicious and intentionally designed to deprive Plaintiffs and the Class of their rights under the insurance agreement. Defendants knew of the dire consequences of denying elderly patients' medical treatment, yet still denied claims without any reasonable or arguable reason for doing so, recklessly and maliciously disregarding the health and lives of Plaintiffs and the Class.

122.    Defendants' misconduct was committed intentionally and willfully, in a malicious, fraudulent, wanton, and oppressive manner, entitling Plaintiffs and Class members to punitive damages against Defendants. Defendants acted with an "evil mind" in wantonly denying Plaintiffs and Class Members necessary care, causing severe physical and emotional turmoil, to increase their profits.

123.    Plaintiffs and the Class are entitled to an award of punitive damages based on Defendants' malicious conduct and their intentional and unreasonable refusal to pay claims.

124.    By reason of the conduct of Defendants as alleged herein, Plaintiffs have necessarily retained attorneys to prosecute the present action. Plaintiffs are therefore

entitled to reasonable attorneys' fees and litigation expenses, including expert witness fees and costs, incurred in bringing this action.

125.   Defendants had no reasonable basis for the denial of coverage.

126.   Defendants knew or should have known that the nH Predict system was an inadequate method for deciding to deny claims and knew or recklessly disregarded that there was no reasonable basis for denial of Plaintiffs' and Class members' claims.

<u>SIXTH CAUSE OF ACTION</u>
**INSURANCE BAD FAITH—ARIZONA**
**AGAINST ALL DEFENDANTS**
*(On Behalf of Plaintiffs and the Multi-State Class)*

127.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

128.   Defendants had no reasonable basis for the denial of coverage.

129.   Defendants knew or should have known that the nH Predict system was an inadequate method for deciding to deny claims and knew or recklessly disregarded that there was no reasonable basis for denial of Plaintiffs' and Class members' claims.

130.   The validity of Plaintiffs' and Class members' claims was readily apparent on its face and would not have been fairly debatable if an adequate investigation had been conducted.

131.   As alleged above, Defendants intentionally breached the implied covenant of good faith and fair dealing by denying Plaintiffs and the Class the security and peace of mind that is the object of the insurance relationship.

132.    A reasonable insurer would not have denied payment of Plaintiffs' and Class members' claims under the facts and circumstances present.

133.    Plaintiffs are entitled to reasonable attorneys' fees and litigation expenses incurred with bringing this action, pursuant to A.R.S. § 12–341.01.

**SEVENTH CAUSE OF ACTION**
**INSURANCE BAD FAITH—CALIFORNIA**
**AGAINST ALL DEFENDANTS**
***(On Behalf of Plaintiffs and the Multi-State Class)***

134.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

135.    Defendants withheld benefits due under the insurance agreement by refusing to pay Plaintiffs' and Class members' claims.

136.    Defendants had no reasonable basis for the denial of coverage.

137.    Defendants knew or should have known that the nH Predict system was an inadequate method for deciding to deny claims and knew or recklessly disregarded that there was no reasonable basis for denial.

138.    By using nH Predict to determine whether to deny coverage instead of independent review by physicians, Defendants failed to act reasonably in processing and handling Plaintiffs' claims.

139.    By reason of the conduct of Defendants as alleged herein, Plaintiffs are entitled to consequential damages pursuant to Cal. Civ. Code § 3300.

140.    By reason of the conduct of Defendants as alleged herein, Plaintiffs are entitled to emotional distress damages pursuant to Cal. Civ. Code § 3333.

141.    By reason of the conduct of Defendants as alleged herein, Plaintiffs are entitled to punitive damages pursuant to Cal Civ. Code § 3294(a).

**EIGHTH CAUSE OF ACTION**
**INSURANCE BAD FAITH—COLORADO**
**AGAINST ALL DEFENDANTS**
*(On Behalf of Plaintiffs and the Multi-State Class)*

142.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

143.    Defendants had no reasonable basis for the denial of coverage.

144.    Defendants knew or should have known that the nH Predict system was an inadequate method for deciding to deny claims and knew or recklessly disregarded that there was no reasonable basis for denial.

145.    By using nH Predict to decide to deny coverage, Defendants denied Plaintiffs' and Class members' claims without a reasonable basis.

