# TEUNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| The Estate of Gene B. Lokken and The Estate of Dale Henry Tetzloff, individually and on behalf of all others similarly situated, | Civil File No. 23-cv-03514-JRT-DTS |
| Plaintiffs, | |
| vs. | |
| UNITEDHEALTH GROUP, INC., UNITED HEALTHCARE, INC., NAVIHEALTH, INC. and Does 1-50, inclusive, | |
| Defendants. | |

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE CLASS ACTION COMPLAINT

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 2

I.     The Parties and Medicare Advantage Plans at Issue ............................................. 2

II.    Plaintiffs' Claims for Skilled Nursing Benefits and Administrative Appeals ......... 5

       A.    Lokken's Claims for Benefits ..................................................................... 5

       B.    Lokken's Administrative Appeal Process .................................................... 5

       C.    Tetzloff's Claim for Benefits ...................................................................... 7

       D.    Tetzloff's Administrative Appeal Process ................................................... 7

STANDARD OF REVIEW ............................................................................................... 8

ARGUMENT .................................................................................................................. 10

I.     The Medicare Act Preempts All of Plaintiffs' State Law Claims .......................... 10

       A.    Scope of Medicare Preemption Provision .................................................. 10

       B.    The Conduct Challenged in Plaintiffs' Complaint Is Governed by
            Federal Standards and the Medicare Act Preempts All of Plaintiffs'
            Claims ..................................................................................................... 14

II.    The Court Lacks Jurisdiction Over All of Plaintiffs' Claims Because They
     "Arise Under" the Medicare Act and Plaintiffs Did Not Exhaust Their
     Administrative Remedies .................................................................................... 17

       A.    Plaintiffs' Contract Claim "Arises Under" Medicare (Count I) .................. 18

       B.    Plaintiffs' Non-Contract Claims "Arise Under" Medicare (Counts II-
            XXV) ...................................................................................................... 19

III.   Plaintiffs' Medicare Claims Are Outside This Court's Jurisdiction,
     Plaintiffs Lack Standing to Seek Future Relief, and Tetzloff's Claims Are
     Time-Barred and Moot ....................................................................................... 22

A.    Plaintiffs Cannot Assert Claims Under the Medicare Act Because They Named the Wrong Defendant and Brought the Case in the Wrong Venue ............................................................................... 23

B.    The Plaintiffs' Estates Lack Standing to Seek Declaratory or Injunctive Relief Because They Would Not Benefit From It .................... 24

C.    Tetzloff's Claim Is Barred by the Statute of Limitations ........................... 25

D.    Tetzloff's Claims Are Moot Because Benefits Have Already Been Granted ....................................................................................... 26

IV.    Plaintiffs' State Law Claims Fail to State Claims for Additional Reasons........... 27

A.    Plaintiffs' Unjust Enrichment Claims Fail as a Matter of Law (Count III)    ....................................................................................... 27

B.    Plaintiffs Fail to State a Claim for Relief Under Wisconsin's Insurance Claim Settlement Practices Statute Because There Is No Private Right of Action (Count IV) ............................................................ 28

C.    Plaintiffs Lack Standing to Sue Under the Laws of States Where They Did Not Reside or Suffer Alleged Injury (Counts VI-XXV) ............. 28

CONCLUSION ............................................................................... 30

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Adams v. U.S. Bancorp,*
635 F. Supp. 3d 742 (D. Minn. 2022) .......................................................... 9

*ADT Sec. Servs. v. Swenson,*
687 F. Supp. 2d 884 (D. Minn. 2009) (Tunheim, J.) ................................... 24

*Advanced Med. Techs. v. Shalala,*
974 F. Supp. 417 (D.N.J. 1997) ................................................................. 26

*Alston v. United Healthcare Servs.,*
291 F. Supp. 3d 1170 (D. Mont. 2018) ...................................................... 13

*Anderson v. Sullivan,*
959 F.2d 690 (8th Cir. 1992) ..................................................................... 21

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................... 8

*Aylward v. SelectHealth, Inc.,*
35 F.4th 673 (9th Cir. 2022) ........................................................ 12, 13, 15

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................................... 8, 9, 21

*Blankenship v. USA Truck, Inc.,*
601 F.3d 852 (8th Cir. 2010) ...................................................................... 8

*Bodimetric Health Servs., Inc. v. Aetna Life & Cas.,*
903 F.2d 480 (7th Cir. 1990) ............................................................... 18, 20

*Brown v. Medtronic, Inc.,*
628 F.3d 451 (8th Cir. 2010) .................................................................... 29

*Bauer v. Berryhill,*
No. 19-cv-847-JRT/BRT, 2019 U.S. Dist. LEXIS 88533 (D. Minn. May
28, 2019) ................................................................................................... 24

*Carlsen v. GameStop, Inc.,*
833 F.3d 903 (8th Cir. 2016) .................................................................... 29

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006) ................................................................................................ 29

*Decker v. Nw. Envt'l Def. Ctr.*,
    568 U.S. 597 (2013) ................................................................................................ 27

*Degnan v. Sebelius*,
    959 F. Supp. 2d 1190 (D. Minn. 2013), *aff'd sub nom Degnan v.*
    *Burwell*, 765 F.3d 805 (8th Cir. 2014) (Doty, J.) ...................................................... 22

*Dengan v. Burwell*,
    765 F.3d 805 (8th Cir. 2014) .................................................................................. 20

*Ebert v. Anthem Health Plans of Ky., Inc*.,
    No. 5:20-cv-68, 2022 U.S. Dist. LEXIS 29553 (W.D. Ky. Feb. 18,
    2022) ........................................................................................................................ 23

*Ferrari v. Best Buy Co.*,
    14-cv-2956-MJD/FLN, 2015 U.S. Dist. LEXIS 61706 (D. Minn. May
    12, 2015) .................................................................................................................. 30

*Frederick B. v. Berryhill*,
    No. 19-cv-847-BRT, 2019 U.S. Dist. LEXIS 89681 (D. Minn. Mar. 28,
    2019) ........................................................................................................................ 24

*Generations at Elmwood Park, LLC v. Ezike*,
    No. 20-CV-00533, 2023 U.S. Dist. LEXIS 158350 (N.D. Ill. Sep. 7,
    2023) ........................................................................................................................ 26

*Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*,
    30 F.4th 905 (9th Cir. 2022) .................................................................................... 20

*Haaland v. Presbyterian Health Plan*,
    292 F. Supp. 3d 1222 (D.N.M. 2018) .................................................................. 13, 17

*Harrow v. Prudential Ins. Co. of Am.*,
    279 F.3d 244 (3d Cir. 2002) .................................................................................... 25

*Heckler v. Ringer*,
    466 U.S. 602 (1984) ...................................................................................... 17, 18, 19

*Hepstall v. Humana Health Plan, Inc.*,
    No 18-0163, 2018 U.S. Dist. LEXIS 200418 (S.D. Ala. Nov. 26, 2018)
    ................................................................................................................ 13, 14, 17, 20

*Hubbard v. Coventry Health Care of Fla., Inc.*,
    No. 5:16-cv-337, 2016 U.S. Dist. LEXIS 138370 (M.D. Fla. Sept. 13,
    2016) ................................................................................................................ 21

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*,
    13-cv-2644-ADM/SER, 2014 U.S. Dist. LEXIS 31188 (D. Minn. Mar.
    11, 2014) ........................................................................................................... 30

*Kaiser v. Blue Cross of Cal.*,
    347 F.3d 1107 (9th Cir. 2003) .......................................................................... 17

*U.S. ex rel. Kraxberger v. Kan City Power & Light Co.*,
    756 F.3d 1075 (8th Cir. 2014) .......................................................................... 10

*Lewis v. Casey*,
    518 U.S. 343 (1996) ........................................................................................... 29

*Liberty Mut. Fire Ins. Co. v. Acute Care Chiropractic Clinic P.A.*,
    88 F. Supp. 3d 985 (D. Minn. 2015) ................................................................. 21

