# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| The Estate of Gene B. Lokken, Glennette Kell, Darlene Buckner, Carol Clemens, Frank Chester Perry, The Estate of Jackie Martin, John J. Williams, as Trustee of the Miles and Carolyn Williams 1993 Family Trust, and William Hull, individually and on behalf of all others similarly situated, | Civil File No. 23-cv-03514-JRT-DTS |
| Plaintiffs, | |
| vs. | **REDACTED** |
| UnitedHealth Group Incorporated, United Healthcare, Inc., NaviHealth, Inc., and Does 1-50, inclusive, | |
| Defendants. | |

# DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................. 2

I. The Parties and Medicare Advantage Plans at Issue ..................................... 2

II. Plaintiffs' Claims for In-Patient Post-Acute Benefits and Administrative Appeals ................................................................. 5

 A. Plaintiffs' Claims for In-Patient Post-Acute Care Benefits .............. 5

 B. Plaintiffs' Failure to Exhaust Administrative Appeals ..................... 6

  1. No Administrative Review of Challenged Decisions ............ 7

  2. Only Level 1 Administrative Review of Challenged Claims ................................................................. 8

  3. Only Levels 1 & 2 Administrative Review of Challenged Claims ................................................................. 8

  4. Ongoing Administrative Appeals ......................................... 10

STANDARD OF REVIEW ............................................................................. 11

ARGUMENT .................................................................................................. 12

I. The Medicare Act Preempts All of Plaintiffs' State Law Claims ............... 12

 A. Scope of Medicare Preemption Provision ....................................... 13

 B. The Conduct Challenged in Plaintiffs' Complaint Is Governed by Federal Standards and the Medicare Act Preempts All of Plaintiffs' Claims ................................................................. 16

II. The Court Lacks Jurisdiction Over Plaintiffs' Claims Because They "Arise Under" the Medicare Act and Plaintiffs Did Not Exhaust The Administrative Review Process ................................................................. 19

A.   The Medicare Act Requires Plaintiffs to Exhaust the
     Administrative Review Process Before a Court Can Hear
     Their Claims ................................................................................. 19

B.   Plaintiffs' Claims "Arise Under" Medicare and Must Be
     Exhausted ..................................................................................... 21

C.   Plaintiffs Have Not Exhausted All Administrative Remedies ........ 23

D.   Plaintiffs Cannot Circumvent the Administrative Process by
     Alleging that Exhaustion Would be Futile or They Would
     Suffer Irreparable Harm ................................................................ 24

E.   Even if Plaintiffs Had Exhausted the Appeals Process or
     Could Show that Exhaustion Should be Waived, the Secretary
     of Health and Human Services—Not Defendants—Would Be
     the Proper Defendant .................................................................... 29

III.  Certain of Plaintiffs' State Law Claims Fail to State Claims for
      Additional Reasons .............................................................................. 30

A.   The Unjust Enrichment Claim Fails as a Matter of Law,
     Because There Is a Contract (Count III) ........................................ 30

B.   The Minnesota Unfair Claims Practices Act Claim Fails,
     Because There Is No Private Right of Action (Count VI) ............... 31

CONCLUSION ........................................................................................... 32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbey v. Sullivan,*
   978 F.2d 37 (2d Cir. 1992) ........................................................................... 28

*Adams v. U.S. Bancorp,*
   635 F. Supp. 3d 742 (D. Minn. 2022) ......................................................... 12

*Alston v. United Healthcare Servs.,*
   291 F. Supp. 3d 1170 (D. Mont. 2018) .................................................. 15, 24

*Anderson v. Sullivan,*
   959 F.2d 690 (8th Cir. 1992) ....................................................................... 23

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..................................................................................... 11

*Aylward v. SelectHealth, Inc.,*
   35 F.4th 673 (9th Cir. 2022) ....................................................................... 15

*Batterton v. Francis,*
   432 U.S. 416 (1977) ..................................................................................... 26

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ..................................................................................... 11

*Blankenship v. USA Truck, Inc.,*
   601 F.3d 852 (8th Cir. 2010) ....................................................................... 11

*Bodimetric Health Servs., Inc. v. Aetna Life & Cas.,*
   903 F.2d 480 (7th Cir. 1990) .................................................................. 21, 22

*Degnan v. Burwell,*
   765 F.3d 805 (8th Cir. 2014) ....................................................................... 23

*DiCrescenzo v. UnitedHealth Grp., Inc.,*
   No. 15-00021, 2015 U.S. Dist. LEXIS 123852 (D. Haw. Sept. 16, 2015) ................. 27

*Elder v. Allstate Ins. Co.,*
   341 F. Supp. 2d 1095 (D. Minn. 2004) ....................................................... 31

*Glass Serv. Co. v. State Farm Mut. Ins. Co.,*
   530 N.W.2d 867 (Minn. Ct. App. 1995) ..................................................... 31

iv

*Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*,
    30 F.4th 905 (9th Cir. 2022) ................................................................ 22, 29

*Haaland v. Presbyterian Health Plan*,
    292 F. Supp. 3d 1222 (D.N.M. 2018) ................................................... 15, 18

*Heckler v. Ringer*,
    466 U.S. 602 (1984) ............................................................................ *passim*

*Hepstall v. Humana Health Plan, Inc.*,
    No 18-0163, 2018 U.S. Dist. LEXIS 200418 (S.D. Ala. Nov. 26, 2018).. 14, 16, 18, 22

*Hubbard v. Coventry Health Care of Fla., Inc.*,
    No. 5:16-cv-337, 2016 U.S. Dist. LEXIS 138370 (M.D. Fla. Sept. 13,
    2016) ............................................................................................................ 23

*Int. Nursing & Health Servs. v. Centrs. For Medicare & Medicaid Servs.*,
    No. 17-683, 2017 U.S. Dist. LEXIS 57413 (D. Minn. Apr. 13, 2017) ....... 27

*Johnson v. Shalala*,
    2 F.3d 918 (9th Cir. 1993) .......................................................................... 26

*Kaiser v. Blue Cross of Cal.*,
    347 F.3d 1107 (9th Cir. 2003) .................................................................... 20

*Liberty Mut. Fire Ins. Co. v. Acute Care Chiropractic Clinic P.A.*,
    88 F. Supp. 3d 985 (D. Minn. 2015) ........................................................... 23

*M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*,
    616 F.3d 872 (8th Cir. 2010) ...................................................................... 30

*Madsen v. Kaiser Found. Health Plan, Inc.*,
    No. 08-cv-2236, 2009 U.S. Dist. LEXIS 46122 (S.D. Cal. June 2, 2009) ........ 30

*Mathews v. Eldridge*,
    424 U.S. 319 (1976) ............................................................................... 26, 27

*Mattes v. ABC Plastics, Inc.*,
    323 F.3d 695 (8th Cir. 2003) .................................................................... 3, 12

*Meek-Horton v. Trover Solutions, Inc.*,
    910 F. Supp. 2d 690 (S.D.N.Y. 2012) ........................................................ 13

*Morris v. American Family Mut. Ins. Co.*,
    386 N.W.2d 233 (Minn. 1986) .................................................................... 31

*Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*,
   406 F.3d 1052 (8th Cir. 2005) ................................................. 12

*Osborn v. United States*,
   918 F.2d 724 (8th Cir. 1990) .................................................. 11

*Prime Healthcare Servs. v. Humana Ins. Co.*,
   230 F. Supp. 3d 1194 (C.D. Cal. 2017) ..................................... 23

*Quishenberry v. UnitedHealthcare, Inc.*,
   532 P.3d 239 (Cal. 2023) ............................................... 15, 16

*Schermer v. State Farm Fire & Cas. Co.*,
   702 N.W.2d 898 (Minn. Ct. App. 2005), *aff'd on other grounds*, 721
   N.W.2d 307 (Minn. 2005) ...................................................... 31

*Schubert v. Auto Owners Ins. Co.*,
   649 F.3d 817 (8th Cir. 2011) .................................................. 11

