UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| The Estate of Gene B. Lokken, Glennette Kell, Darlene Buckner, Carol Clemens, Frank Chester Perry, The Estate of Jackie Martin, John J. Williams, as Trustee of the Miles and Carolyn Williams 1993 Family Trust, and William Hull, individually and on behalf of all others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　vs.<br><br>UnitedHealth Group Incorporated, United Healthcare, Inc., NaviHealth, Inc., and Does 1-50, inclusive,<br><br>　　　　　　Defendants. | Civil File No. 23-cv-03514-JRT-DJF |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

Page

INTRODUCTION .................................................................................................. 1

ARGUMENT .......................................................................................................... 1

    I.     The Medicare Act Preempts Plaintiffs' State Law Claims .......................... 1

         A.     The Medicare Act Preempts Common Law Claims .......................... 1

         B.     Eighth Circuit Authority Fully Supports Medicare Preemption ........ 4

    II.    Alternatively, the Court Should Dismiss Plaintiffs' Claims For Failure to Exhaust Administrative Remedies................................................ 6

         A.     Plaintiffs' Claims "Arise Under" the Medicare Act ......................... 6

         B.     Plaintiffs Have Not Met the Jurisdictional, Non-Waivable Presentment Requirement .................................................................. 8

         C.     Exhaustion Should Not Be Excused ................................................... 9

               1.     This Is Not the Type of Claim for Which Waiver Applies ..................................................................................... 9

               2.     Plaintiffs Cannot Meet the Elements for Waiver ................... 10

         D.     Plaintiffs Sued the Wrong Parties ..................................................... 12

    III.   Certain State Law Claims Fail for additional reasons ............................... 13

         A.     Plaintiffs Fail to State an Unjust Enrichment Claim ........................ 13

         B.     There is no Private Right of Action Under the MUCPA ................. 13

CONCLUSION ..................................................................................................... 14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Ali v. Fed. Bureau of Prisons*,
   552 U.S. 214 (2008)...........................................................................................................2

*Bowen v. City of New York*,
   476 U.S. 467 (1986) ............................................................................................10, 11, 12

*Califano v. Sanders*,
   430 U.S. 99 (1977)..................................................................................................1, 9, 10

*Clarinda Home Health v. Shalala*,
   100 F.3d 526 (8th Cir. 1996) ............................................................................................7

*Encino Motorcars, LLC v. Navarro*,
   584 U.S. 79 (2018).............................................................................................................2

*Erie R.R. Co. v. Tompkins*,
   304 U.S. 64 (1938)............................................................................................................1

*Facebook, Inc. v. Duguid*,
   592 U.S. 395 (2021)..........................................................................................................3

*Family Rehab., Inc. v. Azar*,
   886 F.3d 496 (5th Cir. 2016) ..........................................................................................11

*Findling v. Grp. Health Plan, Inc.*,
   998 N.W.2d 1 (Minn. 2023)............................................................................................13

*First Med. Health Plan, Inc. v. Vega-Ramos*,
   479 F.3d 46 (1st Cir. 2007)..........................................................................................2, 3

*Genz-Ryan Plumbing & Heating Co. v. Weyerhaeuser NR Co.*,
   352 F. Supp. 3d 901 (D. Minn. 2018).............................................................................13

*Haaland v. Presbyterian Health Plan*,
   292 F. Supp. 3d 1222 (D.N.M. 2018) ..............................................................................5

*Heckler v. Ringer*,
   466 U.S. 602 (1984)..........................................................................................................7

*Jaskulske v. State Farm Mut. Auto. Ins. Co.*,
   No. 14-cv-869, 2014 U.S. Dist. LEXIS 156053 (D. Minn. Oct. 31, 2014) ............................13

*Johnson v. Shalala*,
    2 F.3d 918 (9th Cir. 1993) ..................................................................................................10

*Kaiser v. Blue Cross of Cal.*,
    347 F.3d 1107 (9th Cir. 2003) ..........................................................................................7, 11

*Martin v. Shalala*,
    63 F.3d 497 (7th Cir. 1995) ................................................................................................11

*Mental Health Association v. Heckler*,
    720 F.2d 965 (8th Cir. 1983) ...........................................................................................9, 11

*Midland Psych. Ass'n v. United States*,
    145 F.3d 1000 (8th Cir. 1998) ..............................................................................................7

