```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF MINNESOTA
 2     _____

 3                                   )
       The Estate of Gene B. Lokken, )  File No. 23-cv-03514
 4     individually and on behalf of )          (JRT/DJF)
       others similarly situated,    )
 5     et al.                        )
                                     )  Minneapolis, Minnesota
 6                     Plaintiffs,   )  August 22, 2024
                                     )  3:30 p.m.
 7     v.                            )
                                     )
 8     UnitedHealth Group, Inc.,     )
       et al.,                       )
 9                                   )
                       Defendants.   )
10     ------------------------------------------------------------

11                  BEFORE THE HONORABLE DULCE J. FOSTER
12            UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

13                          (MOTION HEARING)

14     APPEARANCES (via Zoom Video Conference):

15     For the Plaintiffs:       CLARKSON LAW FIRM, P.C.
                                 Glenn Danas
16                               Michael A. Boelter
                                 22525 Pacific Coast Highway
17                               Malibu, California 90265

18                               LOCKRIDGE GRINDAL NAUEN PLLP
                                 David W. Asp
19                               Derek C. Waller
                                 100 Washington Avenue South
20                               Minneapolis, Minnesota 55401

21     For the Defendants:       DORSEY & WHITNEY LLP
                                 Nicholas Pappas
22                               51 West 52nd Street
                                 New York, New York 10019
23
                                 DORSEY & WHITNEY LLP
24                               Shannon L. Bjorklund
                                 Nicole A. Engisch
25                               50 South Sixth Street, Suite 1500
                                 Minneapolis, Minnesota 55402
```

1    **APPEARANCES** (continued):

2    Court Reporter:          Nancy J. Meyer
                              Registered Diplomate Reporter
3                             Certified Realtime Reporter
                              Warren E. Burger Federal Building
4                             and United States Courthouse
                              316 North Robert Street
5                             St. Paul, Minnesota 55101

6    Proceedings reported by certified stenographer; transcript
     produced with computer technology.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

**IN OPEN COURT**

**(VIA ZOOM VIDEO CONFERENCE)**

THE COURT:  Okay.  This is the matter of The Estate of Gene B. Lokken, et al. v. UnitedHealth Group, Inc., et al., Court File No. 23-cv-3514.

Lead counsel for the plaintiff who will be arguing this motion on behalf of the plaintiff, please identify yourself and identify all the other members of the team who are appearing for the plaintiff today.

MR. DANAS:  Good afternoon, Your Honor.  This is Glenn Danas for the plaintiffs.  I'm here with my colleague Michael Boelter from my firm, Clarkson, as well as co-counsel, David Asp and Derek Waller from Lockridge Grindal.

THE COURT:  All right.  And for the defendants.

MR. PAPPAS:  Good afternoon, Your Honor.  Nicholas Pappas of Dorsey & Whitney for the defendants.  I'm joined today by Nicole Engisch and Shannon Bjorklund, and you heard Deputy General Counsel Brian Thomson from Optum, who's by telephone, and our colleague, Daniel Wassim, also by telephone.

THE COURT:  Okay.  Good afternoon to all of you.

We are here on the defendants' motion to stay

1    discovery pending resolution of their motion to dismiss that

2    has been filed in this case and is currently pending in

3    front of District Judge Tunheim.  Since it is your motion,

4    please begin.

5              MR. PAPPAS:  May it please the Court.  Your Honor,

6    our arguments are fully laid out in our memorandum of law.

7    It's on Docket No. 71, but I would like to respond to the

8    points made by the plaintiffs in their opposition at

9    Docket 75.

10             The parties agree, Your Honor, that Rule 26(c)'s good

11   cause standard applies in determining whether a stay of

12   discovery is appropriate.  In deciding good cause, I think

13   the parties also would agree that the Court generally

14   considers the four-factor test of likelihood of success on

15   the merits, hardship to the defendant, prejudice to the

16   plaintiff, and conservation of judicial resources.  We

17   submit, Your Honor, that we've established -- the defendants

18   have established good cause and that all four factors

19   support a stay of discovery here.

