**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

THE ESTATE OF GENE B. LOKKEN,
*individually and on behalf of all others*
*similarly situated*, et al.,

                           Plaintiffs,

v.

UNITEDHEALTH GROUP, INC.;
UNITEDHEALTHCARE, INC.; NAVIHEALTH,
INC.; and DOES 1–50,

                           Defendants.

Civil No. 23-3514 (JRT/DJF)

**MEMORANDUM OPINION AND ORDER**
**GRANTING IN PART AND DENYING IN**
**PART DEFENDANTS' MOTION TO**
**DISMISS**

---

David W. Asp, Derek C. Waller, Emma Ritter Gordon, and Karen Hanson Riebel, **LOCKRIDGE GRINDAL NAUEN PLLP**, 100 Washington Avenue South, Suite 2200, Minneapolis, MN 55401; Glenn Danas I, Michael August Boelter, Ryan Clarkson, and Zarrina Ozari, **CLARKSON LAW FIRM, P.C.**, 22525 Pacific Coast Highway, Malibu, CA 90265; James J. Pizzirusso and Nicholas Murphy, **HAUSFELD LLP**, 888 Sixteenth Street Northwest, Suite 300, Washington DC, DC 20006; Steven M. Nathan, **HAUSFELD LLP**, 33 Whitehall Street, Fourteenth Floor, New York, NY 10004, for Plaintiffs.

Michelle S. Grant, Nicole A. Engisch, and Shannon L. Bjorklund, **DORSEY & WHITNEY LLP**, 50 South Sixth Street, Suite 1500, Minneapolis, MN 55402; Nicholas Pappas, **DORSEY & WHITNEY LLP**, 51 West Fifty-Second Street, New York, NY 10019, for Defendants.

The Estate of Gene B. Lokken, the Estate of Dale Henry Tetzloff, Glennette Kell,

Darlene Buckner, Carol Clemens, Frank Chester Perry, the Estate of Jackie Martin, John J.

Williams, as Trustee of the Miles and Carolyn Williams 1993 Family Trust, and William Hull

(collectively "Plaintiffs") are Medicare Advantage customers of Defendants United Health

Group, UnitedHealthcare, Inc., and naviHealth, Inc. (collectively "UHC"). Each Plaintiff sought coverage for post-acute care, and each was eventually denied that coverage. These denials resulted in worsening injuries and death in some cases. Plaintiffs, on behalf of themselves and others similarly situated, bring seven causes of action under state law theories alleging that UHC's use of an artificial intelligence program, called nH Predict, to deny coverage was unreasonable.

UHC filed a motion to dismiss Plaintiffs' claims. Because all of Plaintiffs' claims are inexplicably intertwined with a claim for benefits, all of Plaintiffs' claims are subject to the exhaustion of administrative remedies requirement. The Court, however, will waive exhaustion on futility grounds. Notwithstanding a waiver of the exhaustion requirement, the broad preemption provision in the Medicare Act results in most of Plaintiffs' claims being preempted. Plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing, however, survive preemption because those claims do not aim to regulate the same subject matter as the federal standards. In other words, the Court need only review insurance documents to resolve these claims. The Court will grant in part and deny in part UHC's motion to dismiss, allowing the breach of contract and breach of implied covenant of good faith and fair dealing claims to proceed.

**BACKGROUND**

I.    **FACTS**

Plaintiffs purchased Medicare Advantage ("MA") health insurance coverage from UHC. (Am. Compl. ¶¶ 30, 32, Apr. 5, 2024, Docket No. 34.) UHC sold MA plans as an

alternative to traditional Medicare. (*Id.* ¶¶ 30–31.) When Plaintiffs purchased MA plans, UHC provided a written insurance contract which included a requirement to "provide benefits for covered health services and [] pay all reasonable and medically necessary expenses." (*Id.* ¶ 32.) UHC's insurance agreements also state, "UnitedHealthcare's Clinical Services Staff and Physicians make decisions on the health care services you receive based on the appropriateness of care and service and existence of coverage." (*Id.* ¶ 187.)

One service that MA plans cover is "post-acute care" which is "medically necessary care" following serious illness or injury. (*Id.* ¶¶ 33–34.) Post-acute care is covered through a prospective payment system, meaning that patient claims are evaluated before or during treatment. (*Id.* ¶¶ 35–36.) As such, claim denial can result in termination of active post-acute services or refusal of services before they even commence. (*Id.* ¶¶ 36–37.) When claims are denied, patients must choose to forgo treatment or pay out of pocket for the services. (*Id.* ¶ 36.)

