UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

The Estate of Gene B. Lokken, Glennette
Kell, Darlene Buckner, Carol Clemens,
Frank Chester Perry, The Estate of Jackie
Martin, John J. Williams, as Trustee of the
Miles and Carolyn Williams 1993 Family
Trust, and William Hull, individually and
on behalf of all others similarly situated,

          Plaintiffs,

vs.

UNITEDHEALTH GROUP, INC.,
UNITED HEALTHCARE, INC.,
NAVIHEALTH, INC. and Does 1-50,
inclusive,

          Defendants.

---

Civil File No. 23-cv-03514-JRT-SGE


**DEFENDANTS' MEMORANDUM IN
SUPPORT OF MOTION TO AMEND
THE PRETRIAL SCHEDULING
ORDER**

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................. 1

II.  PROCEDURAL HISTORY ................................................................. 3

III. DEFENDANTS' PROPOSAL FOR STAGING DISCOVERY ............. 5

IV.  GOOD CAUSE EXISTS TO MODIFY THE SCHEDULING ORDER ................ 7

     A.   Bifurcated Discovery Will Promote Efficient Resolution of the
          Dispute and Preserve Judicial Economy ....................................... 7

     B.   Plaintiffs are Not Prejudiced by Bifurcated Discovery .............................. 12

     C.   Plaintiffs' Legal Authorities Are Distinguishable ....................................... 15

V.   THE PROPOSED MODIFIED SCHEDULING ORDER .................................... 19

VI.  CONCLUSION ................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. U.S. Bancorp*,
    2024 U.S. Dist. LEXIS 216694 (D. Minn. Oct. 8, 2024) ............................................. 8

*Akselrod v. Marketpro Homebuyers LLC*,
    2021 U.S. Dist. LEXIS 5253 (D. Md. Jan. 11, 2021) .................................................. 9

*AMA v. United Healthcare Corp.*,
    2002 U.S. Dist. LEXIS 20309 (S.D.N.Y Oct. 23, 2002) .............................................. 9

*Bah v. Enter. Rent-A-Car Co. of Bos., LLC*,
    2020 U.S. Dist. LEXIS 212581 (D. Mass. Nov. 13, 2020) ........................................ 11

*Bond v. Folsom Ins. Agency LLC*,
    2025 U.S. Dist. LEXIS 49937 (N.D. Tex. Mar. 19, 2025) .................................... 15, 16

*Bultemeyer v. CenturyLink Inc.*,
    2023 U.S. Dist. LEXIS 17810 (D. Ariz. Feb. 2, 2023) ............................................. 10

*Guzhagin v. State Farm Mut. Auto. Ins. Co.*,
    2009 U.S. Dist. LEXIS 8666 (D. Minn. Feb. 5, 2009) ............................................... 7

*Chen-Oster v. Goldman, Sachs & Co.*,
    285 F.R.D. 294 (S.D.N.Y. 2012) ...................................................................... 16, 17

*Dege v. Hutchinson Tech., Inc.*,
    2007 U.S. Dist. LEXIS 116204 (D. Minn. May 1, 2007) ............................................ 7

*Ellingson Timber Co. v. Great N. Ry. Co.*,
    424 F.2d 497 (9th Cir. 1970) ............................................................................... 8

*General Mills Mktg., Inc. v. Fritsch GmbH*,
    2014 U.S. Dist. LEXIS 192908 (D. Minn. Jan. 27, 2014) ......................................... 17

*Katz v. Liberty Power Corp., LLC*,
    2019 U.S. Dist. LEXIS 30901 (D. Mass. Feb. 27, 2019) .......................................... 10

*Konkol v. Educ. Computer Sys.*,
    2016 U.S. Dist. LEXIS 185275 (D. Minn. Oct. 25, 2016) ........................................ 10

*Larone v. Metro. Life Ins. Co.*,
  2022 U.S. Dist. LEXIS 255672 (C.D. Cal. Sept. 15, 2022) ............................... 8, 9, 10

*Larson v. Burlington N. & Santa Fe Ry. Co.*,
  210 F.R.D. 663 (D. Minn. 2002)................................................................ 14

*Loreaux v. ACB Receivables Mgmt.*,
  2015 U.S. Dist. LEXIS 112250 (D.N.J. Aug. 25, 2015) ............................ 10

*Mendez v. The Radec Corp.*,
  260 F.R.D. 38 (W.D.N.Y. 2009)................................................................ 18

*Mosley v. General Motors Corp.*,
  497 F.2d 1330 (8th Cir. 1974) .................................................................. 8

*N. Nat. Gas Co. v. Donnelly Farms Ltd. P'ship*,
  2025 U.S. Dist. LEXIS 99078 (D.S.D. May 22, 2025) .............................. 9

*Newell v. Aliera Healthcare, Inc.*,
  2020 U.S. Dist. LEXIS 267290 (N.D. Ga. Apr. 6, 2020) ........................... 9

