# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| The Estate of Gene B. Lokken et al., | Case No. 23-CV-03514 (JRT/SGE) |
| Plaintiffs, | |
| v. | |
| UnitedHealth Group, Inc., et al., | |
| Defendants. | |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES AND PRODUCTION OF DOCUMENTS

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................... i

TABLE OF AUTHORITIES ............................................................................ ii

I.    INTRODUCTION ................................................................................... 1

II.   BACKGROUND ...................................................................................... 2

    a.    Plaintiffs Allege Contract-Related Claims for Defendants' Misuse of AI
to Deny Medically Necessary Care ............................................................ 2

    b.    Plaintiffs Seek Relevant Documents and Information About AI-Driven
Denials ............................................................................................................ 5

    c.    Discovery Requests at Issue and Defendants' Responses ................... 6

    d.    The Parties Meet-and-Confer About Discovery Requests ................. 15

III.  LEGAL STANDARD ........................................................................... 21

IV.   ARGUMENT ......................................................................................... 23

    a.    The Disputed Discovery Requests are Relevant ................................ 23

        1.    Defendants' Merits-Based Assertions Cannot Limit Discovery ..... 24

        2.    Plaintiffs' Requests Reach Relevant Class Discovery ................... 27

        3.    Bases for Plaintiffs' Claims Beyond Whether nH Predict Was Used to Make
Coverage Determinations are Relevant .................................................... 28

        4.    Plaintiff0's Definitions of Post-Acute Care and the Relevant Time Period
Reach Relevant Information ....................................................................... 31

        5.    Discovery Into Internal and Government Investigations of Defendants' Post-
Acute Care Claims Review Practices are Relevant. ................................. 33

    b.    Unsubstantiated Burden Objections Are Not a Basis to Withhold Discovery.... 35

    c.    Abstract Privilege Objections Are Not a Basis to Withhold Discovery ............ 36

    d.    Plaintiffs Will Agree to Defendants' Proposed Search Terms, but Dispute the
Scope of Custodians. .................................................................................. 37

V.    CONCLUSION ..................................................................................... 37

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abhe & Svoboda, Inc. v. Hedley*,
   Civ. No. 15-1952, 2016 WL 11509914 (D. Minn. Mar. 15, 2016) ................. 23, 35, 36

*Anvik Corp. v. Samsung Elecs.*,
   2009 WL 10695623 (S.D.N.Y. Sept. 16, 2009).......................................................... 25

*Aroeste v. United States*,
   655 F. Supp. 3d 1053 (S.D. Cal. 2023) ...................................................................... 27

*Bellingham v. BancInsure, Inc.*,
   Civ. No. 13–0900, 2014 WL 12600277 (D. Minn. May 13, 2014) ............................ 22

*Big City Dynasty v. FP Holdings, L.P.*,
   336 F.R.D. 507 (D. Nev. 2020)................................................................................... 24

*In re Cooper Tire & Rubber Co.*,
   568 F.3d 1180 (10th Cir. 2009) ................................................................................. 24

*Cosgrove v. OS Rest. Servs., Inc.*,
   Civ. No. 10-CV-1937, 2010 WL 11575055 (D. Minn. Aug. 31, 2010) ..................... 28

*Costa v. Wright Med. Tech., Inc.*,
   Civil Action No. 17-cv-12524-ADB, 2019 WL 108884 (D. Mass. Jan. 4,
   2019) ........................................................................................................................... 35

*Fassett v. Sears Holdings Corp.*,
   319 F.R.D. 143 (M.D. Pa. 2017).................................................................................. 27

*Hickman v. Taylor*,
   329 U.S. 495 (1947)..................................................................................................... 21

*Hofer v. Mack Trucks, Inc.*,
   981 F.2d 377 (8th Cir. 1992) ...................................................................................... 22

*Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*,
   Court File No. 15-cv-3183 (ADM/LIB), 2016 WL 6997113 (D. Minn.
   Sept. 6, 2016) .............................................................................................................. 22

*Kisting-Leung v. Cigna Corp.*,
   780 F. Supp. 3d 985 (E.D. Cal. 2025)......................................................................... 31

*MacSouth Forest Prods., LLC v. Current Builders, Inc.*,
    Case No. 0:24-CV-60013-BECERRA/AUGUSTIN-BIRCH, 2024 WL
    3299498 (S.D. Fla. June 11, 2024) ........................................................................ 12, 27

*Nat. Res. Def. Council v. Curtis*,
    189 F.R.D. 4 (D.D.C. 1999) ........................................................................................ 27

*Orduno v. Pietrzak*,
    Civil No. 14-1393 ADM/JSM, 2016 WL 5853723 (D. Minn. Oct. 5,
    2016) ............................................................................................................................ 21

*Polaris Indus., Inc. v. CFMOTO Powersports, Inc.*,
    Civ. No. 10-4362, 2012 WL 13028232 (D. Minn. Jan. 12, 2012) ............................... 36

*Robeck v. Ford Motor Co.*,
    Civil No. 04-4858, 2005 WL 8164548 (D. Minn. Sept. 9, 2005) ................................ 36

*Royal Canin U.S.A., Inc. v. Wullschleger*,
    604 U.S. 22 (2025) ...................................................................................................... 25

*Scheffler v. Molin*,
    Civ. No. 11-3279, 2012 WL 3292894 (D. Minn. Aug. 10, 2012) ............................... 22

*Sinco, Inc. v. B & O Mfg., Inc.*,
    No. 03-5277(JRT/FLN), 2005 WL 1432202 (D. Minn. May 23, 2005) ..................... 22

*Trask v. Olin Corp.*,
    298 F.R.D. 244 (W.D. Pa. 2014) ................................................................................ 26

*Uhl v. Progressive Direct Ins.*,
    Civil Action No. 1:23-cv-01904-NYW-SBP, 2024 WL 5187568 (D.
    Colo. Dec. 20, 2024) .................................................................................................. 27

## Other Authorities

42 C.F.R. § 422.137(d)(2) ................................................................................................ 26

Fed. R. Civ. P. 26(b)(5) .................................................................................................... 36

U.S. Senate Permanent Subcommittee on Investigations, Refusal of
    Recovery: How Medicare Advantage Insurers Have Denied Patients
    Access to Post-Acute Care, Majority Staff Report (Oct. 17, 2022) ............................... 4

UnitedHealth Group Incorporated Annual Report (Form 10-K) (Feb. 27, 2025), https://www.unitedhealthgroup.com/content/dam/UHG/PDF/investors/2024/UNH-Q4-2024-Form-10-K.pdf ............................................................................... 9

## I.    __INTRODUCTION__

Defendants previously sought phased discovery and proposed producing only extremely limited categories of documents and information during their proposed Phase 1 approach. This Court rightly rejected phased discovery because it would be inefficient and was based on a misreading of Judge Tunheim's prior Orders. Nevertheless, relying on the very arguments this Court rejected, Defendants have *continued* to resist discovery. Until January 26, 2026, despite the Court's ruling, Defendants had only produced the documents that they would have produced in their proposed Phase 1 discovery.[1] *See, e.g.*, Defs.' Mem. Supp. Mot. Amend Pretrial Scheduling Order, ECF No. 117, at 11 (Defendants identifying administrative records for named Plaintiffs and "[t]raining materials and other policy documents" related to nH Predict in proposed "Stage One" discovery).

While Defendants have agreed to search for some documents beyond the limited categories they previously proposed, Defendants are still refusing to produce *any* documents responsive to several of Plaintiffs' discovery requests. For example, Defendants have refused to search for documents about: (1) the development and use of nH Predict; (2) the acquisition of naviHealth; (3) government investigations into AI-driven denials; (4) employee discipline for failing to adhere to nH Predict; and (4) Defendants' internal AI

---

[1] Defendants made a production of documents on January 26, 2026, purportedly consisting of "custodial documents from the searches outlined in [Michelle Grant's] letter dated December 15, 2025." Boelter Decl. Ex. Q. Plaintiffs have not had an adequate opportunity to review the contents of the production before filing this Motion, but because the production is limited by the parameters raised in Defendants' December 15 letter, Plaintiffs believe the production is inappropriately narrowed for the reasons stated herein.

oversight body. These areas of discovery are critical to Plaintiffs' case theory and are highly relevant.

