UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| The Estate of Gene B. Lokken, *et al.*, | Case No. 23-cv-3514 (JRT/SGE) |
| Plaintiffs, | |
| v. | **ORDER** |
| UnitedHealth Group, Inc., et al., | |
| Defendants. | |

---

This matter is before the Court on Plaintiffs' Motion to Compel Discovery Responses and Production of Documents. (Dkt. 143). The Court heard oral argument on the motion February 11, 2026, and took the Motion under advisement. (*See* Dkt. 157.)

## **BACKGROUND**

This is a putative class action alleging that UnitedHealth Group, Inc., and naviHealth, Inc., used an artificial intelligence program called nH Predict to deny medical care coverage in violation of the terms of the Plaintiffs' insurance agreements. Defendants moved to dismiss the Complaint, and United States District Judge John R. Tunheim granted-in-part and denied-in-part the Motion. (Dkt. 91.) Judge Tunheim determined that several of Plaintiffs' state claims were preempted by federal statute, but he allowed Plaintiffs' claims for breach of contract and breach of the implied covenant of good faith and fair dealing to proceed. He wrote that these claims "effectively arise out of

[Defendants'] evidence of coverage documents because the question [is] whether UHC complied with its statement that claim decisions would be made by 'clinical services staff' and 'physicians' when it allegedly used artificial intelligence." (Dkt. 91 at 19.) Judge Tunheim determined that these Counts were not preempted by federal law.

After receiving this partially adverse ruling, Defendants requested Judge Tunheim allow them to file a motion to reconsider the Order. (Dkt. 95.) Judge Tunheim denied the request but clarified his previous order stating,

> . . . UHC requests clarification from the Court on the scope of the contract claims and damages. The contract claims survived preemption due to their independence from the Medicare Act, which limited the Court's analysis to the Evidence of Coverage ("EOC") documents provided by UHC. Accordingly, the contract claims are limited to breaches of EOC terms.

(Dkt. 104 at 2.)

Defendants then filed a motion on August 21, 2025, asking this Court to amend the pretrial scheduling order to bifurcate discovery into two stages. (Dkt. 115.) Defendants proposed the first stage would allow discovery only for the "threshold factual question of whether Defendants used nH Predict in place of physician medical directors to make adverse coverage determinations related to the named Plaintiffs' care in skilled nursing facilities." (Dkt. 117 at 7.) After the first stage of discovery, Defendants wished to move for summary judgment to determine whether a genuine issue of material fact exists with respect to the named Plaintiffs. *Id*.

In their interpretation of Judge Tunheim's Order, the Defendants argued that by only allowing the contract claims to proceed, Judge Tunheim intended to narrow the scope of

discovery as to the named Plaintiffs allegedly injured by the breach of the contract. Having reviewed Judge Tunheim's Order, this Court rejected Defendant's interpretation and denied the Motion to Amend the Pretrial Scheduling Order. (Dkt. 130.) This Court concluded that discovery would fully proceed as to the putative class action, from the beginning, due to the enmeshed factual and legal issues comprising the Plaintiff's cause of action. *See generally,* Dkt. 130 at 5-7 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)). The Court's Order and Opinion should have made it clear to the Defendants that the scope of discovery would go far beyond the named class members. (Dkt. 130.) Yet the scope of discovery for the surviving contract claims continues to be in controversy. Many of the same issues raised at the last hearing are before this Court again.

Plaintiffs move to compel the broad discovery of documents and answers that Defendants refuse to provide in seven categories (A-G): (A) discovery regarding the policies and procedures for post-acute care, (B) the development and use of nH Predict, (C) the business acquisition and financial data regarding the financial benefits of nH Predict, (D) internal and government investigations into UHC's use of artificial intelligence ("AI"), (E) naviHealth employee incentives for using nH Predict, (F) any oversight of AI use by UHC, and (G) information regarding the employees issuing the Notices of Medicare Non-Coverage ("NOMNCs").

