UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

THE ESTATE OF GENE B. LOKKEN, GLENNETTE KELL, DARLENE BUCKNER, JOHN CLEMENS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF CAROL CLEMENS, THE ESTATE OF FRANK CHESTER PERRY, THE ESTATE OF JACKIE MARTIN, JOHN J. WILLIAMS, AS TRUSTEE OF THE MILES AND CAROLYN WILLIAMS 1993 FAMILY TRUST, and BARBARA B. HULL, AND LORA K. POWELL, AS EXECUTORS OF THE ESTATE OF WILLIAM HULL, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

UNITEDHEALTH GROUP INC., UNITED HEALTHCARE, INC., NAVIHEALTH, INC. and DOES 1-50, inclusive,

Defendants.

Civil File No. 23-CV-03514 (JRT/SGE)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR LEAVE TO AMEND PLEADING**

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 2

A. Regulators Must Approve Rates For Medicare Advantage Plans ........ 2

B. Plaintiffs' Potential Theories Have Shifted Over Time ........ 3

1. Plaintiffs File Their Amended Complaint and All Claims Are Dismissed Except for Two Contract-Based Claims ........ 3

2. In April 2026, For the First Time, Plaintiffs Disclose that They Seek Damages Based Upon Allegedly Fraudulently-Obtained Rates that CMS Approved ........ 4

C. Defendants Seek to Come to Agreement with Plaintiffs Regarding Amendment ........ 6

III. LEGAL STANDARD ........ 6

IV. ARGUMENT ........ 7

A. Defendants Have "Good Cause" to Amend Based on Plaintiffs' Newly-Disclosed Damages Theory ........ 7

1. Defendants Diligently Sought to Amend ........ 8

2. Plaintiffs Will Suffer No Prejudice from the Amendment ........ 9

3. Plaintiffs' Disclosure of a New Theory of Damages Explains the Timing of this Motion ........ 11

4. The "Importance of the Amendment" Favors the Amendment ........ 11

B. Plaintiffs' Amendment Easily Meets Rule 15's Liberal Standard for Amending Pleadings ........ 13

V. CONCLUSION ........ 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ark. La. Gas Co. v. Hall*,
453 U.S. 571 (1981) ........ 12

*Bell v. Allstate Life Ins. Co.*,
160 F.3d 452 (8th Cir. 1998) ........ 11

*Bennet v. Ecolab, Inc.*,
No. 24-CV-00546, 2025 U.S. Dist. LEXIS 278919
(D. Minn. July 11, 2025) ........ 14

*Brown v. Pfeiffer*,
No. 19-cv-3132-MWW-KMM, 2020 U.S. Dist. LEXIS 42310
(D. Minn. Mar. 11, 2020) ........ 7

*Buder v. Merrill Lynch*,
644 F.2d 690 (8th Cir. 1981) ........ 14

*Collins v. Metro Life Ins. Co.*,
No. 4:22-CV-129 RLW, 2023 U.S. Dist. LEXIS 18425
(E.D. Mo. Feb. 3, 2023) ........ 13

*Crumley v. Time Warner Cable, Inc.*,
556 F.3d 879 (8th Cir. 2009) ........ 5, 12

*Davis v. Cornwell*,
264 U.S. 560 (1924) ........ 12

*Dennis v. Dillard Dep't Stores, Inc.*,
207 F.3d 523 (8th Cir. 2000) ........ 7, 13, 14, 15

*Fair Isaac Corp. v. Fed. Ins. Co.*,
2019 U.S. Dist. LEXIS 212625 (D. Minn. Dec. 10, 2019) ........ 8

*Green Plains Otter Tail, LLC v. Pro-Environmental, Inc.*,
No. 16-cv-370, 2017 U.S. Dist. LEXIS 230820
(D. Minn. Dec. 21, 2017) ........ 7, 9, 10

*Gress v. Commonwealth Edison Co.*,
559 F. Supp. 3d 755 (N.D. Ill. 2021) ........ 5

*Leo v. Nationstar Mortg. LLC of Del.*,
964 F.3d 213 (3d Cir. 2020)........................................................................ 12

*Lewis v. M&T Bank*,
No. 21-933, 2022 U.S. App. LEXIS 6596 (2d Cir. Mar. 15, 2022) ........................... 13

*Lyons v. Litton Loan Servicing LP*,
158 F. Supp. 3d 211 (S.D.N.Y. 2016)........................................................................ 5