146.    By reason of the conduct of Defendants as alleged herein, Plaintiffs and members of the Class are entitled to punitive damages pursuant to C.R.S. § 13–21–102(3)(a).

**NINTH CAUSE OF ACTION**
**INSURANCE BAD FAITH—DELAWARE**
**AGAINST ALL DEFENDANTS**
*(On Behalf of Plaintiffs and the Multi-State Class)*

147.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

148.    Defendants withheld benefits due under the insurance agreement by refusing to pay Plaintiffs' claims.

149.    Defendants' denial of Plaintiffs' and Class members' claims was clearly without any reasonable justification.

150.    By using nH Predict to decide to deny Plaintiffs' claims, Defendants failed to conduct an adequate investigation before denying Plaintiffs' and Class members' claims.

151.    Defendants' habitual use of nH Predict to deny insurance claims constitutes a general business practice of denying insurance claims without a reasonable basis.

**TENTH CAUSE OF ACTION**
**INSURANCE BAD FAITH—HAWAII**
**AGAINST ALL DEFENDANTS**
***(On Behalf of Plaintiffs and the Multi-State Class)***

152.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

153.    Defendants withheld benefits due under the insurance agreement by refusing to pay Plaintiffs' claims.

154.    Defendants reason for denying Plaintiffs' and Class members' claims was unreasonable and without proper cause.

155.    By using nH Predict to determine whether to deny coverage, Defendants failed to act reasonably in processing and handling Plaintiffs' and Class members' claims.

156.    By reason of the conduct of Defendants as alleged herein, Plaintiffs are entitled to attorneys' fees and costs associated with bringing this litigation, pursuant to Haw. Rev. Stat. § 431:10–242.

## ELEVENTH CAUSE OF ACTION
### INSURANCE BAD FAITH—IOWA
### AGAINST ALL DEFENDANTS
#### *(On Behalf of Plaintiffs and the Multi-State Class)*

157.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

158.   Defendants had no reasonable basis for the denial of coverage.

159.   Defendants knew or had reason to know that the nH Predict system was an inadequate method for deciding to deny claims and knew or had reason to know that the nH Predict AI Model was not a reasonable basis to deny claims.

160.   The validity of Plaintiffs' and Class members' claims were not fairly debatable as a matter of fact or law.

161.   By using nH Predict to determine whether to deny coverage instead of independent review, Defendants failed to act reasonably in processing and handling Plaintiffs' and Class members' claims.

162.   Defendants' bad faith conduct caused Plaintiffs and the Class severe mental suffering.

## TWELFTH CAUSE OF ACTION
### INSURANCE BAD FAITH—KENTUCKY
### AGAINST ALL DEFENDANTS
#### *(On Behalf of Plaintiffs and the Multi-State Class)*

163.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

164.   Defendants were obligated to pay Plaintiffs' and Class members' claims under the insurance agreement.

165.   Defendants had no reasonable basis for the denial of coverage.

166.   Defendants knew or should have known that the nH Predict system was an inadequate method for deciding to deny claims and knew or recklessly disregarded that there was no reasonable basis for denial.

## THIRTEENTH CAUSE OF ACTION
### INSURANCE BAD FAITH—MASSACHUSETTS
### AGAINST ALL DEFENDANTS
*(On Behalf of Plaintiffs and the Multi-State Class)*

167.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

168.   Defendants withheld benefits due under the insurance agreement by refusing to pay Plaintiffs' claims.

169.   Defendants reason for denying Plaintiffs' and Class members' claims was unreasonable and without proper cause.

170.   By using nH Predict to determine whether to deny coverage, Defendants failed to act reasonably in processing and handling Plaintiffs' and Class members' claims.

## FOURTEENTH CAUSE OF ACTION
### INSURANCE BAD FAITH—NEBRASKA
### AGAINST ALL DEFENDANTS
*(On Behalf of Plaintiffs and the Multi-State Class)*

171.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

172.   Defendants had no reasonable basis for the denial of coverage.

173.    Defendants knew or should have known that the nH Predict system was an inadequate method for deciding to deny claims and knew or recklessly disregarded that there was no reasonable basis for denial.

## FIFTEENTH CAUSE OF ACTION
### INSURANCE BAD FAITH—NORTH CAROLINA
### AGAINST ALL DEFENDANTS
*(On Behalf of Plaintiffs and the Multi-State Class)*

174.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

175.    Had Defendants conducted a reasonable and adequate investigation of Plaintiffs' and Class members' claims on an individual and holistic basis, they would have recognized that they were required to pay Plaintiffs' and Class members' claims.