*Logan v. Sebelius*,
    1:12-cv-00118, 2012 U.S. Dist. LEXIS 136031 (D. Or. Aug. 6, 2012) ............ 23

*M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*,
    616 F.3d 872 (8th Cir. 2010) ............................................................................ 28

*Madsen v. Kaiser Found. Health Plan, Inc.*,
    No. 08-cv-2236, 2009 U.S. Dist. LEXIS 46122 (S.D. Cal. June 2, 2009) ........ 23

*Mattes v. ABC Plastics, Inc.*,
    323 F.3d 695 (8th Cir. 2003) .......................................................................... 4, 9

*McAteer v. Target Corp.*,
    No. 18-cv-349-DWF/LIB, 2018 U.S. Dist. LEXIS 124923 (D. Minn.
    July 26, 2018) ............................................................................................... 29, 30

*Meek-Horton v. Trover Solutions, Inc.*,
    910 F. Supp. 2d 690 (S.D.N.Y. 2012) ............................................................... 11

*Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*,
    406 F.3d 1052 (8th Cir. 2005) ............................................................................ 9

*Osborn v. United States*,
    918 F.2d 724 (8th Cir. 1990) ............................................................................. 9

*Parrino v. FHP, Inc.*,
    146 F.3d 699 (9th Cir. 1998) ................................................................ 10

*Prime Healthcare Servs. v. Humana Ins. Co.*,
    230 F. Supp. 3d 1194 (C.D. Cal. 2017) ................................................. 21

*Quishenberry v. UnitedHealthcare, Inc.*,
    532 P.3d 239 (Cal. 2023) ......................................................... 13, 14, 15

*Rabach v. Life Ins. Co. of N. Am.*,
    No. 08-C-188, 2010 U.S. Dist. LEXIS 72822 (E.D. Wis. July 20, 2010) ................. 28

*Renn v. City of Jefferson*,
    No. 2:14-cv-04274, 2014 U.S. Dist. LEXIS 168640 (W.D. Mo. Dec. 5,
    2014) ...................................................................................... 25

*Rouse v. H.B. Fuller Co.*,
    No. 22-cv-2173-WMW/JFD, 2023 U.S. Dist. LEXIS 171141 (D. Minn.
    Sept. 26, 2023) ............................................................................ 30

*S. Dynamics Therapy v. Thompson*,
    No. 5:03-CV-155-C, 2003 U.S. Dist. LEXIS 20295 (N.D. Tex. Nov. 10,
    2003) ...................................................................................... 26

*Schubert v. Auto Owners Ins. Co.*,
    649 F.3d 817 (8th Cir. 2011) ................................................................ 9

*Estate of Schultz v. Brown*,
    846 F. App'x 689 (10th Cir. 2021) ......................................................... 24

*Smith v. Cmm'r of Soc. Sec.*,
    No. C21-5152, 2021 U.S. Dist. LEXIS 155142 (W.D. Wa. Aug. 17,
    2021) ...................................................................................... 22

*Snyder v. Prompt Med. Transp., Inc.*,
    131 N.E.3d 640 (Ind. Ct. App. 2019) ....................................................... 13

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) .......................................................................... 29

*Steger v. Delta Airlines, Inc.*,
    382 F. Supp. 2d 382 (E.D.N.Y. 2005) ....................................................... 10

*In re SuperValu, Inc.*,
    870 F.3d 763 (8th Cir. 2017) ............................................................... 29

*Timmerman v. Thompson*,
   No. 03-5221-JRT/FLN, 2004 U.S. Dist. LEXIS 15120 (D. Minn. Aug.
   5, 2004) ............................................................................................................ 22

*TransUnion LLC v. Ramirez*,
   141 S.Ct. 2190 (2021) ...................................................................................... 29

*Uhm v. Humana, Inc.*,
   620 F.3d 1134 (9th Cir. 2010) ........................................................... 11, 12, 20

*Warth v. Seldin*,
   422 U.S. 490 (1975) .......................................................................................... 29

*Wilson v. Chestnut Hill Healthcare*,
   No. 99-1468, 2000 U.S. Dist. LEXIS 1440 (E.D. Pa. Feb. 10, 2000) .................. 18, 20

*Zean v. Fairview Health Services*,
   858 F.3d 520 (8th Cir. 2017) .......................................................................... 10

## Statutes

42 U.S.C. § 405 .............................................................................................. *passim*

42 U.S.C. § 1395d(a)(2)(A) ............................................................................ 3, 15

42 U.S.C. § 1395f(a)(2)(B) .................................................................................... 3

42 U.S.C. § 1395ff(b)(1) ...................................................................................... 19

42 U.S.C. § 1395w-26(b)(3) ....................................................................... 11, 12, 13

Wis. Admin. Code § Ins. 6.11 ............................................................................ 28

## Other Authorities

42 C.F.R. § 405.1102(a)(1) .................................................................................. 25

42 C.F.R. § 405.1136(d)(1) .................................................................................. 23

42 C.F.R. § 409.31(b) ..................................................................................... 3, 15

42 C.F.R. §§ 409.61(b)-(c) ............................................................................. 3, 15

42 C.F.R. § 422.2 ................................................................................................ 11

42 C.F.R. § 422.112(a)(6)(ii) .......................................................................... 4, 16

42 C.F.R. § 422.402 ................................................................................................. 11

42 C.F.R. §§ 422.566(d) ......................................................................................... 16

42 C.F.R. § 422.612(c) ............................................................................................ 23

Rule 12(b)(6) .............................................................................................. 8, 9, 10

Rule 12(b)(1) .................................................................................................. 9, 10

Rule 12(b)(3) ...................................................................................................... 24

*Dep't of Health & Human Services, Center for Medicare & Medicaid
    Services, Medicare Program; Establishment of the Medicare Advantage
    Program; Final Rule*, 70 Fed. Reg. 4,588, 4,694 (Jan. 28, 2005) ............................. 12

*Medicare Managed Care Manual: Chapter 4 - Benefits and Beneficiary
    Protections*, https://www.cms.gov/regulations-and-
    guidance/guidance/manuals/downloads/mc86c04.pdf ............................................. 4, 7

*Medicare Prescription Drug, Improvement, and Modernization Act of
    2003*, H.R. Conf. Rep. No. 108-391, at 557 (Nov. 21, 2003) *reprinted in*
    2003 U.S.C.C.A.N. 1808, *available at*
    https://www.congress.gov/108/crpt/hrpt391/CRPT-108hrpt391.pdf ......................... 12

# INTRODUCTION

In this putative class action, Plaintiffs assert a series of state law claims concerning the administration of Medicare Advantage plans and the alleged denial of their Medicare benefits. But federal law—not state law—controls Plaintiffs' claims.

The Medicare Act supersedes any state law "with respect to" Medicare Advantage plans. The Medicare Act, regulations promulgated by the Centers for Medicare and Medicaid Services ("CMS"), and the Medicare Advantage plans at issue directly address the acts Plaintiffs challenge—the administration of a Medicare plan and the decisions on claims for Medicare benefits. The Court cannot adjudicate Plaintiffs' claims without analyzing and applying the Medicare Act, CMS regulations, and the Medicare Advantage plans. Thus, federal law expressly preempts Plaintiffs' claims, and requires dismissal.

If the Court construes Plaintiffs' claims as arising under the Medicare Act, as it should, they would still fail for a number of reasons. First, Plaintiffs have not exhausted their administrative remedies. The Medicare Advantage plans, federal law, and CMS regulations specify an exclusive administrative procedure that Plaintiffs must complete before bringing their case to federal court.

Further, any request for declaratory or injunctive relief should be dismissed because the Plaintiffs' estates would not benefit from any relief awarded by the Court, and, therefore, they lack standing to seek it. Because a CMS Administrative Law Judge has already entered a decision stipulated to by both parties favorable to Tetzloff on his claim for benefits, any claims the Tetzloff Estate may have had under the Medicare Act are now both time-barred and moot. Finally, because Plaintiffs' decedents resided in

1

Wisconsin, any Medicare Act claims should be dismissed because the exclusive venue for them to assert such claims would be Wisconsin.