*Shalala v. Ill. Counc. on Long Term Care, Inc.*,
   529 U.S. 1 (2000) ............................................................... 26

*Smith v. Comm'r of Soc. Sec.*,
   No. C21-5152, 2021 U.S. Dist. LEXIS 155142 (W.D. Wash. Aug. 17,
   2021) .............................................................................. 24

*Snyder v. Prompt Med. Transp., Inc.*,
   131 N.E.3d 640 (Ind. Ct. App. 2019) ................................... 15, 18

*Steger v. Delta Airlines, Inc.*,
   382 F. Supp. 2d 382 (E.D.N.Y. 2005) ....................................... 12

*Timmerman v. Thompson*,
   No. 03-5221, 2004 U.S. Dist. LEXIS 15120 (D. Minn. Aug. 5, 2004)
   (Tunheim, J.) ......................................................... 24, 27, 28

*Titus v. Sullivan*,
   4 F.3d 590 (8th Cir. 1993) ..................................................... 27

*Uhm v. Humana, Inc.*,
   620 F.3d 1134 (9th Cir. 2010) ......................................... *passim*

*Weinberger v. Salfi*,
   422 U.S. 749 (1975) ...................................................... 26, 28

*Wilson v. Chestnut Hill Healthcare*,
   No. 99-1468, 2000 U.S. Dist. LEXIS 1440 (E.D. Pa. Feb. 10, 2000) .................. 21, 22

**Statutes**

42 U.S.C. § 405(g)-(h) ................................................................................... *passim*

42 U.S.C. § 1395d(a)(2)(A) ............................................................................... 3, 17

42 U.S.C. § 1395f(a)(2)(B) ..................................................................................... 3

42 U.S.C. § 1395ff(b)(1) ...................................................................................... 22

42 U.S.C. § 1395ff(b)(1)(A) ............................................................................. 4, 19

42 U.S.C. § 1395hh .............................................................................................. 25

42 U.S.C. § 1395ii ............................................................................................... 25

42 U.S.C. §§ 1395w-21-1395w-28 ........................................................................ 3

42 U.S.C. § 1395w-22(g) ........................................................................ 4, 6, 20, 25

42 U.S.C. § 1395w-26(b)(3) (effective Dec. 8, 2003) ........................................ 13

42 U.S.C. § 1395w-26(b)(3)(A) (effective Dec. 21, 2000 to Dec. 7, 2003) ...................... 14

42 U.S.C. § 1395w-26(b) ..................................................................................... 25

Minn. Stat. § 72A.20, subd. 13 ........................................................................... 31

**Other Authorities**

42 C.F.R. § 405.1136(d)(1) ................................................................................. 30

42 C.F.R. § 409.31 ............................................................................................ 3, 17

42 C.F.R. § 409.32 ............................................................................................... 17

42 C.F.R. § 409.33 ............................................................................................... 17

42 C.F.R. § 409.61 ............................................................................................ 3, 17

42 C.F.R. § 422.2 ................................................................................................. 13

42 C.F.R. § 422.112(a)(6)(ii) ......................................................................... 4, 17, 29

42 C.F.R. § 422.137 ........................................................................... 17, 29

42 C.F.R. § 422.138 ................................................................................... 7

42 C.F.R. § 422.402 ................................................................................. 13

42 C.F.R. §§ 422.560-422.262 ................................................................. 4

42 C.F.R. § 422.560 *et seq.* ................................................................... 20

42 C.F.R. §§ 422.562(b), 422.631(e) ...................................................... 4

42 C.F.R. §§ 422.566-422.576 ................................................................. 4

42 C.F.R. § 422.566(d) ....................................................................... 17, 29

42 C.F.R. § 422.612 ...................................................................... 6, 25, 29

42 C.F.R. § 422.626(a) .............................................................................. 4

42 C.F.R. § 424.20 .................................................................................. 17

CMS, *Medicare Managed Care Manual: Chapter 4 - Benefits and
Beneficiary Protections*, https://www.cms.gov/regulations-and-
guidance/guidance/manuals/downloads/mc86c04.pdf ................................ 4

*Dep't of Health & Human Services, Center for Medicare & Medicaid
Services, Medicare Program; Establishment of the Medicare Advantage
Program; Final Rule*, 70 Fed. Reg. 4,588, 4,694 (Jan. 28, 2005) .............................. 14

Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) ........................................... 11, 12, 27

*Medicare Prescription Drug, Improvement, and Modernization Act of
2003*, H.R. Conf. Rep. No. 108-391, at 557 (Nov. 21, 2003) ...................................... 14

## INTRODUCTION

In this putative class action, Plaintiffs assert a series of state law claims concerning the administration of their Medicare Advantage plans and the alleged denial of their Medicare benefits. But federal law—not state law—controls Plaintiffs' claims.

The Medicare Act supersedes any state law "with respect to" Medicare Advantage plans. The Medicare Act, regulations promulgated by the Centers for Medicare and Medicaid Services ("CMS"), and the Medicare Advantage plans at issue directly address the acts Plaintiffs challenge—the administration of a Medicare plan and the decisions on claims for Medicare benefits. The Court cannot adjudicate Plaintiffs' claims without analyzing and applying the Medicare Act, CMS regulations, and the Medicare Advantage plans. Thus, federal law expressly preempts Plaintiffs' claims, and requires dismissal.

All of Plaintiffs' claims fail for a separate and independent reason: This Court lacks subject matter jurisdiction, because Plaintiffs have failed to exhaust the exclusive administrative appeal process set by the Medicare Act for challenging coverage determinations. The Medicare Act, CMS regulations, and Plaintiffs' Medicare Advantage plans specify an exclusive administrative procedure that Plaintiffs must complete before bringing their case to federal court. None of the Plaintiffs have completed Medicare's administrative appeal process, and some have not appealed at all. Further, even if any of the Plaintiffs had exhausted or were able to show an exceptional circumstance exempting them from appealing through all four required levels of the exclusive process, Plaintiffs have sued the wrong defendants. The Medicare Act requires Plaintiffs to assert any claim

1

challenging the administrative agency's decision against only the Secretary of Health and Human Services ("HHS")—not Defendants.

In addition, the Court should dismiss Counts III and VI for reasons separate and apart from preemption and failure to exhaust under the Medicare Act. Plaintiffs' unjust enrichment claim in Count III should be dismissed because equitable relief cannot be granted where contracts govern the rights of the parties. In addition, Count VI fails because there is no private right of action under the Minnesota Unfair Claims Practices Act.

For all of these reasons, the Court should dismiss Plaintiffs' Amended Complaint with prejudice.

## **BACKGROUND**

## I.    **THE PARTIES AND MEDICARE ADVANTAGE PLANS AT ISSUE**

Plaintiffs were members of Medicare Advantage ("MA") health insurance plans purchased from Defendant UnitedHealthcare.[1] Compl. ¶¶ 18-25, 32. Plaintiffs allege that Defendants denied them continued inpatient care in violation of multiple state laws, but as further set forth below, their rights to such benefits under their MA plans are governed by federal law.

In 1997, Congress enacted Part C of the Medicare Act, under which beneficiaries can enroll in MA plans and receive Medicare benefits through private Medicare

---

[1] UnitedHealth Group Incorporated is the ultimate parent of both UnitedHealthcare, Inc. ("UnitedHealthcare") and naviHealth, Inc. Compl. ¶¶ 26-28. (All citations to "Compl." are to the Amended Complaint, Dkt. 34.) Defendants accept as true any adequately pleaded allegations in the Amended Complaint for purposes of this motion only.

Advantage Organizations ("MAOs"). 42 U.S.C. §§ 1395w-21-1395w-28; Compl. ¶ 31. MA plans must follow the rules set by the Medicare Act, including both procedural rules and rules regarding required and maximum coverage. Compl. ¶¶ 31-32.