*Morris v. American Family Mutual Insurance Co.*,
    386 N.W.2d 233 (Minn. 1986) ............................................................................................13

*Morrison v. Health Plan of Nev., Inc.*,
    328 P.3d 1165 (Nev. 2014) ....................................................................................................5

*Motley v. Homecomings Fin., LLC*,
    557 F. Supp. 2d 1005 (D. Minn. 2008) ...............................................................................13

*Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*,
    499 U.S. 117 (1991) ..............................................................................................................1

*Nw., Inc. v. Ginsberg*,
    572 U.S. 273 (2014) ..........................................................................................................2, 3

*Pharm Care Mgmt. Ass'n v. Wehbi*,
    18 F.4th 956 (8th Cir. 2021) ..............................................................................................4, 5

*Schermer v. State Farm Fire & Cas. Co.*,
    702 N.W.2d 898 (Minn. Ct. App. 2005) .............................................................................13

*Shalala v. Ill. Council on Long Term Care, Inc.*,
    529 U.S. 1 (2000) ............................................................................................................7, 11

*Snyder v. Prompt Med. Transp., Inc.*,
    131 N.E.3d 640 (Ind. Ct. App. 2019) ....................................................................................5

*Sprietsma v. Mercury Marine*,
    537 U.S. 51 (2002) ............................................................................................................2, 3

*T.B. Allen & Assocs. v. Euro-Pro Operating LLC*,
    No. 11-3479, 2012 U.S. Dist. LEXIS 90256 (D. Minn. June 28, 2012) .............................13

*Timmerman v. Thomson*,
   No. 03-5221-JRT, 2004 U.S. Dist. LEXIS 15120 (D. Minn. Aug. 5, 2004) ............................11

*Uhm v. Humana, Inc.*,
   620 F.3d 1154 (9th Cir. 2010) ...................................................................................2, 4

**Statutes**

42 U.S.C. §405(g) ..........................................................................................................6, 9

42 U.S.C. §1395f(a)(2)(B) ....................................................................................................7

42 U.S.C. §1395i-3(b)(2) & (3) ..........................................................................................12

42 U.S.C. §1395w-26(b)(3) ..................................................................................................2

**Other Authorities**

42 C.F.R. §409.31(b) ............................................................................................................7

88 Fed. Reg. 22,120, 22,207 (Apr. 12, 2023) ....................................................................12

Ethan J. Leib & James J. Brudney, *The Belt-and-Suspenders Canon*, 105 Iowa L.
   Rev. 735 (2020) .............................................................................................................3

# INTRODUCTION

Plaintiffs seek to bury the dispositive Congressional mandate that the "standards established under [Medicare] shall supersede any State law or regulation…with respect to MA plans." When they finally address it, they baselessly ask this Court to construe "State law or regulation" as excluding state common law or generally applicable statutory claims. They compound this error by asking this Court to reject apposite case law applying Medicare's preemption mandate as being inconsistent with Eighth Circuit authority. Instead of addressing this elephant in the room, Plaintiffs oddly seek to focus the Court on their admitted failure to exhaust administrative remedies, and then wrongly ask this Court to waive exhaustion. But *Califano v. Sanders,* 430 U.S. 99 (1977), prohibits judicial waiver of the exhaustion requirement except in cases involving Constitutional challenges. Plaintiffs fail to cite, much less distinguish, *Califano*. Even setting aside *Califano*, Plaintiffs do not meet the non-waivable presentment requirement nor any of the elements required for the Court to excuse exhaustion. Because Plaintiffs cannot cure these defects, dismissal should be with prejudice.

# ARGUMENT

I.   THE MEDICARE ACT PREEMPTS PLAINTIFFS' STATE LAW CLAIMS

   A.   The Medicare Act Preempts Common Law Claims

The plain text of Medicare's preemption provision encompasses common law claims. Since *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 72-73 (1938), the Supreme Court has recognized that the phrase "state law" includes common law as well as statutes and regulations. *See also Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117,

1

128 (1991) ("the…language…[']all other law, including State and municipal law'…does not admit of [a] distinction…between positive enactments and common-law rules of liability"). Plaintiffs wrongly rely on *Sprietsma v. Mercury Marine,* 537 U.S. 51 (2002), to argue that the phrase "any State law or regulation" does not encompass state common law claims. Several courts, including the Ninth Circuit, have rejected the same arguments Plaintiffs recycle here. *See, e.g.*, *Uhm v. Humana, Inc.,* 620 F.3d 1154 (9th Cir. 2010).