20             I'd like to spend most of my time, with the Court's

21   permission, to talk about likelihood of success.  In looking

22   at the case law in this area, that's clearly the most

23   important factor; although all the factors are factors the

24   Court should consider.

25             The parties generally agree to the formulation of the

1    standard on likelihood of success.  The mere filing of a

2    motion to dismiss does not automatically entitle the

3    defendant to a stay of discovery.  The Court must, quote,

4    peek at the merits, not decide the merits in looking at the

5    motion to stay.  The defendants must show more than a mere

6    possibility that the Court will decide the dispositive

7    motion in defendants' favor.

8          The -- the parties do have a disagreement,

9    Your Honor, as to this court's -- this district court's

10   precedent.  The defendants -- the plaintiffs rely on a case

11   called *Christopherson v. Cinema Entertainment* to argue that

12   defendants have not met the more than a mere possibility

13   standard.  And the -- the plaintiffs also say that the Court

14   should not look at the -- the -- the decision in *Danger v.*

15   *Nextep Funding*, interestingly decided by the same magistrate

16   judge, Judge Brisbois, of this court.  We think the cases

17   are perfectly aligned and reconcilable and fully support the

18   stay of discovery here.

19         And a brief look at those decisions, Your Honor,

20   would establish what, you know -- give a little bit of color

21   what the likelihood of success standard requires here.

22   *Christopherson* involved a claim under the Video Privacy

23   Protection Act.  The defendant in that case argued that a

24   videotape service provider -- that it was not a videotape

25   service provider because it was a public movie theater and

1    that the only case addressing whether public movie theaters

2    can be videotape service providers -- went its way required

3    dismissal.

4         The court in accepting the plaintiff's argument in

5    that case found that the defendant had, quote, over

6    simplified the plaintiff's complaint and that the complaint

7    really focused on website usage.  And, therefore, the court

8    said there was a great deal of authority on website usage

9    with cases going both ways.  And the court, based on that,

10   concluded defendant in that case had not established

11   likelihood of success because the case law did not in any

12   way show a likelihood of success there.

13        By contrast, *Danger* -- again, same magistrate

14   judge -- involved a much stronger motion to dismiss.  *Danger*

15   was a putative class action under the Consumer Leasing Act

16   for failure to disclose terms of an agreement to purchase a

17   dog, Truth in Lending Act, and usury -- of the usury

18   statute.  The court found that the defendant showed some

19   likelihood of success on the merits and the -- and more

20   importantly for our case, the defendants pointed to

21   out-of-circuit cases where courts granted motions to dismiss

22   on standing grounds.

23        But the -- in that case, the Eighth Circuit had not

24   ruled.  The district courts of Minnesota had not ruled on

25   the exact topic.  The court found that defendant's reliance

1    on these favorable out-of-circuit cases was sufficient for

2    the court to find likelihood of success.  And as both the

3    *Danger* and *Christopherson* cases show, the defendant need not

4    show that it is more likely than not or that the defendant

5    has a greater than 50 percent probability that it will

6    prevail on a motion.

7         So I think from the totality of those cases,

8    Your Honor, we come to the standard of, you know, what must

9    Your Honor find in deciding likelihood of success.  And

10   Your Honor actually identified exactly that standard in the

11   case of *Tjaden v. Brutlag, Trucke & Doherty* where Your Honor

12   said a stay would be appropriate if the motion to dismiss

13   would, quote, dispose of all or substantially all of the

14   case, it appears to have substantial grounds, and is not

15   unfounded in the law.

16        And we submit, Your Honor, we've met that standard.

17   And that standard completely explains the *Christopherson*

18   case and the *Danger* case and reconciles the -- the rulings

19   in this district quite well.

20        So going to that standard, Your Honor, had we in our

21   motion to dismiss established that the -- that there are --

22   that our motion would dispose of all the case -- clearly,

23   the plaintiffs don't dispute that our motion to dismiss

24   would resolve the entirety of the case.  So the question

25   becomes have we shown substantial grounds and is our

1    argument not unfounded in the law.  And we -- we believe,

2    Your Honor, we've shown more than substantial grounds, not

3    only not unfounded, we think our arguments are strongly

4    persuasive and should lead to a dismissal of the -- of the

5    current complaint.