After a claim is denied, the Medicare Act outlines a four-level appeals process through which patients can challenge their coverage denial. (*Id.* ¶ 46.) First, a patient must appeal to Quality Improvement Organizations ("QIO"), which are independent third-party organizations established to review claims determinations, per the Medicare Act. (*Id.* ¶¶ 45–46.) If the QIO affirms the denial, then, the patient may apply for reconsideration by the same QIO. (*Id.* ¶ 46.) Then, if the QIO does not change its position,

the patient may appear before an Administrative Law Judge.  (*Id*.)  The final step includes a hearing before the Medicare Appeals Council.  (*Id.*)

All Plaintiffs submitted either a pre-authorization or a claim for benefits for post-acute care.  (*Id.* ¶ 33.)  All claims were eventually denied.  (*Id.* ¶¶ 36–37.)  Plaintiffs appealed their denials to differing points in the appeals process, but none completed the entire appeals procedure.  (*Id.* ¶¶ 66–67, 77, 80, 83, 92, 106, 113, 122, 133, 136, 143, 146, 156.)  Many Plaintiffs paid out of pocket for continuing care, while others went without care.  (*E.g. Id.* ¶¶ 68, 86.)  The Amended Complaint alleges that Plaintiffs suffered worsening injury, illness, or death as a result of the denials.  (*Id.* ¶¶ 109, 149.)

Plaintiffs claim that UHC used an artificial intelligence program, nH Predict AI Model ("nH Predict"), in lieu of physicians to make coverage determinations.  (*Id.* ¶¶ 37–38.)  nH Predict compares the specific patient with similar patients and recommends an estimated amount of post-acute care needed.  (*Id.* ¶ 39.)  Plaintiffs contend that UHC used this model to determine the amount of coverage an individual patient needed, regardless of the recommendation made by their treating physician.  (*Id.* ¶¶ 38–39.)  Plaintiffs describe the nH Predict as applying "rigid criteria" that UHC required its employees to follow under the threat of termination.  (*Id.* ¶ 42.)  Additionally, Plaintiffs allege that UHC knew of nH Predict's inaccuracies because over 90% of claim denials are reversed on appeal and over 80% of preauthorization denials are reversed.  (*Id.* ¶ 47.)  UHC denies any use of nH Predict.  (Def.'s Reply at 10 n.1, July 15, 2024, Docket No. 65.)

Plaintiffs also allege that UHC has frustrated the appeals process. (Am. Compl. ¶¶ 48–49, 53.)   Plaintiffs claim that when a patient has a denial overturned, UHC immediately issues another denial letter such that the patient is perpetually stuck in a loop of denial, appeal, denial until eventually they give up. (*Id.* ¶ 49.) Additionally, Plaintiffs accuse UHC of approving any appeals that reach the late stages so that administrative remedies are never exhausted. (*Id.* ¶ 53.)

## II.   PROCEDURAL HISTORY

Plaintiffs filed their original class action complaint on November 14, 2023. (Compl., Docket No. 1.) Plaintiffs amended their class action complaint on April 5, 2024. (Am. Compl.) Plaintiffs Amended Complaint includes seven state law causes of action: breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, insurance bad faith, negligence per se, unfair and deceptive insurance practices, and unfair competition. (*Id.* ¶¶ 183–275.) Plaintiffs seek damages as well as declaratory and injunctive relief. (*Id.* at 58.) UHC filed a motion to dismiss for lack of jurisdiction for failure to exhaust administrative remedies and also for failure to state a claim upon which relief can be granted based on a theory of preemption. (Mot. Dismiss, May 20, 2024, Docket No. 41.)

**DISCUSSION**

## I.    STANDARD OF REVIEW

Article III of the Constitution requires that every matter before a court be a case or controversy.  U.S. CONST. art. III, § 2.  This requirement must be met throughout all stages of the case, not just when the case is filed.  *See Burke v. Barnes*, 479 U.S. 361, 363 (1987).