*Peter G. v. Derry Twp. Sch. Dist.*,
  2024 U.S. Dist. LEXIS 50787 (M.D. Pa. Mar. 21, 2024)............................ 9

*Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund*,
  214 F.3d 132 (2d Cir. 2000)................................................................ 18, 19

*Potocnik v. Carlson*,
  2014 U.S. Dist. LEXIS 203478 (D. Minn. Sep. 9, 2014) ........................... 8

*Schmidt v. Univ. of Northwestern-St. Paul*,
  2025 U.S. Dist. LEXIS 106644 (D. Minn. June 5, 2025)............................ 9

*Schwarzschild v. Tse*,
  69 F.3d 293 (9th Cir. 1995) ................................................................ 18, 19

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011).................................................................................. 15

*Zmora v. Minn.*,
  2002 U.S. Dist. LEXIS 6341 (D. Minn. Apr. 10, 2002) ........................... 10

**Other Authorities**

Fed. R. Civ. P. 1......................................................................................... 14

iv

Fed. R. Civ. P. 16(b)(4) ................................................................... 1, 7

Fed. R. Civ. P. 23(c)(2) ...................................................................... 19

Fed. R. Civ. P. 26 ............................................................................. 17

Fed. R. Civ. P. 42(b) ..................................................................... 1, 8, 9

D. Minn. Local Rule 7.1(c) ................................................................. 1

D. Minn. Local Rule 16.3(b)(1) .......................................................... 7

Defendants UnitedHealth Group Incorporated, United Healthcare, Inc., and naviHealth, Inc. ("Defendants") hereby move the Court to Amend the Pretrial Scheduling Order pursuant to Rules 16(b)(4) and 42(b) of the Federal Rules of Civil Procedure, Local Rule 7.1(c), and this Court's Pretrial Scheduling Order, dated June 24, 2024 (ECF 60).

## I.    INTRODUCTION

This case revolves around Plaintiffs' bold allegation that Artificial Intelligence ("AI") was used in place of physician medical directors to make adverse coverage determinations relating to Medicare Advantage members' care at skilled nursing facilities. Contrary to this allegation, discovery will establish that physician medical directors, not AI, made the alleged adverse coverage decisions applicable to each of the Plaintiffs. The absence of any genuine dispute about this fact will support the Court granting summary judgment for Defendants as to the two discrete claims remaining in the case following this Court's February 13, 2025 Order.

In its February 13 Order, the Court significantly narrowed this case by dismissing five of Plaintiffs' claims as preempted by the Medicare Act, limiting the case to only a portion of the two remaining claims: Count 1 (Breach of Contract) and Count 2 (Breach of the Implied Covenant of Good Faith and Fair Dealing). *See* ECF 91. The Court allowed the contract and good faith and fair dealing claims to proceed to discovery solely based on Plaintiffs' tenuous assertion that Defendants' use of AI in place of physician medical directors to make adverse coverage determinations could establish a violation of

the terms of each Plaintiffs' Evidence of Coverage ("EOC"). Because discovery will confirm that Defendants did not use AI to make adverse coverage determinations for the named Plaintiffs—and because damages-related and class discovery promises to be extraordinarily expensive, time consuming and burdensome—Defendants respectfully request that the Court bifurcate fact discovery and allow Defendants to file an early motion for summary judgment.

Specifically, Defendants request that the Court bifurcate fact discovery into two stages. The first stage of fact discovery ("Stage One Discovery") would be limited to giving Plaintiffs a fair opportunity to conduct discovery regarding the threshold factual question of whether Defendants used nH Predict in place of physician medical directors to make adverse coverage determinations relating to the named Plaintiffs' care in skilled nursing facilities. After Stage One Discovery is complete, the dispute would be ripe for the Court to consider a motion for summary judgment to adjudicate whether there exists a genuine factual dispute over this issue. Any subsequent discovery would be delayed until after Defendants' motion for summary judgment is resolved by the Court.

If the Court agrees with Defendants following Stage One Discovery that Plaintiffs cannot establish a genuine factual dispute regarding this threshold question, the Court and the parties need not engage in further expensive, time-consuming, and burdensome discovery activity. Bifurcation of the fact discovery period will further allow the Court to avoid expert discovery, Plaintiffs' request for class certification, and any other proceedings needed to adjudicate Plaintiffs' claims should the Court agree with Defendants. By contrast, Plaintiffs will have a fair opportunity to develop evidence to

2

support their claims during Stage One Discovery, evidence they should have already developed before commencing this action. If they successfully oppose Defendants' motion for summary judgment, they will have suffered no prejudice, and they may proceed to litigate their claims in the ordinary course in a second stage of discovery. However, if Plaintiffs cannot develop such evidence during Stage One Discovery, the Court would be in a position to grant summary judgment for the Defendants in accordance with the federal rules.