Plaintiffs should not have to bring another motion to compel discovery beyond the limited categories of materials Defendants already agreed to produce, especially when the Court already rejected these very limitations. The discovery Plaintiffs seek is well within the scope of Rule 26(b)(1) as it flows directly from Plaintiffs' allegations and claims that remain pending before the Court. This Court should compel Defendants to participate in a fulsome discovery process and require Defendants to produce responsive documents and information to Plaintiffs as set forth herein.

## II.    BACKGROUND

### a.    Plaintiffs Allege Contract-Related Claims for Defendants' Misuse of AI to Deny Medically Necessary Care.

The Court denied Defendants' Motion to Dismiss Plaintiffs' Breach of Contract (Count 1) and Breach of the Implied Covenant of Good Faith and Fair Dealing (Count 2) claims. *See* Mem. Op. and Order, ECF No. 91, at 24. As the Court explained in ruling on Defendants' Motion to Dismiss, "in analyzing these claims the Court would only be required to investigate whether UHC complied with its own written documents." *Id.* at 19.

Plaintiffs' claims, thus, turn on Defendants' systemic use of nH Predict to review and deny claims for medically necessary treatment in a manner that violates various Evidence of Coverage ("EOC") provisions, including a provision requiring that individualized coverage determinations be made by appropriate medical professionals. Plaintiffs contend that Defendants relied on nH Predict to make medical necessity

"recommendations" that failed to consider a patient's individualized circumstances. Am. Compl. ¶ 41 (alleging "Defendants wrongfully delegate their obligation to evaluate and investigate claims to the nH Predict AI Model in breach of the insurance agreement"). Plaintiffs further contend that, while nH Predict's outputs are characterized as "recommendations," in practice, Defendants use nH Predict's "recommendations" to dictate coverage decisions and do not permit employees to deviate from nH Predict's recommendations. *Id.* ¶ 42. Defendants discipline or terminate employees who deviate from nH Predict's "recommendations." *Id.* Plaintiffs contend that Defendants' systemic use of nH Predict has resulted in wrongful denials of care without consideration of a patient's individualized circumstances as required by the EOCs. *Id.* ¶¶ 6, 41, 43.

As detailed in Plaintiffs' First Amended Complaint, Plaintiffs all have remarkably similar stories reflecting Defendants' systemic use of naviHealth and nH Predict in a profit-motivated scheme to review claims in a way that creates a bias towards denial and violates EOC terms. After Plaintiffs' medical providers found post-acute care was medically necessary, Defendants either denied prior authorization or covered only limited periods of care and, while the patient was receiving that care, denied any additional care as medically unnecessary. *See* Am. Compl. ¶ 63 (alleging Defendants denied Gene Lokken's care after about 19 days), ¶¶ 75-76 (alleging Defendants denied Glennette Kell's care after about 14 days), ¶¶ 95-96 (alleging Defendants denied Darlene Buckner's care after about 8 days), ¶ 105 (alleging Defendants denied Carol Clemen's care after about 10 days), ¶¶ 120-23 (alleging Defendants denied Frank Perry's first admission after about 19 days), ¶ 129 (alleging Defendants denied Frank Perry's second admission after about 10 days), ¶¶ 131-

32 (alleging Defendants denied Frank Perry's third admission after about 12 days), ¶ 135 (alleging Defendants denied Frank Perry's fourth admission after about 14 days), ¶¶ 142-43 (alleging Defendants denied Jackie Martin's residential care after about 13 days), ¶¶ 154-55 (alleging Defendants denied Carolyn William's care after less than 10 days), ¶ 165 (alleging Defendants denied William Hull any post-acute care).

Plaintiffs' stories are not isolated events—the similar experiences of putative class point directly to Defendant's use of nH Predict, contrary to the terms set forth in the EOCs. For example, a Senate investigation report from October 2024 confirmed Defendants' claim denial rate for post-acute claims more than doubled after they began using naviHealth and nH Predict in 2019, surging from 8.7% in 2019 to 22.7% in 2022.[2] In other words, in 2022, Defendants denied more than a fifth of all post-acute care claims where a patient's medical providers found that continued post-acute care was necessary. Worse, Defendants' increased denials often lacked any appropriate justification, which resulted in over 80% of prior authorization denials being reversed when appealed. *Id.* ¶ 47. Despite the overwhelming evidence of erroneous claim denials following the use of nH Predict, however, Defendants persisted in relying on nH Predict's recommendations to make coverage determinations. *Id.* ¶ 53.

Plaintiffs have alleged that these denials of care all flowed from the same fundamental contractual breaches: Defendants used naviHealth and nH Predict to make

---

[2] U.S. Senate Permanent Subcommittee on Investigations, Refusal of Recovery: How Medicare Advantage Insurers Have Denied Patients Access to Post-Acute Care, Majority Staff Report (Oct. 17, 2022) ("Senate Report") at 19.

medical necessity "recommendations" and established a system that required employees to adhere to nH Predict's recommendations in lieu of exercising their own independent clinical judgment as envisioned by and set forth in the EOCs. Am. Compl. ¶¶ 186-91, 196-202. In other words, unlike in a breach of contract case where a patient challenges their insurer's individualized medical necessity determination, Plaintiffs here challenge Defendants' *systemic and chronic failure* to conduct *any* legitimate individual medical necessity determination. *See* ECF No. 91 at 4 (acknowledging Plaintiffs' theory that Defendants used artificial intelligence "in lieu of physicians to make coverage determinations").

### b. Plaintiffs Seek Relevant Documents and Information About AI-Driven Denials.

To obtain relevant information from Defendants pertaining to these claims, Plaintiffs served their First Set of Requests for Production and Interrogatories to Defendants on May 16, 2025. *See* Boelter Decl. Exs. A, D. Defendants responded to Plaintiffs' first set of discovery requests on June 30, 2025. *See* Boelter Decl. Exs. B, E.

After Defendants failed to produce anything other than administrative records relating solely to Plaintiffs, the Parties filed two discovery motions. Defendants filed a Motion to Amend the Pretrial Scheduling Order seeking to bifurcate discovery into two phases: (1) stage one discovery allowing limited productions and depositions relating only to Plaintiffs' individual claims and summary judgment on those claims; and (2) class discovery. Defs. Mot. Amend Pretrial Scheduling Order, ECF No. 116. Plaintiffs filed a Motion to Compel Discovery Responses seeking to force Defendants to produce the

requested information. Pls.' Mot. to Compel Disc. Resps., ECF No. 109.

On September 5, 2025, the Court held a hearing on both motions. The Court denied Defendants' Motion to Amend the Pretrial Scheduling Order, noting that nothing in Judge Tunheim's Order on Defendants' Motion to Dismiss justified such a bifurcation. Order, ECF No. 130 at 6-7. The Court also denied Plaintiffs' Motion to Compel Discovery Responses as premature, directing the Parties to meet and confer about the discovery at issue. Tr. of Sept. 4, 2025 Mot. Hr'g at 50:4-25. Defendants served amended responses on November 20, 2025. *See* Boelter Decl. Exs. C, F.

### c. Discovery Requests at Issue and Defendants' Responses.

The discovery requests at issue, and Defendants' amended objections and responses, have been submitted with this motion. *See* Boelter Decl. Exs. A, C, F. Specifically, Plaintiffs move to compel responses to Requests for Production 4, 5, 7, 12-17, and 19 and Interrogatories 3, 4, 11, and 12.[3] A brief summary of each request and a concise statement as to why Defendants' responses are improper follows.[4]

**RFP No. 4** seeks documents and communications about Defendants' policies, operating procedures, protocols, methods, practices, memoranda, and reports concerning

---

[3] The overarching disputes about the scope of Plaintiffs' claims, the Relevant Time Period, and Plaintiffs' definition of post-acute care affect discovery requests beyond this enumerated set. Because Plaintiffs believe the disputes as to additional requests will be wholly resolved by the Court's resolution of these overarching disputes, Plaintiffs do not separately address the additional requests in this Motion.

[4] Defendants asserted boilerplate objections to every request as overly broad, unduly burdensome, and disproportionate, so this summary does not repeat those objections for every request.

how they assess and adjudicate post-acute care claims, including documents related to employee training. Ex. A at 10. **RFP No. 5** seeks internal documents and communications discussing or analyzing nH Predict, including compliance with or adherence to generally accepted standards of medical practice and Defendants' coverage documents. *Id.* Defendants produced 459 documents in response to these Requests and agreed to produce additional documents based on custodians and search terms proposed. But Defendants' proposal improperly excludes documents related to post-acute care facilities other than skilled nursing facilities (like inpatient rehabilitation facilities ("IRF") and long-term rehabilitation care ("LTAC") facilities) and documents from before July 1, 2019, *see* Boelter Decl. Ex. C at 4-5, hindering Plaintiffs' ability to examine how and why Defendants' policies and practices changed over time. Plaintiffs request that the Court require Defendant to add custodians with knowledge of claim denials in these care settings.