## ANALYSIS

I. **Legal Standard**

Under the Federal Rules, parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the

3

case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the dispute, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Also, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

The party seeking discovery has the burden of showing relevance before the requested information is produced. *See Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). Although discoverability is broader than admissibility, this standard "should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Id.* The party resisting production "bears the burden of establishing lack of relevancy or undue burden." *Inline Packaging, LLC v. Graphing Packaging Int'l, Inc.*, Case no. 15-cv-3183 (ADM/LIB), 2016 WL 6997113, at *7 (D. Minn. Sep. 6, 2016) (quoting *Saint Paul Reinsurance Co. v. Com. Fin. Corp.*, 198 F.R.D. 508, 511 (N.D. Iowa Nov. 22, 2000)).

Courts have broad discretion in handling pretrial procedure and discovery. *See, e.g.*, *Rowles v. Curators of Univ. of Mo.*, 983 F.3d 345, 353 (8th Cir. 2020) ("A district court has very wide discretion in handling pretrial discovery . . . ." (quotation omitted)); *Solutran, Inc. v. U.S. Bancorp*, Case no. 13-cv-2637 (SRN/BRT), 2016 WL 7377099, at *2 (D. Minn. Dec. 20, 2016) ("Further, magistrate judges are afforded wide discretion in handling

4

discovery matters and are free to use and control pretrial procedure in furtherance of the orderly administration of justice." (cleaned up)).

## II.     Time Period

At the outset, the Court will first address the time period to which Plaintiffs' discovery requests apply. UHC objects to all of Plaintiffs' requests to the extent that they seek any documents before July 1, 2019, arguing that documents before that date are not discoverable because they are not relevant to Plaintiffs' claims and production would be not proportional and unduly burdensome. This Court disagrees. Plaintiffs' claims allow discovery into the issues of whether UHC's policies and procedures changed between pre-2019 and post-2019, how employees were trained, and what they were told about any policy or procedural changes involving AI. For example, a United States Senate investigation report[1] from October 2024 confirmed that UHC's claim denial rate for post-acute claims more than doubled after they began using naviHealth and nH Predict in 2019, and Plaintiffs allege these denials lacked proper justification. Documents related to this investigation are relevant to Plaintiffs' claims. And information from 2017-2019 is relevant and could constitute circumstantial evidence as to the breach of contract claims.

UHC also argues that these documents are not relevant to Plaintiffs' claims because UHC did not use nH Predict until July 1, 2019. But whether and how UHC changed its

---

[1] U.S. Senate Permanent Subcommittee on Investigations, Refusal of Recovery: How Medicare Advantage Insurers Have Denied Patients Access to Post-Acute Care, Majority Staff Report (Oct. 17, 2022), available at https://www.hsgac.senate.gov/wp-content/uploads/2024.10.17-PSI-Majority-Staff-Report-on-Medicare-Advantage.pdf (last visited Feb. 25, 2026) ("Senate Report").

5

practices when it began using nH Predict is directly relevant to Plaintiffs' claims. The same is true for any changes UHC undertook with employee incentives, employee discipline, claims denials, or performance evaluations before and after it began using nH Predict. The Court will employ this lens while it determines the issues raised by Plaintiffs' Motion.

### III. Plaintiffs' Requests

#### A. Policies and Procedures for Post-Acute Care Claims

Plaintiffs seek documents about UHC's policies and procedures regarding how it assesses and adjudicates post-acute care claims and employee training (RFP 4), as well as documents and communications discussing or analyzing nH Predict, including compliance with generally accepted standards of medical practice (RFP 5). Plaintiffs argue that individuals from Skilled Nursing Facilities ("SNFs"), Inpatient Rehabilitation Facilities ("IRFs") and Long-term Acute Care Hospitals ("LTACs") are custodians of relevant documents that are responsive to RFPs 4 and 5, and Plaintiffs should be allowed to evaluate how UHC's policies and practices changed over the time that UHC began using nH Predict.