*Modern Point, LLC v. ACU Dev., LLC*,
No. 19-CV-0668 (NEB/HB), 2020 U.S. Dist. LEXIS 262407
(D. Minn. Oct. 22, 2020).......................................................................... 9, 10

*Morales v. Attorney's Title Ins. Fund*,
983 F. Supp. 1418 (S.D. Fla. 1997) ........................................................................ 5

*Nationwide Mut. Ins. Co. v. Korzan*,
No. 15-4124-KES, 2016 U.S. Dist. LEXIS 102256
(D.S.D. Aug. 4, 2016) ........................................................................................ 9

*Nationwide Mut. Ins. Co. v. Korzan*,
No. 15-4124-KES, 2016 WL 4148242 (D.S.D. Aug. 4, 2016)..................................... 9

*Portz v. St. Cloud State Univ. & Minn. State Colleges & Univs.*,
Civil No. 16-1115, 2017 U.S. Dist. LEXIS 123495
(D. Minn. Aug. 4, 2017)..................................................................... 6, 8, 10

*Rahn v. Hawkins*,
464 F.3d 813 (8th Cir. 2006) ................................................................................ 8

*Rios v. State Farm Fire & Cas. Co.*,
469 F. Supp. 2d 727 (S.D. Iowa Jan. 9, 2007) .......................................................... 13

*Rohde v. City of Blaine*,
No. 14-4546, 2016 U.S. Dist. LEXIS 51145 (D. Minn. Apr. 15, 2016)
(Tunheim, J.) .................................................................................................. 10

*Scheidecker v. Arvig Enters.*,
193 F.R.D. 630 (D. Minn. 2000)............................................................................. 9

*Scott v. City of Sioux City, Iowa*,
23 F. Supp. 3d 1017 (N.D. Iowa 2014)................................................................... 15

*Shank v. Carleton Coll.*,
329 F.R.D. 610 (D. Minn. 2019)............................................................................. 6

*Shannon v. Allstate Corp.*,
No. 24-50836, 2026 U.S. App. LEXIS 7060 (5th Cir. Mar. 10, 2026) ....................... 12

*Taqueria El Primo LLC v. Ill. Famers Ins. Co.*,
636 F. Supp. 3d 985 (D. Minn. 2022) (Tunheim, J.) ............................................. 5, 10

*Vaughan v. CARDS Holdings, Inc.*,
No. 5:23-CV-5208, 2024 WL 3015320 (W.D. Ark. June 14, 2024) ................. 9, 11, 15

**Statutes and Rules**

42 U.S.C. §§ 1395w-24, 1395w-24(a)(6)(A) ..................................................... 2

Medicare Act ........................................................................................................ 3

Fed. R. Civ. P. 12(b)(1) ......................................................................................... 5

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 5

Fed. R. Civ. P. 12(f)........................................................................................ 15, 16

Fed. R. Civ. P. 15.......................................................................... 1, 13, 7, 13, 14, 16

Fed. R. Civ. P. 15(a) ............................................................................................ 14

Fed. R. Civ. P. 15(a)(2) ......................................................................................... 7

Fed. R. Civ. P. 16........................................................................................... 1, 6, 7

Fed. R. Civ. P. 16(b)(4) ...................................................................................... 6, 9

D. Minn. L.R. 15.1(b)............................................................................................ 2

**Other Authorities**

Premium, Oxford English Dictionary, available at
https://www.dictionary.com/browse/premium ........................................................ 3

## I. INTRODUCTION

In this putative class action, Plaintiffs seek class damages based on the allegation that Defendants improperly used a tool called nH Predict to make adverse coverage determinations in place of physicians. After repeatedly being advised of the falsity of this allegation, nearly a year into discovery Plaintiffs launched into a subject area unrelated to this claim ostensibly in support of a new theory of damages. They now posit that Defendants received artificially high rates from Center for Medicare and Medicaid Services ("CMS") based on misrepresentations allegedly made to CMS during the bidding process.

This newly-disclosed theory bears no connection to the allegations or claims remaining in this case. It is not alleged in the Amended Complaint, is untethered to Plaintiffs' surviving contract-based claims, and directly implicates the federal filed rate doctrine. The filed rate doctrine bars litigants from asserting common law claims to challenge or undermine rates approved by a government regulator. Two weeks after Plaintiffs disclosed this new damages theory, Defendants notified Plaintiffs that they would raise the filed-rate doctrine as a defense.