176.    Defendants deployed their nH Predict AI Model to unreasonably deny claims that ought to have not been denied, in bad faith and in violation of the insurance agreement.

177.    Defendants' denial of Plaintiffs' and Class members' claims was based on the malicious implementation of the nH Predict AI Model intended to enable Defendants to deny as many claims as possible and to pay out as little as possible. Defendants' denial of Plaintiffs' and Class members' claims was not the result of an honest disagreement or an innocent mistake.

178.    Defendants' conduct constitutes aggravating and outrageous conduct.

179.    By reason of the conduct of Defendants as alleged herein, Plaintiffs are entitled to attorneys' fees and costs associated with bringing this litigation, pursuant to N.C. Gen. Stat. § 75–16.1.

## SIXTEENTH CAUSE OF ACTION
### INSURANCE BAD FAITH—NORTH DAKOTA
### AGAINST ALL DEFENDANTS
*(On Behalf of Plaintiffs and the Multi-State Class)*

180.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

181.   The claims that Plaintiffs and Class members submitted to Defendants were covered by the insurance policy, and ought to have been paid.

182.   Defendants' reasons for denying Plaintiffs' and Class members' claims were unreasonable and without proper cause.

183.   Defendants' denials of Plaintiffs' and Class members' claims were based on the malicious implementation of the nH Predict AI Model intended to enable Defendants to deny as many claims as possible and to pay out as little as possible. The validity of Plaintiffs' and Class members' claims was neither fairly debatable, nor was there a reasonable basis for denying the claim.

## SEVENTEENTH CAUSE OF ACTION
### INSURANCE BAD FAITH—OHIO
### AGAINST ALL DEFENDANTS
*(On Behalf of Plaintiffs and the Multi-State Class)*

184.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

185.   By using nH Predict to determine whether to deny coverage, Defendants failed to act reasonably in processing and handling Plaintiffs' and Class members' claims.

186.   Defendants' denial of Plaintiffs' and Class members' claims was based on the malicious implementation of the nH Predict AI Model intended to enable Defendants

to deny as many claims as possible and to pay out as little as possible. Defendants' refusal to pay Plaintiffs' and Class members' claims was not predicated upon circumstances that furnish reasonable justification therefore.

187.    Defendants' use of the nH Predict AI Model to deny Plaintiffs' and Class members' claims constitutes refusal to pay claims in an arbitrary and capricious manner.

**EIGHTEENTH CAUSE OF ACTION**
**INSURANCE BAD FAITH—OKLAHOMA**
**AGAINST ALL DEFENDANTS**
***(On Behalf of Plaintiffs and the Multi-State Class)***

188.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

189.    Plaintiffs and Class members were covered persons under the insurance agreement.

190.    Defendants' use of the nH Predict AI Model to deny Plaintiffs' and Class members' claims without an individual or holistic review was unreasonable under the circumstances.

191.    By using the nH Predict AI Model to unreasonably deny Plaintiffs' and Class members' claims, Defendants failed to deal fairly and act in good faith in its handling of Plaintiffs' and Class members' claims.

192.    As alleged above, Defendants' conduct breached the duty of good faith and fair dealing, directly causing Plaintiffs' and Class members' damages.

193.    Defendants knew or should have known that the nH Predict system was an inadequate method for deciding to deny claims and knew or recklessly disregarded that there was no reasonable basis for denial.

194.    By reason of the conduct of Defendants as alleged herein, Plaintiffs are entitled to attorneys' fees and costs associated with bringing this litigation, pursuant to Okla. Stat. Title 36 § 3629.

### NINETEENTH CAUSE OF ACTION
### INSURANCE BAD FAITH—RHODE ISLAND
### AGAINST ALL DEFENDANTS
#### *(On Behalf of Plaintiffs and the Multi-State Class)*

195.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

196.    Defendants had no reasonable basis for the denial of coverage.

197.    Defendants knew or should have known that the nH Predict system was an inadequate method for deciding to deny claims and knew or recklessly disregarded that there was no reasonable basis for denial.