In addition, Counts III, IV, and VI through XXV should be dismissed for reasons separate and apart from the Medicare Act. Plaintiffs' unjust enrichment claim in Count III should be dismissed because equitable relief cannot be granted where contracts govern the rights of the parties. Count IV under Wisconsin's Insurance Claim Settlement Practices statute should be dismissed because the statute allows no private right of action. Counts VI through XXV should be dismissed because Plaintiffs lack standing to sue under laws of states where Lokken and Tetzloff did not reside or suffer alleged injury.

For all of these reasons, the Court should dismiss Plaintiffs' Complaint in its entirety.

## **BACKGROUND**

## I.    **THE PARTIES AND MEDICARE ADVANTAGE PLANS AT ISSUE**

Defendant UnitedHealth Group Incorporated is the ultimate parent of both UnitedHealthcare, Inc. ("UnitedHealthcare") and naviHealth, Inc. Compl. ¶ 20.[1] UnitedHealthcare offers and sells Medicare Advantage health insurance plans to consumers. *Id.* ¶ 24.[2] In 1997, Congress enacted Part C of Title XVIII of the Social Security Act, known as the Medicare Act. 42 U.S.C. §§ 1395w-21-1395w-29. Under Part

---

[1] UnitedHealth Group Incorporated is incorrectly named in the Complaint as "UnitedHealth Group, Inc." and UnitedHealthcare, Inc. is incorrectly named as "United Healthcare, Inc."
[2] Defendants accept as true any adequately pleaded allegations in the Complaint for purposes of this motion only.

C, beneficiaries can enroll in Medicare Advantage (or "MA") plans and receive Medicare benefits through private Medicare Advantage Organizations ("MA organizations"). *Id.* § 1395w-22; Compl. ¶ 25. Medicare Advantage plans follow the rules set by the Medicare Act. Compl. ¶ 26. Lokken and Tetzloff were members of Medicare Advantage plans they purchased from UnitedHealthcare. *Id.* ¶ 24. Both Lokken and Tetzloff are deceased, and their estates assert their claims in this lawsuit. *Id.* ¶¶ 18-19.

Medicare Part A covers medically necessary skilled nursing and rehabilitation care. Subject to certain conditions, Medicare Part A covers up to 100 days of skilled nursing and rehabilitation care for a benefit period following a qualifying inpatient hospital stay of at least three days. 42 U.S.C. § 1395d(a)(2)(A); 42 C.F.R. §§ 409.61(b)-(c). For skilled nursing facility ("SNF") benefits to be covered, certain conditions must be met, including that: (1) the patient requires skilled nursing care or skilled rehabilitation services daily, (2) the daily skilled services must be services that, as a practical matter, can only be provided in a SNF on an inpatient basis, and (3) the services are provided to address a condition for which the patient received treatment during a qualified hospital stay or that arose while the patient was receiving care in a SNF. 42 U.S.C. § 1395f(a)(2)(B); 42 C.F.R. § 409.31(b). Lokken's and Tetzloff's Medicare Advantage plans provided for SNF benefits subject to Medicare regulations. Decl. of Michelle Grant, Ex. A at 4-71:73 (Lokken's Evidence of Coverage 2022) ("Lokken EOC") & Ex. B at 4-68:69 (Tetzloff's Evidence of Coverage 2022) ("Tetzloff EOC").[3]

---

[3] All citations to Exhibits are to the Exhibits attached to the Declaration of Michelle Grant in Support of Defendants' Motion to Dismiss. In deciding this motion to dismiss,

CMS provides extensive regulations that govern the manner in which MA organizations make coverage determinations. Federal regulations require Medicare Advantage plans to have written utilization management policies and procedures that allow for individual medical necessity determinations. 42 C.F.R. § 422.112(a)(6)(ii). Medicare Advantage plan benefit determinations are further regulated at 42 C.F.R. §§ 422.566 through 422.576 and under the Medicare Managed Care Manual.[4] As described in detail below, the Secretary of the Department of Health and Human Services has established administrative appeal procedures that apply when a member's claims are denied. 42 U.S.C. §§ 405(g)-(h), 1395ff(b)(1)(A).

Plaintiffs allege that Defendants wrongfully denied members skilled nursing care benefits allegedly owed to them under Medicare Advantage plans by using the nH Predict model instead of medical professionals to review their claims. Compl. ¶¶ 1, 32-34. Plaintiffs allege that Defendants wrongfully delegated their obligation to evaluate and investigate claims to the nH Predict model, which allegedly failed "to adjust for a patient's individual circumstances and conflict[ed] with basic rules on what Medicare Advantage plans must cover." *Id.* ¶¶ 34-35.

---

this Court may consider documents necessarily embraced by the complaint, such as the terms of the plan. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003); *see infra* at 9-10.

[4] *See generally* CMS, *Medicare Managed Care Manual: Chapter 4 - Benefits and Beneficiary Protections*, https://www.cms.gov/regulations-and-guidance/guidance/manuals/downloads/mc86c04.pdf.

## II.    PLAINTIFFS' CLAIMS FOR SKILLED NURSING BENEFITS AND ADMINISTRATIVE APPEALS

### A.    Lokken's Claims for Benefits

Lokken alleges that he was enrolled in the Medicare Advantage plan "offered and sold" by UnitedHealthcare. Compl. ¶ 24; *see also* Ex. A (Lokken's EOC). Lokken alleges that after experiencing an injury he received services first from Aspirus Tomahawk Hospital, and after being transferred to Tomahawk Health Services ("THS"), he received skilled nursing care there. Compl. ¶¶ 44-47. Lokken's health improved, and he received physical therapy. *Id.* ¶¶ 47-49. Lokken alleges that Defendants covered his care at THS for several weeks but ended coverage because additional inpatient service at the skilled nursing facility was not medically necessary. *Id.* ¶ 50.

### B.    Lokken's Administrative Appeal Process

Lokken's plan provides him with four administrative appeals by which to challenge a denial of benefits for skilled nursing facility care. *See* Ex. A (Lokken EOC). These four administrative appeals must be completed before a member may bring a lawsuit in federal court under the Medicare Act. *Id.* at 9-46. At the Level 1 Appeal, the Quality Improvement Organization ("QIO")—an independent group of doctors and experts employed by the federal government—reviews the plan's decision and issues a decision approving benefits or denying the appeal. *Id.* at 9-38:40. If the QIO denies a Level 1 Appeal, the member must ask the QIO to reconsider its decision (the Level 2 Appeal). *Id.* at 9-40:42. The member must request a Level 2 Appeal within 60 days after the QIO's initial decision. *Id.* at 9-41.

If the QIO denies the Level 2 Appeal, the member must make a Level 3 Appeal to an Administrative Law Judge ("ALJ") or attorney adjudicator who works for the federal government. *Id.* at 9-45. If the ALJ or attorney adjudicator denies the Level 3 appeal, the member must file a Level 4 Appeal with the Medicare Appeals Council (the "Council"), which is part of the federal government. *Id.* at 9-45:46. If the Council denies a Level 4 Appeal, the member may then file a lawsuit in the appropriate federal district court. *Id.* at 9-46.

The Complaint alleges that Lokken made one appeal, Compl. ¶ 53, and that he has "continued to vigorously appeal" the denial of coverage. *Id.* ¶ 54.

In fact, the administrative record confirms that Lokken has completed only three of the four mandatory appeals. At the Level 1 appeal, ███████████████████ ███████████████████████████████████████████ ██████████████████████████ Ex. C. Lokken requested a Level 2 appeal, and ████████████████████████████████████████ ██████████████████████████ Ex. D. Lokken then made a Level 3 appeal to an ALJ, ███████████████████████████ Ex. E. He then made a Level 4 appeal to the Council, and ██████████████████████████ ███████████████████████████████████████ ████████████████ Ex. F. Rather than complete this administrative process, Lokken filed this lawsuit on November 14, 2023. *See* Compl. Two days later, on remand, ████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████

████████████████████████████ Ex. G. On January 4, 2024, Lokken

filed a Level 4 appeal with the Council, which as of the time of this filing has not yet

ruled on the appeal. Ex. H.