Medicare Part A, which governs medically necessary skilled nursing and rehabilitation care, covers up to 100 days of skilled nursing and rehabilitation care for a benefit period following a qualifying inpatient hospital stay of at least three days, subject to certain conditions. 42 U.S.C. § 1395d(a)(2)(A); 42 C.F.R. § 409.61(b)-(c). For skilled nursing facility ("SNF") benefits to be covered, (1) the patient must require skilled nursing care or skilled rehabilitation services daily, (2) the daily skilled services must be services that, as a practical matter, can only be provided in a SNF on an inpatient basis, and (3) the services must be provided to address a condition for which the patient received treatment during a qualified hospital stay or that arose while the patient was receiving care in a SNF. 42 U.S.C. § 1395f(a)(2)(B); 42 C.F.R. § 409.31(b). Plaintiffs' MA plans provided for SNF benefits subject to Medicare regulations. Decl. of Michelle Grant, Exs. 1-10.[2]

The Medicare Act and CMS's implementing regulations exclusively govern the activities of MAOs. *See*, *e.g.,* 42 C.F.R. Pt. 422. CMS regulations govern and extensively specify the manner in which MA organizations make coverage determinations. Federal

---

[2] All citations to Exhibits are to the Exhibits attached to the Declaration of Michelle Grant in Support of Defendants' Motion to Dismiss. In deciding this motion to dismiss, this Court may consider documents necessarily embraced by the complaint, including the terms of the applicable plans. *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003); *see infra* at 12.

regulations require MA plans to have written utilization management policies and procedures that allow for individual medical necessity determinations. 42 C.F.R. § 422.112(a)(6)(ii). The Medicare Regulations and the Medicare Managed Care Manual[3] regulate the MA plan benefit determinations. 42 C.F.R. §§ 422.566-422.576. As described in detail below, Congress has established four levels of administrative appeals beyond the MAO itself that allow—and require—a member to challenge denied claims through administrative proceedings before bringing a lawsuit. 42 U.S.C. §§ 405(g)-(h), 1395ff(b)(1)(A). A member must complete all four administrative appeals before bringing a lawsuit on any claim that arises under the Medicare Act. *See id*. § 1395w-22(g); 42 C.F.R. §§ 422.560-422.262*.* A member may request expedited consideration of appeals. 42 C.F.R. §§ 422.562(b), 422.631(e), 422.633(e).

At the **Level 1** Appeal, the Quality Improvement Organization ("QIO")—an independent organization made up of doctors, clinicians experts and consumers that contract with the federal government—reviews the plan's decision and issues a decision approving benefits or denying the appeal. *See* 42 C.F.R. § 422.626(a). If the QIO upholds the MAO's coverage determination, the member must ask the QIO to reconsider its decision (the **Level 2** Appeal) within 60 days. *Id.* § 422.626(g). If still unsatisfied with the decision, the member make seek a **Level 3** Appeal to an Administrative Law Judge ("ALJ"). *Id.* §§ 422.600–422.602. If the ALJ denies the Level 3 Appeal, the member

---

[3] *See generally* CMS, *Medicare Managed Care Manual: Chapter 4 - Benefits and Beneficiary Protections*, https://www.cms.gov/regulations-and-guidance/guidance/manuals/downloads/mc86c04.pdf.

must file a **Level 4** Appeal with the Medicare Appeals Council (the "Council"). *See id.* §
422.608. If the Council denies a Level 4 Appeal, the member may seek review by filing a
civil action against the Secretary of HHS in the federal district court located in the state
where the member resides. 42 U.S.C. § 405(g).

## II. PLAINTIFFS' CLAIMS FOR IN-PATIENT POST-ACUTE BENEFITS AND ADMINISTRATIVE APPEALS

### A. Plaintiffs' Claims for In-Patient Post-Acute Care Benefits

Plaintiffs allege that they were entitled to coverage for the cost of staying (or
staying longer) in a SNF or inpatient rehabilitation facility ("IRF"), and that this benefit
was denied in violation of various state laws. For example, Plaintiff Lokken was
hospitalized for a fractured leg and ankle, and he was later placed in a SNF. Compl. ¶¶
57-59. Defendants covered the cost of his stay for ten weeks, then they determined that it
was no longer medically necessary for him to receive in-patient skilled nursing care. *Id.*
¶¶ 59-63. Lokken's estate claims this denial of benefits for continued in-patient care was
wrongful. *Id.* ¶¶ 63-70. Likewise, the other named Plaintiffs challenge the denial of
continued coverage for in-patient care at SNFs or IRFs. *See id.* ¶¶ 74-79; *id.* ¶¶ 91-93; *id.*
¶¶ 103-07; *id.* ¶¶ 118-22, 131-37; *id.* ¶¶ 142-43; *id.* ¶¶ 154-46.

Plaintiffs claim that the results of the claim determinations were incorrect and that
the method used to decide the claims was inappropriate. Specifically, Plaintiffs allege that
Defendants wrongfully denied members in-patient post-acute care benefits allegedly
owed to them under MA plans by using the nH Predict model instead of medical
professionals to review their claims. *Id.* ¶¶ 1, 38-39. Plaintiffs allege that Defendants

wrongfully delegated their obligation to evaluate and investigate claims to the nH Predict model, which allegedly failed "to adjust for a patient's individual circumstances" *Id.* ¶ 41.

### B.   Plaintiffs' Failure to Exhaust Administrative Appeals

As described above, Congress requires that enrollees who wish to challenge an MAO's determination must go through the Medicare four-level administrative review system before seeking judicial review. *See* 42 U.S.C. §§ 405(g)-(h) and 1395w-22(g);[4] *see also* 42 C.F.R. Pt. 422; Exs. 1-10 (Plaintiffs' Evidence of Coverage ("EOC") describing administrative appeal process). Entities and individuals *other than* the MAO perform these reviews.[5] Independent medical professionals employed by the QIO perform the first- and second-level reviews, an administrative law judge performs the third level of review, and the Medicare Appeals Council performs the fourth and final level of review. Only after the Medicare Appeals Council has issued its final determination on behalf of the Secretary of HHS can a member seek review in court. 42 U.S.C. § 405(g)-(h); *id.* §1395w-22(g)(5); 42 C.F.R. § 422.612. Plaintiffs do not (and cannot) allege that any of the eight named Plaintiffs completed all four-levels of review.

---

[4] The Medicare Act's mandatory exhaustion requirement cross-references the exhaustion and judicial review provisions of the Social Security Act. *See* 42 U.S.C. § 1395w-22(g)(5), referencing 42 U.S.C. § 405(g).

[5] The EOCs describe the process as five levels of appeal, with level 1 being an appeal within the MAO, but then levels two through five being conducted outside of the MAO itself.

### 1.   No Administrative Review of Challenged Decisions

Plaintiffs William Hull, Darlene Buckner and Jackie Martin never sought any administrative review regarding the MAO determinations they challenge in this lawsuit.

<u>Hull</u>: Following Hull's June 2023 heart attack and resulting 25-day hospital stay, Hull's request for prior authorization[6] for coverage of prospective in-patient care in a SNF was denied ███████████████████████████████████████ ███████████████████████████████. Compl. ¶ 165; Ex. 11.[7] Hull never filed a Level 1 Appeal. Compl. ¶¶ 162-169.

<u>Buckner</u>: After undergoing open-heart surgery in November 2023, Buckner was discharged from the hospital after a 16-day stay. Compl. ¶ 89-90. Buckner alleges that her doctor referred her for inpatient rehab or alternatively a SNF, but the request for prior authorization was initially denied. *Id.* ¶¶ 91-92. ██████████████████████ ████████████████████████████. Compl. ¶¶ 90, 92; Ex. 12. ██████████ ██████████████████████████████████████████████████████ ████████████████. Compl. ¶¶ 95-99; Ex. 13.

<u>Martin</u>: After Martin had received four weeks of in-patient care, ████████ ██████████████████████████████. Compl. ¶¶ 143, 147; Ex. 16. ██████████████████████████████████████████████████

---

[6] Prior authorization is when a patient or patent's representative seeks a pre-service determination for coverage. *See, e.g.*, 42 C.F.R. § 422.138.