The preemption provision in *Sprietsma* differs from the Medicare clause in three ways. *First*, the *Sprietsma* clause forbids a state from "establish[ing], continu[ing] in effect, or enforc[ing] a law or regulation" that differs from federal law. 537 U.S. at 58-59. In holding that this provision did not preempt common law claims, the Supreme Court reasoned that the use of "the article 'a' before 'law or regulation' implies a discreteness—which is embodied in statutes and regulations—that is not present in the common law." *Id.* at 63. The prohibition on "establish[ing]" or "enforc[ing]" "a law or regulation" was interpreted to include only positive law enactments. *Id.* Medicare's preemption clause, by contrast, applies to "*any* State law or regulation." 42 U.S.C. §1395w-26(b)(3) (emphasis added). "The use of 'any' negates the 'discreteness' that the Court identified in *Sprietsma*." *Uhm,* 620 at 1153; *Nw., Inc. v. Ginsberg*, 572 U.S. 273, 282-83 (2014) (*Sprietsma* did not apply to a more broadly-worded provision); *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 218-21 (2008) ("any" is expansive); *Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 88 (2018) ("any" and "disjunctive 'or'" "bespeaks breadth").

*Second*, the *Sprietsma* statute contained a savings clause stating that it "does not relieve a person from liability at common law or under State law." 537 U.S. at 63. By

2

contrast, the Medicare savings clause narrowly saves only state laws relating to licensing or plan insolvency.

*Third*, in *Sprietsma* the Court considered the historical pattern of enforcement and statements by the agency in determining that the Boating Act's preemption clause was narrow. *Sprietsma,* 537 U.S. at 64-68. By contrast, the Medicare Act's legislative history shows that Congress *did* intend to preempt all state law, with exceptions only for licensing or solvency laws. *See* Defs.' Mem. 14. As courts have recognized, "Congress's purpose…was to protect the purely federal nature of Medicare Advantage plans operating under Medicare." *First Med. Health Plan, Inc. v. Vega-Ramos*, 479 F.3d 46, 52 (1st Cir. 2007). This purpose "can be undermined just as surely by a state common-law rule as it can by a state statute or regulation," and thus what matters "is the effect of a state law, regulation, or provision, not its form." *Ginsberg*, 572 U.S. at 283.

Plaintiffs wrongly argue their construction is necessary to avoid superfluous language. Not so. The phrase "any law or regulation" represents a "belt and suspenders" approach to ensuring all state law is covered. *See, e.g., Facebook, Inc. v. Duguid*, 592 U.S. 395, 407 n.7 (2021) (even if the meaning of two statutory terms "merge, Congress may have 'employed a belt and suspenders approach' in writing the statute"). *See generally*, Ethan J. Leib & James J. Brudney, *The Belt-and-Suspenders Canon*, 105 Iowa L. Rev. 735 (2020).

The great weight of authority holds that Medicare's preemption provision applies to common law claims. Defs.' Mem. 14-16. The Eighth Circuit cited with approval a number of these cases in noting that Medicare "preempt[s] a broad swath of state laws."

3

*Pharm Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956, 971-72 (8th Cir. 2021) (citing *Uhm.*, 620 F.3d 1134; *Snyder v. Prompt Med. Transp., Inc.*, 131 N.E.3d 640, 653 (Ind. Ct. App. 2019); *Haaland v. Presbyterian Health Plan*, 292 F. Supp. 3d 1222 (D.N.M. 2018); and *Morrison v. Health Plan of Nev., Inc.*, 328 P.3d 1165 (Nev. 2014)).

### B.     Eighth Circuit Authority Fully Supports Medicare Preemption

Plaintiffs misconstrue *Wehbi* in their effort to avoid preemption. In *Wehbi*, the Eighth Circuit analyzed whether Medicare preempts a state statute regulating pharmacy benefit managers, an area historically left to state regulation. 18 F.4th at 970-976. In analyzing the statute, the court found certain provisions preempted where they "regulate the same subject matter as a federal Medicare [] standard." *Id.* at 972, 974-75 (state law disclosure obligations preempted when CMS regulations required pharmacy disclosure); *id.* at 975 (CMS rules on utilization management software preempted state requirements); *id.* at 976 (CMS regulations concerning retroactive fees preempted state law about retroactive fees). Here, CMS standards exhaustively regulate the administration of claims for benefits under the Medicare Advantage program, and Plaintiffs' causes of action fundamentally challenge the legality of such administration. Defs.' Mem. 16-18. Notably, the Eighth Circuit relied on every case that Plaintiffs claim conflicts with *Wehbi*, including the Ninth Circuit's decision in *Uhm*. *Wehbi*, 18 F.4th at 971-72.