6         Your Honor, I'll now turn to the two grounds for the

7    motion.  We have two independent grounds.  One is

8    preemption.  The plaintiffs' claim here, Your Honor, is

9    based on state common law and state insurance law.  And they

10   challenge the manner in which the defendant naviHealth

11   handles the administration of the Medicare Advantage Plans

12   in which it is -- performs administrative services and that

13   the alleged denial of coverage for stays of skilled nursing

14   facilities violates these state laws because naviHealth

15   allegedly uses automated intelligence in place of medical

16   professionals.  So that's the basic state law claim.

17        The Medicare Act, Your Honor, broadly preempts state

18   laws.  And the -- most importantly for -- in our motion to

19   dismiss, the very words of the preemption provision

20   demonstrate how broad preemption is.  The preemption

21   provision says that standards established under Medicare

22   shall supersede any state law or regulation -- "any" being

23   the critical word -- with respect to MA Plans.  And "with

24   respect to" is also very important, Your Honor.  Those two

25   are the -- are the terms that cause the breadth of the

1    preemption.

2         In our memorandum of law, at pages 14 and 15, we've

3    cited cases on point saying exactly what state law -- the

4    term "state law" and what "with respect to" means.

5         In their opposition to our motion to dismiss,

6    plaintiffs argue that the case law defendants have cited

7    should be rejected.  At page 28 of their memorandum of -- on

8    the motion to dismiss, they say, quote, any state law does

9    not encompass common law claims based on interpretation of a

10   Supreme Court case under the federal boating act.

11        Your Honor, we've -- we responded to that in our

12   reply brief.  The federal boating act, obviously, is a

13   different statute, and the Court is going to be required to

14   interpret the Medicare Act.  The Medicare Act language is

15   very different and broader than -- than the federal boating

16   act.  But more importantly, Your Honor, there are cases

17   we've -- and we've cited them all -- supporting exactly the

18   type of preemption of state law and similar Medicare cases.

19        The plaintiffs, by contrast, cited no case law to

20   support the absence of preemption in similar circumstances.

21   We cite -- we would suggest that the Court look at the Ninth

22   Circuit decision in *Do Sung Uhm v. Humana*.  That's the case

23   that the plaintiffs say was wrongly decided.  You know, we

24   believe it's correctly decided.  And they've -- they really

25   have nothing of it in their own *ipsa dixit* to support their

1    argument that it was wrongly decided.

2          They claim some inconsistency between *Do Sung Uhm* and

3    the Eighth Circuit decision in *Wehbi*.  We've -- we've

4    analyzed that in detail, Your Honor.  We believe *Wehbi* fully

5    supports the arguments we've made.  In fact, *Wehbi* found

6    many different state laws in that context to have been

7    preempted.  It found certain other state laws not to be

8    preempted.  We -- we've -- we would argue, Your Honor, that

9    the *Wehbi* case actually supports us because it cites all of

10   the authority we've cited, including the *Do Sung Uhm* case;

11   right?

12         So if *Do Sung Uhm* establishes preemption, the

13   Eighth Circuit fully endorses and supports *Do Sung Uhm* and

14   various distinctions between *Wehbi* and our case that we

15   think fully support preemption in our case.  But, of course,

16   this -- and as we said earlier, this Court doesn't need to

17   rule on the ultimate merits of that argument, Your Honor.

18   You simply need to show -- to find that our arguments are

19   supported by substantial grounds and not unfounded in the

20   law.  And I think we've more than met that threshold.

21         And unless the Court has any other -- any questions

22   on preemption, I can move to exhaustion of administrative

23   remedies.