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the Court must first "distinguish between a 'facial attack' and a 'factual attack.'"  *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).  A facial challenge requires the court to "determine whether the asserted jurisdictional basis is patently meritless by looking to the face of the complaint . . . and drawing all reasonable inferences in favor of the plaintiff."  *Biscanin v. Merrill Lynch & Co., Inc.*, 407 F.3d 905, 907 (8th Cir. 2005) (citations omitted).  In a factual attack, the nonmoving party "does not have the benefit of 12(b)(6) safeguards" and the court "inquires into and resolves factual disputes."  *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 801 (8th Cir. 2002).[1]

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face."  *Braden v. Wal-Mart Stores, Inc.*, 588

---

[1] *overruled in part on other grounds by Slayden v. Ctr. for Behav. Med.*, 53 F.4th 464, 469 n.4 (8th Cir. 2022).

F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court construes the complaint in the light most favorable to the plaintiff, drawing all inferences in the plaintiff's favor. *Ashley Cnty., v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). Although the Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). In other words, a complaint "does not need detailed factual allegations" but must include "more than labels and conclusions, and a formulaic recitation of the elements" to meet the plausibility standard. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## II.    ANALYSIS

Plaintiffs' claims face two potential challenges: (1) failure to exhaust administrative remedies and (2) federal preemption. Courts differ in how to evaluate these two issues, often blurring the requirements and language, but because failure to exhaust is a jurisdictional issue, the Court will consider this issue first and then evaluate federal preemption. *See generally Yeomans v. Blue Shield of Cal.*, 712 F. Supp. 3d 1336, 1343–46 (C.D. Cal. 2024). Because UHC challenges only the allegations in the complaint, the Court construes the motion as a facial attack on subject matter jurisdiction. *BP Chems. Ltd. v. Jiangsu Sopo Corp.*, 285 F.3d 677, 680 (8th Cir. 2002).

A.      Exhaustion

The Court must first determine if Plaintiffs' claims are subject to the administrative

exhaustion requirements and, if so, whether Plaintiffs met those requirements.

1.      Applicability of Exhaustion Requirements

Any claim arising out of the Medicare Act is subject to administrative exhaustion

governed by Section 405(g) and (h) of the Social Security Act.  42 U.S.C. §§ 405(g)–(h),

1395ff(b)(1)(A); *Heckler v. Ringer*, 466 U.S. 602, 605, 614–15 (1984); *c.f. Weinberger v.

Salfi*, 422 U.S. 749, 760 (1975) (describing exhaustion of claims arising under the Social

Security Act).  In other words, one must receive a "final decision" by the Secretary before

bringing an action in federal court.[2]  42 U.S.C. § 405(g).

A claim arises under the Medicare Act when either (1) the "standing and

substantive basis for the presentation" of the claims is the Medicare Act, or (2) it is

"inextricably intertwined" with a Medicare benefits determination.  *Ringer*, 466 U.S. at

614–15.  Claims are "inextricably intertwined" when, despite being brought under

different laws, they are nothing more than a challenge to a benefits decision.  *Id.* at 614;

*see also Reuben v. Ziemer*, No. 23-3423, 2024 WL 2477049, at *2–3 (D. Minn. May 1, 2024)

(finding a claim was "inextricably intertwined" even when the complaint did not reference

_____

[2] UHC argues that it is not the proper defendant and instead the claims should have been
brought against the Secretary.  However, private entities acting on behalf of the United States or
the Secretary as a Medicare Advantage Organization are subject to federal action.  *Midland
Psychiatric Assocs., Inc. v. United States*, 145 F.3d 1000, 1003–04 (8th Cir. 1998); *Reuben v. Ziemer*,
No. 23-3423, 2024 WL 2477049, at *3 (D. Minn. May 1, 2024).

the Medicare Act).  In fact, even some claims that challenge Center for Medicare and Medicaid Services ("CMS") regulations themselves arise under the Medicare Act because they originate out of a denial of benefits.  *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1089 (N.D. Cal. 2011) (finding state law claims that challenged a Medicare Advantage Organization's conduct as violating the Medicare Act to constitute a claim for benefits that must be exhausted).

Although Plaintiffs challenge the process of making the denial decision instead of the denial itself, their claims clearly arise from a denial of benefits.  Plaintiffs ultimately take issue with the fact that coverage was denied, and courts generally take an expansive view of "arising under" the Medicare Act.  *See, e.g.*, *Ringer*, 466 U.S. at 614–15.  The Plaintiffs' claims arise under the Medicare Act and are subject to the exhaustion requirements.