## II.    PROCEDURAL HISTORY

Plaintiffs' Amended Complaint contained seven causes of action, including breach of contract, insurance bad faith, and various state-law business claims. *See* ECF 34. Defendants moved to dismiss Plaintiffs' claims for, among other reasons, preemption by the Medicare Act, lack of jurisdiction, and failure to state a claim under state law. *See* ECF 43. The Court granted in part and denied in part Defendants' Motion to Dismiss. *See* ECF 91 (the "Dismissal Order"). The Court dismissed Counts 3 through 7, but allowed Counts 1 and 2 to proceed. *Id.* Plaintiffs' sole remaining claims are for Breach of Contract (Count 1) and Breach of the Implied Covenant of Good Faith and Fair Dealing (Count 2) (the "Remaining Claims").

The Court determined that the Remaining Claims survived preemption because "in analyzing these claims the Court would only be required to investigate whether UHC complied with its own written documents," and further that the Court "need only review insurance documents to resolve these claims." *Id*. at 19. The Court explained that the Remaining Claims "effectively arise out of UHC's evidence of coverage documents

3

because the question would be whether UHC complied with its statement that claim decisions would be made by 'clinical services staff' and 'physicians' when it allegedly used artificial intelligence." *Id.* at 19. The Court dismissed all other claims because they were preempted by the Medicare Act. *See, e.g., id.* at 20 (dismissing bad faith insurance claim because Court is not permitted "to evaluate whether the denial of coverage was reasonable and whether the use of nH Predict to make that denial decision was reasonable" because "[t]he Medicare Act squarely regulates how coverage decisions are to be made and what services are covered.").

Following the Dismissal Order, Defendants requested leave from the Court to file a motion for reconsideration and clarification of the Dismissal Order. ECF 95. Plaintiffs opposed Defendants' request. ECF 96. On June 2, 2025, the Court denied Defendants' request. ECF 104 at 2 (the "Clarification Order") (together with the Dismissal Order, the "Rulings"). However, the Clarification Order confirmed the narrow scope of the Remaining Claims. In denying reconsideration, the Court stated that Counts 1 and 2 survived preemption "due to their independence from the Medicare Act, which limited the Court's analysis to the Evidence of Coverage ('EOC') documents provided by UHC. Accordingly, the contract claims are *limited to breaches of EOC terms*." *Id.* at 2 (emphasis added).

In the months following the Clarification Order, during discussions among the parties Plaintiffs have expressed an expansive interpretation of the Remaining Claims by asserting that they extend beyond the scope of the claims the Court specified in the Rulings. Plaintiffs have argued that nothing in the Rulings works to preempt any portion

4

of their Remaining Claims. As support, Plaintiffs have pointed to their allegations in Paragraphs 187 and 189 of the Amended Complaint to argue that they have stated multiple grounds to support claims for breach of contract that were not found to be preempted by the Rulings.

During the parties' discussions, Defendants have pointed out the Court's reasoning in its Rulings that Plaintiffs' Remaining Claims "effectively arise out of UHC's evidence of coverage documents because the question would be whether UHC complied with its statement that claim decisions would be made by 'clinical services staff' and 'physicians' when it allegedly used artificial intelligence." ECF 91 at 19.

As a result of the Rulings, the Remaining Claims distill down to "whether UHC complied with its statement that claim decisions would be made by 'clinical services staff' and 'physicians' when it allegedly used artificial intelligence." ECF 91 at 19. Put simply, the Remaining Claims depend on whether Defendants breached the EOC terms by making adverse coverage determinations using nH Predict instead of an individualized investigation, as alleged in the Amended Complaint. ECF 34 ¶¶ 38, 190, 196-197.

## III.    DEFENDANTS' PROPOSAL FOR STAGING DISCOVERY

Following expiration of the stay of proceedings pending the Court's issuance of the Rulings, *see* ECF 76, and service of Plaintiffs' initial discovery requests, Defendants engaged Plaintiffs in a conference call on June 9, 2025 to propose to Plaintiffs that the parties agree to bifurcate discovery into two stages.

Defendants proposed that in this bifurcated discovery process, Stage One Discovery would be limited to disclosure of documents or witness testimony supporting

or refuting Plaintiffs' factual assertion that Defendants used nH Predict in place of physician medical directors to make adverse coverage determinations relating to the named Plaintiffs' care in skilled nursing facilities. In the course of discussions among counsel, Defendants specified that their proposal for Stage One discovery would include:

1. The administrative records for the named Plaintiffs with respect to each health benefit claim at issue as alleged in the Amended Complaint (ECF 34), including all applicable insurance coverage documents and all clinical documentation reviewed by clinical services staff and physicians who evaluated their claims, along with documentation of the physician's rationale for the coverage decision;

2. Training materials and other policy documents addressing how medical directors apply Medicare criteria in coverage determinations and how nH Predict is used at naviHealth;

3. Depositions of the medical directors involved in the coverage determinations for three of the named Plaintiffs; and

4. Deposition of Dr. Thomas Edmondson, a subject matter expert in Medicare coverage criteria for treatment at skilled nursing facilities and whose job is to train all new medical directors involved in utilization management for skilled nursing facilities.