**RFP No. 7** seeks documents related to the development and use of nH Predict. Ex. A at 11. Defendants objected on relevance grounds and claimed that the "request is based on a faulty premise regarding the use of nH Predict." Boelter Decl. Ex. C at 16. Defendants refused to produce any documents beyond the documents they agreed to produce in response to RFP No. 4, which are not responsive to this Request. *Id.* at 15-17. This response is improper because it refuses to produce documents on the grounds that Defendants deny Plaintiffs' allegations. An assertion that the other party's factual allegations are wrong is not a valid basis to deny access to information necessary to test those allegations. Further, the development of nH Predict is relevant to Plaintiffs' claims because it shows: (1) how nH Predict works; (2) the development goals of nH Predict; (3) the anticipated benefits of

7

nH Predict; and (4) whether nH Predict was designed to supplant physician decision-making, among other crucial information.

**RFP No. 12** seeks documents and communications about the acquisition of naviHealth by Defendants, including projected cost-savings as a result of the acquisition of naviHealth. Ex. A at 11. Defendants refused to produce any documents on the grounds that the documents are not relevant and that such a production would be unduly burdensome. Ex. C at 21-22. This response is improper. Plaintiffs allege that nH Predict was acquired and used to increase Defendants' profits by introducing a review process predisposed towards denying medically necessary care at the expense of insureds and in violation of the EOCs. Plaintiffs explained in their December 4, 2025 Letter to Defendants that this information is relevant because it tends to show: (1) why UnitedHealth acquired naviHealth; (2) what UnitedHealth hoped to gain by acquiring naviHealth; (3) what changes UnitedHealth intended to make to naviHealth's practices and why; and (4) whether UnitedHealth intended to use naviHealth to supplant physician decision-making, among other critical information. *See* Boelter Decl. Ex. M at 8.

**RFP No. 13** seeks documents and data about the value, earnings, and revenue of Defendants' businesses. Ex. A at 12. Defendants refused to produce any documents, citing a relevance objection. *See* Boelter. Decl. Ex. C at 22-23. This response is improper because information about Defendants' earnings and revenue, in particular with respect to their Medicare Advantage business, is relevant to show Defendants' motive to increase denials, demonstrates how much Defendants gained by abusing nH Predict, and establishes potential damages.

**RFP No. 14** seeks documents concerning any internal or governmental investigation of Defendants' policies, practices, or operations, especially as related to the use of algorithms or AI to assess or adjudicate claims. Ex. A at 12. Defendants refused to produce any documents and objected that the requested documents were not relevant and that the Request was overly broad and burdensome. Ex. C at 23-24. Defendants' scope objections were partially based upon Defendants' flawed interpretation of Plaintiffs' Request, which Plaintiffs clarified in their December 4, 2025 Letter. Ex. M at 8-9. Defendants have not changed their position since this clarification. Defendants' response is improper because Plaintiffs' case is about Defendants' use of AI to resolve claims for Medicare Advantage customers, and internal or governmental investigations into those practices are plainly relevant to whether those practices violate Defendants' EOC contracts. In addition, Defendants have publicly acknowledged ongoing civil and criminal investigations into their Medicare Advantage business,[5] and a U.S. Senate Subcommittee has investigated Defendants' use of nH Predict in the post-acute care setting—exactly the conduct at issue in this case. Documents and communications relating to these investigations would tend to show the processes by which nH Predict was (or was not) used in making medical determinations and, significantly, how Defendants adjusted their processes (or were recommended to adjust their processes) as a result of their own internal investigations, or governmental investigations and/or communications with the government.

---

[5] UnitedHealth Group Incorporated Annual Report (Form 10-K) (Feb. 27, 2025), https://www.unitedhealthgroup.com/content/dam/UHG/PDF/investors/2024/UNH-Q4-2024-Form-10-K.pdf.

**RFP No. 15** seeks documents produced by Defendants to any governmental agency or regulatory body related to their assessment and adjudication of post-acute care claims.[6] Ex. A at 12. Defendants refused to produce any documents and objected that the requested documents were not relevant and that the Request was overly broad and burdensome. Ex. C at 24-25. This response is improper because, to the extent governmental or regulatory bodies have investigated Defendants' use of nH Predict and AI in assessing post-acute care claims, any productions in those investigations are relevant to this case. Indeed, the U.S. Senate Permanent Subcommittee on Investigations investigated Defendants for the very conduct at issue in this case—the documents produced to the government are unquestionably relevant to private litigation about the *same conduct*. These investigations, documents and communications would tend to show the processes by which nH Predict was (or was not) used in making medical determinations and, significantly, how Defendants adjusted their processes (or were recommended to adjust their processes) as a result of their own internal investigations, governmental investigations, and/or communications with the government. Separately, Defendants' unsubstantiated burden objections fail because this Request seeks documents already collected, culled, and screened for privilege before being produced by the government—there's minimal or no additional burden in making that same production to Plaintiffs.

**RFP No. 16** seeks documents showing how Defendants evaluate naviHealth

---

[6] This Request originally sought documents produced in investigations relating to medical claims, but Plaintiffs have agreed to limit this request instead to cover only post-acute care claims.

employees and set compensation. *See* Boelter Decl. Ex. A at 12. Defendants agreed to produce only documents relating to performance metrics for Medical Directors involved in skilled nursing facility claims, asserting relevance and privilege objections. *See* Boelter Decl. Ex. C at 25-26. This response is improper because it excludes relevant discoverable documents including: (1) performance metrics related to SICCs, the employees who primarily interface with nH Predict and who are evaluated directly on their adherence to nH Predict's outputs; and (2) documents relating to other kinds of post-acute care like inpatient rehabilitation and long-term rehabilitation, as raised by the First Amended Complaint.

**RFP No. 17** seeks documents related to any disciplinary actions taken against naviHealth employees for failing to meet performance expectations. *See* Boelter Decl. Ex. A at 12. Defendants refused to produce any documents based on relevance, privilege, and confidentiality objections. *See* Boelter Decl. Ex. C at 26-27. This response is improper because performance evaluation criteria used to evaluate employees are directly relevant to whether Defendants allow employees to deviate from nH Predict's medical necessity determinations—documents responsive to this Request would tend to show whether Defendants disciplined employees who deviated from nH Predict's outputs.

**RFP No. 19** seeks documents relating to Defendants' "Responsible AI Board." Boelter Decl. Ex. A at 13. Defendants initially refused to produce any documents because they claimed the Responsible AI Board did not exist. *See* Boelter Decl. Ex. B at 25-26. Defendants later admitted the entity exists under the name "Artificial Intelligence Review Board," but still refused to produce any documents, citing relevance and scope objections.

Boelter Decl. Ex. C at 28-29. As Plaintiffs explained in their December 4, 2025 Letter, Defendants' internal audits or reviews of naviHealth and Defendants' broader policies and practices about the use of AI throughout their organization may inform whether Defendants' use of nH Predict was lawful. Ex. M at 10.

Defendants similarly refused to completely answer many of Plaintiffs' interrogatories. The following interrogatories have either not been answered, or answers have been improperly limited: Interrogatory Nos. 3, 4, 11, and 12.

**Interrogatory No. 3** asks Defendants to identify the employees involved in decisions to issue NOMNCs during the Relevant Time Period. *See* Boelter Decl. Ex. D at 5. Defendants asserted boilerplate breadth, burden, proportionality, and ambiguity objections. *See* Boelter Decl. Ex. F at 9-10. Defendants stated that "Medical Directors make the decisions to issue a NOMNC for skilled nursing facilities," and stated that there are currently 130 Medical Directors but failed to identify those individuals. Boelter Decl. Ex. F at 9. Instead, Defendants identified individuals who were involved in the Named Plaintiffs' claim denial decisions only—an approach that was soundly rejected when the Court denied Defendants' Motion to Amend the Pretrial Scheduling Order to bifurcate discovery. ECF No. 130. This response is improper because this is a class case and the identities of all Medical Directors are relevant and necessary to identifying potential deponents, because Defendants also fail to identify SICCs (who *recommend issuing NOMNCs*), and because Defendants response is limited only to *current* Medical Directors responsible for skilled nursing claims, not all Medical Directors and SICCs responsible for all post-acute care claims throughout the Relevant Time Period.