UHC argues that it has already produced extensive documents in response to these RFPs. It also argues that documents about policies and procedures at IRFs or LTACs are not relevant because naviHealth does not use nH Predict in either IRFs or LTACs. UHC has provided evidentiary support for its argument. (*See* Decl. of Allysia Druga, Dkt. 152, ¶ 23 ("naviHealth does not use nH Predict in connection with IRF or LTAC services.").) Plaintiffs fail to provide any evidentiary basis to believe that changes in UHC's policies or practices at facilities that do not use nH Predict could be relevant to their contract claims. *See Bredemus v. Int'l Paper Co.*, 252 F.R.D. 529, 535 (D. Minn. 2002) (denying motion to

compel where movant failed to offer evidentiary basis to counter evidentiary affidavit). The record before this Court demonstrates that UHC does not use nH Predict at IRFs or LTACs, and therefore documents concerning UHC's policies and practices at those facilities are not relevant to Plaintiffs' claims.

Accordingly, this Court determines that discovery requests seeking documents discussing or analyzing UHC's policies and procedures for assessing and adjudicating post-acute care claims and employee training or nH Predict at SNFs seek relevant documents and are neither disproportionate nor overly burdensome to produce. However, Plaintiffs' request for documents and communications discussing or analyzing compliance with generally accepted standards of medical practice is overly broad and unduly burdensome, and requests for documents discussing or analyzing compliance with generally accepted standards of medical practice will be denied. Accordingly, Plaintiffs' Motion is granted as it relates to RFP 4, and UHC shall produce responsive documents from January 1, 2017, through the present. Plaintiffs' Motion is granted-in-part and denied-in-part as it relates to RFP 5, and UHC shall produce all documents and communications analyzing or discussing nH Predict.

### B. Development and Use of nH Predict

Plaintiffs next seek to compel responses to RFP 7 and Interrogatory 11, both of which seek discovery regarding the development and use of nH Predict. RFP 7 seeks documents related to the development and use of nH Predict, and Interrogatory 11 seeks the identity of all individuals involved in the development of nH Predict. Plaintiffs argue that responsive discovery would show how nH Predict works, the development goals of

7

nH Predict, its anticipated benefits, and whether nH Predict was designed to supplant physician decision-making. UHC opposes this request based on relevance, arguing that RFP 7 is based on a faulty premise regarding the use of nH Predict. UHC further argues that the data, rules and source code of nH Predict is not relevant to Plaintiffs' contract claims.

This Court agrees that Plaintiffs are entitled to discovery of documents regarding how nH Predict works, its development goals and anticipated benefit, and whether it was designed to supplant physician decision-making. This includes not only documents and communications regarding nH Predict's development, design, creation, approval, implementation, and use, but also the identities of the individuals involved in nH Predict's development, design, creation, implementation, and approval. Indeed, UHC agrees and either has produced this information or is in the process of producing significant documents that are responsive to RFP 7. (*See* Defs.' Mem. at 25.) UHC's use of nH Predict is at the heart of Plaintiffs' claims, and the identity of individuals that designed, developed, and implement nH Predict is plainly relevant. However, the Court is not persuaded that the data, rules, source code, and medical guidelines nH Predict is based on arerelevant to Plaintiffs' contract claims. Accordingly, with respect to RFP 7, Plaintiffs' motion is granted-in-part and denied-in-part, and UHC shall produce documents responsive to RFP 7 except that it shall not be required to produce the data, rules, source code, and medical guidelines that nH Predict is based on.

UHC also argues that Interrogatory 11 is based on the "faulty premise" that nH Predict is used to make coverage determinations. Whether nH Predict is used to make

8

coverage determinations, however, is a merits-based argument that the parties can address later in this litigation. For purposes of this Motion, the identity of the individuals involved with the development of nH Predict is plainly relevant, and Plaintiff's motion will be granted as it relates to Interrogatory 11.