Defendants do not believe amendment is required to preserve the defense. Nevertheless, out of an abundance of caution, Defendants sought Plaintiffs' consent to amend the Answer to expressly identify the filed rate doctrine as a defense. After weeks of suggesting that Plaintiffs may agree to amendment if the parties reached agreement on a discovery dispute, Plaintiffs ultimately refused to stipulate to the amendment, leaving Defendants no choice but to seek leave from the Court. Leave should be granted under the "good cause" requirement of Rule 16 as well as Rule 15's liberal standard for amendment.

Defendants acted promptly after Plaintiffs disclosed the new theory, and the case remains in the early stages of discovery. No fact depositions have occurred, expert discovery has not begun, class certification has not been briefed, and the close of fact discovery remains months away. The proposed amendment will not expand the scope of discovery; it merely responds to a damages theory newly advanced by Plaintiffs. Because Defendants have shown both good cause and the absence of prejudice, the Court should grant leave to amend.[1]

## II. BACKGROUND

### A. Regulators Must Approve Rates For Medicare Advantage Plans

The unique aspects of Medicare Advantage ("MA") Plans provide important context for this motion. Each year, a MA plan submits a "bid" to CMS with information about the plan's premiums, financials and terms. *See* 42 U.S.C. §§ 1395w-24, 1395w-24(a)(6)(A). CMS develops separate "benchmarks" for thousands of counties in the United States, which reflect an estimated per-member-per-month cost for coverage under the Medicare standards. The MA plan submits a bid with its projected per-member-per-month costs, adjusted for risk and reflecting historical data. CMS "shall review the adjusted community rates, the amounts of the basic and supplemental premiums, and [other] values filed . . . and shall approve or disapprove such rates, amounts, and values so submitted." *Id.* § 1395w-24(a)(5)(A). If the accepted rate is higher than the benchmark, then the excess is

[1] Per L.R. 15.1(b) Defendants attach a clean and redlined copy of Defendants' Proposed Second Amended Answer as Exhibits C and D to the Declaration of Shannon Bjorklund (Bjorklund Decl.).

collected through premiums paid by the MA members or amounts received from other sources (such as the government). If the accepted rate is lower than the benchmark, then the plan uses the difference to return a portion to the government and the rest to offer supplemental benefits.

### B. Plaintiffs' Potential Theories Have Shifted Over Time

#### 1. Plaintiffs File Their Amended Complaint and All Claims Are Dismissed Except for Two Contract-Based Claims

Plaintiffs initiated this putative class action on November 14, 2023, bringing seven counts, including claims for breach of contract, fraud, state statutory claims, fraud and insurance-based claims. Dkt. 1. On February 13, 2025—after the deadline for amending pleadings had passed—the Court dismissed Counts 3-7 as preempted by the Medicare Act. Plaintiffs' remaining claims—for breach of contract (Count 1) and breach of the implied covenant of good faith and fair dealing (Count 2)—provide very little information regarding Plaintiffs' alleged contract damages.[2]

In their first set of discovery requests, served in mid-2025, Plaintiffs requested discovery regarding the premiums[3] paid by Plaintiffs and putative class members for MA

---

[2] Count 1 alleges "[a]s a direct and proximate result of Defendants' breach of contract, Plaintiffs and the Class have suffered damages in an amount to be proven at trial." Dkt. 34 ¶ 192. Count 2 alleges "Plaintiffs and Class members have suffered and will continue to suffer in the future, economic losses and other general, incidental, and consequential damages, in amounts according to proof at trial." *Id.* ¶ 201.

[3] Note that Plaintiffs use the term "premium" in two different ways. In this context, the "premium" refers to the payment made by a MA plan member for coverage. Plaintiffs have used it in another way, referring to a "price premium" theory of damages, in which context the term "premium" simply means "excess." *See* Oxford English Dictionary, available at https://www.dictionary.com/browse/premium ("3. *Insurance*. The amount paid or to be

plans. Dkt. No. 146-4 at 5. Premiums paid by MA members to their MA plan vary depending on the particular plan a member chooses and many members pay no premium. The parties met and conferred regarding Plaintiffs' request for premium data paid by members, and Defendants agreed to produce premium data. The premium data, identifying amounts paid by individuals, has been produced to Plaintiffs.