198.    Defendants failed to conduct an independent holistic review of Plaintiffs' and Class members' claims.

199.    Defendants acted unreasonably in their evaluation and processing of Plaintiffs' and Class members' claims and knew or was conscious of the fact that their implementation of the nH Predict AI Model to deny Plaintiffs' and Class members' claims was unreasonable.

200.    Defendants' denials of Plaintiffs' and Class members' claims were based on the malicious implementation of the nH Predict AI Model intended to enable Defendants to deny as many claims as possible and to pay out as little as possible. The validity of Plaintiffs' and Class members' claims was neither fairly debatable, nor was there a reasonable basis for denying the claim.

**TWENTIETH CAUSE OF ACTION**
**INSURANCE BAD FAITH—SOUTH CAROLINA**
**AGAINST ALL DEFENDANTS**
***(On Behalf of Plaintiffs and the Multi-State Class)***

201.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

202.    Plaintiffs and Class members entered into insurance agreements with Defendants that provided for coverage for medical services administered by healthcare providers.

203.    Defendants refused to pay Plaintiffs' and Class members' claims as required by the insurance agreement.

204.    Defendants deployed their nH Predict AI Model to unreasonably deny claims that ought to have not been denied, in bad faith and in violation of the insurance agreement.

205.    As alleged above, Defendants' conduct breached the duty of good faith and fair dealing.

206.    Plaintiffs and Class members suffered damages as a result of Defendants' bad faith.

207.    Defendants' denial of Plaintiffs' and Class members' claims was based on
the malicious implementation of the nH Predict AI Model intended to enable Defendants
to deny as many claims as possible and to pay out as little as possible. Defendants had no
reasonable grounds for contesting and denying Plaintiffs' and Class members' claims.

208.    By reason of the conduct of Defendants as alleged herein, Plaintiffs are
entitled to reasonable attorneys' fees and costs associated with bringing this litigation,
pursuant to S.C. Code Ann. § 38–59–40.

### TWENTY-FIRST CAUSE OF ACTION
### INSURANCE BAD FAITH—SOUTH DAKOTA
### AGAINST ALL DEFENDANTS
### *(On Behalf of Plaintiffs and the Multi-State Class)*

209.    Plaintiffs reallege and incorporate by reference all preceding allegations as
though fully set forth herein.

210.    Defendants' denials of Plaintiffs' and Class members' claims were based on
the malicious implementation of the nH Predict AI Model intended to enable Defendants
to deny as many claims as possible and to pay out as little as possible. Defendants had no
reasonable basis for denying Plaintiffs' and Class members' claims, withholding policy
benefits, or failing to comply with the insurance agreement.

211.    Defendants knew or had reason to know that the nH Predict system was an
inadequate method for deciding to deny claims and knew or had reason to know that the
nH Predict AI Model was not a reasonable basis to deny claims.

212.  Defendant failed to conduct an adequate independent investigation into Plaintiffs' and Class members' claims before issuing a denial, acting with reckless disregard for whether there was a reasonable basis to deny the claims.

213.  Plaintiffs and Class members sustained damages as a result of Defendants' bad faith.

214.  The validity of Plaintiffs' and Class members' claims was readily apparent on its face and was not fairly debatable after an adequate investigation.

**TWENTY-SECOND CAUSE OF ACTION**
**INSURANCE BAD FAITH—VERMONT**
**AGAINST ALL DEFENDANTS**
***(On Behalf of Plaintiffs and the Multi-State Class)***

215.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

216.  Defendants' denials of Plaintiffs' and Class members' claims were based on the malicious implementation of the nH Predict AI Model intended to enable Defendants to deny as many claims as possible and to pay out as little as possible. Defendants had no reasonable basis for denying Plaintiffs' and Class members' claims, withholding policy benefits, or failing to comply with the insurance agreement.

217.  Defendants knew or had reason to know that the nH Predict system was an inadequate method for deciding to deny claims and knew or had reason to know that the nH Predict AI Model was not a reasonable basis to deny claims.

218.    Defendants failed to conduct an adequate independent investigation into Plaintiffs' and Class members' claims before issuing a denial, acting with reckless disregard for whether there was a reasonable basis to deny the claims.