### C.    Tetzloff's Claim for Benefits

Tetzloff alleges that he was a member of a Medicare Advantage plan "offered and

sold" by UnitedHealthcare in 2022. Compl. ¶ 24. After suffering an injury, Tetzloff

received care at a hospital and then at a SNF to receive post-acute care. *Id.* ¶ 59. He

alleges that a doctor determined that he needed care at the skilled nursing facility for 100

days but that coverage for that full period was denied. *Id.* ¶¶ 59-60.

### D.    Tetzloff's Administrative Appeal Process

For SNF care, Tetzloff's plan contains an administrative appeal structure identical

to Lokken's that requires four levels of administrative appeal, culminating in an appeal to

the Council. *See* Ex. B (Tetzloff EOC) at 9-38:47. Tetzloff alleges that, after the first 20

days at the SNF, Defendant[5] notified him that his coverage was denied. Compl. ¶ 60.

Following Tetzloff's administrative appeal, Defendant overturned the coverage denial

and granted additional benefits. *Id.* ¶ 62.

After benefits had been granted for another 20 days at the SNF, Tetzloff alleges

Defendant again denied coverage and determined that Tetzloff was ready for discharge.

*Id.* ¶ 63. Tetzloff alleges he "continuously appealed" this second denial of coverage. *Id.*

¶ 66. When coverage was denied a second time, Tetzloff made a Level 1 appeal. The

---

[5] The Complaint alleges "Defendant," without identification of which Defendant. *Id.*

independent peer reviewer affirmed the denial ███████████████

████████████████████████████ Ex. I. On December

18, 2022, ████████████████████████████

████████████████████████████████████████

████████████ *Id.* Tetzloff sought reconsideration and ███████

███ Ex. J. After Tetzloff made his Level 3 appeal, however, ██████

████████████████████████████

████████████████████████████ Ex. K.

This means that Tetzloff's claims were approved for payment. Having obtained all of the

benefits he sought, Tetzloff did not appeal further to the Council. Compl. ¶¶ 58-68.

## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must

allege sufficient facts that, when accepted as true, state a facially plausible claim to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When determining whether the complaint

states such a claim, a district court accepts as true all factual allegations and draws all

reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d

852, 853 (8th Cir. 2010). But "legal conclusion[s] couched as factual allegations" are not

accepted as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And mere "labels

and conclusions" or a "formulaic recitation of the elements of a cause of action" fail to

state a claim for relief. *Id.*

Under Rule 12(b)(1), the party seeking to invoke federal jurisdiction must prove,

by a preponderance of the evidence, that the court has jurisdiction to decide the claims.

*Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011). "A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'" *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). When deciding a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (citations omitted). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.*

In deciding a motion to dismiss under either Rule 12(b)(6) or 12(b)(1), the district court may consider documents necessarily embraced by the complaint. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Documents "incorporated into the pleadings by reference" may be considered at the motion-to-dismiss stage, even if "not expressly part of the pleadings." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1063 n.3 (8th Cir. 2005).

Here, the Complaint incorporates by reference the documents relevant to Defendants' motion—namely, the EOCs and appeal decisions—and those documents may properly be considered. *See* Compl. ¶¶ 18-19, 53-54, 66. The Court may consider an EOC on a motion to dismiss. *See Adams v. U.S. Bancorp,* 635 F. Supp. 3d 742, 747 (D. Minn. 2022); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) ("documents governing plan membership, coverage, and administration are essential to [the] complaint"). This is especially true because the plaintiffs assert breach of contract claims. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). The Court may

consider the rest of the Defendants' exhibits too. *See, e.g.*, *U.S. ex rel. Kraxberger v. Kan City Power & Light Co.*, 756 F.3d 1075, 1083 (8th Cir. 2014) (courts may consider documents "incorporated by reference or integral to the claim" (citation omitted)); *Steger v. Delta Airlines, Inc.*, 382 F. Supp. 2d 382, 385 (E.D.N.Y. 2005) (considering ERISA appeal letters at motion to dismiss). For the reasons explained below, the documents incorporated in the Complaint demonstrate that Lokken and Tetzloff lack standing to sue Defendants, have failed to plausibly state a claim, and sued in an improper venue. Dismissal under Rules 12(b)(1) and 12(b)(6) is appropriate.

## ARGUMENT

## I.   THE MEDICARE ACT PREEMPTS ALL OF PLAINTIFFS' STATE LAW CLAIMS

Plaintiffs' causes of action can be reduced to two allegations—Defendants allegedly (1) improperly denied benefits for SNF care by (2) using the nH Predict model that failed to take into account individual circumstances and conflicted with Medicare coverage guidelines. *See, e.g.*, Compl. ¶¶ 1, 6, 34. These allegations challenge actions governed by federal regulation. Federal regulations define: (1) when SNF care is covered, (2) whether a coverage determination is correct, and (3) how coverage determinations should be made.

### A.   Scope of Medicare Preemption Provision

Medicare expressly preempts Plaintiffs' causes of action because they relate to areas governed by Medicare Advantage ("MA") standards applicable to UnitedHealthcare's Medicare Advantage plans. The Medicare Prescription Drug,

Improvement, and Modernization Act of 2003 ("MMA") provides for broad preemption of state law claims:

> The standards established under [Part C] shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under [Part C].

42 U.S.C. § 1395w-26(b)(3) (effective Dec. 8, 2003); *see also* 42 C.F.R. § 422.402 ("The standards established under this part supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to the MA plans that are offered by MA organizations.").[6] This preemption provision applies not only to state statutes, but also to state common law. *Uhm v. Humana, Inc.*, 620 F.3d 1134, 1156 (9th Cir. 2010).

Congress intended this preemption provision to greatly expand the scope of Medicare preemption. Before 2003, the Medicare Part C preemption clause limited federal preemption to only four enumerated standards and any "inconsistent" state laws and regulations. 42 U.S.C. § 1395w-26(b)(3)(A) (effective Dec. 21, 2000 to Dec. 7, 2003); *see also Uhm*, 620 F.3d at 1149 n.22 (reciting the text of the earlier statute). The

---

[6] CMS defines "MA organizations" as "a public or private entity organized and licensed by a State as a risk-bearing entity (with the exception of provider-sponsored organizations receiving waivers) that is certified by CMS as meeting the MA contract requirements." 42 C.F.R. § 422.2. Whether or not each of the Defendants constitute "MA organizations," the preemption and exhaustion requirements of the Medicare Act apply to the claims Plaintiffs assert against all of the Defendants. *See Uhm v. Humana, Inc.*, 620 F.3d 1134, 1157-58 (9th Cir. 2010) (claims against Humana, Inc. were preempted even though it was not the MA organization); *Meek-Horton v. Trover Solutions, Inc.*, 910 F. Supp. 2d 690, 691 n.1, 696 (S.D.N.Y. 2012) (dismissing plaintiff's Medicare claims against the agents of a MA organization because the claims were preempted).

MMA struck these enumerated standards and the qualifying clause and thereby significantly broadened the scope of the federal preemption of state law. *See Dep't of Health & Human Services, Center for Medicare & Medicaid Services, Medicare Program; Establishment of the Medicare Advantage Program; Final Rule*, 70 Fed. Reg. 4,588, 4,694 (Jan. 28, 2005). The House Conference Report accompanying the MMA explains that the amendment was intended to "clarif[y] that the Medicare Advantage program is a federal program operated under Federal rules. State laws, do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency." *Medicare Prescription Drug, Improvement, and Modernization Act of 2003*, H.R. Conf. Rep. No. 108-391, at 557 (Nov. 21, 2003) *reprinted in* 2003 U.S.C.C.A.N. 1808, *available at* https://www.congress.gov/108/crpt/hrpt391/CRPT-108hrpt391.pdf; *see also Uhm*, 620 F.3d at 1149-50.