[7] While the Complaint alleges that Mr. Hull was not informed of the reason for the denial, he was provided a Notice of Denial of Medical Coverage outlining the reasons along with notice of appeal rights. Ex. 11.

███████████████████████████ (Compl. ¶¶ 143, 146; Exs. 14 & 15)—Martin chose not to appeal this third denial and instead returned home. Compl. ¶¶ 147-48. In this lawsuit, Martin's estate challenges this third, unappealed denial.

Williams (first stay): Williams had two stays in SNFs, and she received denial letters stating that continued in-patient care was not required for each of those stays. Compl. ¶ 156. During the first stay, in March 2023, Williams ████████████ ████████████████████████████████████████████████████████ ████. *Id.* ¶¶ 156-158; Exs. 12 & 13. She returned home and and "was provided with in-home occupational and physical therapy." Compl. ¶ 158.

## 2. Only Level 1 Administrative Review of Challenged Claims

During her second in-patient stay, in May 2023, Williams, was eventually denied continued in-patient services. Compl. ¶¶ 156, 160. ████████████████████ ████████████████████████████████████████████████ ████. *Id.* ¶ 160; Ex. 19. Williams did not seek a Level 2 Appeal. Compl. ¶ 160.

## 3. Only Levels 1 & 2 Administrative Review of Challenged Claims

Plaintiffs Glennette Kell, Carol Clemens and Frank Perry sought Level 2 review of some claims, with mixed results, but they failed to seek a Level 3 review when their appeals were unsuccessful.

Kell: Kell sustained a fall and entered a SNF in August 2023. Compl. ¶¶ 72-75. After six weeks of in-patient care, Kell received a denial stating that in-patient care was no longer medically necessary. *Id.* ¶ 81. Kell ███████████████████████████ ████████████████████████████████████ (*Id.* ¶¶ 77-78; Exs. 20,

21, & 22)— 

. Compl. ¶ 81; Ex. 23.

. Compl. ¶ 83; Ex. 24. Kell did not file a Level 3

Appeal. Compl. ¶¶ 83-86.

Clemens: Clemens had two stays in a SNF: one in November/December 2023 and

one in January/February 2024. Compl. ¶¶ 107-13. In each instance, Clemens received

hospital care for over two weeks, followed by at least two weeks of SNF care, but was

denied continued coverage in the SNF. *Id.* And in each instance, the

. Exs. 25, 26, 27 & 28. Clemens did not file a

Level 3 appeal.

Perry: Perry had multiple interactions including acute care, inpatient rehab, and

skilled nursing, but there are four denials at issue here. First, Perry challenges his

coverage at a rehabiltation facility. Perry's preservice request was initially denied

. Compl. ¶ 120; Ex. 29. Perry remained at the

IRF for two weeks, until Defendants determined that he could be moved to a SNF.

Compl. ¶ 122. Perry does not allege that he challenged this decision. *Id.* Second, Perry

challenges the determination that, after a period at the SNF in May 2023, continued in-

patient care was no longer necessary. *Id.* ¶ 122.

, and Perry did not seek a Level 3 appeal. *Id.* ¶¶ 122-23; Exs. 30 &

31. Third, Perry challenges his denial of continued coverage at an IRF in October, which

followed a 6-week hospital stay. Compl. ¶¶ 127-29. The QIO upheld on a Level 1

Appeal, and Perry opted to return home instead of further appealing. *Id.* ¶ 129. Fourth,

Perry challenges a determination that he no longer qualified for continued stay at a SNF

in December 2023, following a 2-week stay in the hospital and 2-week stay at a SNF.

*Id.* ¶¶ 130-33. Perry did not pursue a Level 1 Appeal. *Id.* Perry alleges that he received

two later denials for other in-patient stays, both of which were overturned by the QIO and

are therefore not at issue here. *Id.* ¶¶ 136-37.

### 4.   **Ongoing Administrative Appeals**

Plaintiff Lokken continues to engage in the administrative appeal process, but filed

this lawsuit before completing it. Lokken sought



Ex. 33. Lokken

Ex. 34. Lokken

. Ex. 35. Lokken

. Ex. 36. Rather than complete this

administrative process, on November 14, 2023, Lokken filed this lawsuit. *See* Compl.

. Ex. 37. In January 2024, Lokken filed a Level 4 appeal with the Council. Ex.

38. In their April 5 Amended Complaint, Plaintiffs failed to mention the existence of the ongoing appeal, nor do they allege it has been concluded.

## STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege sufficient facts that, when accepted as true, state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When determining whether the complaint states such a claim, a district court accepts as true all factual allegations and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). But the Court may not accept as true "legal conclusion[s] couched as factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" fail to state a claim for relief. *Id.*

By contrast, in considering motions under Rule 12(b)(1), the Court is not confined to the allegations in the pleading. The party seeking to invoke federal jurisdiction must prove, by a preponderance of the evidence, that the court has jurisdiction to decide the claims. *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011). "A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack.'" *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). When deciding a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Id.* (citations omitted). "In a factual attack, the court

considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* (citations omitted).

In deciding a motion to dismiss under either Rule 12(b)(6) or 12(b)(1), the district court may consider documents necessarily embraced by the complaint. *Mattes*, 323 F.3d at 697 n.4. Documents "incorporated into the pleadings by reference" may be considered at the motion-to-dismiss stage, even if "not expressly part of the pleadings." *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1063 n.3 (8th Cir. 2005). Here, the Complaint incorporates by reference the documents relevant to Defendants' motion—namely, the EOCs and appeal decisions—and those documents may properly be considered. *See* Compl. ¶¶ 18-19, 53-54, 66. *See Adams v. U.S. Bancorp,* 635 F. Supp. 3d 742, 747 (D. Minn. 2022); *Steger v. Delta Airlines, Inc.*, 382 F. Supp. 2d 382, 385 (E.D.N.Y. 2005) (considering ERISA appeal letters at motion to dismiss).

## ARGUMENT

## I.   THE MEDICARE ACT PREEMPTS ALL OF PLAINTIFFS' STATE LAW CLAIMS

Plaintiffs' seven causes of action can be reduced to two allegations—Defendants allegedly (1) improperly denied benefits for post-acute care by (2) using the nH Predict model that failed to take into account individual circumstances and conflicted with Medicare coverage guidelines and the terms of their MA plans. *See, e.g.*, Compl. ¶¶ 1, 6, 11, 38. These allegations challenge actions governed by federal regulation. Federal regulations define when post-acute care is medically necessary, what post-acute care is covered, and how an MAO can make coverage determinations.

A.      **Scope of Medicare Preemption Provision**

Medicare expressly preempts Plaintiffs' claims because they relate to areas

governed by Medicare Advantage standards applicable to all of the MA plans in which

they were members. To preserve the federal government's ability to uniformly administer

federal benefits and avoid inconsistent application of Medicare statutes and regulations

across the states, the Medicare Prescription Drug, Improvement, and Modernization Act

of 2003 ("MMA") provides for broad preemption of state law claims:

> The standards established under [Part C] shall supersede any State law or
> regulation (other than State licensing laws or State laws relating to plan
> solvency) with respect to MA plans which are offered by MA organizations
> under [Part C].

42 U.S.C. § 1395w-26(b)(3) (effective Dec. 8, 2003); *see also* 42 C.F.R. § 422.402 ("The

standards established under this part supersede any State law or regulation (other than

State licensing laws or State laws relating to plan solvency) with respect to the MA plans

that are offered by MA organizations.").[8] This preemption provision applies not only to

state statutes, but also to state common law. *Uhm v. Humana, Inc.*, 620 F.3d 1134, 1156

(9th Cir. 2010).