The state law claims Plaintiffs assert here are analogous to the provisions of the statute the Eighth Circuit found preempted in *Wehbi*. Plaintiffs' common law and statutory claims boil down to allegations that Plaintiffs' requests for post-acute care coverage should have been adjudicated a certain way. Compl. ¶¶1, 6, 11, 38, 191, 196,

4

204, 217, 239-242, 252-255, 262-271. Plaintiffs rely on *state insurance* laws that govern criteria and processes that health insurers use to make coverage determinations. But such claims regulate duties already addressed by CMS regulations that govern the *federal* Medicare program. Federal standards govern the conduct underlying Plaintiffs' claims and dictate when post-acute care should be covered, how and when coverage decisions are made, and even whether AI can be used. Defs.' Mem. 3-5.[1]

Beyond misreading *Wehbi*, Plaintiffs misunderstand the phrase, "with respect to," in the Medicare preemption provision. Pls.' Mem. 34. This language does not permit state regulation of MA plans through generally applicable state laws that "implicate [] conduct that [is] governed by federal Medicare standards." *Snyder*, 131 N.E.3d at 652 (quotation omitted). Doing so "could result in the imposition of additional state law requirements" on a federal program regulated by CMS. *Morrison*, 328 P.3d at 1169-70.

*Wehbi* and other cases refute Plaintiffs' argument that their claims are saved from preemption because they "supplement" or "complement" Medicare. Pls.' Mem. 34-36. *See Wehbi*, 18 F.4th at 971-72; *Aylward*, 35 F.4th at 681 ("There is no basis for concluding that a state law duty that parallels, enforces, or supplements an express federal MA standard on the subject is not one 'with respect to MA plans.'"); *Haaland*, 292 F. Supp. 3d at 1231 ("Even a claim that a [MAO] wrongfully applied or wholly

---

[1] Although Defendants assume to be true, solely for purposes of their motion, Plaintiffs' allegations that artificial intelligence determines Medicare Advantage members right to receive care at skilled nursing facilities, Defendants deny these allegations. Contrary to Plaintiffs' assertions, physicians apply Medicare regulations and guidelines in determining the medical necessity for and the duration of members' stays at such facilities.

disregarded the medical necessity standard is still a claim alleging conduct that was governed by federal Medicare standards.").

Congress intended to displace state regulation of MA plans. Defs.' Mem. 13-14. Federal standards dictate the process for how MAOs evaluate coverage for Medicare benefits. Plaintiffs' attempt to apply state law standards to a federal program should be rejected.

## II. ALTERNATIVELY, THE COURT SHOULD DISMISS PLAINTIFFS' CLAIMS FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Dismissal is required because no Plaintiff has exhausted Medicare's mandatory administrative review process. Plaintiffs concede that Section 405(g) mandates exhaustion of the Medicare Act's appeal procedure before bringing claims in federal court. Pls.' Mem. 11. Plaintiffs do not dispute that no Plaintiff has fully exhausted any claim. Instead, Plaintiffs argue that Medicare's administrative appeal process does not apply to their claims, which they argue do not "arise under" the Medicare Act (Pls.' Mem. 12-14), or, alternatively, that they should be excused from exhaustion requirements (Pls.' Mem. 14-26). Both arguments fail.

### A. Plaintiffs' Claims "Arise Under" the Medicare Act

Plaintiffs acknowledge that a claim nominally asserted under state law "arises under" Medicare if either (1) the "standing and substantive basis for the presentation" of the claim is the Medicare Act or (2) it is "inextricably intertwined with a claim for Medicare benefits. Pls.' Mem. 12.