24              THE COURT:  Please go to exhaustion.

25              MR. PAPPAS:  Okay.  So this is an alternative

1    ground, Your Honor.  If Your Honor finds we're right on

2    preemption, you don't need to consider this.  But if there's

3    any question, you also can consider exhaustion of

4    administrative remedies.  None of the plaintiffs exhausted

5    their administrative remedies here.  Some of them have taken

6    their Medicare claims to different levels of appeal within

7    the -- the CMS administration.  None of them have gone all

8    the way to the Appeals Council.  Some make no appeals

9    whatsoever.  So they're in various stages of appeal there,

10   Your Honor.

11        And in most circumstances, the statute itself,

12   42 U.S. Code 405(g), prohibits them from going to federal

13   court on any claim that, quote, arises under the Medicare

14   Act.  And that's the -- going to be the question that the

15   Court -- that Judge Tunheim will be deciding; that this

16   state law claim here arises under the Medicare Act.  Claims

17   arise under the Medicare Act, Your Honor, even though

18   they're styled as state law claims.  The ground for that --

19   and there's case law that we've cited to the Court on this

20   is -- if the state law claim is, quote, inextricably

21   intertwined with the Medicare claim that there -- there is

22   arising under in those circumstances.

23        The -- the plaintiffs argue that there's no

24   inextricable intertwining here because they, quote, don't

25   seek benefits.  Your Honor, that argument has been rejected

1    by the Supreme Court, by the Eighth Circuit in similar

2    circumstances.  The mere fact that you disclaim the ultimate

3    benefit ruling doesn't mean that it's not inextricably

4    intertwined.  And the case on point, Your Honor, is *Heckler*

5    *v. Ringer*.  In that case, the -- similarly, the plaintiff

6    did not seek benefits but rather sought nullification of a

7    procedure known as bilateral carotid body resection that was

8    a procedure that they claim should have been covered.

9         They claim that was an independent, separable issue.

10   The Supreme Court rejected that.  They said it's

11   inextricably intertwined with the claim for benefits.  It's

12   exactly what we would argue are cases here where the

13   plaintiffs claim that there's some automated use of AI to

14   deny benefits.  It's a similar kind of thing.  It's a

15   practice or procedure that leads to, allegedly, the denial

16   of benefits.

17        The Eighth Circuit applied the *Heckler v. Ringer* case

18   in *Midland Psychiatric Association v. United States*.  We've

19   cited that in our papers.  They found on that basis that the

20   state law claims in that case were inextricably intertwined.

21   It's exactly what we would argue Judge Tunheim should do in

22   this case.  Your Honor, the -- that's the basis for the --

23   our arguments for exhaustion.

24        The plaintiffs also argue exhaustion should be waived

25   in this case, and they cite for that proposition,

1    Your Honor, *Mathews v. Eldridge*.  We responded to that

2    argument, Your Honor, with multiple responses, and it's in

3    our papers.  But the key one, which the plaintiffs don't

4    even respond to, Your Honor, is that the Supreme Court has

5    limited the excusal or waiver of exhaustion to

6    constitutional claims.  There is no constitutional claim

7    here.  And so under the -- the Supreme Court's decision in

8    *Califano v. Sanders* -- we've cited that in our papers --

9    it's very clear that the Medicare Act statute does not allow

10   for excusal or waiver of exhaustion.

11         Even under the *Eldridge* factors, Your Honor -- and I

12   won't belabor it -- the plaintiffs haven't met any of those

13   standards either.  So for all those reasons, there's --

14   again, going back to the standard that Your Honor will --

15   will apply, there's more than substantial grounds for our

16   position on the motion to dismiss, and it's not unfounded in

17   the law.

18         THE COURT:  Mr. Pappas, could you address the

19   other three factors.

20         MR. PAPPAS:  I was just going to do that,

21   Your Honor.

22         So the -- first we'll talk about prejudice.  The

23   defendants will suffer prejudice absent the stay.  We quoted

24   extensively from the plaintiffs' Rule 26(a) disclosures

25   where the plaintiffs have indicated that they intend to

1    conduct broad discovery for a class they describe as having

2    hundreds of thousands or millions of people.  Even the

3    claims data, Your Honor, which they claim they would seek,

4    would be -- would satisfy the enormous burden standard.

5          Plaintiffs also say, well, you know, this is an

6    ordinary -- an ordinary nationwide class action.

7    Your Honor, I would say there's no such thing as an ordinary

8    nationwide class action.  And the cases are very clear

9    that those types of costs and burdens are -- are exactly

10   the kinds of things that, as a gatekeeper, Your Honor

11   should prevent from visiting prejudice on the defendants.