### 2.    Satisfaction of Exhaustion Requirements

Exhaustion requires two elements: (1) a nonwaivable presentment requirement, and (2) a waivable exhaustion requirement.  *Bowen v. City of N.Y.*, 476 U.S. 467, 483 (1986).

Presentment is satisfied where plaintiffs submitted a claim for benefits.  *Ringer*, 466 U.S. at 617.  All Plaintiffs had claims denied, which means they submitted claims for benefits and thus met the presentment requirement for exhaustion purposes.  However, no plaintiff has followed a claim through the entire appeals process and received a final decision by the Medicare Appeals Council.

Since Plaintiffs admit exhaustion has not been completed, the Court must determine whether exhaustion should be waived. Waiver is appropriate when (1) the claims are collateral, (2) irreparable injury would follow, and (3) exhaustion would be futile. *Mathews v. Eldridge*, 424 U.S. 319, 330–31 (1976); *see also Bowen*, 476 U.S. at 485.

First, the Court finds it difficult to conceive of a situation where claims that arise under the Medicare Act could also be "wholly collateral" to their overall claim for benefits under the Act. *In re Heritage Sw. Med. Grp., P.A.*, 309 B.R. 916, 920 (N.D. Tex. 2004); *see also Kaiser v. Blue Cross of Calif.*, 347 F.3d 1107, 1115 (9th Cir. 2003). So, while Plaintiffs accurately cite other precedent that presents similar factual circumstances where courts found the claims were collateral, those cases did not first evaluate whether the claims arose out of the underlying Act. *See Schoolcraft v. Sullivan*, 971 F.2d 81, 86 (8th Cir. 1992) (evaluating a challenge to the appeals process of the Social Security Act); *Bowen*, 476 U.S. at 485 (same). Because the claims arise out of the Medicare Act, the Court concludes that it cannot find the claims are "wholly collateral" to the Plaintiffs' claims for benefits.

Second, a finding that the claims are not wholly collateral is not dispositive, because the Plaintiffs allegedly suffered irreparable harm and showed the futility of exhausting administrative remedies. *Bowen*, 476 U.S. at 484 ("The ultimate decision of whether to waive exhaustion should not be made solely by mechanical application of the *Eldridge* factors, but should also be guided by the policies underlying the exhaustion requirement."). Further, the Eighth Circuit has not conclusively determined, and circuits

differ, whether all three factors need to be met before waiver is appropriate. *Compare Titus v. Sullivan*, 4 F.3d 590, 592 (8th Cir. 1993) (combining the waiver requirements with "*and*") *with In Home Health, Inc. v. Shalala*, 272 F.3d 554, 560 (8th Cir. 2001) (combining the waiver requirements with "*or*"); *see also Timmerman v. Thompson*, No. 03-5221, 2004 WL 1765285, at *3–4 (D. Minn. Aug. 5, 2004) (explaining that the Eighth Circuit has not resolved this issue).

Irreparable harm is shown when a "deferment of judicial review until exhaustion of administrative remedies would cause [plaintiffs] injury that cannot be remedied by later payment of the benefits requested." *Martin v. Shalala*, 63 F.3d 497, 505 (7th Cir. 1995); see also *Manakee Pro. Med. Transfer Serv., Inc. v. Shalala*, 71 F.3d 574, 581 (6th Cir. 1995) (citing *Eldridge*, 424 U.S. at 331). The Court has found no irreparable harm when benefits continued during a pending appeal. *Timmerman*, 2004 WL 1765285, at *5. The fact that post-acute care claims require preauthorization or ongoing authorization makes these claims unique because in order to continue receiving care, people often have to pay for care themselves. (*See, e.g.*, Am. Compl. ¶ 68.) As evidenced in the Amended Complaint, many patients who had to decline treatment later suffered worsening injuries and even death. Plaintiffs have therefore shown irreparable harm.

Third, UHC's actions that make any attempt to fully exhaust the administrative remedies futile support a waiver determination. The futility prong addresses whether pursuit of relief through the administrative process will "serve the purposes of

exhaustion, and not be futile in the context of the system." *Kaiser*, 347 F.3d at 1115. Exhaustion serves to "prevent[] premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record . . . ." *Id.* at 1115 n.4 (quoting *Salfi*, 422 U.S. at 765).