Defendants also offered to consider additional discovery that Plaintiffs believed might be required, but Plaintiffs refused to engage on that question. At the close of Stage One Discovery, Defendants would file a motion for summary judgment. Should the Court deny Defendants' motion for summary judgment, additional discovery and proceedings regarding any class certification motion would take place.

Thus, under Defendants' proposal, if the Court were to grant Defendants' motion for summary judgment, the Court and the parties would avoid further discovery regarding class certification, causation, damages, and exhaustion of administrative remedies.

Because discovery concerning the putative class as a whole has the potential to involve an exceedingly large volume of documents and many witnesses, Defendants' proposed staging would conserve the Parties' and the Court's time and resources until the Court were to rule that there exists a genuine disputed issue of material fact as to the named Plaintiffs' claims that AI was used in place of physician medical director to make adverse coverage determinations relating to their care at skilled nursing facilities.

In response to Defendants' proposal, Plaintiffs refused to consider bifurcated discovery, raising a number of alleged concerns—addressed below—that Defendants believe are erroneous and incorrect. None of Plaintiffs' claims refute the existence of good cause for the Court to modify the scheduling order to bifurcate discovery into two stages.

To that end, Defendants respectfully request that the Court bifurcate discovery as set forth below and in the Proposed Order.

## IV.    GOOD CAUSE EXISTS TO MODIFY THE SCHEDULING ORDER

### A.    Bifurcated Discovery Will Promote Efficient Resolution of the Dispute and Preserve Judicial Economy

Under Rule 16(b)(4) of the Federal Rules of Civil Procedure and Local Rule 16.3(b)(1), a party may move to modify a scheduling order for "good cause." Preserving judicial economy and promoting efficiency are recognized in this District as "good cause" for modifying scheduling orders. *See, e.g., Dege v. Hutchinson Tech., Inc.,* 2007 U.S. Dist. LEXIS 116204, at *9 (D. Minn. May 1, 2007); *c.f. Guzhagin v. State Farm Mut. Auto. Ins. Co.*, 2009 U.S. Dist. LEXIS 8666, at *5-8 (D. Minn. Feb. 5, 2009).

7

Though the Court may consider prejudice to the non-moving party when weighing good cause, district courts considering modification of scheduling orders have usually focused on the "diligence of the party who sought modification of the scheduling order." *Adams v. U.S. Bancorp*, 2024 U.S. Dist. LEXIS 216694, at *5 (D. Minn. Oct. 8, 2024) (citing *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 717 (8th Cir. 2008)) (cleaned up).

Under Rule 42(b) of the Federal Rules of Civil Procedure, a reviewing court has broad discretion to bifurcate proceedings for "convenience or to avoid prejudice, or to expedite and economize." Pursuant to Rule 42(b), courts have the "power to limit discovery to the segregated issues … [because] [o]ne of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive preliminary issues." *Ellingson Timber Co. v. Great N. Ry. Co.*, 424 F.2d 497, 499 (9th Cir. 1970) (cleaned up). Indeed, the purpose of Rule 42(b) is to "expedite the final determination of disputes" and "vest[s] in the district court the discretion" to make determinations that will "prevent delay." *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974).

When confronted with complex and potentially costly discovery proceedings, bifurcation of discovery into phases is appropriate to prevent parties from "engaging in broad and possibly unnecessary discovery efforts." *Larone v. Metro. Life Ins. Co.*, 2022 U.S. Dist. LEXIS 255672, at *8 (C.D. Cal. Sept. 15, 2022); *see also Potocnik v. Carlson*, 2014 U.S. Dist. LEXIS 203478, at *3-4 (D. Minn. Sep. 9, 2014) (acknowledging previously ordered bifurcated discovery with first phase consisting of only written discovery focused solely on identifying all alleged violations followed by second, broader

8

phase). Bifurcated discovery serves the purposes of judicial economy and efficient resolution by limiting the unnecessary costs of "massive exchange of documents" to resolve specific issues that may moot the need for extensive discovery proceedings. *AMA v. United Healthcare Corp.*, 2002 U.S. Dist. LEXIS 20309, at *9 (S.D.N.Y Oct. 23, 2002) (bifurcating discovery to resolve discrete issues prior to extensive discovery proceedings); *see also Larone*, 2022 U.S. Dist. LEXIS 255672, at *8-9. Bifurcated discovery also serves the purpose of simplifying complex cases to "save both parties the time and expense of class discovery" which is a "particularly resource intensive" process. *Akselrod v. Marketpro Homebuyers LLC*, 2021 U.S. Dist. LEXIS 5253, at *5 (D. Md. Jan. 11, 2021). Indeed, bifurcated discovery is often used to potentially resolve dispositive issues in an efficient manner. *See, e.g., Schmidt v. Univ. of Northwestern-St. Paul,* 2025 U.S. Dist. LEXIS 106644, at *2 (D. Minn. June 5, 2025) (noting "discovery was bifurcated so that the question of whether the ministerial exception applies would be resolved before full discovery is launched"); *N. Nat. Gas Co. v. Donnelly Farms Ltd. P'ship,* 2025 U.S. Dist. LEXIS 99078, at *14 (D.S.D. May 22, 2025) (bifurcating discovery appropriate where "resolution of one issue would be dispositive of the entire case"); *Newell v. Aliera Healthcare, Inc.,* 2020 U.S. Dist. LEXIS 267290, at *6-7 (N.D. Ga. Apr. 6, 2020) (same); *Peter G. v. Derry Twp. Sch. Dist.*, 2024 U.S. Dist. LEXIS 50787, at *2 (M.D. Pa. Mar. 21, 2024) (granting request for bifurcated discovery to resolve preliminary issue under Rule 42(b)).