**Interrogatory No. 4** asks Defendants to identify the employees responsible for training naviHealth Medical Directors and SICCs during the Relevant Time Period. *See* Boelter Decl. Ex. D at 5. Defendants asserted boilerplate relevance, breadth, burden, proportionality, and ambiguity objections. *See* Boelter Decl. Ex. F at 11. In their original responses, Defendants identified four individuals who were "involved in training naviHealth medical directors." *See* Boelter Decl. Ex. E at 11-12. In Defendants' amended responses, Defendants identified *six* individuals who were involved in training medical directors and revealed that their responses were limited to employees responsible for training medical directors who processed skilled nursing claims. *See* Boelter Decl. Ex. F at 11. After Plaintiffs identified *two additional trainers* discovered from an independent source (Dr. Richard Van Dam and Dr. Jaclyn Arends), Defendants admitted in their December 15, 2025 Letter that the two previously undisclosed individuals identified by Plaintiffs were also responsible for training medical directors for post-acute care claims, including inpatient rehabilitation and long-term rehabilitation. *See* Boelter Decl. Ex. N at 2. Thus, Defendants' initial responses only identified *half* of the responsive individuals Defendants have since disclosed. Plaintiffs are concerned that Defendants may be concealing the identities of other relevant individuals from Plaintiffs, particularly trainers in the inpatient rehabilitation or long-term rehabilitation settings. Indeed, in their January 6, 2026 Letter, Defendants now state that they identified only "*key individuals* responsible for training naviHealth Medical Directors and Care Coordinators regarding continued stay reviews for [skilled nursing facilities] from July 1, 2019 to the present." Boelter Decl. Ex. O at 16 (emphasis added). Not only have Defendants failed to identify responsive

13

individuals on multiple occasions, but each new response from Defendants reveals limitations on their responses that Defendants failed to disclose to Plaintiffs.

**Interrogatory No. 11** asks Defendants to identify the individuals involved in the development of nH Predict. *See* Boelter Decl. Ex. D at 6. Defendants refused to answer, asserting that the request seeks irrelevant information and that the request "is based on a faulty premise regarding the use of nH Predict," and that "nH Predict is not used to make coverage determinations." Boelter Decl. Ex. F at 17. This response is improper because it assumes disputed facts as true and denies access to the information necessary to test the Parties' allegations. Further, Defendants' failure to respond based upon unsubstantiated and inappropriate objections hinders Plaintiffs' ability to identify the people responsible for creating nH Predict, who are material deponents in this case. These individuals have information about matters relevant to this litigation, including: (1) how nH Predict works; (2) the development goals of nH Predict; (3) the anticipated benefits of nH Predict; and (4) whether nH Predict was designed to supplant physician decision-making.

**Interrogatory No. 12** asks Defendants to identify the members of the "Responsible AI Board." Boelter Decl. Ex. D at 6. Defendants refused to answer, asserting the information is irrelevant. *See* Boelter Decl. Ex. F at 17-18. This objection is improper because the identities of the individuals responsible for internal oversight of Defendants' use of AI relate directly to whether Defendants improperly used AI through nH Predict to make medical necessity determinations.

**d. The Parties Meet-and-Confer About Discovery Requests.**

Following the Court's September 5, 2025 hearing, the Parties have met and conferred several times in an attempt to resolve the discovery disputes.

On October 14, 2025, after the Court issued the amended scheduling order and the Parties agreed on an ESI protocol, the Parties participated in a meet and confer phone call in an effort to better understand each Party's position and in an attempt to bridge the gap concerning Defendants' unwillingness to substantively respond to the vast majority of Plaintiffs' discovery requests. *See* Boelter Decl. ¶ 9. On this call, Plaintiffs' counsel asked if and when Defendants planned to serve amended discovery responses in light of the Court's ruling on Defendants' Motion to Amend the Pretrial Scheduling Order. *Id.* Defendants' counsel stated that they did not plan to serve amended responses before the Parties discussed the scope of Plaintiffs' requests and Defendants' relevance and burden objections. *Id.* The Parties discussed several requests on this call but were unable to come to an agreement. *Id.* Defendants' counsel also indicated that they planned to propose limiting custodians to: (1) Dr. Thomas Edmonson, a naviHealth employee responsible for training medical directors; and (2) the medical directors who were assigned to the Named Plaintiffs' medical claims. *Id.* Plaintiffs' counsel indicated that this was unacceptably narrow and would violate the Court's previous order denying bifurcated discovery. *Id.* In response, Defendants' counsel asked that Plaintiffs identify additional proposed custodians. *Id.*

On October 22, 2025, Plaintiffs sent Defendants a letter addressing: (1) why Defendants' suggested custodians were unacceptably narrow and what additional

categories of documents Plaintiffs wanted custodians for; (2) Defendants' relevance objections; and (3) voluntary limitations to the definition of post-acute care and the scope of *ten* RFPs in response to Defendants' objections. *See generally* Boelter Decl. Ex. G. Specifically, Plaintiffs explained that Defendants' suggested custodians were improperly narrowed to just the medical directors associated with the Named Plaintiffs, despite the Court denying Defendants' request to bifurcate, and that only including medical directors as custodians would effectively eliminate custodial searches in response to most of Plaintiffs' discovery requests. *Id.* at 2–3. As identified in the letter, such a proposal fails to identify custodians with information relevant to requests involving: (1) individuals responsible for managing, storing, or maintaining databases containing EOC documents, billing information, insured communications and grievances, nH Predict Outcome reports, and post-acute care claim statistics; (2) individuals responsible for managing relevant email systems, servers, and storage; (3) individuals responsible for decision-making about post-acute care claims review policies, employee performance metrics and KPIs, employee performance goals, naviHealth's acquisition, and other relevant data; (4) individuals responsible for the development or implementation of nH Predict; (5) individuals responsible for evaluating claims for medical necessity using nH Predict; and (6) individuals responsible for managing, responding to, and reviewing documents related to government investigations into Defendants' post-acute care claims review processes. *Id.* at 2. Plaintiffs' letter also explained that Defendants' request that Plaintiffs identify additional custodians was improper because the Parties' ESI Protocol required Defendants to identify

custodians, as they're the party with knowledge about which individuals within Defendants' organizations are appropriate custodians of the relevant data. *Id.* at 2-3.

On October 23, 2025, the Parties met via videoconference to discuss the outstanding requests. *See* Boelter Decl. ¶ 11. Defendants again asserted that the discovery sought by Plaintiffs was not relevant to the claims as limited by Judge Tunheim's motion to dismiss order. *Id.* Plaintiffs disagreed and noted that Defendants still had not proposed search terms and custodians at all. *Id.* Defendants indicated that they would send a proposal, but the Parties also noted that certain areas would likely require resolution by the Court. *Id.* For example, Defendants stated that they would not produce documents produced to the Senate Subcommittee on Investigations or otherwise in response to government investigations. *Id.*

On October 27, 2025, Defendants sent Plaintiffs a letter proposing search terms and custodians in writing for the first time. *See* Boelter Decl. Ex. H. The Court had set the deadline for the Parties to meet and confer about custodians and search terms as October 24, 2025—three days earlier. Am. Pretrial Scheduling Order, ECF No. 134, at 2. Defendants proposed fifteen custodians, consisting of medical directors and employees responsible for training medical directors and SICCs. *See* Boelter Decl. Ex. H at 2. None of the categories of documents mentioned in Plaintiffs' October 22 Letter were reached by Defendants' October 27 proposal.

On October 31, 2025, Plaintiffs sent Defendants a letter outlining: (1) that Defendants' failure to produce documents or adequately respond to interrogatories hindered Plaintiffs' ability to evaluate Defendants' custodian proposal (Plaintiffs sought organizational charts and the identities of medical directors and SICCs, naviHealth

employees responsible for training and supervising medical directors and SICCs, and people responsible for the development of nH Predict; Defendants refused to adequately respond to any of these requests); and (2) that Defendants' proposed custodians and search terms failed to reach many of Plaintiffs' requests, including RFP Nos. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, and 19. *See* Boelter Decl. Ex. I.

On November 5, 2025, Defendants sent Plaintiffs a letter stating that Defendants were not required to propose custodians relevant to the categories of documents identified by Plaintiffs because Defendants argue: (1) custodial searches are unnecessary for RFPs 8–10 and 18; (2) Defendants agree to use only non-custodial sources for RFPs 3 and 6; (3) Defendants "maintain their objections" and do not plan to respond to RFPs 11-19; and (4) the proposed custodians do reach RFPs 4 and 5. *See* Boelter Decl. Ex. J.