### C. Business Acquisition and Financial Data

Plaintiffs also move to compel responses to requests seeking business acquisition and financial documents about UHC and naviHealth. Specifically, RFP 12 seeks discovery regarding UHC's acquisition of naviHealth, and RFP 13 seeks discovery "sufficient to identify Defendants' valuation, value, revenue, profits, and profitability." UHC resists these RFPs on relevancy and undue-burden grounds. Regarding RFP 12, UHC argues that all documents and communications connected to its acquisition of naviHealth are not relevant to whether it breached any of the contracts at issue and its normal business activities of profit maximization are not actionable to show bad faith. It further argues that its scope of business exceeds well beyond nH Predict, and Plaintiffs' claims relating to UHC's use of nH Predict have no relationship to substantial portions of its business. Any documents and communications about UHC's acquisition of naviHealth to address post-acute care claims and the projected cost savings for post-acute care claims, though, would be both responsive to RFP 12 and directly relevant to Plaintiffs' claims. Accordingly, with respect to RFP 12, the Court will grant the Motion in part, and UHC shall produce documents and communications concerning Defendants' acquisition of naviHealth to address post-acute care claims or any projected cost-savings for post-acute care claims.

As for RFP 13, the Court finds UHC's arguments persuasive. The value, earnings, and revenue of UHC's various business entities are not relevant to damages arising from the contractual breaches at the center of Plaintiffs' claims. Accordingly, Plaintiffs' Motion is denied as it relates to RFP 13.

### D. Internal and Government Investigations into UHC's Use of AI

Plaintiffs also move to compel responses to RFPs 14 and 15, both of which seek documents related to internal or governmental investigations. Broadly, RFP 14 seeks documents related to internal or governmental investigations into UHC's use of nH Predict, algorithms, or AI tools to adjudicate claims, and RFP 15 seeks any and all documents and communications UHC produced to any governmental body "concerning [its] assessment and adjudication of medical claims." UHC opposes both RFPs, arguing that the requests, as written, are overly broad and unduly burdensome.

Plaintiffs argue that these documents area relevant to show how nH Predict was used to make medical determinations, whether UHC changed its processes as a result of internal or governmental investigations, and whether UHC's adjudication of medical claims has been investigated by any governmental or regulatory agency. But not every internal or governmental investigation would necessarily be relevant to Plaintiffs' claims—certainly not where UHC's business is so heavily regulated. And "cloned" discovery requests like these encompass more documents than are necessarily relevant to Plaintiffs' claims and therefore are overly broad and unduly burdensome. *See, e.g.*, *Midwest Gas Servs., Inc. v. Indiana Gas Co.*, No. IP 99-690-C-D/F, 2000 U.S. Dist. LEXIS 8098 at *2 (S.D. Ind. Mar. 7, 2000), *rev'd in part on other grounds*, 317 F.3d 703 (7th Cir. 2003). Governmental

10

investigations concerning UHC's use of nH Predict or other AI tools in post-acute care claim determinations, however, would certainly be relevant. *See, e.g.*, Senate Report, *supra* n.1. Thus, to the extent RFPs 14 and 15 seek documents and communications related to government investigations into UHC's use of AI or nH Predict or UHC's assessments or adjudications of post-acute care claims, those documents are relevant to the claims and should be produced.

Accordingly, with respect to RFPs 14 and 15, the Court grants Plaintiffs' Motion in part, and UHC shall produce documents and communications concerning governmental agency or regulatory body investigations related to UHC's use of nH Predict or AI tools used in relation to the assessment and adjudication of post-acute care claims. Insofar as RFPs 14 and 15 seek internal investigations of UHC's policies or practices or operations related to UHC's use of other algorithms or AI tools, however, the Court denies Plaintiffs' Motion.

### E.  naviHealth Employee Incentives for Using nH Predict

Plaintiffs' RFPs 16 and 17 seek documents related to performance evaluations, compensation, and discipline of naviHealth employees. In addition to the time-period objections addressed above, UHC argues that these RFPs are overly broad because they encompass naviHealth employees that are not relevant to Plaintiffs' claims. In response to RFP 16, UHC produced documents relating to medical directors involved in SNF claims, and Plaintiffs argue that this limitation excludes too many relevant documents, including metrics that applied to employees who primarily interface with patients and other post-acute care personnel. As to RFP 17, UHC objects on relevance and privilege grounds, and

argues that disclosing employees' disciplinary records requires a compelling showing of relevancy that Plaintiffs have not made. UHC further argues that the request is overly broad and disproportional because it seeks "any" disciplinary actions against naviHealth employees.