### 2. In April 2026, For the First Time, Plaintiffs Disclose that They Seek Damages Based Upon Allegedly Fraudulently-Obtained Rates that CMS Approved

In March 2026, Plaintiffs' theory shifted again. Plaintiffs served discovery requests seeking all bids Defendants submitted to CMS from 2017 to the present, as well as all underlying documents and data related to post-acute care and created or used in connection with any bid. Bjorklund Decl. Ex. A. Defendants requested a conference to discuss the relevance of this request.

During a conference call on April 30, 2026, Defendants asked Plaintiffs to explain how bid information was relevant to Plaintiffs' remaining contract claims. Plaintiffs' sole justification was that bid information was relevant to one theory of damages Plaintiffs were considering, namely, that the rates set by CMS were artificially high due to Defendants' alleged misstatements to CMS. Bjorklund Decl. Ex. B (Defs.' May 14, 2026 Letter). When Defendants pointed out that no fraud claim remains in this case, Plaintiffs attempted (unsuccessfully) to draw a connection to the contract claims: Plaintiffs "think UHC is defrauding CMS and consumers, and what goes into the [bids] is relevant to [Plaintiffs']

---

paid by the policyholder for coverage under the contract, usually in periodic installments …. 5. A sum above the nominal or par value of a thing").

claims for breach of contract and breach of duty of good faith and fair dealing." *Id.* Plaintiffs explained that their unpled (and baseless) theory of damages is that Defendants' Medicare Advantage bids contained inaccurate predictions regarding the amount of health care members would use (in order to secure regulatory approval of improperly high rates).

Notwithstanding Defendants' objection to the relevance of these requests, Defendants agreed to produce some bid documentation, but seek to raise the filed rate doctrine defense, if Plaintiffs decide to pursue this damages theory.[4] That doctrine "prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue," even if such conduct was alleged to be fraudulent. *Crumley v. Time Warner Cable, Inc.*, 556 F.3d 879, 881 (8th Cir. 2009).

---

[4] As noted above, Defendants pursued the amendment in an abundance of caution inasmuch as this District has not decided whether the filed rate doctrine is an affirmative defense. *See Taqueria El Primo LLC v. Ill. Famers Ins. Co.*, 636 F. Supp. 3d 985, 991 n.3 (D. Minn. 2022) (Tunheim, J.) (declining to decide whether the filed rate doctrine is an affirmative defense). Defendants contend that the filed rate doctrine need not be pled in an answer inasmuch as courts treat the defense as a challenge to jurisdiction or standing under Rule 12(b)(1), meaning it is not waived if not pled. *See, e.g., Morales v. Attorney's Title Ins. Fund*, 983 F. Supp. 1418, 1429 (S.D. Fla. 1997) (framing the doctrine as an issue of standing). Other courts similarly find that the filed rate doctrine as not an affirmative defense as it is a defense that can be raised in a Rule 12(b)(6) motion. *See, e.g., Lyons v. Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 220, 223-29 (S.D.N.Y. 2016) (holding that filed rate doctrine implicates Rule 12(b)(6), not Rule 12(b)(1)). Still other courts have ruled that the filed rate doctrine cannot be raised in a Rule 12(b)(6) motion, because it is an affirmative defense. *See, e.g., Gress v. Commonwealth Edison Co.*, 559 F. Supp. 3d 755, 764 (N.D. Ill. 2021).

### C. Defendants Seek to Come to Agreement with Plaintiffs Regarding Amendment

Two weeks later, on May 14, Defendants sent a letter to Plaintiffs explaining that, while they view this entire subject matter to be irrelevant to the claims remaining in the case and subject to federal preemption, Defendants would also assert the "filed rate doctrine" defense to Plaintiffs' newly expressed theory for relief. Bjorklund Decl. Ex. B. Defendants continued to seek agreement on this issue as part of larger negotiations regarding the scope of production of bid documents. However, no agreement could be reached. Defendants made a final request for Plaintiffs to consent to amend the Answer, and on August 3 Plaintiffs refused. *Id.* ¶ 8.