## TWENTY-THIRD CAUSE OF ACTION
## INSURANCE BAD FAITH—WASHINGTON
## AGAINST ALL DEFENDANTS
### *(On Behalf of Plaintiffs and the Multi-State Class)*

219.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

220.    Defendants' denial of Plaintiffs' claims was based on the malicious implementation of the nH Predict AI Model intended to enable Defendants to deny as many claims as possible and to pay out as little as possible. Defendants' denials of Plaintiffs' claims were unreasonable, frivolous, and unfounded.

221.    Defendants' denials of Plaintiffs' and Class members' claims were based on generalized data from the nH Predict system, not on facts specific to Plaintiffs' and Class members' claims. Consequently, Defendants acted unreasonably in performing its "investigation" of Plaintiffs' and Class members' claims, and the denials were not based upon a reasonable interpretation of the insurance agreement.

222.    Defendants failed to conduct an adequate independent investigation into Plaintiffs' and Class members' claims before issuing a denial, acting with reckless disregard for whether there was a reasonable basis to deny the claims.

223.    By reason of the conduct of Defendants as alleged herein, Plaintiffs are entitled to damages enhancements pursuant to RCW 48.30.015.

### TWENTY-FOURTH CAUSE OF ACTION
### INSURANCE BAD FAITH—WEST VIRGINIA
### AGAINST ALL DEFENDANTS
### *(On Behalf of Plaintiffs and the Multi-State Class)*

224.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

225.    Defendants' denial of Plaintiffs' and Class members' claims was based on the malicious implementation of the nH Predict AI Model intended to enable Defendants to deny as many claims as possible and to pay out as little as possible. The validity of Plaintiffs' and Class members' claims was neither fairly debatable, nor was there a reasonable basis for denying the claim.

226.    Defendants knew or had reason to know that the nH Predict system was an inadequate method for deciding to deny claims and knew or had reason to know that the nH Predict AI Model was not a reasonable basis to deny claims.

227.    Defendants failed to conduct an adequate independent investigation into Plaintiffs' and Class members' claims before issuing a denial, acting with reckless disregard for whether there was a reasonable basis to deny the claims.

### TWENTY-FIFTH CAUSE OF ACTION
### INSURANCE BAD FAITH—WYOMING
### AGAINST ALL DEFENDANTS
### *(On Behalf of Plaintiffs and the Multi-State Class)*

228.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

229.    Defendants' denials of Plaintiffs' and Class members' claims were based on the malicious implementation of the nH Predict AI Model intended to enable Defendants

to deny as many claims as possible and to pay out as little as possible. The validity of Plaintiffs' and Class members' claims was neither fairly debatable, nor was there a reasonable basis for denying the claim.

230.  A reasonable insurer would not have denied Plaintiffs' and Class members' claims under the facts and circumstances alleged herein.

231.  Defendants knew or had reason to know that the nH Predict system was an inadequate method for deciding to deny claims and knew or had reason to know that the nH Predict AI Model was not a reasonable basis to deny claims.

232.  Defendants failed to conduct an adequate independent investigation into Plaintiffs' and Class members' claims before issuing a denial, acting with reckless disregard for whether there was a reasonable basis to deny the claims.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, request that this Court enter an order granting the following relief against Defendants:

a.   Awarding actual damages, consequential damages, statutory damages, exemplary/punitive damages, costs and attorneys' fees;

b.   Awarding damages for emotional distress;

c.   Awarding disgorgement and/or restitution;

d.   Awarding pre-judgment interest to the extent permitted by law;

e.  Appropriate declaratory and injunctive relief enjoining Defendants from continuing its improper and unlawful claim handling practices as set forth herein;

f.  Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs demand a jury trial on all triable issues.

DATED: November 14, 2023                    **LOCKRIDGE GRINDAL NAUEN PLLP**

By: *s/Karen Hanson Riebel*
Karen Hanson Riebel (#0219770)
David W. Asp (#0344850)
Kristen G. Marttila (#0346007)
Derek C. Waller (#0401120)
100 Washington Avenue South, Ste 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
khriebel@locklaw.com
dwasp@locklaw.com
kgmarttila@locklaw.com
dcwaller@locklaw.com

Glenn A. Danas, Esq.
Ryan Clarkson, Esq.
Zarrina Ozari, Esq.
Pro Hac Vice Forthcoming
CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
gdanas@clarksonlawfirm.com
rclarkson@clarksonlawfirm.com
zozari@clarksonlawfirm.com

*Attorneys for Plaintiffs*