Courts have held that this preemption provision broadly preempts various state causes of action and precludes state claims. *See, e.g.*, *Aylward v. SelectHealth, Inc.*, 35 F.4th 673, 680-82 (9th Cir. 2022) (claims for negligence, fraud, bad faith, failure to investigate, and breach of covenant of good faith and fair dealing); *Uhm*, 620 F.3d at 1158 (claims for misrepresentation and under various state consumer protection statutes); *Alston v. United Healthcare Servs.*, 291 F. Supp. 3d 1170, 1174-75 (D. Mont. 2018) (claims for negligence, intentional/negligent infliction of emotional distress, and breach of contract); *Hepstall v. Humana Health Plan, Inc.*, No 18-0163, 2018 U.S. Dist. LEXIS 200418, at *20-22 (S.D. Ala. Nov. 26, 2018) (breach of contract, bad faith insurance claim processing, and wrongful death claims); *Haaland v. Presbyterian Health Plan*, 292

F. Supp. 3d 1222, 1223-24, 1231 (D.N.M. 2018) (negligence and wrongful death claims); *Quishenberry v. UnitedHealthcare, Inc.*, 532 P.3d 239, 241 (Cal. 2023) (claims for negligence, wrongful death, and statutory elder abuse); *Snyder v. Prompt Med. Transp., Inc.*, 131 N.E.3d 640, 653 (Ind. Ct. App. 2019) (negligence claims based on denial of coverage).

In *Aylward*, for example, plaintiff pleaded nine different causes of action based on a variety of tort theories, including bad faith handling of an insurance claim, fraud, negligence, and breach of fiduciary duty against SelectHealth, the administrator of a Medicare Advantage plan. 35 F.4th at 677. The district court recognized that her claims were ultimately premised on one or both of two distinct duties that SelectHealth allegedly breached: (1) a duty to process an appeal in a timely manner, and (2) a duty to properly investigate a preauthorization request. *Id.* at 677-78. The Ninth Circuit held that, because the standards established under Medicare Part C prescribe the relevant duties of Medicare Advantage plans with respect to when expedited treatment is required and what timeframes apply, those standards superseded any state law duty that would impose obligations on Medicare Advantage plans on that same subject. *Id.* at 680-82; *see* 42 U.S.C. § 1395w-26(b)(3).

Similarly, *Quishenberry* concerned a Medicare Advantage enrollee who died after being discharged from a SNF. 532 P.3d at 242. The enrollee's son sued the Medicare Advantage plan and its administrator for negligence, wrongful death, and elder abuse based on allegations that defendants breached a duty to ensure his father received skilled nursing benefits under the plan. *Id.* The California Supreme Court held that Medicare

preempted all of these state law claims. *Id.* at 249. As the court noted, to determine the truth of the allegations, a factfinder would have to decide whether the enrollee was entitled to the full 100 days of skilled nursing care benefits. *Id.* at 248. This would involve applying criteria detailed in Medicare regulations including, for example, that "the beneficiary must require skilled nursing or skilled rehabilitation services, or both, on a daily basis" and "[t]he daily skilled services must be ones that, as a practical matter, can only be provided in a SNF on an inpatient basis." *Id.* (citing 42 C.F.R. §§ 409.31(b)(1) & (b)(3)). Thus, Medicare preempted all of the state law claims. *Id.* at 249. *See also Hepstall*, 2018 U.S. Dist. LEXIS 200418, at *22 (state law claims for breach of contract and bad faith based on allegedly wrongful conduct of Defendants in denying certain medical services preempted because CMS regulations govern the types of benefits that must be offered by MA organizations and the process of making coverage determinations).

**B.    The Conduct Challenged in Plaintiffs' Complaint Is Governed by Federal Standards and the Medicare Act Preempts All of Plaintiffs' Claims**

Just as in *Aylward* and *Quishenberry*, Plaintiffs' claims will require the factfinder to determine whether Lokken and Tetzloff were entitled to SNF benefits.[7] This determination will require the factfinder to apply criteria detailed in Medicare regulations relating to coverage for treatment by SNFs, including whether the Medicare Advantage enrollee required (and actually received) skilled nursing care or skilled rehabilitation

---

[7] As noted, Tetzloff received the full 100 days of SNF benefits. Ex. K.

services on a daily basis that could only be provided in a SNF. *See* 42 U.S.C.

§ 1395d(a)(2)(A); 42 C.F.R. §§ 409.61(b)-(c); 42 C.F.R. §§ 409.31(b)(1) & (b)(3).

Plaintiffs allege that Defendants wrongfully delegated to the nH Predict model their obligation to evaluate and investigate claims and that the model failed "to adjust for a patient's individual circumstances and conflict[ed] with basic rules on what Medicare Advantage plans must cover." Compl. ¶¶ 34-35. These allegations attempt to apply state law "with respect to" areas that are regulated by Medicare standards. In Plaintiffs' first cause of action (breach of contract), they allege Defendants breached their Medicare Advantage plan by failing to investigate and provide all reasons for the denial. *Id*. ¶¶ 85-86. Plaintiffs' second cause of action (breach of the covenant of good faith and fair dealing) alleges that Defendants failed to conduct a fair investigation and wrongfully denied claims. *Id*. ¶¶ 91, 95-96. Likewise, Plaintiffs' third cause of action (unjust enrichment) alleges that Defendants improperly delegated the claims review process and denied them payments owed under the Medicare Advantage plans. *Id*. ¶¶ 99, 103. Plaintiffs' fourth cause of action (violation of Wisconsin claims settlement practices) also alleges that Defendants failed to conduct a claims investigation. *Id*. ¶¶ 107-08. Finally, each of Plaintiffs insurance bad faith claims (counts five through twenty-five) allege that Defendants lacked a reasonable basis to deny coverage and/or failed to conduct an adequate investigation. *Id*. ¶¶ 112-13, 115, 128, 136, 143, 149. 154, 158, 165, 169, 172, 175-76, 182, 185, 190, 196, 203-04, 211-12, 217, 222, 227, and 232.

Specific provisions in the Medicare Act and CMS regulations directly address these issues. CMS also publishes extensive guidelines on how MA organizations must

make coverage determinations. The regulations specify who must make coverage determinations. *See* 42 C.F.R. §§ 422.566(d) (an adverse coverage determination "must be reviewed by a physician or other appropriate health care professional with expertise in the field of medicine or health care that is appropriate for the services at issue"). They also govern how administrators may use utilization management tools and how they must make associated coverage determinations. *See* 42 C.F.R. § 422.112(a)(6)(ii) (Medicare Advantage plans are required to have policies and procedures (including coverage rules, practice guidelines, and utilization management) that allow for individual medical necessity determinations).

The Court cannot adjudicate Plaintiffs' state law claims without analyzing and applying provisions and regulations of the Medicare Act. Plaintiffs' claims depend on analysis and interpretation of CMS requirements for medical necessity, how coverage determinations should be made, and the highly regulated Medicare benefit process. Accordingly, all of Plaintiffs' state law claims should be dismissed as preempted by Medicare. *See, e.g.*, *Haaland*. 292 F. Supp. 3d at 1231 (state law claims preempted by federal regulations that required MA organization to make coverage determinations through application of medical necessity standard); *Hepstall*, 2018 U.S. Dist. LEXIS 200418, at *20-22 (state law claims preempted because the types of benefits that must be offered and the process of making coverage determinations are governed by standards set forth in CMS regulations).