---

[8] CMS defines "MA organization" as "a public or private entity organized and licensed
by a State as a risk-bearing entity (with the exception of provider-sponsored
organizations receiving waivers) that is certified by CMS as meeting the MA contract
requirements." 42 C.F.R. § 422.2. Whether or not each Defendant constitutes an "MA
organizations," the preemption and exhaustion requirements of the Medicare Act apply to
the claims Plaintiffs assert against all of the Defendants. *See Uhm v. Humana, Inc.*, 620
F.3d 1134, 1157-58 (9th Cir. 2010) (claims against Humana, Inc. were preempted even
though it was not the MAO); *Meek-Horton v. Trover Solutions, Inc.*, 910 F. Supp. 2d 690,
691 n.1, 696 (S.D.N.Y. 2012) (dismissing plaintiff's Medicare claims against the agents
of a MA organization because the claims were preempted).

Congress intended this preemption provision to greatly expand the scope of

Medicare preemption. Before 2003, the Medicare Part C preemption clause limited

federal preemption to only four enumerated standards and any "inconsistent" state laws

and regulations. 42 U.S.C. § 1395w-26(b)(3)(A) (effective Dec. 21, 2000 to Dec. 7,

2003); *see also Uhm*, 620 F.3d at 1149 n.22 (reciting the text of the earlier statute). The

MMA struck these enumerated standards and the qualifying clause, and thereby

significantly broadened the scope of the federal preemption of state law. *See Dep't of*

*Health & Human Services, Center for Medicare & Medicaid Services, Medicare*

*Program; Establishment of the Medicare Advantage Program; Final Rule*, 70 Fed. Reg.

4,588, 4,694 (Jan. 28, 2005). The House Conference Report accompanying the MMA

explains that the amendment was intended to "clarif[y] that the Medicare Advantage

program is a federal program operated under Federal rules. ***State laws, do not, and***

***should not apply***, with the exception of state licensing laws or state laws related to plan

solvency." *Medicare Prescription Drug, Improvement, and Modernization Act of 2003*,

H.R. Conf. Rep. No. 108-391, at 557 (Nov. 21, 2003) (emphasis added), *reprinted in*

2003 U.S.C.C.A.N. 1808[9]; *see also Uhm*, 620 F.3d at 1149-50.

Courts have held that this preemption provision broadly preempts various state

causes of action and precludes state claims when "the conduct underlying the plaintiffs'

allegations and state law claims [is] governed by federal regulatory standards." *Hepstall*

*v. Humana Health Plan, Inc.*, No 18-0163, 2018 U.S. Dist. LEXIS 200418, at *16-22

---

[9] Available at https://www.congress.gov/108/crpt/hrpt391/CRPT-108hrpt391.pdf.

(S.D. Ala. Nov. 26, 2018) (reviewing cases); *see also*, *Aylward v. SelectHealth, Inc.*, 35 F.4th 673, 680-82 (9th Cir. 2022) (claims for negligence, fraud, bad faith, failure to investigate, and breach of covenant of good faith and fair dealing); *Uhm*, 620 F.3d at 1158 (claims for misrepresentation and violations of various state consumer protection statutes); *Alston v. United Healthcare Servs.*, 291 F. Supp. 3d 1170, 1174-75 (D. Mont. 2018) (claims for negligence, intentional/negligent infliction of emotional distress, and breach of contract); *Haaland v. Presbyterian Health Plan*, 292 F. Supp. 3d 1222, 1223-24, 1231 (D.N.M. 2018) (negligence and wrongful death claims); *Quishenberry v. UnitedHealthcare, Inc.*, 532 P.3d 239, 241 (Cal. 2023) (claims for negligence, wrongful death, and statutory elder abuse); *Snyder v. Prompt Med. Transp., Inc.*, 131 N.E.3d 640, 653 (Ind. Ct. App. 2019) (negligence claims based on denial of coverage).

*Quishenberry*, for example, concerned a Medicare Advantage enrollee who died after being discharged from a SNF. 532 P.3d at 242. The enrollee's son sued the MA plan and its administrator for negligence, wrongful death, and elder abuse based on allegations that defendants breached a duty to ensure his father received skilled nursing benefits under the plan. *Id.* The California Supreme Court held that Medicare preempted all of these state law claims. *Id.* at 249. As the court noted, to determine the truth of the allegations, a factfinder would have to decide whether the enrollee was entitled to the full 100 days of skilled nursing care benefits. *Id.* at 248. This would require the factfinder to apply criteria from Medicare regulations including, for example, that "the beneficiary must require skilled nursing or skilled rehabilitation services, or both, on a daily basis" and "[t]he daily skilled services must be ones that, as a practical matter, can only be

provided in a SNF on an inpatient basis." *Id.* (citing 42 C.F.R. §§ 409.31(b)(1) & (b)(3));

*see also Hepstall*, 2018 U.S. Dist. LEXIS 200418, at *22 (state law claims for breach of

contract and bad faith based on allegedly wrongful denial of medical benefits were

preempted because CMS regulations govern the types of benefits that must be offered by

MA organizations and the process of making coverage determinations).

### B.    The Conduct Challenged in Plaintiffs' Complaint Is Governed by Federal Standards and the Medicare Act Preempts All of Plaintiffs' Claims

Plaintiffs' claims are all preempted by the Medicare Act because each is, at

bottom, a coverage determination concerning Medicare benefits. Each is based on the

allegation that Defendants improperly reviewed Plaintiffs' preauthorization requests or

claims for benefits leading to a denial of coverage for their post-acute care.

Plaintiffs' two breach of contract claims allege that Defendants breached the

insurance agreements by, according to Plaintiffs, making coverage determinations based

on nH Predict instead of an individualized investigation as well as failing to exercise their

fiduciary duties, abiding by state laws, and providing written statements stating the bases

for the denial of claims. Compl. ¶¶ 189-191.

Plaintiffs' second cause of action (breach of the covenant of good faith and fair

dealing) alleges that Defendants failed to conduct a fair investigation and wrongfully

denied claims. *Id.* ¶¶ 198-200. This, the Plaintiffs allege, resulted in an "unreasonable"

denial to pay benefits. *Id.* ¶¶ 198-200.

Likewise, Plaintiffs' third cause of action (unjust enrichment) alleges that

Defendants improperly delegated the claims review process and denied them payments

owed under the MA plans. *Id*. ¶¶ 204-206. Plaintiffs' fourth cause of action (violation of the insurance bad faith laws of various states) alleges that Defendants lacked a reasonable basis to deny coverage and/or failed to conduct an adequate investigation. *Id*. ¶¶ 217-228. Finally, Plaintiffs fifth, sixth, and seventh causes of action under various state statutes similarly allege that Defendants failed to conduct a reasonable investigation and failed to disclose the use of nH Predict in making coverage determinations. *Id*. ¶¶ 240-242, 255, 264, 265, 268.

All of these claims are preempted by the extensive Medicare rules, regulations, and guidance that govern authorization and coverage for post-acute care. *See* 42 U.S.C. § 1395d(a)(2)(A) (scope of benefits); 42 C.F.R. § 409.31 (pre-admission and admission requirements); 42 C.F.R. § 409.31 (level of care requirement); 42 C.F.R. § 409.32 (criteria and need for skilled services); 42 C.F.R. § 409.33 (examples of skilled nursing and rehabilitation services); 42 C.F.R. § 409.61 (limitations on amount of benefits); and 42 C.F.R. § 424.20 (requirements for post-hospital SNF care).

Likewise, Plaintiffs' claims that Defendants failed to conduct a fair investigation and breached their agreements by using nH Predict to make coverage determinations are governed by CMS regulations that specify who must make coverage determinations, *see* 42 C.F.R. § 422.566(d) (an adverse coverage determination "must be reviewed by a physician or other appropriate health care professional"), as well as CMS regulations governing how MAOs can use utilization management policies and procedures to make coverage determinations, *see* 42 C.F.R. §§ 422.112(a)(6)(ii) and § 422.137; *see also* CMS, Frequently Asked Questions Related to Coverage Criteria and Utilization

Management Requirements in CMS Final Rule (CMS-4201-F) at 2 (Feb. 6, 2024) ("An algorithm or software tool may be used to assist MA plans in making coverage determinations, but it is the responsibility of the MA organization to ensure that the algorithm or artificial intelligence complies with all applicable rules for how coverage determinations by MA organizations are made.").