The "standing and substantive basis" for Plaintiffs' breach-of-contract claims are the contracts at issue—*i.e.*, the MA plans themselves. Defs.' Mem. 21-22. Plaintiffs' claims derive solely from benefits afforded by the Medicare Act. *See* 42 U.S.C. §1395f(a)(2)(B); 42 C.F.R. §409.31(b). None of the cases cited by Plaintiffs involved breach-of-contract claims between an MA enrollee and the MAO. Pls.' Mem. 12-13.

And all of Plaintiffs' claims—no matter how styled—are "inextricably intertwined" with a claim for benefits. Plaintiffs wrongly argue they are not "inextricably intertwined" because they do not seek benefits but rather challenge the process Defendants used. Whether Plaintiffs seek reimbursement of benefits is not "strongly probative" of whether a claim "arises under" the Medicare Act. *Kaiser v. Blue Cross of Cal.*, 347 F.3d 1107, 1115 (9th Cir. 2003). *See also Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 14 (2000) (refusing to accept a distinction that limits the scope of §405(h) to claims for monetary benefits).

Despite Plaintiffs' protestations, *Heckler v. Ringer,* 466 U.S. 602 (1984) is on all fours. In *Ringer*, plaintiffs, seeking only declaratory and injunctive relief, challenged a final ruling of the Secretary that prohibited payment of Medicare benefits for a specific surgical procedure on the grounds the Secretary's ruling violated federal "constitutional due process and numerous [federal] statutory provisions." *Id.* at 609-10. Looking "behind the face of" the plaintiffs' claims, the Supreme Court found each claim was "'at bottom, a claim that [the plaintiffs] should be paid for their…surgery.'" *Clarinda Home Health v. Shalala,* 100 F.3d 526, 529 (8th Cir. 1996) (quoting 466 U.S. at 614); *see also Midland Psych. Ass'n v. United States*, 145 F.3d 1000, 1004 (8th Cir. 1998) (applying *Ringer* in

7

holding that claims were "inextricably intertwined" where provider's state law claim "would necessarily mean redeciding [the insurer's] Medicare claims decisions"). Plaintiffs here claim that Defendants allegedly deploy AI in place of physicians to wrongfully deny care owed to them under their MA plans. Compl. ¶1. Plaintiffs seek monetary relief for alleged injuries—out-of-pocket costs, discontinuation of medical care, and emotional distress—that are tied directly to Defendants' Medicare coverage determinations. *See, e.g.*, Compl. Prayer for Relief, ¶¶69, 99, 232. And their request for injunctive relief will require an analysis of MA plan documents and Medicare regulations regarding medical necessity of post-acute care and the methodology used for making coverage determinations. Defs.' Mem. 17-18. All of Plaintiffs' claims "arise under" Medicare and must be exhausted.

### B. Plaintiffs Have Not Met the Jurisdictional, Non-Waivable Presentment Requirement

Plaintiffs' concessions establish that they have not met the presentment requirement. Plaintiffs acknowledge that "the presentment requirement is a true jurisdictional inquiry," Pls.' Mem. 11, thus recognizing that it is non-waivable. Plaintiffs acknowledge that presentment "requires [] that the claim be presented ***to the Secretary*** in the first instance." *Id.* at 15 (emphasis added). Plaintiffs rely solely on alleged claim submissions to Defendants to support their argument that they presented their benefit claims *to the Secretary*, *id.*, despite the lack of any statutory or binding precedent supporting such an argument.

The sole Eighth Circuit case cited by Plaintiffs demonstrates that they have *not* satisfied the presentment requirement. In *Mental Health Association v. Heckler*, 720 F.2d 965 (8th Cir. 1983), the Court held that the presentment requirement had been satisfied because the plaintiffs limited the class definition to include only those individuals who had received a determination from the Secretary. *Id.* at 973 n.19. Plaintiffs have not similarly attempted to narrow their class; indeed, most named Plaintiffs have not satisfied the presentment requirement. Because this requirement is jurisdictional, the claims should be dismissed, and the Court need not address whether exhaustion could be excused.

### C.     Exhaustion Should Not Be Excused

Plaintiffs should not be excused from the exhaustion requirement, for two independent reasons: (1) Supreme Court precedent dictates that exhaustion may be excused under very narrow circumstances and only for cases with Constitutional questions and (2) Plaintiffs cannot satisfy the three requirements for excusal.