12   *Danger* says that very clearly, but the Court can look to

13   *Ashcroft v. Iqbal*, the Eighth Circuit's decision in

14   *Kaylor v. Fields*, all of which made clear in the absence of

15   a well-pled complaint, there should be no discovery, quote,

16   cabined or otherwise.  It's all laid out in our papers.

17         Prejudice to plaintiffs.  As there would be prejudice

18   to the -- a burden to the defendant, the plaintiffs would

19   suffer no prejudice.  There's -- there would be a temporary

20   delay in their getting discovery, which in this case is

21   largely going to be documents.  The plaintiffs say, well,

22   there's going to be some fading of memory of class members,

23   which --

24               THE COURT:  They also have some class members --

25   pardon the crudeness of this -- but pass away because of

1    this.  So how do you address that?

2        MR. PAPPAS:  Well, Your Honor, I don't mean to be

3    crude either.  But what can Your Honor do to get discovery

4    from people who have passed away?  I mean, it's already

5    done.  To the extent they have clients, they can talk to

6    their clients; right?  I mean, that's all they've cited

7    is -- is class members; right?  And to the extent that there

8    are other people out there, I -- I don't -- I don't think

9    there's anything that the Court or we could do to stop them

10   from talking to class members.  So they're really talking

11   about discovery from the defendants here.  That's really

12   what they're talking about.

13       And in any event, their claim of whether AI was used

14   is -- is largely going to be determined based on documents;

15   right?  I mean, it may be that there are some additional

16   testimony that may -- they may get from the individuals, but

17   I would say largely that's not going to be the case.  But

18   who knows.  I don't know how they're going to prove this

19   case at the end of the day.

20       And the final factor, Your Honor, conservation of

21   judicial resources, and this is quite important.  The

22   conservation of judicial resources point, Your Honor, goes

23   to the fact that the exhaustion argument that I talked about

24   earlier is jurisdictional; and, therefore, that issue is

25   squarely before Judge Tunheim.  If there was discovery and

1    if we weren't to seek a protective order at the time that

2    discovery is actually served -- and it has not been served.

3    We agree with the plaintiffs on that point.  It hasn't been

4    served yet, but they told us it's coming; right?  They told

5    us they want class discovery by October and service of some

6    settlement discussion they're going to have.

7         We will just be right back before Your Honor, and

8    Your Honor will have to decide the jurisdictional question.

9    The Court has no power in a case where the Court has no

10   subject-matter jurisdiction to rule even on discovery.  And

11   we've cited that -- that authority, Your Honor, to the --

12   the *Danger* case, again, that I mentioned earlier supports

13   that idea as well.  So we do think the conservation of

14   judicial resources would favor a stay for that additional

15   reason.

16        And unless the Court has any other questions, that's

17   what I hope to present today, Your Honor.

18        THE COURT:  All right.  Thank you, Mr. Pappas.

19        Your response, Mr. Danas.

20        MR. DANAS:  Yes.  Thank you, Your Honor.

21        Well, starting with, I guess, the -- you know, the

22   first, we, you know, do agree that the four-factor test

23   applies here.  You know, the *TE Connectivity* case that we

24   cited in our opposition talks about the fact that unless a

25   complaint is frivolous or clearly without merit, a stay is

1    inappropriate.  And the *Christopherson* case spoke to the

2    heavy burden that's on the defendant moving to stay

3    discovery with the presumption favoring the plaintiffs.

4         The -- you know, in this case, the defendant, the

5    movant, really included nothing about any of these merits

6    arguments in its papers, in its motion.  Their heavy burden

7    was -- in order to walk Your Honor and us, as the party

8    opposing, through exactly why, you know, the merits issues

9    favor them so that we could respond to it.  And, in fact,

10   all they did was, I believe, in one or two sentences

11   categorically describe the headlines of the three main types

12   of arguments that they offered in their motion to dismiss

13   that's currently pending.