Two allegations, taken as true at the motion to dismiss stage, make the appeals process futile. First, UHC allegedly issues repeated denials any time a patient is successful on appeal. As a result, any time a patient gets a denial overturned, another denial is on its way. Second, for the very few appeals that reach the end of the appeals process, UHC allegedly pays the claims and terminates the process. As alleged in the Complaint, this practice would make it virtually impossible for any claim to progress through the entire four-step appeals process and be ripe for judicial review. Thus, the irreparable injury and futility of the appeals process suggests that waiver of administrative exhaustion is appropriate.

The Medicare Act is clear in declaring that any claim "arising under" the Medicare Act must first progress through the administrative process before a district court can exercise jurisdiction. While the exhaustion of administrative remedies is required in almost every case, it is not absolute. There are unique circumstances in which it is

appropriate for the Court to waive that requirement.[3]  Here, the Court is presented with

such a case.  These Plaintiffs allegedly suffered great harm, up to and including death,

because of an allegedly defective procedure of denying claims compounded by efforts to

obliterate any means of effective review through the administrative process.  As a result,

the Court will find that although Plaintiffs' claims were subject to administrative review,

waiver is appropriate such that the Court can exercise jurisdiction.

### B.    Federal Preemption

The Court must next determine if any of the claims fail to state a claim upon which

relief can be granted because they are preempted by federal law.

Under the Supremacy Clause of the Constitution, federal law "shall be the supreme

Law of the Land; and the Judges in every State shall be bound thereby any Thing in the

Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl.

2.  In other words, "state laws that conflict with federal law are without effect."  *Altria*

*Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008) (citation and quotation omitted).  "The purpose

of Congress is the ultimate touchstone in every pre-emption case."  *Id.* (cleaned up).  The

Court begins its "analysis with the assumption that the historic police powers of the States

are not to be superseded by the Federal Act unless that was the clear and manifest

---

[3] UHC contends that waiver is only applicable for Constitutional claims relying on *Califano v. Sanders*, 430 U.S. 99, 109 (1977).  However, *Califano* merely indicates that when a constitutional question is at issue, there is a presumed judicial review.  *Id.* That proposition alone does not foreclose the potential for waiver under other circumstances.

purpose of Congress." *Id.* at 77 (cleaned up).  When the statute includes an express preemption provision, the Court must first look to the statutory language to determine Congress's purpose. *Pharm. Care Mgmt. Ass'n v. Wehbi*, 18 F.4th 956, 971 (8ᵗʰ Cir. 2021).

The Medicare Act, as amended in 2003, states, "The standards established under [Part C] shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under [Part C]."  42 U.S.C. § 1395w-26(b)(3) (effective Dec. 8, 2003); 42 C.F.R. § 422.402.  Prior to the 2003 amendment, the preemption clause included a requirement that the state law or regulation be "inconsistent" with the federal standard. 42 U.S.C. § 1395w-26(b)(3)(A) (effective Dec. 21, 2000 to Dec. 7, 2003).  In conjunction with the amendment, CMS has issued several statements indicating that the amendment intended to expand the scope of the preemption clause, including the common law to the extent it would "specifically regulate an MA plan."  *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1156 (9ᵗʰ Cir. 2010) (citing 70 Fed. Reg. 4588-01, 4665 (Jan. 28, 2005)).  All courts accept that "standard" means a "statutory provision or a regulation promulgated under [the Medicare Act] published in the Code of Federal Regulations."  *Wehbi*, 18 F.4th at 971.

### 1. Common Law Claims

A threshold issue requires the Court to evaluate whether the preemption clause categorically excludes common law claims under *Sprietsma v. Mercury Marine*, 537 U.S. 51 (2002).  Despite the similarities, the Court finds that *Sprietsma* is distinguishable.

In *Sprietsma*, the Supreme Court determined that the phrase "a law or regulation" in the Federal Boat Safety Act ("FBSA") most likely excluded common law claims and only encompassed positive legal enactments. *Id.* at 63. *Sprietsma* excluded common law claims because of the article "a" and the occurrence of law and regulation together. *Id.* The Supreme Court further noted the FBSA's saving clause excludes common law liability from the preemption clause. *Id.*

The preemption clause in the Medicare Act differs from that in the FBSA in two significant ways. First, it states "**any** law or regulation" instead of "**a** law or regulation." 42 U.S.C. § 1395w-26(b)(3) (emphasis added); 46 U.S.C. § 4306 (emphasis added). Second, the Medicare Act contains no such savings clause for common law claims, and instead only explicitly excludes state licensing and claims related to plan solvency. 42 U.S.C. § 1395w-26(b)(3); *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 283 (2014) (describing *Sprietsma*'s substantial reliance on the FBSA savings clause).