Here, good cause supports modification of the Scheduling Order to allow for bifurcated discovery and early dispositive motion practice to promote efficient resolution

9

of the dispute and judicial economy. In putative class actions specifically, bifurcated discovery and early dispositive motion practice is appropriate to analyze the merits of the named plaintiffs' claims before considering class-wide issues, as Defendants here propose to do. *See, e.g., Bultemeyer v. CenturyLink Inc.*, 2023 U.S. Dist. LEXIS 17810, at *2-3 (D. Ariz. Feb. 2, 2023) (noting previous approval in class action suit of "bifurcated" staging of discovery to "first allow[] discovery and dispositive motions on Plaintiff's individual claim before proceeding to the class certification phase"); *Larone*, 2022 U.S. Dist. LEXIS 255672, at *8-9 (permitting bifurcation to "prevent the parties from engaging in broad and possibly unnecessary discovery efforts"); *Katz v. Liberty Power Corp., LLC*, 2019 U.S. Dist. LEXIS 30901, at *3-6 (D. Mass. Feb. 27, 2019) (bifurcating "individual merits and class discovery" and allowing dispositive motion practice prior to class discovery); *Konkol v. Educ. Computer Sys.*, 2016 U.S. Dist. LEXIS 185275, at *6-10 (D. Minn. Oct. 25, 2016) (recognizing bifurcating discovery in a class action to consider individual claims prior to deciding class-wide issues has "support" in the District of Minnesota" but denying bifurcation because, unlike here, the defendant's arguments were based on speculation and were not necessarily dispositive of the claims); *Loreaux v. ACB Receivables Mgmt.*, 2015 U.S. Dist. LEXIS 112250, at *9-12 (D.N.J. Aug. 25, 2015) (bifurcating discovery to "promote [] efficient resolution" where helpful to "address a narrow, potentially dispositive issue in a timely and cost effective manner with no significant prejudice to Plaintiffs"); *Zmora v. Minn.*, 2002 U.S. Dist. LEXIS 6341, at *17 (D. Minn. Apr. 10, 2002) (acknowledging the Eighth Circuit has "affirmed the dismissal of the individual claim of a named plaintiff prior to a decision on class

certification"); *see also Bah v. Enter. Rent-A-Car Co. of Bos., LLC*, 2020 U.S. Dist.
LEXIS 212581, at *3-9 (D. Mass. Nov. 13, 2020) (considering and ruling on dispositive
motion prior to class certification).

Early dispositive motion practice is especially helpful in this action given that the
Court has already narrowed the scope of the dispute such that it would promote judicial
economy and efficiency to resolve a singular question—whether or not Defendants
breached the EOC terms by allegedly making coverage determinations based on nH
Predict instead of individualized decisions by physician medical directors. This specific
question is straightforward and limited. As such, the Court would be addressing one
singular, potentially dispositive fact—a fact Defendants have repeatedly represented is
not true, *see* ECF 65 at 5 n.1; *see also* ECF 84 (8/29/24 Tr.) at 5:8-13—prior to expensive
and taxing discovery processes related to potentially thousands of patients and involving
complex questions regarding damages. Should Stage One Discovery show that nH
Predict was not used by Defendants to make adverse coverage determinations for the
individual named Plaintiffs in place of physician medical directors, the Court should
dismiss Plaintiffs' Remaining Claims as unsupported. Bifurcating discovery to allow the
Parties to address this predicate question would benefit the Parties and the Court by
promoting quick and efficient resolution of this dispute, especially where the Court has
itself acknowledged that class discovery "is going to take a substantial—an extraordinary
amount of effort and work." *See* ECF 80 (8/22/24 Tr.) at 23:7-15.

Moreover, Defendants have been diligent in seeking bifurcated discovery.
Defendants have sought to clarify the scope of the Court's Rulings, and now seek to tailor

11

discovery according to the Court's guidance. *See* ECF 104. Defendants seek efficient resolution of this dispute without unnecessary expense to both Parties.