On November 11, 2025, Plaintiffs sent Defendants a letter noting that the Parties were at an impasse on RFPs 11-19 and suggesting that the Parties utilize Judge Elkins' informal dispute resolution process. *See* Boelter Decl. Ex. K at 1. This letter also explained the process used to collect documents from Plaintiffs and contested Defendants' characterization that Plaintiffs counter-proposed search terms were too broad. *Id.* at 2.

On November 12, 2025, Defendants sent Plaintiffs a letter responsive to Plaintiffs October 22 and October 31 Letters. *See* Boelter Decl. Ex. L. Defendants letter outlined: (1) Defendants' renewed objection to the scope of Plaintiffs' contract claims; (2) contested whether the Court had foreclosed this argument; (3) argued that no documents from before July 1, 2019 (the date UnitedHealth enlisted naviHealth's services) could be relevant; (4) argued that post-acute care beyond skilled nursing care was not relevant because

Defendants claim, without support, that nH Predict is used only for skilled nursing claims; (5) discussing Defendants' objections on a request-by-request basis; and (6) claiming that Plaintiffs' voluntary discovery limitations from Plaintiffs October 22, 2025 Letter were not "voluntary." *Id.* Defendants served amended discovery objections and responses eight days later, on November 20, 2025. *See* Boelter Decl. Exs. C, F.

On December 4, 2025, Plaintiffs sent Defendants a letter addressing these points. *See* Boelter Decl. Ex. M. Plaintiffs explained that Defendants' view that Plaintiffs' contract claims were limited by Judge Tunheim's Order was meritless and had been twice rejected by the Court. *Id.* at 1-3.[7] Plaintiffs also explained that Plaintiffs' discovery requests were carefully tailored to reach only appropriate time periods and that some documents from before July 1, 2019 were relevant to this action (including comparative data and information related to the development of nH Predict). *Id.* at 3-4.[8] Plaintiffs then explained that they are entitled to discovery into the three kinds of post-acute care Plaintiffs identified, rather than just skilled nursing, because claims relating to all three kinds are squarely raised by the complaint and are at issue in this litigation. *Id.* at 4-5.[9] Lastly, Plaintiffs went request-by-request addressing Defendants' objections. *Id.* at 5-11.

On December 15, 2025, Defendants sent Plaintiffs a letter adding one additional custodian but refusing to add any of the five additional custodians proposed by Plaintiffs. *See* Boelter Decl. Ex. N at 1-2. Notably, Defendants confirmed two employees identified

---

[7] This argument is addressed in Section IV(a)(3), *infra*.
[8] This argument is addressed in Section IV(a)(4), *infra.*
[9] This argument is addressed in Section IV(a)(4), *infra*.

by Plaintiffs were responsible for training medical directors, but Defendants failed to identify these individuals in Interrogatory 3, which sought their identities. *Id.* at 2. Defendants also continued the ongoing discussion about search terms and hit counts. *Id.* at 2–6.

On December 22, 2025, Plaintiffs and Defendants met and conferred about the scope of this Motion to Compel. *See* Boelter Decl. ¶ 19. During this time, Defendants agreed for the first time to respond to RFP Nos. 6, 8, 10, and 11.[10] *Id.* Defendants also agreed to produce information or data relevant to Interrogatories Nos. 7 and 8 but did not state whether they planned to further amend those responses to track the updated information or data. *Id.* Though the Parties still may have disagreements about what these productions will include, the Parties are still discussing the parameters of those productions and thus potential issues with those productions are not raised in this Motion. *Id.*

On January 6, 2026, Defendants sent Plaintiffs a letter memorializing Defendants' new positions raised on the December 22, 2025 call and further crystalizing the disputes between the Parties. *See* Boelter Decl. Ex. O. First, despite clear orders from this Court stating that Judge Tunheim's Order on Defendants' Motion to Dismiss did not limit Plaintiffs' claims in the way Defendants argue, Defendants reiterate that they stand by their position that Judge Tunheim's Order substantially limited Plaintiffs' contract claims. *Id.* at

---

[10] However, many of these productions are improperly limited by Defendant's general objections and Defendants' positions on Plaintiffs' definition of post-acute care, prior authorization claims, and the Relevant Time Period, and thus these Requests are still reached by Plaintiffs' Motion.

1-4. Next, Defendants reiterated their objections to the Relevant Time Period and Plaintiffs' definition of post-acute care, crystalizing those disputes for the Court. *Id.* at 4-5. Lastly, Defendants discussed each discovery request addressed on the December 22, 2025 call and confirmed the positions discussed on that call. *Id.* at 6-17. While Defendants agree to produce some previously-contested categories of documents, disputes remain as to the Requests raised in this Motion.

On January 20, 2026, Plaintiffs sent Defendants a letter explaining that, in Plaintiffs' view, ripe disputes existed over (1) the scope of Plaintiffs' claims; (2) the Relevant Time Period; (3) the definition of post-acute care; and (4) impasses as to several discovery requests. Plaintiffs specifically stated that they planned to move to compel responses to Requests for Production Nos. 4, 5, 7, 12-17, and 19, and Interrogatories 3, 4, 11, and 12, and explained their basis for doing so. *See* Boelter Decl. Ex. P. Plaintiffs asked Defendants to respond if they disagreed the Parties were at an impasse on any of these issues, or if they believed further conference would be useful. *Id.* at 7. Defendants have not responded to this request to date.

## III.    <u>LEGAL STANDARD</u>

It is well-settled that the discovery rules "are to be accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Pursuant to the liberal scope of discovery set forth in Federal Rule of Civil Procedure 26, a party may obtain discovery regarding any nonprivileged matter that is relevant to any party's claims or defenses and proportional to the needs of the case. *See Orduno v. Pietrzak*, Civil No. 14-1393 ADM/JSM, 2016 WL 5853723, at *3 (D. Minn. Oct. 5, 2016) (explaining that Rule 26 "is to be

construed broadly and encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." (internal quotation and citation omitted)); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) ("Rule 26(b) . . . is liberal in scope and interpretation . . . ."). "The standard is widely recognized as necessarily broad in scope so as to allow the parties essentially equal access to the operative facts." *Bellingham v. BancInsure, Inc.*, Civ. No. 13–0900 (SRN/JJG), 2014 WL 12600277, at *1 (D. Minn. May 13, 2014). In this District, "relevancy in the discovery context is extremely broad, and a court must consider a discovery request relevant unless it is clear that the information sought has no bearing upon the subject matter of the action." *Sinco, Inc. v. B & O Mfg., Inc.*, No. 03-5277(JRT/FLN), 2005 WL 1432202, at *1 (D. Minn. May 23, 2005); *see also Scheffler v. Molin*, Civ. No. 11-3279 (JNE/JJK), 2012 WL 3292894, at *6 (D. Minn. Aug. 10, 2012) ("A discovery request is relevant unless it is clear that the information sought can have no possible bearing on the subject matter of the action."); *Hofer*, 981 F.2d at 380 (explaining that "the standard of relevance in the context of discovery is broader than in the context of admissibility").

As "[t]he party resisting production," Defendants "bear[] the burden of establishing lack of relevancy." *Inline Packaging, LLC v. Graphic Packaging Int'l, Inc.*, Court File No. 15-cv-3183 (ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sept. 6, 2016) (internal quotation and citation omitted). Here, because Plaintiffs have made a threshold showing of relevance, the burden now rests with Defendants to demonstrate specific facts that the discovery sought by Plaintiffs is not relevant to this case.

"An objection that discovery is overly broad and unduly burdensome must be

supported by affidavits or offering evidence revealing the nature of the burden and why the discovery is objectionable." *Abhe & Svoboda, Inc. v. Hedley*, Civ. No. 15-1952 (WMW/BRT), 2016 WL 11509914, at *3 n.5 (D. Minn. Mar. 15, 2016) (quoting *Wagner v. Dryvit Sys., Inc.*, 208 F.R.D. 606, 610 (D. Neb. 2001)). "It is not sufficient to simply state that the discovery is overly broad and burdensome, nor is a claim that answering the discovery will require the objecting party to expend considerable time and effort analyzing 'huge volumes of documents and information' a sufficient factual basis for sustaining [a burden] objection." *Id.* (quoting *Wagner*, 208 F.R.D. at 610).