The Court agrees with UHC that Plaintiffs have not made a sufficient showing to require the production of all naviHealth employee disciplinary records. *See, e.g.*, *Onwuka v. Federal Express Corp.*, 178 F.R.D. 508, 516-17 (D. Minn. 1997) (personnel files of entire class of employees should not be disclosed absent a compelling showing of relevance). Nonetheless, the documents related to post-acute care coordinators are directly relevant to Plaintiffs' claims. Accordingly, as to RFPs 16 and 17, the Court grants-in-part Plaintiffs' motion, and UHC shall produce documents responsive to RFPs 16 and 17 dating back to November 2017 for all post-acute care coordinators, including medical directors, who make post-acute care recommendations.

### F.  Oversight of AI Use by UHC

Plaintiffs also seek documents related to UHC's AI Review Board and the identities of the Board's members. Specifically, RFP 19 seeks documents and communications "concerning the review, oversight, and analysis of nH Predict" by UHC's internal AI Review Board, and Interrogatory 12 asks for the identities of the members of UHC's AI Review Board. UHC argues that these requests seek discovery that is irrelevant to Plaintiffs' breach of contract claims. This Court disagrees. Documents and communications about UHC's review and oversight of nH Predict are directly relevant to its alleged conduct, as

is the identity of the individuals who conduct that review and oversight. Plaintiffs' Motion is granted as to RFP 19 and Interrogatory 12.

### G. Employees Issuance of NOMNCs

Finally, UHC objects to Plaintiffs' Interrogatories 3 and 4. Interrogatory 3 seeks the identities of all employees involved in decisions to issue NOMNCs, and Interrogatory 4 seeks the identities of all employees responsible for training naviHealth Medical Directors and care coordinators. UHC argues that it has already produced the identities of the Medical Directors who reviewed the Named Plaintiffs' claims as well as nine individuals that UHC has identified as being involved in training naviHealth Medical Directors and care coordinators from July 1, 2019, to present. UHC further argues that requiring it to identify all Medical Directors and care coordinators would impose a disproportionate burden because that would encompass thousands of current and former employees.

UHC's limited response identifying only individuals who issued NOMNCs in the Named Plaintiffs' cases is insufficient. Plaintiffs are entitled to discovery on both the Named Plaintiffs' claims and the putative class members' claims (*see* Dkt. 130), and UHC identifying only the Medical Directors who reviewed the Named Plaintiffs' claims directly conflicts with this Court's earlier order denying UHC's motion to bifurcate discovery. However, this Court is also cognizant of UHC's representation that the number of employees involved in the decision to issue NOMNCs—both Medical Directors and care coordinators—for the putative class is in the thousands.

Accordingly, Plaintiffs' motion will be granted with respect to Interrogatories 3 and 4 as follows: For Interrogatory 3, UHC shall produce the names, phone numbers, and last-

13

known addresses of medical directors and care coordinators who were involved in deciding to issue NOMNCs for 300 members of the putative nationwide class. For Interrogatory 4, UHC shall identify all employees responsible for training Medical Directors and care coordinators in the use of nH Predict.

## **ORDER**

Accordingly, based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT** Plaintiff's Motion to Compel (Dkt. 143) is **GRANTED-IN-PART** and **DENIED-IN-PART** as set forth above. To facilitate the just, speedy, and inexpensive resolution of this matter, UHC shall produce all documents required by this Order within **21 days** of this Order's issuance.

Dated: March 9, 2026                               *s/Shannon G. Elkins*
                                                   SHANNON G. ELKINS
                                                   United States Magistrate Judge