## III. LEGAL STANDARD

When a motion to amend the answer is brought after the court-ordered deadline, the court must conduct a "good cause" analysis under Rule 16 of the Federal Rules of Civil Procedure to determine if amendment of the scheduling order is appropriate. *See Shank v. Carleton Coll.*, 329 F.R.D. 610, 613 (D. Minn. 2019); Fed. R. Civ. P. 16(b)(4). "[W]hile diligence is the primary factor when assessing good cause," the Court may properly determine good cause exists based on other factors, such as: (i) "'the existence or degree of prejudice to the party opposing the modification'"; (ii) "'the explanation for the failure to timely move for leave to amend'"; and (iii) "'the importance of the amendment.'" *Portz v. St. Cloud State Univ. & Minn. State Colleges & Univs.*, Civil No. 16-1115 (JRT/LIB), 2017 U.S. Dist. LEXIS 123495, at *7-8 (D. Minn. Aug. 4, 2017) (quoting *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003)). Ultimately, the Rules "require the

Court to construe and administer Rule 16 'to secure the just, speedy, and inexpensive determination of the action." *Id. Green Plains Otter Tail, LLC v. Pro-Environmental, Inc.*, No. 16-cv-370 (DWF/LIB), 2017 U.S. Dist. LEXIS 230820, *22-23 (D. Minn. Dec. 21, 2017) (granting leave to amend answer to include failure to mitigate affirmative defense within four months of learning of its viability through discovery).

If a party meets the Rule 16 "good cause" standard, the party will also meet the separate standard for amendment under Rule 15 of the Federal Rules of Civil Procedure. Rule 15 allows a party to amend its pleading before trial with the Court's leave, which should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court may deny leave to amend under Rule 15 "only where it will result in undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment." *Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 525 (8th Cir. 2000) (citation modified). "The party opposing a motion to amend must show that it will be unfairly prejudiced." *Brown v. Pfeiffer*, No. 19-cv-3132-MWW-KMM, 2020 U.S. Dist. LEXIS 42310, at *12 (D. Minn. Mar. 11, 2020) (citing *Dennis*, 207 F.3d at 525).

## IV. ARGUMENT

### A. Defendants Have "Good Cause" to Amend Based on Plaintiffs' Newly-Disclosed Damages Theory

In deciding whether to permit amendment of pleadings after the scheduling order's deadline, courts consider four factors: (1) the diligence of the moving party; (2) prejudice

to the non-movant; (3) the explanation for the failure to timely move; and (4) the importance of the amendment. *Portz*, 2017 U.S. Dist. LEXIS 123495, at *6-10. Each of these factors supports the proposed amendment here.

### 1. <u>**Defendants Diligently Sought to Amend**</u>

The first factor, "diligence of the moving party," favors Defendants, because Defendants have diligently sought to amend to add a filed rate doctrine defense when it became apparent. "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006). Plaintiffs had not identified this potential theory prior to the deadline to amend pleadings (May 2025), so Defendants could not have moved to amend within the deadline. Indeed, the amendment deadline passed before Defendants had filed their Answer. No amount of diligence would have enabled Defendants to move to amend within the deadline.

The filed rate doctrine defense became apparent only after Plaintiffs identified a new potential theory of damages they had not previously articulated. Plaintiffs first described this theory on April 30, 2026. Prior to April 30 Plaintiffs had not identified any misrepresentation or fraudulent conduct related to the remaining contract claims, nor had Plaintiffs disclosed that their damage theory would be premised on information submitted to CMS for approval. Upon learning this information, Defendants promptly advised Plaintiffs of their intent to assert a filed rate doctrine defense.

Minnesota courts routinely allow amendment in analogous circumstances. *See, e.g., Fair Isaac Corp. v. Fed. Ins. Co.*, 2019 U.S. Dist. LEXIS 212625, at *4-5 (D. Minn. Dec. 10, 2019) (finding good cause for amendment to assert statute-of-limitations defense,

despite the plaintiff's argument that the defense was apparent from the inception of the case, because the "initial complaint was ambiguous"); *Green Plains Otter Tail*, 2017 U.S. Dist. LEXIS 230820, at *19-24 (finding good cause existed to allow defendant to assert an affirmative defense based on information learned during discovery and after the deadline for amendment); *Modern Point, LLC v. ACU Dev., LLC*, No. 19-CV-0668 (NEB/HB), 2020 U.S. Dist. LEXIS 262407, at *12-*14 (D. Minn. Oct. 22, 2020) (finding good cause for amendment based on information learned during discovery, even if that information was publicly available).[5]