II.    **THE COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS BECAUSE THEY "ARISE UNDER" THE MEDICARE ACT AND PLAINTIFFS DID NOT EXHAUST THEIR ADMINISTRATIVE REMEDIES**

Congress has established a structure for determination of Medicare-related claims, requiring that such claims proceed through administrative review and result in a final decision issued by the Secretary of Health and Human Services ***before*** such claims can be brought in federal court. *Heckler v. Ringer*, 466 U.S. 602, 605 (1984); 42 U.S.C. §§ 405 (g)-(h), 1395ff(b)(1)(A). This procedural requirement applies not only to claims expressly invoking the Medicare Act but also to claims that "arise under" the Medicare Act even if they are styled as state law tort, contract, or statutory claims. A claim "arises under" the Medicare Act when: (1) the "standing and the substantive basis for the presentation of the claim[]" is the Medicare Act, or (2) the claim is "inextricably intertwined" with a claim for Medicare benefits. *Heckler*, 466 U.S. at 614-15; *Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1112 (9th Cir. 2003).

Federal courts have taken an expansive view of the types of claims that "arise under" the Medicare Act, particularly since the Supreme Court's decision in *Heckler*. In *Heckler*, the Court rejected the plaintiff's attempts to distinguish claims grounded in "supposed procedural objections" and those seeking "only declaratory and injunctive relief and not an actual award of benefits" from those that directly seek payment of benefits. 466 U.S. at 614-15 (internal quotation marks omitted). The Court held that plaintiff's labeling of Medicare-related claims as concerning something other than "benefits" is of no moment; rather, what matters is whether the complaint seeks "the

17

payment of benefits" or a "right to future payments." *Id.* at 620-21. Courts have noted that they must "discount any creative pleading which may transform Medicare disputes into mere state law claims, and painstakingly determine whether such claims are ultimately Medicare disputes." *Wilson v. Chestnut Hill Healthcare*, No. 99-1468, 2000 U.S. Dist. LEXIS 1440, at *10-11 (E.D. Pa. Feb. 10, 2000) (internal quotation marks omitted); *see also Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 487 (7th Cir. 1990) ("If litigants who have been denied benefits could routinely obtain judicial review of these decisions by recharacterizing their claims under state and federal causes of action, the Medicare Act's goal of limited judicial review for a substantial number of claims would be severely undermined.").

Here, although Plaintiffs attempt to dress up their claims under 25 different state causes of action, all of them rely on the same fundamental premise: Plaintiffs' disagreement with the denial of their Medicare claims and the alleged method by which their plan reached those denials. All of their claims "arise under" the Medicare Act and are subject to the exhaustion requirement. Because neither Plaintiff has exhausted the administrative review process, their claims should be dismissed.

### A.    Plaintiffs' Contract Claim "Arises Under" Medicare (Count I)

Plaintiffs' breach of contract claim alleges that Defendants "unreasonably den[ied]" their claims without adequate individualized investigation and further breached the agreement by failing to exercise their fiduciary duties, abiding by state laws, and providing written statements stating the bases for the denial of claims. Compl. ¶¶ 85-86. The contracts at issue are between Lokken and Tetzloff, on the one hand, and

UnitedHealthcare, on the other hand, whereby UnitedHealthcare provided insurance under the authority of the Medicare Act. Fundamentally, Plaintiffs' claimed "breach" is the "denial of benefits" under their Medicare Advantage plans and the methodology by which UnitedHealthcare allegedly made coverage decisions. The contractual relationship provides both the "standing and the substantive basis" for the claim. The underlying refusal to provide coverage is exactly the kind of dispute over which the Medicare Act vests in the Secretary the power to "determine whether an individual is entitled to benefit." 42 U.S.C. § 1395ff(b)(1). Before the Court may review this claim, Plaintiffs must first have pressed it "through all designated levels of administrative review." *Heckler*, 466 U.S. at 606.

### B. Plaintiffs' Non-Contract Claims "Arise Under" Medicare (Counts II-XXV)

Plaintiffs' second through twenty-fifth causes of action also "arise under" the Medicare Act because they are "inextricably intertwined" with a claim for Medicare benefits. Each cause of action challenges the denial of benefits and the alleged failure to investigate their claims. *See supra,* Section I. Whether Plaintiffs are entitled to benefits and whether UnitedHealthcare's review or investigation of claims was proper will require an analysis of the Medicare Advantage plan documents and Medicare regulations. As courts have held, the claim that Defendants acted "without a reasonable basis" boils down to dissatisfaction with a decision not to provide benefits. *See Wilson*, 2000 U.S. Dist. LEXIS 1440, at *12-13 (where plaintiff challenged decisions under Medicare Advantage plan, bad faith claim "arises under" Medicare and must be exhausted). Plaintiffs also

must exhaust their administrative remedies in connection with their remaining causes of action. *See Uhm*, 620 F.3d at 1143 (dismissing unjust enrichment claim relating to Medicare Part D plan for failure to exhaust); *Bodimetric*, 903 F.2d at 481-83 (breach of implied covenant of good faith and fair dealing claim); *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 918-19 (9th Cir. 2022) (state consumer protection and breach of the covenant of good faith and fair dealing claims relating to Medicare Advantage plan); *Hepstall*, 2018 U.S. Dist. LEXIS 200418, at *2, *23-27 (bad faith failure to pay or investigate a claim relating to Medicare Advantage plan).

### C.    Plaintiffs Have Not Exhausted All Administrative Remedies

Neither Plaintiff has completed the administrative appeal process. Therefore, this Court lacks jurisdiction to hear Plaintiffs' claims.

"In order for the district court to have subject matter jurisdiction under Section 405(g), a claimant must have presented a claim for benefits to the secretary and exhausted the administrative remedies prescribed by the Secretary." *Dengan v. Burwell*, 765 F.3d 805, 808 (8th Cir. 2014) (quoting *Schoolcraft v. Sullivan*, 971 F.2d 81, 84-85 (8th Cir. 1992)). Thus, when a plaintiff has not exhausted administrative remedies and obtained a "final decision," the plaintiff's claims are not ripe for judicial review. *See Anderson v. Sullivan*, 959 F.2d 690, 693 (8th Cir. 1992) (recognizing that 42 U.S.C. § 405(g) is the sole avenue for judicial review for all claims arising under the Medicare Act).

Plaintiffs have not, and cannot, meet their burden to show that subject matter jurisdiction exists. Plaintiffs have the "burden of proof" that jurisdiction exists. *Liberty*

*Mut. Fire Ins. Co. v. Acute Care Chiropractic Clinic P.A.*, 88 F. Supp. 3d 985, 996 (D. Minn. 2015) (quoting *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 2015)). The Complaint does not allege that all four appeal levels have been completed; its threadbare allegations that Plaintiffs "continued to vigorously appeal Defendants' denial of coverage" lack the specificity required by *Twombly*. *See* Compl. ¶¶ 54, 60. As described above, Plaintiffs' must complete four levels of administrative appeal before they may present their claims to a federal district court. Exs. A & B (EOCs); *see supra* Background, Part II.B & II.D. Plaintiffs do not, and cannot, allege that they have completed all four appeal levels and, thus, have failed sufficiently to allege that they exhausted the administrative procedures. *See Prime Healthcare Servs. v. Humana Ins. Co.*, 230 F. Supp. 3d 1194, 1205-06 (C.D. Cal. 2017) (allegation that plaintiffs appealed was insufficient to show subject matter jurisdiction, when plaintiffs did not plead they had presented the claim to the Secretary); *see also Hubbard v. Coventry Health Care of Fla., Inc.*, No. 5:16-cv-337, 2016 U.S. Dist. LEXIS 138370, at *13-14 (M.D. Fla. Sept. 13, 2016) *report and recommendation adopted by* 2016 U.S. Dist. LEXIS 138268 (M.D. Fla. Oct. 5, 2016) (plaintiff failed to plead the agency issued a final decision).