Whether Plaintiffs are entitled to benefits and whether Defendants' review or investigation of claims was proper will require an analysis of the Medicare regulations. The Court cannot adjudicate Plaintiffs' state law claims without analyzing and applying provisions and regulations of the Medicare Act. As such, "the conduct underlying these allegations is directly governed by federal standards" and the claims are preempted by Medicare. *Uhm*, 620 F.3d at 1158; *Haaland*. 292 F. Supp. 3d at 1231 (state law claims preempted by federal regulations that required MA organization to make coverage determinations through application of medical necessity standard); *Hepstall*, 2018 U.S. Dist. LEXIS 200418, at *20-22 (state law claims preempted because the types of benefits that must be offered and the process of making coverage determinations are governed by standards set forth in CMS regulations); *Snyder*, 131 N.E.3d at 653 (state law claims preempted because otherwise a court would have to apply state law standard of care to a coverage determination governed by federal law). As the court in *Snyder* recognized, if the state law claims were allowed to stand, the MAO could "theoretically . . . be found negligent even if it fully complied with all federal laws and regulations." *Id.* All of Plaintiffs' claims are preempted and should be dismissed.

II.     **THE COURT LACKS JURISDICTION OVER PLAINTIFFS' CLAIMS
        BECAUSE THEY "ARISE UNDER" THE MEDICARE ACT AND
        PLAINTIFFS DID NOT EXHAUST THE ADMINISTRATIVE REVIEW
        PROCESS**

        This case should also be dismissed for lack of subject matter jurisdiction because

none of the Plaintiffs have exhausted the Medicare Act's mandatory administrative

review process. Congress established a structure for determination of Medicare-related

claims, requiring that such claims proceed through a four-step administrative review

process and result in a final decision issued by the Secretary of Health and Human

Services ("HHS") **before** such claims can be brought in federal court. *Heckler v. Ringer*,

466 U.S. 602, 605 (1984); 42 U.S.C. §§ 405 (g)-(h), 1395ff(b)(1)(A). This exhaustion

requirement ensures national uniformity by allowing the federal government to set

coverage criteria for Medicare Benefits and dictate how MAOs cover those Medicare

Benefits and implement the Medicare program. Plaintiffs cannot circumvent this

mandatory administrative process by cloaking their complaint over the denial of

Medicare benefits with various state statutes and common law. Nor can they sidestep this

mandatory process by arguing that the appeal process set up by Congress would cause

irreparable harm or would be futile.

   A.     **The Medicare Act Requires Plaintiffs to Exhaust the Administrative
          Review Process Before a Court Can Hear Their Claims**

        The Medicare Act and associated federal regulations outline the only path for

Medicare enrollees to challenge the denial of a request for coverage of Medicare benefits.

Enrollees who wish to challenge an organization determination cannot go directly to

court for relief. Instead, Congress required that all such disputes be presented to, and

exhausted in, a four-level administrative appeal process before a member may file a lawsuit for a claim that arises under the Medicare Act. 42 U.S.C. §§ 405(g)-(h); *id*. § 1395w-22(g); 42 C.F.R. § 422.560 *et seq.* And if a member chooses to file suit after exhausting these administrative procedures, the member can only sue the Secretary of HHS in the applicable federal district court in the state where they reside. *See* 42 U.S.C. § 405(g).

This procedural requirement applies not only to claims expressly invoking the Medicare Act but also to claims that "arise under" the Medicare Act even if they are styled as state law tort, contract, or statutory claims. A claim "arises under" the Medicare Act when: (1) the "standing and the substantive basis for the presentation of the claim[]" is the Medicare Act, or (2) the claim is "inextricably intertwined" with a claim for Medicare benefits. *Ringer*, 466 U.S. at 614-15; *Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1112 (9th Cir. 2003).

Federal courts have taken an expansive view of the types of claims that "arise under" the Medicare Act, particularly since the Supreme Court's decision in *Ringer*. In *Ringer*, the Court rejected the plaintiff's attempts to distinguish claims grounded in "supposed procedural objections" and those seeking "only declaratory and injunctive relief and not an actual award of benefits" from those that directly seek payment of benefits. 466 U.S. at 614-15 (internal quotation marks omitted). The Supreme Court held that its decision that the plaintiffs had failed to exhaust was "in no way affected by" plaintiffs' creative re-labeling of Medicare-related claims to "not seek an award of benefits." *Id.* at 623. Rather, the question is whether the complaint seeks "the payment of

benefits" or a "right to future payments"; if so, it "arises under" the Medicare Act and exhaustion is required. *Id.* at 620-21. Courts across the country have recognized that they must "discount any creative pleading which may transform Medicare disputes into mere state law claims, and painstakingly determine whether such claims are ultimately Medicare disputes." *Wilson v. Chestnut Hill Healthcare*, No. 99-1468, 2000 U.S. Dist. LEXIS 1440, at *10-11 (E.D. Pa. Feb. 10, 2000) (internal quotation marks omitted); *see also Bodimetric Health Servs., Inc. v. Aetna Life & Cas.*, 903 F.2d 480, 487 (7th Cir. 1990) ("If litigants who have been denied benefits could routinely obtain judicial review of these decisions by recharacterizing their claims under state and federal causes of action, the Medicare Act's goal of limited judicial review for a substantial number of claims would be severely undermined.").

### B.    Plaintiffs' Claims "Arise Under" Medicare and Must be Exhausted

Here, although Plaintiffs attempt to dress up their claims under seven different state causes of action, all of them rely on the same fundamental premise: Plaintiffs' disagreement with the denial of their Medicare claims and the alleged method by which their MA plan reached those denials. All of their claims "arise under" the Medicare Act and are subject to the exhaustion requirement. Because none of the Plaintiffs have exhausted the administrative review process, their claims should be dismissed.

Plaintiffs' breach of contract claim alleges that Defendants breached their MA plans by failing to investigate, failing to provide all reasons for the denial, and making coverage determinations based on nH Predict. Compl. ¶¶ 189-192. Fundamentally, Plaintiffs' claimed "breach" is the "denial of benefits" under their MA plans and the

methodology by which Defendants allegedly made coverage decisions. The contractual

relationship provides both the "standing and the substantive basis" for the claim. The

underlying refusal to provide coverage is exactly the kind of dispute over which the

Medicare Act vests in the Secretary the power to "determine whether an individual is

entitled to benefit." 42 U.S.C. § 1395ff(b)(1). Before the Court may review this claim,

Plaintiffs must first have pressed it "through all designated levels of administrative

review." *Ringer*, 466 U.S. at 606.

Plaintiffs' remaining claims also "arise under" the Medicare Act because they are

"inextricably intertwined" with a claim for Medicare benefits. Each cause of action

challenges the denial of benefits and the alleged failure to investigate their claims. *See

supra,* Section I. Whether Plaintiffs are entitled to benefits and whether Defendants'

review or investigation of claims was proper will require an analysis of the MA plan

documents and Medicare regulations. As courts have held, the claim that Defendants

acted "without a reasonable basis" boils down to dissatisfaction with a decision not to

provide benefits. *See Wilson*, 2000 U.S. Dist. LEXIS 1440, at \*12-13 (where plaintiff

challenged decisions under MA plan, bad faith claim "arises under" Medicare and must

be exhausted); *Uhm*, 620 F.3d at 1143 (dismissing unjust enrichment claim relating to

Medicare Part D plan for failure to exhaust); *Bodimetric*, 903 F.2d at 481-83 (dismissing

breach of implied covenant of good faith and fair dealing claim); *Glob. Rescue Jets, LLC

v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 918-19 (9th Cir. 2022) (dismissing state

consumer protection and breach of the covenant of good faith and fair dealing claims

relating to MA plan); *Hepstall*, 2018 U.S. Dist. LEXIS 200418, at \*2, \*23-27 (dismissing

bad faith failure to pay or investigate a claim relating to MA plan). All of Plaintiffs'

claims arise under the Medicare Act and must be exhausted before a court can consider

them.