#### 1.     This Is Not the Type of Claim for Which Waiver Applies

Plaintiffs claim that "decades of precedent apply[] the judicial waiver exception," Pls.' Mem. 17, yet fail to cite a single Supreme Court case in which exhaustion of Medicare appeals procedures was waived in the absence of a Constitutional challenge. In *Califano v. Sanders,* 430 U.S. 99 (1977) the Supreme Court recognized that unless a plaintiff exhausts all administrative appeals, courts lack subject matter jurisdiction under 42 U.S.C. §405(g), unless the plaintiff raises a Constitutional challenge. 430 U.S. at 108-09. Plaintiffs wrongly state that "neither of the primary cases Defendants rely on for this proposition (*Salfi* and *Eldridge*) purport to establish a 'Constitutional question'

9

prerequisite" (Pls. Mem. 18). However, they fail to acknowledge that *Califano,* also cited by Defendants, does precisely that (Defs.' Mem. 26). Plaintiffs wrongly argue that *Bowen v. City of New York* supports a contrary rule. However, *Bowen* is consistent with *Califano* inasmuch as the plaintiff in *Bowen* asserted both constitutional and statutory claims, with jurisdiction established by plaintiff's challenge to a state process that plaintiffs alleged violated their due process rights. 476 U.S. 467, 470-71 (1986).

### 2. Plaintiffs Cannot Meet the Elements for Waiver

Even if the Court were to apply waiver principles applicable to Constitutional challenges, which it should not, Plaintiffs cannot meet the three required elements of waiver: (1) that claims be entirely collateral to a claim for benefits, (2) that irreparable harm ensue, *and* (3) that exhaustion be futile.

A claim is only deemed "collateral" when it "is not bound up with the merits so closely that the court's decision would constitute interference with the agency process." *Johnson v. Shalala*, 2 F.3d 918, 921 (9th Cir. 1993) (cleaned up). Excusing exhaustion of administrative remedies here would interfere with the agency's opportunity to review Plaintiffs' claims as to whether additional post-acute care was medically necessary, whether the use of nH Predict complied with CMS regulations regarding how medical necessity determinations should be made, and the use of utilization management policies and procedures. None of the cases Plaintiffs rely upon (Pls.' Mem. 20) support their argument that their claims are collateral. *Cf. Bowen*, 476 U.S. at 483 (constitutional claims are collateral).

Nor can Plaintiffs show irreparable injury. Plaintiffs ignore, and do not attempt to distinguish, this Court's prior ruling that delay in payment of benefits, standing alone, is not irreparable harm. Defs.' Mem. 28, citing *Timmerman v. Thomson*, No. 03-5221-JRT, 2004 U.S. Dist. LEXIS 15120, at *14-16 (D. Minn. Aug. 5, 2004); *see also Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1 at 13 (exhaustion requirement may cause "occasional individual, delay-related hardship" but "[i]n the context of a massive, complex health and safety program such as Medicare," such "price may seem justified" and "in any event" is required by Congress). Instead, Plaintiffs cite to out-of-circuit cases, none of which support their argument. Pls.' Mem. 20-21, *citing, e.g., Martin v. Shalala*, 63 F.3d 497, 505 (7th Cir. 1995) (no irreparable harm based on delayed payment of Medicare benefits); *Family Rehab., Inc. v. Azar*, 886 F.3d 496, 504 (5th Cir. 2016) (irreparable harm when provider demonstrated it would go out of business). The remaining cases cited by Plaintiffs involve ongoing disability benefits used to pay for basic life necessities. *See, e.g., Mental Health Ass'n*, 720 F.2d at 970; *Bowen*, 476 U.S. at 484; *Eldridge*, 424 U.S. at 331; *Schoolcraft*, 971 F.2d at 86. Plaintiffs have not identified any authority equating ongoing disability benefits with payment of a medical claims.

Finally, Plaintiffs cannot show that exhaustion will be futile. Pls.' Mem. 20. Futility does not refer to the claimant's ability to succeed in their benefits claim. *Timmerman*, 2004 U.S. Dist. LEXIS 15120, at *12. Rather, as Plaintiffs recognize, it considers whether requiring exhaustion in a particular case "serve[s] the purposes of exhaustion, and [is] be futile in the context of the system." *Kaiser*, 347 F.3d at 1115. Notably, Plaintiffs' own Complaint demonstrates they can use this process and have been