14        Where the law on the -- on the issues is unclear or

15   unsettled, the district court -- or I'm sorry, the court in

16   *Christopherson* said that the defendant must meaningfully

17   discuss the arguments and that a passing reference to

18   arguments is patently insufficient.  A passing reference is

19   exactly what we got in the papers.  And as opposing counsel

20   mentions numerous times, it's all in our papers.  Well, you

21   know, our response is to their merits arguments in the

22   motion to dismiss opposition are all in our papers.

23        We talk there about the fact that there is here an

24   exception to the exhaustion requirement because there is, in

25   fact, futility.  There is a -- our claims are collateral to

1    benefits claims.  We're not seeking benefits determinations.

2    Rather, we're challenging a process that's being used here,

3    and that there is irreparable harm from -- if the exhaustion

4    requirement were not waived by the Court.

5        THE COURT:  How do you address preemption?

6        MR. DANAS:  We address preemption by the fact that

7    we offered Eighth Circuit cases, *Wehbi* and *Rutledge*, to

8    explain -- and those are in-circuit cases -- to explain why

9    these are, in fact, not preempted.  And we also explained in

10   our papers there that defendants are relying primarily on

11   out-of-circuit cases for a much broader flavor of field

12   preemption, which is one that does not apply here.

13       Under the exact wording of the express preemption

14   portion of the statute, that would seem to exclude common

15   law claims because we have legal arguments about why that's

16   so.  And, in fact, we have common law claims here.  Using

17   the arguments that we made in our papers, the express

18   preemption provision would apply to statutory claims, and

19   that's -- those are not primarily what we're bringing.

20       All that said, the -- you know, the -- if one reads

21   the different cases from this district regarding stays of

22   discovery -- for instance, the *Medtronic* MDL case that

23   opposing counsel cited -- those are cases that are clearly

24   concerned about fishing expeditions where there is a -- a

25   really dubious and perhaps thin complaint.  And the fear is

1    that opening -- opening up discovery in order to find new

2    claims, which is what the Medtronic court explained in great

3    detail it was concerned about, is something the Court

4    doesn't want to dignify.

5          That's not what we're doing here.  Our complaint is

6    quite detailed and is -- and thorough, and we have a very

7    clear idea of what our claims are and what sorts of

8    information we seek to substantiate them with.  There are no

9    specific discovery requests that have been made, and there

10   are certainly none that could be or were identified by the

11   other side regarding the prejudice that they would incur if

12   discovery were allowed to move forward.

13         Our hope would be that we would be allowed to

14   participate in the settlement conference that Your Honor

15   asked us to take -- to take part in, which would allow --

16   which would really require us to have some idea at least

17   about the size of the class and the composition of the

18   class.  And this is data that is entirely within United's

19   possession.  When opposing counsel says, well, we can speak

20   with our clients, well, that's true.  But we have a putative

21   class that we're representing, and we would seek to do some

22   discovery so that we could have meaningful investigation of

23   the claims by speaking to other folks.

24         At this point United has sole possession of the

25   contact information and the composition of the class.  We

1   don't have that information.  We would seek to be able to

2   get that if we're to be able to participate meaningfully in

3   a settlement conference.  We also did mention -- and was

4   omitted from the other side's argument -- that we were

5   seeking to speak with people, you know, whose memories could

6   fade aside from just class members.  We are hoping to speak

7   with United employees because part of our allegations are

8   that United places a great deal of pressure on its employees

9   to hew to the naviHealth output as opposed to being able to

10  deviate from it.  Those are the very sorts of live witnesses

11  that we would hope to speak with whose memories could fade

12  over the course of time.

13       Regarding the prejudice to plaintiffs by an

14  indeterminate stay, I think we explained in our opposition

15  there that particularly where you're dealing with a

16  vulnerable aging and infirm class, as we are here, for us to

17  be able to speak with these folks while they're still alive

18  and able to participate in being in -- in an investigation,

19  that we hope to get moving as quickly as possible; that

20  would be a quite clear and concrete harm or a prejudice that

21  we would suffer by an indeterminate stay.