True, the Medicare Act preemption language mirrors that of the FBSA in that it uses both the terms "law" and "regulation." As in *Sprietsma*, that would indicate an intention to reference only positive enactments to avoid surplusage. 537 U.S. at 63. However, the Medicare Act's language differs by the use of "any" and the lack of a savings clause for common law claims. The difference between "a" and "any" is significant because "a" implies "discreteness," while "any" implies a more expansive scope. *Compare id.* (analyzing "a") *with Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 218–19 (2008)

-15-

(analyzing "any").  The use of "any" in the Medicare Act's preemption clause thus broadens the language.  *Ali*, 552 U.S. 219; *Northwest*, 572 U.S. at 283 (explaining that broader wording in an express preemption clause is a critical difference from the clause in *Sprietsma*).

In addition to the differences in statutory language, the preemption clause in the Medicare Act is undisputedly broader than that in the FBSA.  The 2003 amendment specifically removed any requirement that state laws must be inconsistent.  42 U.S.C. § 1395w-26(b)(3)(A) (effective Dec. 21, 2000 to Dec. 7, 2003).  Further, CMS has clarified that at least some common law claims are preempted.  70 Fed.Reg. at 4665.

Therefore, because the language is not limited by the article "a," the preemption provision includes no savings clause for common law claims, and CMS has indicated its intent to preempt at least some common law claims, the Court will apply the preemption clause to common law claims when appropriate, and not limit its application to positive enactments of state law.

### 2.    Scope of Express Preemption

With the acknowledgement that preemption may apply to all of Plaintiffs' claims, the Court must now evaluate the scope of the express preemption clause.

The Eighth Circuit addressed the scope of the Medicare Act's preemption clause in *Wehbi*, 18 F.4th at 970–72.  *Wehbi* held that state laws are preempted if they "(1) regulate the same subject matter as federal Medicare [standards] (in which case they are expressly preempted), or (2) otherwise frustrate the purpose of a federal Medicare [standards] (in

-16-

which case they are impliedly preempted)."  18 F.4th at 971.  *Wehbi* reached its conclusion by acknowledging the expansion but describing two remaining limitations: first, the language "with respect to [Medicare Parts C-D] plans" and second only when the federal standard "supersedes" state law.  18 F.4th at 971.  The court further defined "supersede" to mean displace.  *Id.*  The court summarized its analysis of the preemption expansion by noting it went from conflict to field preemption.[4]  *Id.* at 971–72.

UHC relies primarily on Ninth Circuit precedent, which the Plaintiffs claim takes a more expansive view of the Medicare Act's preemption clause than required.  However, it is not immediately clear to the Court how distinct the tests actually are.  The Ninth Circuit has described the preemption clause as applying to anything that is "directly governed by federal standards."  *Uhm*, 620 F.3d at 1158.  Essentially, under this view preemption would cover any state law or regulation if a federal standard exists.  *Morrison v. Health Plan of Nev.*, 328 P.3d 1165, 1168–70 (Nev. 2014).  And the Tenth Circuit has found that the Medicare Act's expanded preemption clause is similar to field preemption. *Pharm. Care Mgmt. Ass'n v. Mulready*.  78 F.4th 1183, 1207–08 (10th Cir. 2023); *see also Medicaid and Medicare Advantage Prods. Ass'n of P.R., Inc. v Emanuelli Hernandez*, 58 F.4th 5, 12–13 (1st Cir. 2023).

─────────────────────

[4] Field preemption exists when "Congress has forbidden the State to take action in the *field* that the federal statute pre-empts," and conflict preemption exists where "compliance with both state and federal law is impossible."  *Pharm. Rsch. & Mfrs. of Am. v. McClain*, 95 F.4th 1136, 1140 (8th Cir. 2024) (quotations omitted).

Nevertheless, one area where *Wehbi* differs from the precedent in other circuits relates to whether states can impose supplemental standards beyond the federal standards in the Medicare Act. *Wehbi* suggests that supplemental standards would not be preempted when "the highly general language of the regulation . . . indicates an intent to leave to the states the specifics . . .." 18 F.4th at 973. This declaration, however, followed an acknowledgement that the area in question is one typically left to the states. *Id.* at 972. Thus, while not totally foreclosed, there remains open questions about how far this supplemental doctrine could stretch.