**B.    Plaintiffs are Not Prejudiced by Bifurcated Discovery**

During multiple conferences among the parties regarding the present motion, Plaintiffs articulated a series of unsupported rationale for their opposition to bifurcation. Plaintiffs claim they would be prejudiced by Defendants' proposal to bifurcate discovery and engage in early motion practice because: (1) bifurcated discovery would deny Plaintiffs the ability to litigate their theory of the case; (2) would create inefficiencies and case management problems for this action; and (3) would violate the requirement that class certification be decided at an early practicable time. Plaintiffs' arguments are without merit.

Plaintiffs would suffer no prejudice under Defendants' proposal. Contrary to Plaintiffs claim they would be unable to litigate this case as they wish, Plaintiffs will have a fair opportunity to engage in Stage One Discovery on the factual question of whether Defendants used nH Predict to make adverse coverage determinations for the individual named Plaintiffs in place of physician medical directors. That allegation underlies both Remaining Claims. *See* ECF 34 ¶¶ 38, 190, 196-197. If Plaintiffs fulfill their burden to demonstrate that there exists a genuine disputed issue of fact regarding their allegations in Stage One Discovery, Plaintiffs can then pursue further all remaining discovery in a second stage of discovery. Plaintiffs do not lose any ability to pursue their claims under bifurcated discovery—Plaintiffs need only provide sufficient factual support establishing the existence of a genuine dispute regarding whether Defendants breached the EOC terms

12

by making adverse coverage determinations based on nH Predict instead of an individualized determinations by medical directors. Discovery bifurcated in this manner will serve to minimize prejudice to *Defendants* in defending a claim lacking any factual basis. Defendants' proposal for an appropriately brief time period for Stage One Discovery allays Plaintiffs' claim of prejudice due to delay. Accordingly, Plaintiffs will not be prejudiced by bifurcated discovery.

Moreover, staged discovery will reduce disputes, not increase them. In arguing against staged discovery, Plaintiffs made much out of their concern that bifurcated discovery would lead to alleged "needless disputes" about a "meaningless distinction between Plaintiffs' individual claims and those of the class" under Defendants' proposal. However, Plaintiffs misstate Defendants' proposal. Defendants propose to focus on a singular, factual issue that is the factual predicate that underlies all Remaining Claims — whether or not Defendants used nH Predict in making adverse coverage determinations in place of medical directors. Engaging in discovery and resolution of this factual question will benefit all Parties, and will avoid the "needless disputes" Plaintiffs claim to care about should Stage One Discovery show—as Defendants have represented—that nH Predict was not used by medical directors in making adverse coverage determinations.

If the Court limits initial discovery to this discrete factual issue, the Parties and the Court will save time and resources they would otherwise expend engaging in what may be unnecessary and protracted discovery relating to absent class members, causation, damages, exhaustion of administrative remedies, expert discovery, disputes over

discovery, and class certification motion practice.[1] As such, Plaintiffs concerns are of little consequence.

Finally, the Court can and should use its discretion to order discovery as warranted by this individual case; it is not bound by some formalistic rule to approach every case in an identical way. Plaintiffs claim the opposite, asserting that early summary judgment is inappropriate because class certification should be decided before a decision on the merits is rendered. Plaintiffs simply attempt to manufacture a rule that does not exist. As described above, numerous courts have allowed the very procedure Defendants propose. *See supra* at 8-12. The Court's inherent power and the mandate of the Federal Rules for a "just, speedy, and inexpensive determination of every action and proceeding" fully support this approach. Fed. R. Civ. P. 1; *Larson v. Burlington N. & Santa Fe Ry. Co.*, 210 F.R.D. 663, 666 (D. Minn. 2002) (granting bifurcated discovery in class action because it would "advance the purposes of Rule 1"). No procedural rule mandates that class

---

[1] The Plaintiffs' initial discovery requests provide a perfect illustration of the burdensome discovery that can be avoided by the bifurcated discovery proposed by Defendants. Many of Plaintiffs' initial discovery requests are beyond the scope of the dispute as narrowed by the Rulings. For example, Plaintiffs' discovery requests seek, among other things, "[a]ll [d]ocuments and [c]ommunications discussing … or analyzing (including reports) nH Predict" (RFP No. 5) and "[a]ll [d]ocuments and [c]ommunications concerning the review, oversight, and analysis of nH Predict … as well as any reports, presentations, findings, or recommendations about [Defendants'] use of AI generally" (RFP No. 19). *See* Decl. of Michelle Grant, Ex. A, filed herewith. Neither request is relevant to Plaintiffs' allegations that Defendants breached the EOC terms by making adverse coverage determinations based on nH Predict instead of an individualized determination by medical directors. Instead, these requests relate to the subject matter the District Court ruled was preempted by the Medicare Act. *See* ECF 91 at 20 (noting the Court is not permitted "to evaluate whether the denial of coverage was reasonable and whether the use of nH Predict to make that denial decision was reasonable" because those topics are preempted).

certification must precede summary judgment. Instead, the Court may set a schedule that will best foster a just, speedy, and efficient determination of the specific case before it. Moreover, all legal authorities Plaintiffs have cited in support of their positions are readily distinguishable, and many were decided before the Supreme Court's most recent guidance on class action litigation. *See infra* at 18-19 (cases decided prior to *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)). Plaintiffs' legal authorities do nothing to refute the good cause for modifying the scheduling order in this case, as proposed by Defendants.