## IV.  <u>ARGUMENT</u>

It is improper for Defendants to refuse to respond substantively to Plaintiffs' discovery requests based on meritless relevance objections and unsubstantiated burden objections. Defendants cannot use their denial of Plaintiffs' allegations to limit discovery to their own beliefs on the merits of the case or class certification.

### a.  The Disputed Discovery Requests are Relevant.

Defendants object to nearly all of the disputed requests as seeking information that is not relevant. Relevant here, these objections generally fall into four categories. **First**, Defendants make factual assertions (that Plaintiffs dispute) about the nature of naviHealth and the use of nH Predict to deny access to information necessary to test those assertions. Defendants made general objections and objected to RFP Nos. 5 and 7 and Interrogatory No. 11 on this basis. **Second**, Defendants refuse to produce certain class discovery and instead offer documents relevant *only* to Plaintiffs. Defendants refused to properly respond to Interrogatory 3 on this basis. **Third**, Defendants once again read nonexistent limitations

23

into Judge Tunheim's Order and refuse to produce any documents relating to additional bases for Plaintiffs' contract claims beyond whether Defendants used nH Predict in place of medical professionals to make coverage determinations. Defendants made general objections and objected to RFP Nos. 4, 7, 11, 12, 14-17, and 19, and Interrogatories 11 and 12 on this basis. **Fourth**, Defendants object to Plaintiffs' definition of the Relevant Time Period and post-acute care and improperly limit their responses only to include skilled nursing facilities. Defendants made general objections and objected (or inappropriately narrowed responses) to RFP Nos. 4-5, 7, 13, 15-17, 19 and Interrogatories 3-4 and 11 on this basis.

### 1.  Defendants' Merits-Based Assertions Cannot Limit Discovery.

"[A] party is entitled to seek discovery on its theory of the facts and the law, and is not limited in discovery by the *opponent's* theory." *Big City Dynasty v. FP Holdings, L.P.*, 336 F.R.D. 507, 511 (D. Nev. 2020) (emphasis added) (quoting Wright & Miller, *Federal Practice and Procedure*, § 2011 (3d ed.)); *see In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1192 (10th Cir. 2009) ("However, a party should not be limited by its opponent's theory of the case in determining what is discoverable."). But Defendants have done just that by refusing to search and produce documents to numerous discovery requests based solely on their own theory of the case. Defendants assert numerous times throughout their objections that "nH Predict is not used" to "deny coverage," "make coverage determinations," or "in the prior authorization process." Boelter Decl. Ex. C at 5, 13, 16, 18 (general objections and objections to RFPs 5, 7, and 9); Ex. F at 4, 17 (general objections and objections to Interrogatory 11). Defendants use these assertions to object to

any discovery beyond the Named Plaintiffs: "Defendants object to the Requests seeking information beyond claims by the individual named Plaintiffs because nH Predict is not used to deny coverage . . . ." Boelter Decl. Ex. C at 5-6. But this is a factual dispute that is the subject of the case—not a basis to withhold discovery. *See Anvik Corp. v. Samsung Elecs.*, 2009 WL 10695623, at *4 (S.D.N.Y. Sept. 16, 2009) (rejecting relevancy objections that "are merits-based assertions that do not foreclose document discovery").

Defendants' assertions conflict directly with Plaintiffs' factual allegations and theory of the case. *See, e.g.*, Am. Compl. ¶ 38 (alleging Defendants' deliberate creation of a coverage denial process that replaced physician judgment with the nH Predict model). Plaintiffs, not Defendants, are "'the master of the complaint,' and therefore control[] much about [their] suit," including "which substantive claims to bring against which defendants." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-399 (1987)). As written, Plaintiffs' Breach of Contract claim states multiple bases for breach, including: (1) Defendants breach of a provision requiring that "Clinical Services Staff and Physicians make decisions on the health care services you receive based on the appropriateness of care and service and existence of coverage," Am. Compl. ¶ 187; and (2) Defendants' breach of a provision requiring them to "provide written statements to Plaintiffs and the Class, accurately listing all bases for Defendants' denial of claims and the factual and legal bases for each reason given for such denial," Am. Compl. ¶ 189. Plaintiffs' additional bases for breach of contract, as well as Plaintiffs' good faith and fair dealing claim, survived the Motion to Dismiss, and Plaintiffs are therefore entitled to discovery relevant to those claims. *See* Order Den. Req. to File Mot. Recons. and

Clarifying Feb. 13, 2025 Order, ECF No. 104 at 2 ("Plaintiffs' claims that were rooted in contract law survived.").

Moreover, Defendants' own responses contradict their factual assertions. Defendants have represented that "naviHealth . . . provid[ed] certain post-acute care management and utilization review services to United HealthCare Services, Inc." Boelter Decl. Ex. F at 4, 7. This statement is in direct tension with their claim that "nH Predict is not used to deny coverage." By definition, utilization review services apply coverage criteria and apply medical necessity criteria to make coverage determinations. *See* 42 C.F.R. § 422.137(d)(2) (describing standards for utilization review activities conducted by Medicare Advantage organizations). Documents and information necessary to assess these inconsistent assertions are relevant.

The inconsistencies do not stop there. Defendants admit that whether nH Predict is used to make coverage determinations is a disputed fact question in this case: "The remaining claims involve the question of whether nH Predict was used to make coverage determinations." Boelter Decl. Ex. C at 19, 20, 22, 23, 24, 25, 26, 29. By acknowledging that this issue is *disputed* and central to the claims remaining in the case, Defendants have tacitly conceded this information is relevant to the case. Under Rule 26's broad relevance standard, information related to how Defendants used nH Predict is discoverable.

Defendants cannot unilaterally restrict discovery based on their own artificially limited view of the case or rely on assertions about merits issues to withhold information. *See, e.g.*, *Trask v. Olin Corp.*, 298 F.R.D. 244, 265 (W.D. Pa. 2014) (rejecting a defendant's attempt "to limit Plaintiffs' discovery based upon its own definition of what circumstances

are substantially similar"); *Fassett v. Sears Holdings Corp.*, 319 F.R.D. 143, 152 (M.D. Pa. 2017) (rejecting limitation on discovery based on a defendant's theory of the case); *Uhl v. Progressive Direct Ins.*, Civil Action No. 1:23-cv-01904-NYW-SBP, 2024 WL 5187568, at *5 (D. Colo. Dec. 20, 2024) ("[A] discovery motion is not the proper vehicle to hash out merits-based arguments."); *MacSouth Forest Prods., LLC v. Current Builders, Inc.*, Case No. 0:24-CV-60013-BECERRA/AUGUSTIN-BIRCH, 2024 WL 3299498, at *3 (S.D. Fla. June 11, 2024) ("Regardless of how [the opposing parties] view the issues in this litigation, Plaintiff is free to seek discovery on its theory of the case."); *Aroeste v. United States*, 655 F. Supp. 3d 1053, 1061 (S.D. Cal. 2023) ("Litigants, however, are *not* required to supply proof of their claims as a precondition of obtaining discovery."); *Nat. Res. Def. Council v. Curtis*, 189 F.R.D. 4, 8 (D.D.C. 1999) (rejecting argument to limit discovery based on a defendant's view of the merits, noting that merits issues are decided *after* discovery).

### 2. Plaintiffs' Requests Reach Relevant Class Discovery.

Despite the Court unambiguously denying Defendants' request to bifurcate discovery into Plaintiffs' individual claims before class discovery, Defendants also refuse to produce certain class discovery. ECF No. 130 at 7 ("This Court cannot conceive of a reading of Judge Tunheim's Orders that limited discovery to the named Plaintiffs."). Specifically, Defendants refuse to identify medical directors responsible for denying claims of insureds other than the Named Plaintiffs (Interrogatory 3). *See* Boelter Decl. Ex. F at 9-10. This kind of objection to answering an interrogatory about anyone other than the Named Plaintiffs is improper and has already been rejected by the Court.

Because the Court denied Defendants' Motion to Amend the Pretrial Scheduling Order to bifurcate discovery, Defendants' continued refusal to provide information related to absent class members is a violation of the Court's previous ruling denying bifurcated discovery. ECF No. 130 at 6-7. The Court should compel Defendants to respond to Interrogatory No. 3.