### 2. Plaintiffs Will Suffer No Prejudice from the Amendment

The second factor, "prejudice to the non-movant," weighs in favor of Defendants as well. "The burden of proving prejudice lies with the party opposing the motion." *Nationwide Mut. Ins. Co. v. Korzan*, No. 15-4124-KES, 2016 U.S. Dist. LEXIS 102256, at *8 (D.S.D. Aug. 4, 2016) (citation modified). The key inquiry is whether the plaintiff has sufficient opportunity to obtain the discovery it needs to oppose the defense. *See, e.g.,*

---

[5] "Diligence" for purpose of Rule 16(b)(4) does not require that a movant prove it acted immediately or without any delay. *Nationwide Mut. Ins. Co. v. Korzan*, No. 15-4124-KES, 2016 WL 4148242, at *3 (D.S.D. Aug. 4, 2016) (finding good cause to allow amendment to add affirmative defenses where defendants' "were somewhat dilatory" in moving to amend four months after learning new facts, and two months after deadline for amendments. *Vaughan v. CARDS Holdings, Inc.*, No. 5:23-CV-5208, 2024 WL 3015320, at *3 (W.D. Ark. June 14, 2024) (finding good cause to permit defendant to plead an additional affirmative defense despite also concluding that defendant could have been "more diligent"). The important thing is not the complete absence of any delay, but rather the absence of "the litany of unpersuasive excuses, inclusive or inadvertence and neglect, which commonly undergird an untimely Motion to Amend." *Scheidecker v. Arvig Enters.*, 193 F.R.D. 630, 632 n.1 (D. Minn. 2000).

*Modern Point*, 2020 U.S. Dist. LEXIS 262407, at *13-14. Here, Plaintiffs have ample opportunity to respond to the filed rate doctrine within the current case schedule.

Minnesota courts have routinely allowed motions to amend the pleadings that are filed prior to the close of discovery. *See, e.g., Green Plains Otter Tail,* 2017 U.S. Dist. LEXIS 230820, at *11 (granting motion to amend filed less than one month before the close of discovery, based upon a new defense identified during discovery in plaintiff's disclosure months earlier); *Modern Point*, 2020 U.S. Dist. LEXIS 262407, at *13-14 (finding good cause for amendment of answer to raise new defenses when fact discovery was open, dispositive motions were six months away, and trial was ten months away); *Portz*, 2017 U.S. Dist. LEXIS 123495, at *9-10 (finding good cause for amendment when party moved to amend four months before the close of discovery). Indeed, courts have found good cause for amendment even when a motion follows the *close of discovery*, where the plaintiff had notice of the affirmative defense prior to the close of discovery. *See, e.g., Rohde v. City of Blaine*, No. 14-4546 (JRT/TNL), 2016 U.S. Dist. LEXIS 51145, at *6-7 (D. Minn. Apr. 15, 2016) (Tunheim, J.). *Contrast Taqueria El Primo*, 636 F. Supp. 3d at 991(good cause lacking where the motion to amend came after discovery had closed and expert reports had been served and where plaintiffs disclosed the theory multiple times prior to the close of discovery).

Discovery in this case is ongoing. There are months left of class certification discovery. No expert report has been served. No fact or expert depositions have been taken. Plaintiffs will not move for class certification for another five months. Plaintiffs have yet to serve any expert report—either for class certification or on the merits—or to articulate

in any reasonable way how they believe any putative class member has suffered damages resulting from their alleged contract claims. [6]

### 3. Plaintiffs' Disclosure of a New Theory of Damages Explains the Timing of this Motion

For the reasons discussed above, the third factor, "explanation of timing" for the motion, also favors the amendment. Plaintiffs' disclosure of new information to Defendants on April 30, 2026 regarding their theory for damages justifies the timing of this motion. *Vaughan*, 2024 WL 3015320, at *3 ("[T]he Court finds that CARDS has made a sufficient showing that newly discovered facts explain its delay and amount to good cause to amend."). As mentioned, Defendants promptly notified Plaintiffs of this new defense on May 14—two weeks after learning of the new theory—and repeatedly sought to come to agreement on amendment as part of a larger resolution of pending discovery disputes. When, on August 3, Plaintiffs stated that they would not consent to amendment as part of a global resolution, Defendants promptly brought this motion.