Moreover, the administrative record—which this Court can properly consider for this Rule 12 motion, *see supra* at 9-10—demonstrates that neither Plaintiff has completed the fourth level of administrative review. Lokken's estate just appealed to the Medicare Appeals Council last month, Ex. H, and no determination has been made. And Tetzloff never initiated a Level 4 Appeal because his benefits were *granted* at the Level 3 Appeal stage. Ex. K. Accordingly, the Complaint must be dismissed because Plaintiffs have

failed to exhaust their administrative remedies. *E.g.*, *Timmerman v. Thompson*, No. 03-5221-JRT/FLN, 2004 U.S. Dist. LEXIS 15120, at *19 (D. Minn. Aug. 5, 2004) (Tunheim, J.) (dismissing putative class action against the Secretary for failure to exhaust); *Degnan v. Sebelius*, 959 F. Supp. 2d 1190, 1193, 1195 (D. Minn. 2013), *aff'd sub nom Degnan v. Burwell*, 765 F.3d 805 (8th Cir. 2014) (Doty, J.) (dismissing putative class action against the Secretary for failure to exhaust); *see also Smith v. Cmm'r of Soc. Sec.*, No. C21-5152, 2021 U.S. Dist. LEXIS 155142, at *2 (W.D. Wa. Aug. 17, 2021) (declining to stay proceedings to allow claimant to exhaust administrative remedies because "[l]acking jurisdiction, this Court must dismiss this case").

## III. PLAINTIFFS' MEDICARE CLAIMS ARE OUTSIDE THIS COURT'S JURISDICTION, PLAINTIFFS LACK STANDING TO SEEK FUTURE RELIEF, AND TETZLOFF'S CLAIMS ARE TIME-BARRED AND MOOT

As discussed above, Plaintiffs' Complaint, at its core, challenges two things: denial of benefits and the manner in which Defendants allegedly administered Plaintiffs' Medicare Advantage plan benefits. If the Court construes these state law claims as claims arising under the Medicare Act, the Court should dismiss them for additional reasons as well. First, any request for declaratory or injunctive relief should be dismissed because the Plaintiffs' estates lack standing to seek such relief because they would not benefit from it. Further, Tetzloff's claims are time-barred and the claims brought by Tetzloff's estate are moot because the benefits at issue were granted and the estate is not entitled to any additional relief. For these reasons, the Court should grant the motion to dismiss with prejudice and preclude further amendment to assert claims under the Medicare Act.

A.    **Plaintiffs Cannot Assert Claims Under the Medicare Act Because They Named the Wrong Defendant and Brought the Case in the Wrong Venue**

Neither Plaintiff may assert a claim under the Medicare Act for the services at issue against the named Defendants or venue their case in this Court. A Medicare claim can only be brought "after any final decision by the Commissioner of Social Security" and must be brought ***against the Commissioner,*** which Plaintiffs have not done. *See* 42 U.S.C. § 405(g); 42 C.F.R. § 422.612(c) (referring to 42 C.F.R. chapter 405 for Medicare Advantage claims); 42 C.F.R. § 405.1136(d)(1) ("In any civil action…the Secretary of HHS, in his or her official capacity, is the proper defendant."); *Madsen v. Kaiser Found. Health Plan, Inc.*, No. 08-cv-2236, 2009 U.S. Dist. LEXIS 46122, at *9 (S.D. Cal. June 2, 2009) (dismissing MA Organization because the Secretary is the "sole" proper defendant); *Logan v. Sebelius*, 1:12-cv-00118, 2012 U.S. Dist. LEXIS 136031, at *8-9 (D. Or. Aug. 6, 2012) (same); *Ebert v. Anthem Health Plans of Ky., Inc*., No. 5:20-cv-68, 2022 U.S. Dist. LEXIS 29553, at *3-5 (W.D. Ky. Feb. 18, 2022) (same).

Further, this Court is the incorrect venue; any Medicare claim must be brought in U.S. District Court for "the judicial district in which the plaintiff resides …." 42 U.S.C. § 405(g)*.* Thus, even if these Plaintiffs, the estates of former citizens and residents of Wisconsin, had exhausted their remedies, had properly stated a claim, and had named the Commissioner as a defendant, a lawsuit in this jurisdiction would still be subject to dismissal pursuant to Rule 12(b)(3). *See, e.g.*, *Frederick B. v. Berryhill*, No. 19-cv-847-BRT, 2019 U.S. Dist. LEXIS 89681, at *4 (D. Minn. Mar. 28, 2019) (report and recommendation recommending dismissal lawsuit brought by Wisconsin plaintiff

pursuant to § 405(g)), *adopted by Bauer v. Berryhill*, No. 19-cv-847-JRT/BRT, 2019 U.S.

Dist. LEXIS 88533 (D. Minn. May 28, 2019) (Tunheim, J.). Indeed, this Court has held

that when a Medicare plaintiff did not reside in Minnesota, "Minnesota was not the

proper venue for this action," and the proper course was dismissal, not transfer. *Id.* at *4.

> **B.**   **The Plaintiffs' Estates Lack Standing to Seek Declaratory or Injunctive Relief Because They Would Not Benefit From It**

Plaintiffs—two estates of deceased individuals—seek "declaratory and injunctive

relief enjoining Defendants" from violating the law in the future. *See* Compl., Prayer for

Relief (e). However, estates lack standing to seek prospective relief because they cannot

allege ongoing or future harm that prospective relief is designed to remedy. *ADT Sec.*

*Servs. v. Swenson*, 687 F. Supp. 2d 884, 890-91 (D. Minn. 2009) (Tunheim, J.)

(dismissing estate's claim for injunctive relief because decedent "cannot suffer any

further harm from" the alleged wrongful conduct); *Estate of Schultz v. Brown*, 846 F.

App'x 689, 693 (10th Cir. 2021) (holding that estate "lacks standing to seek prospective

relief" because it "cannot allege the continuing or impending harm required"); *cf. Harrow*

*v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002) (dismissing as moot

claims for injunctive and declaratory relief because plaintiff died); *Renn v. City of*

*Jefferson*, No. 2:14-cv-04274, 2014 U.S. Dist. LEXIS 168640, at *3-4 (W.D. Mo. Dec. 5,

2014) (same). Thus, any request for declaratory or injunctive relief must be dismissed for

lack of standing.

### C.    Tetzloff's Claim Is Barred by the Statute of Limitations

Any claim Tetzloff may have under the Medicare Act is irrevocably time-barred. Review of Tetzloff's administrative appeal documentation shows he cannot possibly exhaust his claims. *See* Exs. I, J, and K. The ALJ issued the decision in his case on April 4, 2023. *Id*. From that date, Tetzloff had 65 days to seek review from the Medicare Appeals Council. 42 C.F.R. § 405.1102(a)(1). Tetzloff's appeal to the ALJ *succeeded* and his benefits for the skilled nursing care were paid as allowed under Medicare. To the extent Tetzloff seeks further relief such as injunctive relief or additional damages, this also arises under Medicare and should have been presented to the Medicare Appeals Council. He had 65 days to do so from the ALJ's decision dated April 4, 2023. Ex. K (allowing an additional 5 days for receipt). Tetzloff does not allege he sought review by the Medicare Appeals Council by June 8, 2023.

When a member fails to timely appeal a benefits determination under § 405(g), the district court lacks jurisdiction to hear the claim. For example, in *McNamar v. Comm'r of Social Security*, Chief Judge Schiltz dismissed a plaintiff's lawsuit pursuant to § 405(g) because the plaintiff had not timely appealed in the administrative review process. No. 09-cv-3540-PJS/JJK, 2010 U.S. Dist. LEXIS 138226, at *24-25 (D. Minn. Dec. 15, 2010), *report & recommendation adopted by* 2011 U.S. Dist. LEXIS 213, at *1 (D. Minn. Jan. 3, 2011). The court determined that dismissal was appropriate because "this Court lacks subject-matter jurisdiction over any claim to re-open Plaintiff's [time-barred] application...." *Id.* at *25.