### C.    Plaintiffs Have Not Exhausted All Administrative Remedies

None of the Plaintiffs have completed the administrative appeal process that the

Medicare Act requires before a federal district court can hear their claims. Therefore, this

Court lacks jurisdiction to hear Plaintiffs' claims. "In order for the district court to have

subject matter jurisdiction under [S]ection 405(g), a claimant must have presented a

claim for benefits to the secretary and exhausted the administrative remedies prescribed

by the Secretary." *Degnan v. Burwell*, 765 F.3d 805, 808 (8th Cir. 2014) (quotation

omitted). Thus, when a plaintiff has not exhausted administrative remedies and obtained a

"final decision," the plaintiff's claims are not ripe for judicial review. *Anderson v.

Sullivan*, 959 F.2d 690, 693 (8th Cir. 1992).

Plaintiffs have not, and cannot, meet their burden to show that subject matter

jurisdiction exists. Plaintiffs have the "burden of proof" that jurisdiction exists. *Liberty

Mut. Fire Ins. Co. v. Acute Care Chiropractic Clinic P.A.*, 88 F. Supp. 3d 985, 996 (D.

Minn. 2015) (quotation omitted). Plaintiffs have not met their burden as the Complaint

does not sufficiently allege that each Plaintiff exhausted all four levels of appeal. *See

Prime Healthcare Servs. v. Humana Ins. Co.*, 230 F. Supp. 3d 1194, 1205-06 (C.D. Cal.

2017) (allegation that plaintiffs appealed was insufficient to show subject matter

jurisdiction, when plaintiffs did not plead they had presented the claim to the Secretary);

*see also Hubbard v. Coventry Health Care of Fla., Inc.*, No. 5:16-cv-337, 2016 U.S. Dist.

LEXIS 138370, at *13-14 (M.D. Fla. Sept. 13, 2016) *report and recommendation adopted by* 2016 U.S. Dist. LEXIS 138268 (M.D. Fla. Oct. 5, 2016) (plaintiff failed to plead the agency issued a final decision). Plaintiffs have not adequately shown that this Court has jurisdiction and the case should be dismissed.

Moreover, the administrative record demonstrates that none of the Plaintiffs have completed the administrative review process. Lokken's ███████████████

██████████████ (Ex. 38), ███████████████████

████████████████████████████████

████████████████ . *See supra* Background, Part II.B. ████████████

████████████████████████████████████

██████████████ . *Id.* Accordingly, this Court lacks subject matter jurisdiction over Plaintiffs' claims. *Alston*, 291 F. Supp. 3d at 1175-76; *see also Timmerman v. Thompson*, No. 03-5221, 2004 U.S. Dist. LEXIS 15120, at *19 (D. Minn. Aug. 5, 2004) (Tunheim, J.) (dismissing putative class action against the Secretary for failure to exhaust); *Smith v. Comm'r of Soc. Sec.*, No. C21-5152, 2021 U.S. Dist. LEXIS 155142, at *2 (W.D. Wash. Aug. 17, 2021) (declining to stay proceedings to allow claimant to exhaust administrative remedies because "[l]acking jurisdiction, this Court must dismiss this case").

### D.    Plaintiffs Cannot Circumvent the Administrative Process by Alleging that Exhaustion Would be Futile or They Would Suffer Irreparable Harm

Plaintiffs have made no attempt to plead exhaustion, nor can they. None have exhausted. Presumably, Plaintiffs will argue they are excused from the exhaustion

requirement. But, the relevant statutes and the implementing regulations expressly require exhaustion, and do not provide any exception or excuse for failure to exhaust. Section 1395w-22(g), like its statutory counterpart under original Medicare, conditions judicial review on a "*final* decision" of the Secretary. 42 U.S.C. § 405(g) (emphasis added).[10] As the Supreme Court concluded in *Ringer*, these provisions permit judicial review of a claim for benefits "only after the Secretary renders a 'final decision' on the claim." 466 U.S. at 605. As the Supreme Court observed, Section 405(g) "clearly limits judicial review to a particular type of agency action, a 'final decision of the Secretary made after a hearing.' . . . [The Court's] duty, of course, is to respect that choice." *Id.* at 108.

The prohibition on judicial excusal from exhaustion is particularly strong because the Secretary, pursuant to delegated rulemaking authority, *see* 42 U.S.C. §§ 1395w-26(b) and 1395hh, has promulgated regulations requiring exhaustion and not affording any excusal. As the Supreme Court noted in *Ringer*, pursuant to delegated rulemaking authority, "the Secretary has provided that a 'final decision' is rendered in a Medicare claim only after the individual claimant has pressed his claim through all designated levels of administrative review." 466 U.S. at 606. The regulations state that a party may request judicial review "of the Council decision *if it is the final decision of CMS*…," 42 C.F.R. § 422.612(b) (emphasis added), and notes that judicial review "must [be] file[d] . . . in accordance with [§ 405(g)]," 42 C.F.R. §422.612(c), which provides for judicial

---

[10] The Medicare Act's mandatory exhaustion requirement was created by cross references to the exhaustion and judicial review provisions of the Social Security Act. *See* 42 U.S.C. § 1395ii (incorporating 42 U.S.C. § 405(h)); 42 U.S.C. § 1395w-22(g) (incorporating 42 U.S.C. § 405(g)).

review of only the Secretary's final decisions. A court cannot disregard or override these regulations. *See, e.g., Batterton v. Francis*, 432 U.S. 416, 425 n.9 (1977) ("Legislative, or substantive, regulations [] issued by an agency pursuant to statutory authority and which implement the statute . . . have the force and effect of law. By way of contrast, a court is not required to give effect to an interpretative regulation.") (internal citations and quotations omitted).

Even if the Court had the power to excuse exhaustion, the Supreme Court has allowed judicial waiver only in extremely limited circumstances involving Constitutional questions. *See Califano*, 430 U.S. at 109 (noting that both *Salfi* and *Eldridge*, in which the Supreme Court allowed judicial review in the absence of a final hearing, involved Constitutional questions that were "unsuited to resolution in administrative hearing procedures"). And even within that narrow subset of cases, there is a jurisdictional, nonwaivable requirement to present the claim to the Secretary before bringing suit. *Mathews v. Eldridge*, 424 U.S. 319, 328 (1976); *Ringer*, 466 U.S. at 617 (citations and internal quotation marks omitted); *Weinberger v. Salfi*, 422 U.S. 749, 765 (1975). *See also Johnson v. Shalala*, 2 F.3d 918, 921 (9th Cir. 1993) ("The presentment requirement is jurisdictional, and therefore, cannot be waived by the Secretary or the courts."). The exhaustion requirment "assures the agency greater opportunity to apply, interpret, or revise policies, regulations, or statutes without possibly premature interference by different individual courts." *Shalala v. Ill. Counc. on Long Term Care, Inc*., 529 U.S. 1, 13 (2000). Buckner, Martin, and Hull do not allege they appealed any of the decisions at issue. Compl. ¶¶ 96-99, 148, 162-169. Thus, their claims do not meet the non-waivable

presentment requirement and must be dismissed. *DiCrescenzo v. UnitedHealth Grp., Inc.*, No. 15-00021, 2015 U.S. Dist. LEXIS 123852, at *12-13 (D. Haw. Sept. 16, 2015) (because plaintiff failed to comply with the nonwaivable, jurisdictional presentment requirement, there is no basis to allow waiver).