successful in some appeals. Compl. ¶¶77, 92, 136, 143. The cases Plaintiffs cite are distinguishable. In both *Schoolcraft* and *Bowen*, the courts excused exhaustion because the entities with the alleged wrongful policies were the very agencies to which plaintiffs were required to appeal. *Bowen*, 476 U.S. at 484, 486; *Schoolcraft*, 971 F.2d at 87. Here, the Medicare appeals process is independent from the procedure that Plaintiffs challenge, and Plaintiffs do not allege flaws in the appeal determinations themselves. Plaintiffs instead complain that appeals are futile because MAOs must periodically re-assess the medical necessity of a continuing stay in a SNF. *See* 42 U.S.C. §1395i-3(b)(2) & (3) (Medicare Part A requiring ongoing determinations of medical necessity of SNF); 88 Fed. Reg. 22,120, 22,207 (Apr. 12, 2023) (MAOs may conduct ongoing review of medical necessity). A determination, on appeal, that a patient is entitled to SNF services on Day 20 does not dictate whether such level of services remain medically necessary on Day 30. Each determination is separate and may be appealed and overturned. The existence of multiple appealable determinations does not negate the necessity of exhaustion.

      Because Plaintiffs have not met any element of the waiver test, much less all three, they cannot be excused from exhaustion.

      **D.**      **Plaintiffs Sued the Wrong Parties**

      Plaintiffs cite no authority for the remarkable proposition that, if exhaustion is excused, Defendants become proper defendants. Pls.' Mem. 26-27. The statute and regulations could not be clearer. Only the Secretary is the proper defendant. Defs.' Mem. 29-30.

## III. CERTAIN STATE LAW CLAIMS FAIL FOR ADDITIONAL REASONS

### A. Plaintiffs Fail to State an Unjust Enrichment Claim

Plaintiffs ignore authority holding that a party cannot plead an unjust enrichment claim in the alternative when a written contract undisputedly governs. *T.B. Allen & Assocs. v. Euro-Pro Operating LLC*, No. 11-3479, 2012 U.S. Dist. LEXIS 90256, at *9-10 (D. Minn. June 28, 2012). The two District of Minnesota cases cited by Plaintiffs are inapposite: in both cases it was questionable whether a contract existed. *See Genz-Ryan Plumbing & Heating Co. v. Weyerhaeuser NR Co.*, 352 F. Supp. 3d 901, 906-07 & n.9 (D. Minn. 2018); *Motley v. Homecomings Fin., LLC*, 557 F. Supp. 2d 1005, 1013-14 (D. Minn. 2008). Here, there is no dispute that a valid contract exists, and Plaintiffs' unjust-enrichment claims are premised on that valid contract. Compl. ¶¶184, 208.

### B. There is no Private Right of Action Under the MUCPA

Plaintiffs cannot use the private attorney general statute to create a cause of action under the MUCPA. Defs.' Mem. 31. Plaintiffs wrongly argue that *Findling v. Grp. Health Plan, Inc.*, 998 N.W.2d 1 (Minn. 2023) overruled *Morris v. American Family Mutual Insurance Co.*, 386 N.W.2d 233 (Minn. 1986). *Findling* addressed whether an entirely different statute could be enforced through Section 8.31. 998 N.W.2d at 5-6. *Morris* is still good law and applies even where Plaintiffs allege a general business practice affecting an entire proposed class. *Schermer v. State Farm Fire & Cas. Co.*, 702 N.W.2d 898, 904-05 (Minn. Ct. App. 2005); *Jaskulske v. State Farm Mut. Auto. Ins. Co.*, No. 14-cv-869, 2014 U.S. Dist. LEXIS 156053, at *7 (D. Minn. Oct. 31, 2014).

## **CONCLUSION**

The Court should dismiss Plaintiffs' Amended Complaint with prejudice.

Dated: July 15, 2024                    DORSEY & WHITNEY LLP

By *s/ Michelle S. Grant*
   Nicole Engisch (#0215284)
   engisch.nicole@dorsey.com
   Michelle S. Grant (#0311170)
   grant.michelle@dorsey.com
   Shannon L. Bjorklund (#0389932)
   bjorklund.shannon@dorsey.com
   David C. Racine (#0401060)
   racine.david@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

Nicholas J. Pappas (admitted *pro hac vice*)
pappas.nicholas@dorsey.com
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, NY 10019-6119
Telephone: (212) 415-9387

*Attorneys for Defendants*