22       We don't know how long Judge Tunheim will take to

23  rule on the motion.  But from statistics, it can be -- seems

24  to be an average of about 7 months and that would be, you

25  know, a -- an amount of time that would prejudice --

1    prejudice us if we were not even able to engage in any

2    discovery beforehand.

3         Regarding the court's resources, again, the other

4    side did not point to any judicial resources that would be

5    saved by staying discovery.  There was a -- a vague

6    reference to potential discovery disputes.  And, of course,

7    those are hypothetical, and those could be dealt with at the

8    time that they arise.  And if, in fact, those disputes are

9    onerous and spinning out of control, the Court could then

10   stay discovery at that point.

11        But right now we seek -- we seek, really, to be able

12   to engage in some discovery so that we don't have our

13   clients' or our putative clients' memories, you know,

14   degrade or become unavailable and United's own employees

15   whose memories will degrade or perhaps become unavailable as

16   time goes on.

17        That was -- those are really the main points, and I'd

18   be happy to speak to any other -- other points if Your Honor

19   has any questions or anything that I could clarify.

20        THE COURT:  No questions.

21        And I am prepared to issue my ruling at this time

22   from the bench; so you'll be getting a bench ruling on this

23   today.

24        And so I have considered the parties' arguments today

25   and am taking those into account, as well as the moving

1    papers and the responses to those papers that have been

2    filed.  I am going to apply the four-factor test.  I believe

3    both parties are in agreement that that is the test that's

4    applicable here.  Based on my application of that test, I

5    find that the defendants have met the burden of showing good

6    cause and overcoming the presumption against a stay here.

7    And I will explain my reasoning for that now.

8          First of all, on the merits of the motion, I wish to

9    reiterate it is not my job -- and I do not in any way intend

10   to overstep my bounds and issue any kind of determination

11   with respect to the decision of what ultimately will be

12   Judge Tunheim's decision to make on the merits of that

13   motion.  However, the law does allow me to take a quick peek

14   at the merits of that motion simply to determine whether

15   there is -- and I believe the standard is not a likelihood

16   of success, but a mere -- more than -- or at least a mere

17   possibility of success on the motion.  And with that

18   particular standard in mind, I find that that standard has

19   been met, specifically with respect to the preemption

20   argument.

21         I find that argument is not unfounded in the law and

22   that it has been supported by substantial grounds.  That

23   does not mean that -- again, that I am making a

24   determination that that motion will succeed or in any way

25   trying to supersede the determination that Judge Tunheim

1    will ultimately have to make on that argument.  I am not

2    taking into account the exhaustion argument here.  I think

3    that argument is fairly complex.  But having found that

4    there is at least a mere possibility of success on the

5    preemption argument, I find that that factor is in the

6    defendants' favor.

7         With respect to hardship or inequity to the moving

8    party if this matter is not stayed, again, I find for the

9    defendants on that factor.  I think there is a potential

10   substantial hardship.  We're talking about potentially, as

11   the plaintiffs have said in their filings, hundreds of

12   thousands or even millions of patients whose claims might be

13   at issue.  The mere culling of data to identify who those

14   patients might be is going to take a substantial -- an

15   extraordinary amount of effort and work.

16        I think it is disingenuous to claim that this is

17   simply the standard hardship of engaging in litigation and,

18   in particular, given the size and breadth of discovery at

19   issue in this case, which is potentially staggering.  I

20   think that this is an unusual case.  It is not a traditional

21   case, and given the likely need for the defendants to invest

22   in the amount of time and money on discovery if -- that

23   could be avoided and should have been avoided if dismissal

24   is granted, I find that that factor weighs in favor of the

25   defendants.

1      With respect to prejudice to the nonmoving party if

2  discovery is delayed, I do think that there's some prejudice

3  here.  There is definitely a possibility for -- first of

4  all, just having to wait for a resolution of one's claim is

5  by itself prejudicial.  And in this case, as the plaintiffs

6  have pointed out, their population of clients is elderly and

7  you have the -- and while defendants pointed out that, yes,

8  they have access to the -- to the lead plaintiffs and can

9  interview them, they certainly don't have information about

10  who the other plaintiffs in the class might be and cannot

11  explore those individuals' claims without the data they are

12  seeking in discovery.  So there is some prejudice here.