In sum, the Court finds, consistent with *Wehbi*, that Plaintiffs' claims are expressly preempted by the Medicare Act if they regulate the same subject matter as the Medicare standards or otherwise frustrate the purpose of a Medicare standard.

### 3.    Preemption of Plaintiffs' Claims

Plaintiffs' claims can be divided into two categories: common law claims and statutory claims. While Plaintiffs argue that all the claims relate specifically to the insurance agreement between UHC and its insureds, the Court must look to the underlying allegations within the various claims to determine whether the claims are preempted. *Escarcega v. Verdugo Vista Operating Co.*, No. 19-9478, 2020 WL 1703181, at *11 (C.D. Cal. Apr. 8. 2020) (citing *Uhm*, 620 F.3d at 1157 n.35).

### a.   Common Law Claims

Plaintiffs allege four common law claims: (1) breach of contract, (2) breach of implied covenant of good faith and fair dealing, (3) unjust enrichment, and (4) insurance bad faith.  Some of these claims survive preemption, but others do not.

Both the breach of contract and breach of implied covenant of good faith and fair dealing claims are not preempted.  In these claims, Plaintiffs allege that UHC explicitly described claim decisions as being made by "clinical services staff" and "physicians," without mention of any artificial intelligence.  (Am. Compl. ¶ 187.)  These claims thus effectively arise out of UHC's evidence of coverage documents because the question would be whether UHC complied with its statement that claim decisions would be made by "clinical services staff" and "physicians" when it allegedly used artificial intelligence.  Thus, in analyzing these claims the Court would only be required to investigate whether UHC complied with its own written documents.  Because ruling on these two claims would require the Court to only apply basic contract principles, the breach of contract and breach of the implied covenant of good faith and fair dealing claims do not regulate the same subject matter as the Medicare Act, and thus are not preempted.

The other common law claims are different.  Plaintiffs base their unjust enrichment claim on UHC knowingly receiving funds from Plaintiffs with the intent of denying "medical payments owed to [Plaintiffs]."  (Am. Compl. ¶ 208.)  Although Plaintiffs argue that the medical payments owed to the insureds stem from the insurance agreement, the Medicare Act expressly describes which services are covered.  42 C.F.R. § 422.101.  Any

evaluation of the medical payments Plaintiffs allegedly should have received would regulate the covered serves already regulated by the Medicare Act.  As such, the unjust enrichment claim is expressly preempted.

The bad faith insurance claims fail for similar reasons.  Plaintiffs alleged that the states in which they assert bad faith insurance claims "prohibit using bad faith or unreasonable means to make coverage determinations under an insurance policy."  (Am. Compl. ¶ 214.)  Initially, the bad faith insurance laws seem to only require the Court to determine the motivation behind the coverage denials.  However, a finding of liability on the bad faith insurance claims would force the Court to evaluate whether the denial of coverage was reasonable and whether the use of nH Predict to make that denial decision was reasonable.  The Medicare Act squarely regulates how coverage decisions are to be made and what services are covered.   42 C.F.R. §§ 422.101, 422.566.   Thus, a determination on the reasonableness of denial or the reasonableness of how coverage decisions are made would aim to regulate the same subject matter as the Medicare Act. Because any evaluation of the bad faith insurance claims would require the Court to evaluate standards promulgated by the Medicare Act, as opposed to standards included only in UHC's own written documents, the Court finds the bad faith insurance claims to be preempted.

In sum, the breach of contract and breach of implied covenant of good faith and fair dealing claims are not preempted, and thus may proceed. But the unjust enrichment and bad faith insurance claims are preempted and will be dismissed.

### b.    Statutory Claims

Plaintiffs bring three statutory claims under Oregon's Unfair Claims Settlements Practices Act, the Minnesota Unfair Claims Practices Act ("MUCPA"),[5] and California's Unfair Competition Law and Insurance Code. All three statutes essentially require insurers to use reasonable standards for prompt, individualized evaluation of insurance claims.[6] Because the Medicare Act describes how insurance claim decisions are to be made and the time frame for such decisions, these statutes directly regulate the same subject matter. *See* 42 C.F.R. §§ 422.101, 422.566, 422.568.