### C.    Plaintiffs' Legal Authorities Are Distinguishable

In rejecting Defendants' offer to bifurcate discovery, Plaintiffs cited multiple cases in support their position that bifurcated discovery is improper. Plaintiffs' cited legal authorities do nothing of the sort. In fact, some of the cases support *Defendants*' position.

*First*, Plaintiffs cite two out-of-jurisdiction cases to claim that district courts in general have been "reluctant" to bifurcate class-related discovery from discovery on the merits, principally because bifurcation can lead to future disputes over whether a particular discovery request relates to the merits or class certification. Both cases are distinguishable.

In *Bond v. Folsom Ins. Agency LLC*, 2025 U.S. Dist. LEXIS 49937 (N.D. Tex. Mar. 19, 2025), the reviewing court denied a motion to bifurcate discovery because the court had previously ruled on a motion to compel, finding that the defendant could not "avoid appropriate classwide discovery that is—as [the plaintiff] persuasively argues— necessary for a future class certification motion." 2025 U.S. Dist. LEXIS 49937, at *4.

15

As a result, the reviewing court found that bifurcation "would not promote efficiency" because the court had already ordered the parties to engage in class certification discovery ensuring inevitable overlap between discovery relevant to the merits of the individual claims of the lead plaintiff and issues of class certification. *Id.* There is no such order here. In fact, the Court has already narrowed the scope of this dispute such that discovery into one, potentially dispositive issue would not create the problem of considerable overlap between discovery into the claims of the individual plaintiffs and the discovery relating to the proposed class. *See* ECF 104 at 2 ("the contract claims are *limited to breaches of EOC terms*") (emphasis added). Moreover, as detailed *supra* at 8-15, resolving a singular, specific question in Stage One Discovery prior to considering discovery relating to the proposed class will not inevitably lead to "needless disputes"—it would instead tee up one dispositive issue to the Court before requiring the Court to consider the various discovery disputes that would undoubtedly arise in class-related and damages-related discovery.

*Chen-Oster v. Goldman, Sachs & Co*., 285 F.R.D. 294 (S.D.N.Y. 2012) is similarly distinguishable. In *Chen-Oster*, the court denied a defendant's request to bifurcate discovery *within* class discovery, reasoning that the plaintiffs had already identified "specific" allegations regarding discriminatory employment policies that necessarily "may have a discriminatory impact," had "some element of subjectivity," and could not be "resolved on the basis of depositions and document discovery alone." 285 F.R.D. 299-300. None of the deciding factors in *Chen-Oster* are present here. Defendants do not seek to bifurcate discovery within class discovery—Defendants seek to delay class

16

and unrelated merits discovery for a limited period of time to resolve a singular, discrete question of whether nH Predict was used to make adverse coverage determinations in place of medical directors. And unlike *Chen-Oster*, the question of whether nH Predict was used in making adverse coverage determinations is not "subjectiv[e]"—either Defendants used nH Predict as Plaintiffs allege or they did not. *Id.* at 300. That discrete question—contrary to *Chen-Oster*—can be resolved through depositions and limited document discovery alone, as Defendants have proposed.

*Second*, Plaintiffs claim that the proposal to bifurcate discovery conflicts with the discovery standard established by Rule 26 that allegedly allows liberal discovery into any matter relevant to the claims or defenses identified in the pleadings. Plaintiffs rely on *General Mills Mktg., Inc. v. Fritsch GmbH*, 2014 U.S. Dist. LEXIS 192908 (D. Minn. Jan. 27, 2014) to support this assertion. In *General Mills*, the court indicated that the reviewing court's expansive view of discovery was based on "authority" in the District of Minnesota recognizing that in a patent infringement action, "discovery on a product not named explicitly in a complaint should be allowed if the product falls within the confines of a broadly asserted claim." 2014 U.S. Dist. LEXIS 192908, at *12–13 (citing *AGA Med. Corp. v. W.L. Gore & Assocs., Inc.,* 2011 U.S. Dist. LEXIS 157787, at *7 (D. Minn. Oct. 19, 2011)). That ruling is specific to patent cases: the precise scope of accused products is typically finalized through later infringement contentions or interrogatories, not in the complaint itself, which generally identifies only exemplar accused products. Because this is not a patent infringement action, *General Mills* does not apply here. In all events, Defendants are not proposing to foreclose Plaintiffs' right to take discovery.

17

Defendants propose to bifurcate discovery to address a preliminary question in an action for breach of contract and the covenant of good faith and fair dealing. That proposal is supported by case law. *See supra* at 8-15.