### 3. Bases for Plaintiffs' Claims Beyond Whether nH Predict Was Used to Make Coverage Determinations are Relevant.

Defendants have repeatedly refused to respond to discovery because Defendants believe, "[b]ased on Judge Tunheim's preemption analysis, the only question relevant to the remaining contract claims is whether Defendants used nH Predict instead of Clinical Services Staff and Physicians to make decisions regarding a claim for health care services." Boelter Decl. Ex. L at 2. Defendants reaffirmed their reliance on this argument in their January 6, 2026 Letter. Boelter Decl. Ex. O at 1–4. Plaintiffs pleaded other bases for their contract claims, however, and nothing in Judge Tunheim's Order precludes discovery on these claims. "The general scope of discovery is to be construed broadly and encompasses any matter that bears on, or that reasonably could bear on, any issue that is or may be in the case." *Cosgrove v. OS Rest. Servs., Inc.*, Civ. No. 10-CV-1937 (JNE/SRN), 2010 WL 11575055, at *2 (D. Minn. Aug. 31, 2010).

Indeed, Defendants' argument that Judge Tunheim limited the scope of Plaintiffs' contract claims has been briefed and argued twice over, met-and-conferred upon, and rejected by this Court. As this Court has already concluded, Judge Tunheim's Order did not limit the contract claims in the way Defendants' claim, hold them partially preempted, or otherwise limit the factual bases for Plaintiffs' contract claims. ECF No. 130 at 6-7.

In the Court's Order denying Defendants' motion to dismiss as to the contract claims, Judge Tunheim stated:

> Thus, in analyzing these claims the Court would only be required to investigate whether UHC complied with its own written documents. Because ruling on these two claims would require the Court to apply only basic contract principles, the breach of contract and breach of the implied covenant of good faith and fair dealing claims do not regulate the same subject matter as the Medicare Act, and thus are not preempted.

ECF No. 91 at 19. While Judge Tunheim provided the example of breach of UnitedHealth's contractual promise that claims determinations would be made by "clinical services staff" and "physicians," he did not suggest this example excluded other potential grounds for contract claims alleged in the complaint. *Id.* Defendants provide no support for their position that other bases are preempted. Nor can they, because other bases for Plaintiffs' contract claims would also require the Court only to "investigate whether UHC complied with its own written documents . . . [and] apply only basic contract principles"—following the same rationale for why Plaintiffs' contract claims were not preempted. *Id.*

Defendants have raised this flawed interpretation of Judge Tunheim's Order to the Court on two separate occasions, and both times this Court rejected those arguments. First, Defendants sought reconsideration and clarification of their motion to dismiss. Defs.' Letter, ECF No. 95. In rejecting this request, the Court clarified: "The contract claims survived preemption due to their independence from the Medicare Act, which limited the Court's analysis to the Evidence of Coverage ("EOC") documents provided by UHC. Accordingly, the contract claims are limited to breaches of EOC terms." ECF No. 104 at 2. Thus, Judge Tunheim did not limit Plaintiffs' claims to any singular basis for breach of

contract, but instead any pleaded basis so long as it is limited to "EOC terms."

Second, Defendants raised this argument in their Motion to Amend the Pretrial Scheduling Order and, once again, the Court rejected Defendants' argument. The Court stated on multiple occasions that Judge Tunheim's Order did not impose discovery limitations in the way Defendants suggest:

> And I don't see in Judge Tunheim's order where he has indicated that discovery should somehow vary because he has dismissed the counts preempted by federal law, and I don't understand where the defendants are reading into Judge Tunheim's order that discovery should somehow be bifurcated **or limited to a narrower theory**.

Tr. of Sept. 4, 2025 Mot. Hr'g at 25:20-25 (emphasis added).

> Additionally, this Court does not read Judge Tunheim's opinion and order granting in part and denying in part defendants' motion to dismiss as narrowing the scope of the dispute.

*Id.* at 47:22-25.

> Additionally, this Court does not read Judge Tunheim's Order **as narrowing the scope of the dispute in the way Defendants argue**. This Court does not believe Judge Tunheim intended the parties to litigate only the claims as they relate to the named Plaintiffs first. Rather, Judge Tunheim's task in ruling on the Motion to Dismiss was to determine whether the claims were preempted by the Medicare Act. As his subsequent Order clarifies, the contract-based claims survived preemption due to their independence from the Medicare Act and because the contract claims were limited to breach of the Evidence of Coverage terms. This Court cannot conceive of a reading of Judge Tunheim's Orders that limited discovery to the named Plaintiffs.

ECF No. 130 at 6-7 (emphasis added).

Defendants' continued refusal to participate in discovery based on an argument that has been twice rejected by the Court unnecessarily delays the discovery process and limits the scope of discovery without a legitimate basis. Discovery beyond the narrow question

identified by Defendants is relevant to the claims in this case.

### 4. Plaintiffs' Definitions of Post-Acute Care and the Relevant Time Period Reach Relevant Information.

First, Defendants argue that Plaintiffs' definition of post-acute care, which Plaintiffs voluntarily limited to encompassing only inpatient rehabilitation care, skilled nursing care, and long-term rehabilitation care, is "overbroad and expands the scope of multiple requests beyond what is relevant to the remaining claims." Boelter Decl. Ex. L at 4. Defendants claim, without support, that "the nH Predict tool is used only in connection with care planning after a member is admitted to a [skilled nursing facility]." *Id.* at 5. However, Defendants admit that naviHealth, the entity responsible for developing and deploying nH Predict, "provides certain services for care at facilities other than [skilled nursing facilities]," *id.* at 4–5, including IRF and LTAC, *see* Boelter Decl. ¶ 19. Based on these objections related to the definition of post-acute care, Defendants have limited custodial searches to only individuals who review claims for skilled nursing care, excluding two proposed custodians (Dr. Van Dam and Dr. Arends).

Defendants also ignore the fact that multiple Plaintiffs' claims, including William Hull and Frank Chester Perry's, are premised upon Defendants' denial of prior authorization claims for inpatient rehabilitation care. If Defendants wanted to challenge the factual bases of Plaintiffs' claims, Defendants could have made a factual challenge to Plaintiffs' complaint on a motion to dismiss—but Defendants chose not to, and these claims remain part of this litigation. *Cf. Kisting-Leung v. Cigna Corp.*, 780 F. Supp. 3d 985, 997-1000 (E.D. Cal. 2025) (reviewing defendants' factual challenge regarding whether certain

plaintiffs' claims were reviewed by the algorithm at issue using declaration evidence). Having opted not to raise a factual challenge, Defendants may not unilaterally carve out pleaded facts from the scope of discovery.

Defendants' unsupported assertions about the scope of nH Predict do not circumvent Defendants' discovery obligations to provide discovery on issues raised squarely by the complaint. Discovery into naviHealth's claims review practices and the scope of nH Predict's use are squarely raised by the complaint, remain in the case, and Defendants are obligated to participate in said discovery. Plaintiffs are not required to take Defendants' word about these key issues at the heart of the case—especially when those assertions are contradicted by evidence. Plaintiffs are entitled to discovery to test their allegations.

Second, Defendants incorrectly contend that any discovery before July 1, 2019, is "overbroad, not relevant, and not proportional to the needs of the case." Boelter Decl. Ex. L at 4. First, Plaintiffs have voluntarily agreed to limit many requests to this period. For some requests, however, Plaintiffs require, and are entitled to, discovery from before that date. Many of Plaintiffs' discovery requests seeking information from before July 1, 2019 are comparative in nature. Information about how Defendants' policies, practices, claims denial rates, performance metrics, financials, and employee reward or discipline changed over time may provide crucial direct or circumstantial evidence of the impact of Defendants' misconduct, Defendants' intent, damages, and other relevant considerations. *See, e.g.*, Boelter Decl. Ex. A at 10 (RFP No. 4 seeking documents relating to post-acute care claims review policies and procedures before and after July 1, 2019); *id.* (RFP No. 5 seeking documents relating to analysis of nH Predict and nH Predict's compliance with

generally accepted standards of medical practice and insurance policies); *id.* at 11 (RFP No. 9 seeking documents relating to the volume of post-acute care claim denials based on medical necessity over time); *id.* at 12 (RFP No. 16 seeking documents relating to employee performance expectations and evaluations); *id.* (RFP No. 17 seeking documents relating to employee discipline). Showing how these metrics change over time is likely to lead to admissible evidence supporting Plaintiffs' claims.