### 4. The "Importance of the Amendment" Favors the Amendment

The fourth factor, "importance of the amendment," also weighs in favor of the amendment. Defendants seek to plead an affirmative defense that, if applicable, would completely bar Plaintiffs' recently-disclosed damages theory. As noted above, the "filed

---

[6] The Eighth Circuit has consistently distinguished between amendment during the discovery phase, when any necessary additional evidence can be obtained within the existing schedule, and amendment following the close of discovery, which would require re-opening of discovery and resetting of other case deadlines. *See, e.g., Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454-55 (8th Cir. 1998) (explaining importance of discovery deadline and affirming denial of request for amendment made after close of discovery).

rate" doctrine prevents a plaintiff from challenging the rate approved by a government regulator by assertion of a common law claim. The filed rate doctrine exists to preserve a regulating agency's "primary jurisdiction" over the services and rates it oversees by prohibiting private lawsuits from functionally altering an agency's approvals and administration. *See Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577-78 (1981) (citing *City of Cleveland v. FPC*, 525 F.2d 845, 854 (D.C. Cir. 1976)).

Companies in certain industries—such as utilities, common carriers, telecommunications, and (relevant here) insurance—must provide information to regulators regarding the services provided and the related charges or pricing structure. Once the information provided to regulators is approved, the rate and terms in the submission constitute the "filed rate" the proponent is allowed to offer to consumers. "Filed rate" in this context is a term of art that is not strictly limited to a price approved by regulators. A "filed rate" is both the charges or pricing structure approved by regulators, as well as the associated product or service. *See Davis v. Cornwell*, 264 U.S. 560, 561 (1924) (holding that filed rate doctrine precluded challenge to timing of provision of rail cars because timing was addressed in approved regulatory submission). Once approved, the regulated entity cannot charge a rate different from that approved by the agency, and a court (or plaintiff) cannot override the agency-approved rate via private litigation. *See, e.g., Crumley*, 556 F.3d at 881. Courts throughout the country, including within this Circuit, have applied the filed rate doctrine to claims relating to insurance.[7] Here, Plaintiffs

[7] *See, e.g., Leo v. Nationstar Mortg. LLC of Del.*, 964 F.3d 213, 218 (3d Cir. 2020); *Shannon v. Allstate Corp.*, No. 24-50836, 2026 U.S. App. LEXIS 7060 at *5-6 (5th Cir.

apparently seek to challenge the rates approved by CMS and seek damages based on those rates. In addition to implicating the filed rate doctrine, this argument raises issues of federal preemption, which have been briefed extensively in this case and which Judge Tunheim has expressly recognized.

Assuming Plaintiffs are allowed to pursue their new damages theory predicated on alleged misrepresentations by Defendants to CMS, the filed rate doctrine defense could be dispositive of Plaintiffs' claims both at the class certification and merits stages of the case. Additionally, Defendants' ability to assert the filed rate doctrine defense is important to the policy purposes of the doctrine. Excluding the defense from this case runs the risk of creating discriminatory Medicare Advantage rates and undermining CMS's regulatory oversight of the Medicare Advantage program. In sum, while Plaintiffs are not prejudiced by having to respond to this defense at this stage in the case, Defendants would be highly prejudiced if they were foreclosed from asserting a viable defense to Plaintiffs' newly raised damages theory.

### B. Plaintiffs' Amendment Easily Meets Rule 15's Liberal Standard for Amending Pleadings

"The Federal Rules of Civil Procedure liberally permit amendments to pleadings." *Dennis*, 207 F.3d at 525. Under Rule 15, "delay alone is insufficient to deny a motion for leave to amend." *Id.* (citing *Buder v. Merrill Lynch*, 644 F.2d 690, 694 (8th Cir. 1981)).

---

Mar. 10, 2026); *Lewis v. M&T Bank*, No. 21-933, 2022 U.S. App. LEXIS 6596 at *5 (2d Cir. Mar. 15, 2022); *Collins v. Metro Life Ins. Co.*, No. 4:22-CV-129 RLW, 2023 U.S. Dist. LEXIS 18425 at *21-22 (E.D. Mo. Feb. 3, 2023) (collecting cases); *Rios v. State Farm Fire & Cas. Co.*, 469 F. Supp. 2d 727, 737 (S.D. Iowa Jan. 9, 2007) (same).

"Rather, the party opposing the motion must show it will be unfairly prejudiced." *Id.* (citing *Mercantile Trust Co. v. Inland Marine Prods. Corp.*, 542 F.2d 1010, 1012 (8th Cir. 1976)). Instead of focusing on the diligence or timeliness of the moving party, the Rule 15 analysis asks whether the amendment will prejudice the non-moving party and unduly extend the timing of a proceeding.