This outcome is consistent with the ruling of courts in other jurisdictions. *See, e.g.,*
*Advanced Med. Techs. v. Shalala*, 974 F. Supp. 417, 423 (D.N.J. 1997) ("[W]here claims
have been abandoned by foregoing available administrative appeals, those claims are
foreclosed from judicial review."); *Generations at Elmwood Park, LLC v. Ezike*, No. 20-
CV-00533, 2023 U.S. Dist. LEXIS 158350, at *15 (N.D. Ill. Sep. 7, 2023) (granting
"Defendants' 12(b)(1) motions to dismiss" for lack of subject matter jurisdiction because
plaintiff had failed to file timely administrative appeal of Medicare determination). In
dismissing a Medicare claim by a plaintiff who had failed to timely file a Medicare
administrative appeal, one Texas court noted: "statutory time limits for filing petitions for
review of agency actions are jurisdictional in nature such that if the challenge is brought
after the statutory time limit, [federal courts] are powerless to review the agency's action
and must dismiss for want of jurisdiction." *S. Dynamics Therapy v. Thompson*, No. 5:03-
CV-155-C, 2003 U.S. Dist. LEXIS 20295, at *16 (N.D. Tex. Nov. 10, 2003) (cleaned up)
(quoting *Nutt v. Drug Enf't Admin.*, 916 F.2d 202, 203 (5th Cir. 1990)). For the same
reason, Tetzloff's claim should be dismissed. Because there has not been and cannot be a
final decision of the Secretary required for judicial review under § 405(g), any claim
under the Medicare Act that Tetzloff may assert relating to the health care services on
which he predicates his claims is time barred.

### D.    Tetzloff's Claims Are Moot Because Benefits Have Already Been Granted

The claims raised by Tetzloff's estate are moot and should be dismissed. As noted,
the estate is not entitled to any declaratory or injunctive relief and because the benefits

complained of have already been granted, the estate is not entitled to any other relief under Counts I through V. *See Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 609 (2013) ("It is a basic principle of Article III that a justiciable case or controversy must remain extant at all states of review….").

## IV.    PLAINTIFFS' STATE LAW CLAIMS FAIL TO STATE CLAIMS FOR ADDITIONAL REASONS

Some of Plaintiffs' claims should also be dismissed for reasons separate and apart from the requirements of the Medicare Act. Plaintiffs' unjust enrichment claim in Count III should be dismissed because equitable relief cannot be granted when the rights of the parties are governed by a valid contract. Count IV under Wisconsin's Insurance Claim Settlement Practices statute should be dismissed because there is no private right of action under the statute. Counts VI through XXV should be dismissed because Plaintiffs lack standing to sue under laws of states where Lokken and Tetzloff did not reside or suffer alleged injury.

### A.    Plaintiffs' Unjust Enrichment Claims Fail as a Matter of Law (Count III)

Plaintiffs' unjust enrichment claims fail because "equitable relief cannot be granted where the rights of the parties are governed by a valid contract." *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 880 (8th Cir. 2010) (quotation omitted). There is no dispute that the rights of the parties are governed by a valid contract. Plaintiffs allege that Defendants were unjustly enriched by retaining the benefits they received through insurance premiums by "arbitrarily denying . . . medical payments owed to them under Defendants' policies." Compl. ¶¶ 99, 103. Thus, Count III should be dismissed.

**B.      Plaintiffs Fail to State a Claim for Relief Under Wisconsin's Insurance Claim Settlement Practices Statute Because There Is No Private Right of Action (Count IV)**

Plaintiffs attempt to bring private claims under Wisconsin's Insurance Claim Settlement Practices statute, *see* Compl. ¶¶ 106-09 (citing Wis. Admin. Code Ins § 6.11), but the statute grants no such cause of action. The "Wisconsin Supreme Court has expressly held that Wis. Adm. Code § Ins. 6.11 does not create a private right of action." *Rabach v. Life Ins. Co. of N. Am.*, No. 08-C-188, 2010 U.S. Dist. LEXIS 72822, at *5 (E.D. Wis. July 20, 2010) (citing *Kranzush v. Badger State Mut. Cas. Co.*, 307 N.W.2d 256, 268-69 (Wis. 1981)). Therefore, this claim must be dismissed.

**C.      Plaintiffs Lack Standing to Sue Under the Laws of States Where They Did Not Reside or Suffer Alleged Injury (Counts VI-XXV)**

Plaintiffs try to plead bad faith claims under the laws of 20 different states where no named Plaintiff was allegedly injured. All non-Wisconsin claims should be dismissed for lack of standing. "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2208 (2021); *accord DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006); *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (Plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent"). The Court "must address questions of standing before addressing the merits of [the] case" where "standing is called into question." *Brown v. Medtronic, Inc.*, 628 F.3d 451, 455

(8th Cir. 2010) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102

(1998)). Standing is a threshold jurisdictional inquiry because "[w]ithout jurisdiction the

court cannot proceed at all" and may only dismiss the claims. *Steel Co.*, 523 U.S. at 94.

"The requirements for standing do not change in the class action context." *In re

SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017). Thus, to represent a class, a named

plaintiff must suffer the injury giving rise to the claim. *See Lewis v. Casey*, 518 U.S. 343,

357 (1996); *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 910 (8th Cir. 2016).

A plaintiff who alleges violation of a state law must have suffered an injury under

that law; the plaintiff cannot rely upon some hypothetical future class member to create

Article III standing for that claim. *McAteer v. Target Corp.*, No. 18-cv-349-DWF/LIB,

2018 U.S. Dist. LEXIS 124923, at *6-7 (D. Minn. July 26, 2018); *see also TransUnion*,

141 S. Ct. at 2208 (question is whether plaintiff has standing to bring *each* of the state-

law claims alleged). Or in other words, "named plaintiffs lack standing to assert claims

under the laws of the states in which they do not reside or in which they suffered no

injury." *Rouse v. H.B. Fuller Co.*, No. 22-cv-2173-WMW/JFD, 2023 U.S. Dist. LEXIS

171141, at *10 (D. Minn. Sept. 26, 2023) (dismissing New Hampshire named plaintiff's

claims based upon Minnesota state law) (quoting *Ferrari v. Best Buy Co.*, 14-cv-2956-

MJD/FLN, 2015 U.S. Dist. LEXIS 61706, at *13-21 (D. Minn. May 12, 2015) (quoting

*Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 13-cv-2644-ADM/SER, 2014 U.S.

Dist. LEXIS 31188 (D. Minn. Mar. 11, 2014))). For example, in *McAteer*, a California

plaintiff sued a Minnesota defendant—purportedly on behalf of a class of injured

parties—based upon California and Minnesota state statutes. 2018 WL 3597675, at *2-3.

Judge Frank dismissed the Minnesota state law claims with prejudice for lack of standing, because it was undisputed that the plaintiff had suffered no injury in Minnesota. "Article III standing is necessarily lacking when no plaintiff is alleged to have purchased a product in the relevant state…. Without a named Plaintiff who has purchased a product within the relevant state, there can be no determination that an interest was harmed that was legally protected under the relevant state's laws." *Id.* at *6-7.

Here, Plaintiffs allegedly resided in and were injured in Wisconsin. Therefore, Plaintiffs lack standing to assert claims under the laws of the other 20 states, and those claims should be dismissed. *See McAteer*, 2018 U.S. Dist. LEXIS 124923, at *6-7 (dismissing state claims by named plaintiff who suffered no injury in that state); *Rouse*, 2023 U.S. Dist. LEXIS 171141, at *10 (same) (Wright, J.); *Ferrari*, 2015 U.S. Dist. LEXIS 61706, at *9 (Davis, J.) (same); *Insulate SB, Inc.*, 2014 U.S. Dist. LEXIS 31188, at *34-36 (same) (Montgomery, J.).

## CONCLUSION

For all of the foregoing reasons, the Court should grant Defendants' Motion to Dismiss the Class Action Complaint.

Dated:  February 5, 2024                    DORSEY & WHITNEY LLP


By  /s/ Michelle S. Grant
    Nicole Engisch (#0215284)
    engisch.nicole@dorsey.com
    Michelle S. Grant (#0311170)
    grant.michelle@dorsey.com
    Shannon L. Bjorklund (#0389932)
    bjorklund.shannon@dorsey.com
    David C. Racine (#0401060)
    racine.david@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

Nicholas J. Pappas (admitted *pro hac vice*)
pappas.nicholas@dorsey.com
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, NY 10019-6119
Telephone: (212) 415-9387

Attorneys for Defendants