As to the remaining Plaintiffs, even if the Court were permitted to excuse exhaustion, and even if they could meet the presentment requirement, Plaintiffs do not meet any of the *Eldridge* factors. As this Court and the Eighth Circuit have held, in order to consider waiver, plaintiffs must demonstrate "(1) their claims to the district court are collateral to their claim of benefits; (2) that irreparable injury will follow; *and* (3) that exhaustion will otherwise be futile." *Timmerman*, 2004 U.S. Dist. LEXIS 15120, at *9-10 (emphasis added); *Titus v. Sullivan*, 4 F.3d 590, 592 (8th Cir. 1993) (citing *Bowen v. City of New York*, 476 U.S. 467, 483 (1986)); *see also Ringer*, 466 U.S. at 618. Plaintiffs attempt to get around this exhaustion requirement by alleging that "use of the appeals system is generally futile" and they would suffer irreparable harm "while waiting for a decision." Compl. ¶¶ 50-51. Aside from the fact that these mere legal conclusions are insufficient and may be ignored for the purpose of this Rule 12 motion, Plaintiffs do not, and cannot, allege that their claims are "collateral" to their claim for benefits. Indeed, their entire case is premised on their argument that they were denied benefits to which they were entitled. *See Ringer*, 466 U.S. at 614, 618 (if a claim is "anything more than, at bottom, a claim that they should be paid" the claim is not collateral for the purposes of exhaustion); *Int. Nursing & Health Servs. v. Centrs. For Medicare & Medicaid Servs.*, No. 17-683, 2017 U.S. Dist. LEXIS 57413, at *10-11 (D. Minn. Apr. 13, 2017) (action

seeking an injunction forcing reimbursement for services provided under Medicare is not collateral); *Timmerman*, 2004 U.S. Dist. LEXIS 15120, at *17 (D. Minn. Aug. 5, 2004) (not collateral when the declaratory and injunctive relief sought would result in payment of benefits).

Nor can Plaintiffs plausibly allege that exhaustion is futile or that they have suffered irreparable harm. The facts belie such arguments. Exhaustion is not futile because they can never win; several of the named Plaintiffs prevailed on appeals. *See* Compl. ¶¶ 77, 92, 136, 143. Nor is exhaustion futile because claims will always be paid before reaching the Secretary; Lokken's claims have *twice* proceeded to the Secretary without settlement. To show irreparable harm, Plaintiffs must allege ongoing, imminent or threatened harm that cannot be remedied by payment of benefits. *See Timmerman*, 2004 U.S. Dist. LEXIS 15120, at *15. As this Court held in *Timmerman*, the delay in the administrative proceeding, standing alone, does not constitute irreparable harm. *Id.* at *16.

Courts have made clear that waiver should only be found in exceptional circumstances. *Salfi*, 422 U.S. at 766-67; *Ringer*, 466 U.S. at 618 (judicial waiver of exhaustion requirement is reserved for "certain special cases"); *Abbey v. Sullivan*, 978 F.2d 37, 44 (2d Cir. 1992) ("Exhaustion is the rule, waiver the exception. This is so because of a variety of prudential and separation-of-powers concerns.") (citations omitted). Exhaustion will afford the agency an opportunity to apply its expertise as to (1) whether additional post-acute care was medically necessary and should otherwise be covered; (2) whether the use of nH Predict complied with CMS regulations regarding

how medical necessity determinations should be made and the use of utilization management policies and procedures.[11] Exhaustion will further allow the agency to compile a record that is adequate for any potential future judicial review. *See Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.,* 30 F.4th 905, 919 (9th Cir. 2022) (excusing exhaustion would interfere with the agency's opportunity to review claims and apply its expertise).

Because Courts cannot create an exception to Medicare exhaustion for a claim for benefits, because Plaintiffs do not bring a Constitutional challenge, and because Plaintiffs have not met *any* of the factors necessary for narrow application of waiver for ancillary claims, this Court lacks jurisdiction and the claims must be dismissed for failure to exhaust the administrative appeals process.

> **E.      Even if Plaintiffs Had Exhausted the Appeals Process or Could Show that Exhaustion Should be Waived, the Secretary of Health and Human Services—Not Defendants—Would Be the Proper Defendant**

This case should be dismissed because, even if Plaintiffs had fully exhausted the exclusive administrative appeal process set by Congress, Plaintiffs sued the wrong defendant. The Medicare Act provides that beneficiaries can seek review of final determinations from the Secretary—nor their MAO. *See* 42 U.S.C. § 405(g); 42 C.F.R. §

---

[11] *See* 42 C.F.R. § 422.566(d); 42 C.F.R. § 422.112(a)(6)(ii) and § 422.137; *see also* CMS, Frequently Asked Questions Related to Coverage Criteria and Utilization Management Requirements in CMS Final Rule (CMS-4201-F) at 2 (Feb. 6, 2024) (stating that an algorithm or software tool may be used by MA plans to predict a length of stay, but may not be the sole basis of a coverage determination, which determination must ultimately be based only on a determination of whether the member meets each coverage criterion).

422.612(c) (referring to 42 C.F.R. chapter 405 for Medicare Advantage claims); 42

C.F.R. § 405.1136(d)(1) ("In any civil action . . . the Secretary of HHS, in his or her

official capacity, is the proper defendant."); *Madsen v. Kaiser Found. Health Plan, Inc.*,

No. 08-cv-2236, 2009 U.S. Dist. LEXIS 46122, at *9 (S.D. Cal. June 2, 2009)

(dismissing MAO because the Secretary is the "sole" proper defendant). Plaintiffs filed

this action against the wrong defendants, and their complaint should be dismissed.

## III.   CERTAIN OF PLAINTIFFS' STATE LAW CLAIMS FAIL TO STATE CLAIMS FOR ADDITIONAL REASONS

Counts III and VI should also be dismissed for reasons separate and apart from the

requirements of the Medicare Act.

### A.   The Unjust Enrichment Claim Fails as a Matter of Law, Because There Is a Contract (Count III)

Plaintiffs' unjust enrichment claims fail because "equitable relief cannot be

granted where the rights of the parties are governed by a valid contract." *M.M. Silta, Inc.*

*v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 880 (8th Cir. 2010) (quotation omitted). Plaintiffs'

allegations establish that the rights of the parties are governed by a valid contract.

Plaintiffs allege that Defendants were unjustly enriched by retaining the benefits they

received from Plaintiffs and "government entities" by "arbitrarily denying . . . medical

payments owed to them under Defendants' policies." Compl. ¶¶ 204, 208. Thus, Count

III should be dismissed.

**B.      The Minnesota Unfair Claims Practices Act Claim Fails, Because There Is No Private Right of Action (Count VI)**

Count VI fails, because there is no private right of action under Minn. Stat. Chapter 72A. *Morris v. American Family Mut. Ins. Co*., 386 N.W.2d 233, 235 (Minn. 1986). The Minnesota Supreme Court, after examining the legislative history and balancing policy considerations, has held that Minnesota's private attorney general statute did not create an implied right of action to enforce Chapter 72A. *Id.* at 237-38. Since *Morris*, Minnesota courts and federal courts applying Minnesota law have uniformly recognized that there is no private right of action to enforce Minn. Stat. Chapter 72A. *Schermer v. State Farm Fire & Cas. Co.*, 702 N.W.2d 898, 905 (Minn. Ct. App. 2005), *aff'd on other grounds,* 721 N.W.2d 307 (Minn. 2005) ("[T]he law is settled that a litigant cannot directly sue under Minn. Stat. § 72A.20, subd. 13, or use an alleged violation of this statute to prove elements of a common law claim"); *Glass Serv. Co. v. State Farm Mut. Ins. Co.,* 530 N.W.2d 867, 872 (Minn. Ct. App. 1995); *Elder v. Allstate Ins. Co.*, 341 F. Supp. 2d 1095, 1101 (D. Minn. 2004) (recognizing there is no private right of action under the MUCPA). Accordingly, Count VI fails as a matter of law.

## **CONCLUSION**

For all of the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint with prejudice.

Dated:  May 20, 2024.                    DORSEY & WHITNEY LLP

By */s/ Michelle S. Grant*
    Nicole Engisch (#0215284)
    engisch.nicole@dorsey.com
    Michelle S. Grant (#0311170)
    grant.michelle@dorsey.com
    Shannon L. Bjorklund (#0389932)
    bjorklund.shannon@dorsey.com
    David C. Racine (#0401060)
    racine.david@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

Nicholas J. Pappas (admitted *pro hac vice*)
pappas.nicholas@dorsey.com
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, NY 10019-6119
Telephone: (212) 415-9387

*Attorneys for Defendants*