13      However, I note a couple of things.  First of all,

14  the plaintiffs have themselves protracted this litigation by

15  filing a motion to amend the complaint almost 5 months after

16  this lawsuit was initiated, and that is the complaint that

17  is at issue in the motion.  So there's been some delay that

18  is not entirely of the defendants' making here.  And the

19  district judge, Judge Tunheim, has scheduled a motion

20  hearing to take place on this very motion, I believe -- and

21  you folks here can correct me if I'm wrong -- I think that's

22  next week that you're going to be having oral argument on

23  that motion.  So I don't know how long, of course, it will

24  take Judge Tunheim to issue a ruling, but it is clear to me

25  that that motion is progressing forward and you should have

1    a decision sometime within the next few months.

2         And then I note that the plaintiffs have made this

3    argument with respect to the confidential settlement update

4    letter that I ordered to be submitted by the parties in a

5    few months' time.  I -- just for clarity's sake, so that

6    everyone here understands what I'm doing with those letters,

7    I am not asking you to have a full-blown settlement

8    conference at the time that you meet and confer with respect

9    to those letters.

10        It is really a touch point that the parties meet with

11   each other, talk about where you are in discovery, what

12   additional discovery you might need in order to be able to

13   have a fruitful settlement discussion, whether a very early

14   settlement conference is likely to be productive, or

15   whether, instead, you need to conduct some amount of

16   discovery before.  It will be optimum to have that

17   discussion, whether -- if you have a settlement conference,

18   you want to have it with me or you want to have it with a

19   mediator.  All of those are the kinds of things that I want

20   you to talk about.  But it is not a requirement that you

21   conduct any discovery at all before you have this

22   meet-and-confer and simply provide me with an update on

23   where you are.

24        And it is my practice when I get those update letters

25   if the parties have indicated -- if even one party has

1    indicated that settlement is not yet optimum and they don't

2    quite know yet because of the stage in the litigation that

3    they are in when that might be, I will issue another order

4    for another update letter at another time so that I can keep

5    tabs on where the discussion is.  But it is not a

6    requirement that you have a full-blown settlement discussion

7    with discovery in hand in order to meet that particular

8    order.

9         So with all of those facts in mind, I believe that

10   there is some prejudice to the plaintiff from this delay,

11   but I don't think it is a substantial prejudice.  I think it

12   is prejudice that is caused by having to wait a few months

13   for a determination.  But I don't think it is significant,

14   and I think it is significantly outweighed by the potential

15   hardship to the defendants of trying to pull all this

16   information together given the potential that the case will,

17   in fact, be dismissed on their motion to dismiss.

18        And then, finally, with respect to the conservation

19   of judicial resources, this case has barely begun, and

20   already the parties have shown some litigious tendencies.

21   And I am aware, again, of the size and breadth of possible

22   discovery in this case.  And given all of that, I am

23   confident that avoiding unnecessary discovery motions is

24   something that will conserve substantial judicial resources

25   in this particular case.  And so I find that factor weighs

1    in favor of granting the stay.

2          And for all of those reasons, I find that there is

3    good cause to grant a stay in this case, and a stay will be

4    granted.

5          Is there anything further from either side?

6              MR. DANAS:  No, Your Honor.

7              MR. PAPPAS:  Nothing from defendants.  Thank you,

8    Your Honor.

9              THE COURT:  All right.  Court is adjourned.

10              (Proceedings were concluded at 4:08 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    CERTIFICATE OF COURT REPORTER

2

3            I, Nancy J. Meyer, Registered Diplomate Reporter,

4     Certified Realtime Reporter, do hereby certify that the

5     above and foregoing constitutes a true and accurate

6     transcript of my stenograph notes and is a full, true, and

7     complete transcript of the proceedings to the best of my

8     ability.

9

10                        Dated this 3rd day of September, 2024.

11

12                        /s/ Nancy J. Meyer
                          Nancy J. Meyer
13                        Official Court Reporter
                          Registered Diplomate Reporter
14                        Certified Realtime Reporter

15

16

17

18

19

20

21

22

23

24

25