The only manner in which these claims could survive preemption then would be a finding that the state standards supplement the federal standards as permitted under *Wehbi*. 18 F.4th 973. However, the Court cannot expand *Wehbi*'s supplemental standard to this case. First, *Wehbi* allowed states to supplement the federal regulations under a

---

[5] The parties dispute whether the Minnesota Unfair Claims Practices Act allows for a private right of action. A private right of action seems likely based on *Findling v. Grp. Health Plan, Inc.*, 998 N.W.2d 1, 7 (Minn. 2023), but as the MUCPA claim is preempted, the Court need not resolve that issue here.

[6] Plaintiffs' claim under Oregon's Unfair Claims Settlements Practices Act also raises the issue of prompt and sufficient notice of denial. However, 42 C.F.R. § 422.568 heavily regulates the timeframe and notice requirements of organization determinations. So, the notice portion of the claim, while distinct, is also preempted.

specific set of circumstances.  The issue in that case concerned pharmacy benefits, which *Webhi* noted is an area typically left to the states.  *Id.* at 972–73.  Here, the Plaintiffs have not presented the Court with any basis to find that coverage decisions are typically left to the states.

Further, *Wehbi* allowed states to provide the specifics when the federal standards were broad and generalized.  *Id.* at 973.  But the federal standards here are not as generalized as those discussed in *Wehbi*.  *Compare* 42 C.F.R. § 422.101 (requiring a medical necessity determination based on whether the services are reasonable or necessary and also the "enrollee's medical history, . . . physician recommendations, and clinical notes") *with* 42 C.F.R. § 423.505(b)(18) (mandating a "standard contract with reasonable and relevant terms and conditions").

Finally, even if the Medicare standards were sufficiently general, it is unclear that the state laws that Plaintiffs suggest supplement the Medicare standards would provide any additional specificity.  The state laws would only impose an additional requirement that the insurers use "reasonable standards" in making coverage decisions.  Thus, while *Wehbi* certainly suggests there are situations where states could provide supplemental, complementary standards to the federal Medicare Act standards, that is not the case here.  As a result, the statutory claims are expressly preempted.

*    *    *

-22-

The Court finds that although the Plaintiffs' claims were subject to the administrative exhaustion requirements, Plaintiffs presented sufficient information to satisfy application of the waiver doctrine. Yet even after surmounting the jurisdictional hurdle, most of the claims fail under preemption. As a result, the only claims that survive both exhaustion and preemption are the claims for breach of contract and for breach of the implied covenant of good faith and fair dealing. The remaining claims will be dismissed.

## CONCLUSION

Plaintiffs bring a putative class action contesting UHC's use of nH Predict, rather than actual people, to make coverage decisions, contradicting UHC's insurance policy documents. Because all the Plaintiffs' claims originate after a denial of benefits, the Medicare Act requires Plaintiffs to exhaust all administrative remedies before the Court can exercise subject matter jurisdiction. No plaintiff has met this requirement. But because the Court finds that Plaintiffs suffered irreparable injury and that exhaustion would be futile, the Court will waive this requirement. Waiving the exhaustion requirement does not save all of Plaintiffs' claims, however; those claims must also withstand the broad preemption clause. Because the unjust enrichment, bad faith insurance, and state statutory claims regulate the same subject matter as the Medicare Act, those claims are preempted. The only claims that survive, then, are the claims for breach of contract and for breach of the implied covenant of good faith and fair dealing because the Court will only need to evaluate compliance with the insurance agreements.

-23-

Accordingly, the Court will grant in part and deny in part UHC's motion to dismiss, allowing Plaintiffs' breach of contract and breach of the implied covenant of good faith and fair dealing claims to proceed.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Docket No. 41] is **GRANTED in part** and **DENIED in part** as follows:

1. Count 1 (Breach of Contract) and Count 2 (Breach of the Implied Covenant of Good Faith and Fair Dealing) may proceed; and

2. Count 3 (Unjust Enrichment), Count 4 (Insurance Bad Faith), Count 5 (Negligence Per Se – Oregon), Count 6 (Unfair and Deceptive Insurance Practices – Minnesota), and Count 7 (Unfair Competition Law – California) are dismissed with prejudice.

DATED: February 13, 2025
at Minneapolis, Minnesota.

JOHN R. TUNHEIM
United States District Judge