*Third*, Plaintiffs claim that proceeding with summary judgment on individual claims before discovery relating to absent class members is unsupported because issues relating to claims of the proposed, uncertified class should be decided before a decision on the merits is rendered. None of Plaintiffs' cited authorities withstand examination.

Though *Mendez v. The Radec Corp.*, 260 F.R.D. 38 (W.D.N.Y. 2009) acknowledged that "in general" class certification should be decided before a merits decision, *Mendez* itself did not follow that directive. 260 F.R.D. at 44. *Mendez* concerned a motion to de-certify a class action lawsuit following a plaintiff's successful, simultaneous motion for class certification and summary judgment. *Id*. The court upheld its prior rulings, finding both that the defendant had waived any objection to the court's "procedure" of considering pre-certification dispositive motions, and further that "pre-certification dispositive motions filed by plaintiffs and defendants implicate different concerns." *Id.* at 45-47. *Mendez* does not foreclose the process of bifurcating discovery to resolve preliminary issues prior to engaging in discovery relating to claims of the proposed class or consideration of a class certification motion. Moreover, this action does not involve a pre-certification dispositive motion by a plaintiff nor a potential waiver issue by either party.

*Schwarzschild v. Tse*, 69 F.3d 293 (9th Cir. 1995) and *Philip Morris Inc. v. Nat'l Asbestos Workers Med. Fund*, 214 F.3d 132 (2d Cir. 2000) suffer similar defects.

18

*Schwarzschild* considered whether a defendant in a class action who succeeded at summary judgment could compel the named plaintiff to give the putative class a Rule 23(c)(2) notice ordinarily given shortly after class certification. 69 F.3d at 294. Though it considered only a narrow procedural question, *Schwarzschild* established that defendants are not precluded from obtaining summary judgment "before the class has been properly certified or before notice has been sent." *Id.* at 297. In a similar vein, *Philip Morris* involved a petition for a writ of mandamus to order a district court to certify a class in a class action suit because trial was imminent and the class had not yet been certified. 214 F.3d at 135. In declining to issue the writ, the Second Circuit Court of Appeals ruled that district courts generally have "discretion to decide when to determine class certification," and further that the Second Circuit could not "foreclose the possibility of a post-trial class certification." *Id.* Neither *Schwarzschild* nor *Philip Morris* address the issue of bifurcating discovery to resolve a singular, narrow, potentially dispositive issue in a class action lawsuit. More importantly, both *Schwarzschild* and *Philip Morris* acknowledge that summary judgment prior to discovery relating to absent class members and consideration of a motion for class certification is not foreclosed by case law and the federal rules. On that point, *Schwarzschild* and *Philip Morris* support Defendants' proposal.

## V.    THE PROPOSED MODIFIED SCHEDULING ORDER

Defendants propose to amend the prior scheduling order as follows to allow for Stage One discovery, followed by a motion for summary judgment, and to delay any further discovery until the Court rules upon such motion:

19

| Event | Current Deadline (ECF 60) | Proposed Deadline |
|---|---|---|
| Deadline for Joinder and Amended Pleadings | Jan. 15, 2025 | [no change] |
| Deadline to complete Stage One Discovery | n/a | Dec. 15, 2025 |
| Deadline to serve and file non-dispositive motions on Stage One Discovery | n/a | Jan. 5, 2026 |
| Deadline to serve and file dispositive motions on named Plaintiffs' Claims | n/a | Feb. 6, 2026 |
| Commencement of Stage Two Discovery | n/a | Stage Two Discovery can commence immediately after the Court's decision on Defendants' Motion For Summary Judgment Following Stage One Discovery |
| Deadline to submit Proposed Schedule | n/a | If the Court denies Defendants' motion for summary judgment following Stage One Discovery, within 14 days of the Court's Order, the Parties shall meet and confer and submit a proposed schedule for the remainder of the proceeding |

## VI.    CONCLUSION

The Court has narrowed this dispute to two claims limited to breaches of EOC terms based upon Defendants' alleged use of AI rather than physician medical directors to make adverse coverage determinations relating to the named Plaintiffs care in skilled nursing facilities. To enable efficient resolution of the Remaining Claims and promote judicial economy, Defendants respectfully request that the Court amend the Scheduling Order to bifurcate discovery such that the Parties may complete Stage One Discovery as described further above and to allow Defendants to submit a motion for summary judgment after completion of Stage One Discovery.

Dated: August 21, 2025                DORSEY & WHITNEY LLP

By  *s/ Michelle S. Grant*
    Nicole Engisch (#0215284)
    engisch.nicole@dorsey.com
    Michelle S. Grant (#0311170)
    grant.michelle@dorsey.com
    Shannon L. Bjorklund (#0389932)
    bjorklund.shannon@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone:  (612) 340-2600
Facsimile:  (612) 340-2868

Nicholas J. Pappas (*pro hac vice*)
pappas.nicholas@dorsey.com
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, NY 10019-6119
Telephone:  (212) 415-9387

*Attorneys for Defendants*