Other requests concern specific events before July 1, 2019 that are relevant to Plaintiffs' claims. These include how and why nH Predict was developed (RFP No. 7) and how and why UnitedHealth acquired naviHealth (RFP No. 12). The development of nH Predict is relevant to Plaintiffs' claims because it shows: (1) how nH Predict works; (2) the development goals of nH Predict; (3) the anticipated benefits of nH Predict; and (4) whether nH Predict was designed to supplant physician decision-making, among other things. Similarly, documents about UnitedHealth's acquisition of naviHealth are relevant because they would show: (1) why UnitedHealth acquired naviHealth; (2) what UnitedHealth hoped to gain by acquiring naviHealth; (3) what changes UnitedHealth intended to make to naviHealth's practices and why; and (4) whether UnitedHealth intended to use naviHealth to supplant physician decision-making.

### 5. Discovery Into Internal and Government Investigations of Defendants' Post-Acute Care Claims Review Practices are Relevant.

Plaintiffs' RFP No. 14 seek documents and communications "concerning internal . . . or governmental agency investigations" about Defendants' post-acute care claims review policies and practices and Defendants' use of AI or algorithms, including nH

Predict, to assess or adjudicate claims. *See* Boelter Decl. Ex. A at 12. RFP No. 15 seeks documents and communications produced to the government in connection with said investigations. *Id.* Despite the Parties' acknowledgment that the Senate Permanent Subcommittee on Investigation recently investigated the exact issue in this case—Defendants' use of AI in making post-acute care claims determinations—Defendants refused to produce any documents responsive to these requests, citing burden and relevance objections. *See* Boelter Decl. Ex. C at 23-25.

In their November 12 Letter, Defendants explained that their relevance objections had three bases: (1) that the Requests were not relevant to Plaintiffs' claims as narrowly interpreted by Defendants; (2) that *all* of the documents produced to the government "even if about nH Predict—are not relevant"; (3) that these documents may already be reached by other requests; and (4) because "Plaintiffs [have not] explained how all investigations relating to any use of algorithms or AI to assess or adjudicate Medicare Advantage claims for post-acute care are relevant." *See* Boelter Decl. Ex. L at 10-11.

These arguments fail. Plaintiffs have already explained that Defendants' baselessly narrow interpretation of Plaintiffs' remaining claims is not a proper basis to refuse to produce documents. *See supra*, Section IV(a)(3). This isn't a fishing expedition where Plaintiffs have no reason to believe relevant government investigations exist—here, the Parties *know* there is at least one directly on-point Senate investigation about *exactly the same practices* at issue in this litigation. That investigation examined the same company for the same practices in the same type of insurance plan for the same type of insurance claims using the same AI tool—so Defendants' argument that documents relating to that

investigation are irrelevant to this litigation is untenable. *See, e.g.*, *Costa v. Wright Med. Tech., Inc.*, Civil Action No. 17-cv-12524-ADB, 2019 WL 108884, at *1-2 (D. Mass. Jan. 4, 2019) (finding a similar discovery request was proper where the actions were "substantially similar"). Other investigations into Defendants' abuse of AI are similarly relevant, as they could show a pattern or practice of AI misuse or evince that Defendants lack safeguards to ensure AI is being used properly and in accordance with EOC contracts.

Defendants burden objections are similarly unpersuasive. First, Defendants fail to substantiate their burden objections with affidavits or other supporting evidence. *See infra*, Section IV(a)(4). Second, RFP No. 15 seeks documents that Defendants have already been searched, culled, identified, screened for privilege, and produced to third parties—no further work needs to be done, so there is little or no burden in making this production.

### b. Unsubstantiated Burden Objections Are Not a Basis to Withhold Discovery.

Defendants generally objected and specifically objected to nearly *every single* discovery request on the basis of the request being "unduly burdensome."[11] "An objection that discovery is overly broad and unduly burdensome must be supported by affidavits or offering evidence revealing the nature of the burden and why the discovery is objectionable." *Hedley*, 2016 WL 11509914, at *3 n.5 (quoting *Wagner*, 208 F.R.D. at 610). "It is not sufficient to simply state that the discovery is overly broad and burdensome, nor

---

[11] Defendants raised a burden objection on every RFP and Interrogatory besides RFP No. 8, where Defendants claimed there were "no responsive documents" to identify the number of claims processed using nH Predict because "Defendants do not use nH Predict to make coverage determinations," Boelter Decl. Ex. A at 17, and RFP No. 13, where Defendants refused to produce documents based on other objections.

is a claim that answering the discovery will require the objecting party to expend considerable time and effort analyzing 'huge volumes of documents and information' a sufficient factual basis for sustaining [a burden] objection." *Id.* (quoting *Wagner*, 208 F.R.D. at 610).

Defendants' boilerplate burden objections are unsubstantiated and, therefore, ineffective. Defendants' burden objections amount to little more than claiming that the discovery is overly broad and burdensome and lacks supporting declarations or other supporting evidence. Thus, the Court should overrule Defendants' objections.

### c. Abstract Privilege Objections Are Not a Basis to Withhold Discovery.

Defendants' privilege and confidentiality objections are equally unavailing. To stand on a privilege or work-product objection, a party must "supply a log that describes the nature of the document without disclosing protected information." *Polaris Indus., Inc. v. CFMOTO Powersports, Inc.*, Civ. No. 10-4362 (JNE/JJG), 2012 WL 13028232, at *7 (D. Minn. Jan. 12, 2012); *see* Fed. R. Civ. P. 26(b)(5). Although Defendants have repeatedly cited to attorney-client privilege in their responses and objections to Plaintiffs' Requests, *see* Ex. C at 3, 14, 21-27 (general objections and objections to RFPs 6, 12, 14-17); Ex. F at 2-3, 15 (general objections and objections to Interrogatory 9), Defendants have failed to provide any redacted responsive documents or a privilege log in support of such designations—fatal to their claim of privilege. *See, e.g.*, *Robeck v. Ford Motor Co.*, Civil No. 04-4858 (JNE/JGL), 2005 WL 8164548, at *3 (D. Minn. Sept. 9, 2005) ("To whatever extent it has not, [defendant] must produce a detailed privilege log in order to stand on its privilege objections.").

### d. Plaintiffs Will Agree to Defendants' Proposed Search Terms, but Dispute the Scope of Custodians.

Plaintiffs will generally agree to the search terms proposed by Defendants on December 15, 2025 to search for documents responsive to RFP Nos. 4 and 5. As discussed above, Plaintiffs believe the list of custodians improperly excludes individuals with relevant information related to IRF and LTAC claims review, including Dr. Arends and Dr. Van Dam. The Court should require Defendants to add these individuals as custodians. Additionally, Defendants' proposed custodians and search terms fail to reach discovery requests beyond RFP Nos. 4 and 5. Plaintiffs anticipate the Parties will negotiate search terms and custodians for additional requests after resolution of this Motion.

## V.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion in its entirety.

Dated: January 28, 2026                     Respectfully Submitted,

                                            *s/Simeon A. Morbey*
                                            Karen Hanson Riebel (#0219770)
                                            David W. Asp (#0344850)
                                            Simeon A. Morbey (#0391338)
                                            Derek C. Waller (#0401120)
                                            Emma Ritter Gordon (#0404000)
                                            **LOCKRIDGE GRINDAL NAUEN PLLP**
                                            100 Washington Ave. South, Ste. 2200
                                            Minneapolis, MN 55401
                                            Tel: (612) 339-6900
                                            khriebel@locklaw.com
                                            dwasp@locklaw.com
                                            samorbey@locklaw.com
                                            dcwaller@locklaw.com
                                            erittergordon@locklaw.com

                                            Glenn A. Danas (CA #270317)
                                            Ryan J. Clarkson (CA #257074)
                                            Zarrina Ozari (CA #334443)
                                            Michael A. Boelter (CA #353529)
                                            *Pro Hac Vice*
                                            **CLARKSON LAW FIRM, P.C.**
                                            22525 Pacific Coast Highway
                                            Malibu, CA 90265
                                            Tel: (213) 788-4050
                                            rclarkson@clarksonlawfirm.com
                                            gdanas@clarksonlawfirm.com
                                            zozari@clarksonlawfirm.com
                                            mboelter@clarksonlawfirm.com

                                            James Pizzirusso (DC #477604)
                                            Nicholas Murphy (DC #90011138)
                                            Pro Hac Vice
                                            **HAUSFELD LLP**
                                            1201 17th St., NW, Ste. 600
                                            Washington, DC 20006
                                            Tel: (202) 540-7200
                                            jpizzirusso@hausfeld.com
                                            nmurphy@hausfeld.com

                                            *Attorneys for Plaintiffs*