The Eighth Circuit has reversed Courts for refusing to permit amendment to add an affirmative defense, even when such amendment comes after the close of discovery. For example, in *Dennis*, the defendant conceded that it inadvertently omitted an affirmative defense and did not realize the omission until *after discovery had concluded and summary judgment motions had been filed.* 207 F.3d at 526. Even at that late stage, the Eighth Circuit ruled that it was an abuse of discretion to prohibit amendment, because discovery could have been reopened on that narrow point. The court rejected the plaintiff's argument that amendment would cause unnecessary expense, stating that "an adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend." *Id.* (quoting *United States v. Continental Ill. Nat'l Bank & Trust Co.*, 889 F.2d 1248, 1255 (2d Cir. 1989)). The Eighth Circuit vacated the trial judgment and remanded to the district court for a new trial.

Similarly, the Eighth Circuit reversed the denial of leave to amend a pleading, even though the request came after the summary judgment argument had been held. *Buder*, 644 F.2d at 691, 694. Quoting the U.S. Supreme Court, the court stated bluntly: "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Id.*, quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962); *see also Bennet*

*v. Ecolab, Inc.*, No. 24-CV-00546 (JMB/SGE), 2025 U.S. Dist. LEXIS 278919, at *8-9 (D. Minn. July 11, 2025) (rejecting plaintiff's argument of prejudice because parties had engaged in only limited discovery and discovery period remained open); *Dennis*, 207 F.3d at 526 (reversing denial of motion to amend made after summary judgment brief filed).

The facts here are far less extreme than any of those cases. This case is still early in discovery. Not a single deposition has been taken, and fact discovery remains open for the next nine months. Dkt. 175 at 2. No expert reports or declarations have been submitted, nor have any experts even been identified to the other party. Plaintiffs' motion for class certification is nearly six months away, and trial is over eighteen months away. There is no undue prejudice to Plaintiffs in such circumstances.

Likewise, Plaintiffs cannot demonstrate that Defendants seek to add a filed rate doctrine defense in bad faith, due to dilatory motive, or after repeated failure to cure deficiencies in previous amendments. "[A]bsent proof" of such conduct, amendment should be allowed. *Vaughan*, 2024 WL 3015320, at *4. There is no such proof here. Further, the filed rate doctrine is a complete defense to Plaintiffs' new damages theory. Accordingly, Defendants have ample justification for seeking to amend. *Dennis*, 207 F.3d at 526 (stating movant "did not in bad faith omit" the affirmative defense to be added; rather, the defense was "a complete defense to liability" and therefore likely to materially impact defendant's case at trial).

Lastly, amending to assert the filed rate doctrine defense would not be futile. A proposed amendment is futile if it is so legally insufficient that it could not survive a Rule 12(f) motion to strike. *Scott v. City of Sioux City, Iowa*, 23 F. Supp. 3d 1017, 1022 (N.D.

Iowa 2014). "Rule 12(f) permits a court to strike an affirmative defense that is 'legally insufficient,' meaning, for example, that it is foreclosed by statute or other binding authority." *Id.* Here, a filed rate doctrine defense would not be futile because the filed rate doctrine applies to regulated lines of insurance and Plaintiffs' damages theory, as articulated on April 30, implicates the core justifications for the doctrine: avoiding interference with CMS's approval of Defendants' bids and protecting CMS's prerogative to administer Medicare Advantage plans. *See supra* Parts II.A & II.C. Accordingly, leave to amend should be granted under Rule 15.

## V. CONCLUSION

For the reasons stated above, Defendants request that the Court grant their motion and order that Defendants shall file their Second Amended Answer (Bjorklund Decl. Ex. C) within 14 days of the Court's order.

Dated: August 10, 2026

DORSEY & WHITNEY LLP

By /s/ Shannon L. Bjorklund
Nicole Engisch (#0215284)
engisch.nicole@dorsey.com
Michelle S. Grant (#0311170)
grant.michelle@dorsey.com
Shannon L. Bjorklund (#0389932)
bjorklund.shannon@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

Nicholas J. Pappas (*pro hac vice*)
Pappas.nicholas@dorsey.com
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, NY 10019-6119
Telephone: (212) 415-9387

*Attorneys for Defendants*