# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

THE ESTATE OF GENE B. LOKKEN, GLENNETTE KELL, DARLENE BUCKNER, CAROL CLEMENS, THE ESTATE OF FRANK CHESTER PERRY, THE ESTATE OF JACKIE MARTIN, JOHN J. WILLIAMS, AS TRUSTEE OF THE MILES AND CAROLYN WILLIAMS 1993 FAMILY TRUST, and WILLIAM HULL, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

UNITEDHEALTH GROUP INC., UNITED HEALTHCARE, INC., NAVIHEALTH, INC. and DOES 1-50, inclusive,

Defendants.

Civil File No. 23-CV-03514 JRT/SGE

**PLAINTIFFS' RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs the Estate of Gene B. Lokken, Glennette Kell, Darlene Buckner, Carol Clemens, the Estate of Frank Chester Perry, the estate of Jackie Martin, John J. Williams, as trustee of the Miles and Carolyn Williams 1993 Family Trust, and William Hull ("Plaintiffs") make the following responses and objections to Defendants UnitedHealth Group Incorporated ("UHG"), UnitedHealthcare, Inc. ("UHC"), and naviHealth, Inc. ("naviHealth") (collectively, "Defendants") First Set of Interrogatories ("Interrogatories").

**PRELIMINARY STATEMENT**

Although Plaintiffs have made a diligent and good faith effort to obtain the information with which to respond to the Interrogatories, discovery in this matter is ongoing, and Plaintiffs anticipate that additional information may be obtained that might affect the responses herein. Moreover, Plaintiffs have not yet completed their investigation of this matter. Accordingly, all of the following responses are given without prejudice to and with the express reservation of Plaintiffs' right to supplement or modify Plaintiffs' objections and responses to the extent required by applicable law to incorporate later discovered information, or information that becomes material as discovery shapes issues in this case, and to rely upon any and all such information at trial or otherwise. Likewise, Plaintiffs shall not be prejudiced if any of the present objections and responses are based on incomplete knowledge or comprehension of the facts, events, or occurrences involved in this matter.

Plaintiffs have objected and responded to the Interrogatories based upon Plaintiffs' good faith interpretation and understanding of each item therein. Accordingly, if Defendant subsequently asserts a different understanding than presently understood by Plaintiffs, Plaintiffs

reserve the right to supplement or amend these objections and responses.

Plaintiffs incorporate this preliminary statement into each and every response to the Interrogatories set forth below.

## GENERAL OBJECTIONS

1. Plaintiffs object to the Interrogatories to the extent that they are inconsistent with or purport to impose obligations broader in scope or more burdensome than those imposed by the Federal Rules of Civil Procedure and Local Rules of the District of Minnesota.

2. Plaintiffs object to the Interrogatories to the extent that they seek discovery that is not reasonably relevant to any issue in this litigation and not proportional to the needs of the case.

3. Plaintiffs object to the Interrogatories to the extent that the burden and/or expense of searching for and producing the requested information outweighs the benefit of the discovery being sought. To the extent that the Interrogatories impose such an undue burden and/or expense upon Plaintiffs, they are not proportional to the needs of the case.

4. Plaintiffs object to the Interrogatories to the extent that they call for the disclosure of information protected from discovery by the attorney-client privilege, the work-product doctrine, the joint-defense privilege, the common interest doctrine, or any other applicable privilege or immunity from discovery.

5. Plaintiffs object to the Interrogatories to the extent that they seek information that is protected from disclosure under any statute, regulation, law, or the constitution (e.g., right to privacy, confidential marital communications and/or spousal privilege, settlement communication privilege, and/or mediation privilege).

6. Plaintiffs object to the Interrogatories to the extent that they are vague, ambiguous, indefinite, overly broad, or unduly burdensome.

7. Plaintiffs object to the definitions in the Interrogatories to the extent that they are inconsistent with, or enlarge upon, obligations imposed upon Plaintiffs by the Federal Rules of Civil Procedure, applicable Court orders, and/or agreements between the Parties. Specifically, Plaintiffs object to the following definition in the Interrogatories:

a. Plaintiffs object to the definition of "Plaintiffs", "You" and "Your" as overly broad and unduly burdensome and to the extent such definitions purport to impose any burden or obligation in excess of the requirements of the Federal Rules of Civil Procedure, or applicable court orders, including by purporting to seek responses from non-parties or based upon documents outside of Plaintiffs' possession, custody, or control. Plaintiffs further object to the extent the definition of these terms purports to include counsel representing Plaintiffs, as such definition is overbroad and implicates information protected by the attorney work-product doctrine and the attorney-client privilege. Plaintiffs object that the vague reference to persons other than the individual Plaintiffs fails to specify those individuals and/or entities that fit within the definition, such that Plaintiffs cannot identify and respond to Requests by including any information or documents that those unidentified and unknown persons may have. All objections and responses herein are therefore made on behalf of the Plaintiffs only, and the terms "You" and "Your" are understood in Plaintiffs' responses to refer only to Plaintiffs.

## SPECIFIC RESPONSES AND OBJECTIONS TO INTERROGATORIES

**INTERROGATORY NO. 1:**

State with specificity and particularity each and every item of damages which You are claiming against Defendants in this Action, including but not limited to, the manner of calculation of damages.

**RESPONSE TO INTERROGATORY NO. 1:**

Plaintiffs object to this Interrogatory as premature at this stage of litigation, as the damages Plaintiffs seek and the method of calculation of damages will depend on discovery that Defendants have failed to produce and the opinions of expert witnesses Plaintiffs have yet to enlist the services of.

Subject to the foregoing objections and based only upon Plaintiffs' current information and damages position, Plaintiffs intend to seek price premium damages based upon Plaintiffs' and Class Members' overpayment for their insurance plans given Defendants' unlawful misconduct. Alternatively, Plaintiffs intend to seek compensatory damages for the harm they suffered based on Defendants' breaches of the Evidence of Coverage terms and the implied covenants of good faith and fair dealing. Plaintiffs intend to enlist the services of expert witnesses to provide a method of calculating damages at an appropriate time.

**INTERROGATORY NO. 2:**

Identify each and every Person You believe to have knowledge of the facts concerning the claims, defenses, or allegations related to the Remaining Claims, including a brief description of that Person's knowledge.

**RESPONSE TO INTERROGATORY NO. 2:**

Plaintiffs object to this Interrogatory as premature at this stage of litigation, as discovery is ongoing. Plaintiffs further object to this Interrogatory as overly broad and unduly burdensome, as it seeks the identities of "each and every Person" with relevant knowledge of the facts concerning Plaintiffs' allegations, when many of those individuals are Defendants' current and former employees. Information about which of Defendants' current and former employees have information related to Plaintiffs' allegations is information to which Defendants have access, but Plaintiffs generally do not. Based on these objections, Plaintiffs will not identify individuals who have been identified by Defendants as having relevant information in this litigation.

Subject to the foregoing objections, Plaintiffs state that the following individuals are likely to have knowledge of facts relevant to Plaintiffs' allegations:

1. Pamela Lokken – personal representative of Plaintiff, the Estate of Gene B. Lokken, and daughter of the late Gene B. Lokken.
2. Nancy Lageson – daughter of the late Gene B. Lokken.
3. Doug Lokken – son of the late Gene B. Lokken.
4. Kathe Handling – Business Office Manager at Tomahawk Health Services, where Gene B. Lokken was receiving therapy before Defendants denied coverage.
5. Kristin Wimmer – Resident Care Management Director at Tomahawk Health Services, where Gene B. Lokken was receiving therapy before Defendants denied coverage.

6. Becky Paulson – Social Worker at Tomahawk Health Services, where Gene B. Lokken was receiving therapy before Defendants denied coverage.

7. Mary Rheinschmidt – Elder Benefit Specialist at the Aging and Disability Resource Center of Central Wisconsin.

8. Christine Huberty – former Attorney at the Greater Wisconsin Agency on Aging Resources, Inc., who represented Mr. Lokken on appeal of Defendants' denial of benefits.

9. Glennette Kell – plaintiff.

10. John Kell – Plaintiff Glennette Kell's husband.

11. Leslie Davis – Plaintiff Glennette Kell's daughter-in-law.

12. Kevin Davis – Plaintiff Glennette Kell's son.

13. Dr. Mirza – Orthopedic Surgeon at Legacy Emmanuel Medical Center, where Plaintiff Glennette Kell received care.

14. Darlene Buckner – plaintiff.

15. Peter Buckner – Plaintiff Darlene Buckner's husband.

16. Naomi Elder-Hall – Plaintiff Darlene Buckner's daughter.

17. Shawna Anderson – Plaintiff Darlene Buckner's daughter.

18. Dr. Osawki – Heart Surgeon at University Hospital in Madison, WI. Dr. Osawki was one of Mrs. Buckner's providers.

19. Dr. Swapnell Lanjewar – Infectious Disease doctor at University Hospital in Madison, WI. Dr. Lanjewar was one of Mrs. Buckner's providers.

20. Dr. Michael Benz – Cosmetic Surgeon at University Hospital in Madison,

WI. Dr. Benz was one of Mrs. Buckner's providers.

21. Rachel Schilling – Advance Practice Nurse Prescriber at University Hospital in Madison, WI. Ms. Schilling was one of Mrs. Buckner's providers.

22. Autumn Ries – Advance Practice Nurse Prescriber at University Hospital in Madison, WI. Ms. Ries was one of Mrs. Buckner's providers.

23. Chad Hermsdorf – Physician's Assistant at University Hospital in Madison, WI. Mr. Hermsdorf was one of Mrs. Buckner's providers.

24. Ryan Turner - Physician's Assistant at University Hospital in Madison, WI. Mr. Turner was one of Mrs. Buckner's providers.

25. Chris Goodlavish - Physician's Assistant at University Hospital in Madison, WI. Mr. Goodlavish was one of Mrs. Buckner's providers.

26. Ted Hegner - Physician's Assistant at University Hospital in Madison, WI. Mr. Hegner was one of Mrs. Buckner's providers.

27. Joy Teeland - Physician's Assistant at University Hospital in Madison, WI. Ms. Teeland was one of Mrs. Buckner's providers.

28. Brittany Johnson – Wound Clinic Physician's Assistant at University Hospital in Madison, WI. Ms. Johnson was one of Mrs. Buckner's providers.

29. Carol Clemens – plaintiff.

30. Sue Cox – billing department employee at the Lake City Care Center, where Mrs. Clemens received care.

31. Mac Harnisch – Administrator at the Lake City Care Center, where Mrs. Clemens received care.

32. Angie Taylor – MDS Coordinator at the Lake City Care Center, where Mrs. Clemens received care.

33. Cassandra Huffman – Community Support Manager at the Lake City Care Center, where Mrs. Clemens received care.

34. Paula Breuer – Rehabilitation Director at the Lake City Care Center, where Mrs. Clemens received care.

35. Mary Marfisee – personal representative of the Estate of Frank Chester Perry and widow of the late Frank Chester Perry.

36. Shawn Wilbur – CEO of Clear Sky Rehab in Rio Rancho, New Mexico, where Mr. Perry received care.

37. Kendra Noonan – Director of Berkeley East Rehab Center, where Mr. Perry received care.

38. Jon Walker – employee at Advanced Health Care Rehab in Sacramento, California, where Mr. Perry received care.

39. Robby Martin – personal representative of the Estate of Jackie Martin and son of the late Jackie Martin.

40. Kelly Martin – daughter of the late Jackie Martin.

41. Bart Wood – Social Worker at NHC Kingsport. Mr. Wood aided Mr. Martin when Defendants denied coverage and informed Mr. Martin about the use of nH Predict.

42. Rachael Davis – SICC at naviHealth who delivered NOMNCs to Mr. Martin.

43. Christina Utterback – Supervisor at naviHealth in Brentwood, Tennessee

who informed Mr. Martin that he could expect to receive continued NOMNCs from Defendants.

44. John Williams – trustee of the Miles and Carolyn Williams 1993 Family Trust and son of the late Carolyn Williams.

45. Brian Williams – son of the late Carolyn Williams.

46. Trina Williams – daughter-in-law of the late Carolyn Williams.

47. William Hull – plaintiff.

48. Barbara Hull – Plaintiff William Hull's wife.

49. Lisa Rae – Plaintiff William Hull's daughter.

50. Lora Powell – Plaintiff William Hull's daughter.

51. Casey Ross – Chief Investigative Reporter at STAT News, who published articles about Defendants' use of AI to deny coverage for post-acute care.

52. Bob Herman – Business of Health Care Reporter at STAT News, who published articles about Defendants' use of AI to deny coverage for post-acute care.

53. Senator Richard Blumenthal – United States Senator and Chairman of the Permanent Subcommittee on Investigations. Senator Blumenthal led PSI's investigation into Defendants' use of AI and other technology tools to improperly deny prior authorization claims for post-acute care.

54. Dr. Monica Finocchiaro – former medical director at naviHealth.

55. Derek Dawes, R.N. – former SICC at naviHealth.

56. Claire Harvey, OTR/L – former SICC at naviHealth.

**INTERROGATORY NO. 3:**

Identify each and every Person, Document and fact that supports, and describe in detail the basis for, the allegation that "Defendants' illegal deployment of artificial intelligence (AI) in place of real medical professionals to wrongfully deny elderly patients care owed to them under Medicare Advantage Plans by overriding their treating physicians' determinations as to medically necessary care based on an AI model that Defendants know has a 90% error rate." *See* ECF 34 ¶ 1.

**RESPONSE TO INTERROGATORY NO. 3:**

Plaintiffs object to this Interrogatory on the basis that it is premature because, due to Defendant's refusal to meaningfully participate in discovery, Plaintiffs have not had the opportunity to obtain discovery about the allegations in the First Amended Complaint. Plaintiffs further object to this request on the grounds that it seeks information protected by attorney-client privilege. Plaintiffs further object to this Interrogatory to the extent that it seeks mental impressions, conclusions, opinions, and legal theories of Plaintiffs' counsel, which are protected under the work-product doctrine and not subject to discovery. Therefore, Plaintiffs will limit responses to non-privileged information.

Subject to the foregoing objections, Plaintiffs state that the allegations in the First Amended Complaint are based upon the following sources:

1. Investigative journalism conducted by Casey Ross and Bob Herman at STAT News. *See* Bates No. LOKKEN-PLT-0000294-LOKKEN-PLT-0000309.
2. Information provided by former naviHealth employees: Dr. Monica Finocchiaro, Derek Dawes, and Claire Harvey.

3. Investigation, testimony, and reporting by the United States Senate Permanent Subcommittee on Investigations, chaired by Senator Richard Blumenthal. *See* Bates No. LOKKEN-PLT-0000001-LOKKEN-PLT-0000054.
4. Consultations with over 150 individuals who had similar experiences as Plaintiffs and believe their claims were reviewed and denied by naviHealth and the nH Predict tool. The identities of and confidential information provided by these individuals to Plaintiffs' counsel is protected by attorney-client and work product privileges.
5. The individuals identified in Plaintiffs' response to Interrogatory No. 2 may also have information supporting this allegation.

**INTERROGATORY NO. 4:**

Identify each and every Person, Document, and fact that supports, and describe in detail the basis for, the allegation that "[d]espite the high error rate, Defendants continue to systemically deny claims using their flawed AI model because they know that only a tiny minority of policyholders (roughly 0.2%) will appeal denied claims, and the vast majority will either pay out-of pocket costs or forgo the remainder of their prescribed post-acute care." *See* ECF 34 ¶ 2.

**RESPONSE TO INTERROGATORY NO. 4:**

Plaintiffs object to this Interrogatory on the basis that it is premature because, due to Defendant's refusal to meaningfully participate in discovery, Plaintiffs have not had the opportunity to obtain discovery about the allegations in the First Amended Complaint. Plaintiffs further object to this request on the grounds that it seeks information protected

by attorney-client privilege. Plaintiffs further object to this Interrogatory to the extent that it seeks mental impressions, conclusions, opinions, and legal theories of Plaintiffs' counsel, which are protected under the work-product doctrine and not subject to discovery. Therefore, Plaintiffs will limit responses to non-privileged information.

Subject to the foregoing objections, Plaintiffs state that the allegations in the First Amended Complaint are based upon the following sources:

1. Investigative journalism conducted by Casey Ross and Bob Herman at STAT News. *See* Bates No. LOKKEN-PLT-0000294-LOKKEN-PLT-0000309.
2. Information provided by former naviHealth employees: Dr. Monica Finocchiaro, Derek Dawes, and Claire Harvey.
3. Investigation, testimony, and reporting by the United States Senate Permanent Subcommittee on Investigations, chaired by Senator Richard Blumenthal. *See* Bates No. LOKKEN-PLT-0000001-LOKKEN-PLT-0000054.
4. Consultations with over 150 individuals who had similar experiences as Plaintiffs and believe their claims were reviewed and denied by naviHealth and the nH Predict tool. The identities of and confidential information provided by these individuals to Plaintiffs' counsel is protected by attorney-client and work product privileges.
5. The individuals identified in Plaintiffs' response to Interrogatory No. 2 may also have information supporting this allegation.

**INTERROGATORY NO. 5:**

Identify each and every Person, Document, and fact that supports, and describe in detail the basis for, the allegation that "Defendants systematically deploy an AI algorithm to prematurely and in bad faith discontinue payment for healthcare services for elderly individuals with serious diseases and injuries." *See* ECF 34 ¶ 5.

**RESPONSE TO INTERROGATORY NO. 5:**

Plaintiffs object to this Interrogatory on the basis that it is premature because, due to Defendant's refusal to meaningfully participate in discovery, Plaintiffs have not had the opportunity to obtain discovery about the allegations in the First Amended Complaint. Plaintiffs further object to this request on the grounds that it seeks information protected by attorney-client privilege. Plaintiffs further object to this Interrogatory to the extent that it seeks mental impressions, conclusions, opinions, and legal theories of Plaintiffs' counsel, which are protected under the work-product doctrine and not subject to discovery. Therefore, Plaintiffs will limit responses to non-privileged information.

Subject to the foregoing objections, Plaintiffs reiterate that the allegations in the First Amended Complaint are based upon the following sources:

1. Investigative journalism conducted by Casey Ross and Bob Herman at STAT News. *See* Bates No. LOKKEN-PLT-0000294-LOKKEN-PLT-0000309.
2. Information provided by former naviHealth employees: Dr. Monica Finocchiaro, Derek Dawes, and Claire Harvey.
3. Investigation, testimony, and reporting by the United States Senate Permanent Subcommittee on Investigations, chaired by Senator Richard Blumenthal. *See*

Bates No. LOKKEN-PLT-0000001-LOKKEN-PLT-0000054.

4. Consultations with over 150 individuals who had similar experiences as Plaintiffs and believe their claims were reviewed and denied by naviHealth and the nH Predict tool. The identities of and confidential information provided by these individuals to Plaintiffs' counsel is protected by attorney-client and work product privileges.
5. The individuals identified in Plaintiffs' response to Interrogatory No. 2 may also have information supporting this allegation.

**INTERROGATORY NO. 6:**

Identify each and every Person, Document, and fact that supports, and describe in detail the basis for, the allegation that "Defendants make coverage determinations not based on individual patient's needs, as required, but based on the outputs of the nH Predict AI Model, resulting in the inappropriate denial of necessary care prescribed by the patients' doctors." *See* ECF 34 ¶ 6.

**RESPONSE TO INTERROGATORY NO. 6:**

Plaintiffs object to this Interrogatory on the basis that it is premature because, due to Defendant's refusal to meaningfully participate in discovery, Plaintiffs have not had the opportunity to obtain discovery about the allegations in the First Amended Complaint. Plaintiffs further object to this Interrogatory on the grounds that it seeks information protected by attorney-client privilege. Plaintiffs further object to this Interrogatory to the extent that it seeks mental impressions, conclusions, opinions, and legal theories of Plaintiffs' counsel, which are protected under the work-product doctrine and not subject to

discovery. Therefore, Plaintiffs will limit responses to non-privileged information.

Subject to the foregoing objections, Plaintiffs reiterate that the allegations in the First Amended Complaint are based upon the following sources:

1. Investigative journalism conducted by Casey Ross and Bob Herman at STAT News. *See* Bates No. LOKKEN-PLT-0000294-LOKKEN-PLT-0000309.
2. Information provided by former naviHealth employees: Dr. Monica Finocchiaro, Derek Dawes, and Claire Harvey.
3. Investigation, testimony, and reporting by the United States Senate Permanent Subcommittee on Investigations, chaired by Senator Richard Blumenthal. *See* Bates No. LOKKEN-PLT-0000001-LOKKEN-PLT-0000054.
4. Consultations with over 150 individuals who had similar experiences as Plaintiffs and believe their claims were reviewed and denied by naviHealth and the nH Predict tool. The identities of and confidential information provided by these individuals to Plaintiffs' counsel is protected by attorney-client and work product privileges.
5. The individuals identified in Plaintiffs' response to Interrogatory No. 2 may also have information supporting this allegation.

**INTERROGATORY NO. 7:**

Identify each and every Person, Document, and fact that supports, and describe in detail the basis for, the allegation that "Defendants' implementation of the nH Predict AI Model resulted in a significant increase in the number of post-acute care coverage denials." *See* ECF 34 ¶ 6.

**RESPONSE TO INTERROGATORY NO. 7:**

Plaintiffs object to this Interrogatory on the basis that it is premature because, due to Defendant's refusal to meaningfully participate in discovery, Plaintiffs have not had the opportunity to obtain discovery about the allegations in the First Amended Complaint. Plaintiffs further object to this Interrogatory on the grounds that it seeks information protected by attorney-client privilege. Plaintiffs further object to this Interrogatory to the extent that it seeks mental impressions, conclusions, opinions, and legal theories of Plaintiffs' counsel, which are protected under the work-product doctrine and not subject to discovery. Therefore, Plaintiffs will limit responses to non-privileged information.

Subject to the foregoing objections, Plaintiffs reiterate that the allegations in the First Amended Complaint are based upon the following sources:

1. Investigative journalism conducted by Casey Ross and Bob Herman at STAT News. *See* Bates No. LOKKEN-PLT-0000294-LOKKEN-PLT-0000309.
2. Information provided by former naviHealth employees: Dr. Monica Finocchiaro, Derek Dawes, and Claire Harvey.
3. Investigation, testimony, and reporting by the United States Senate Permanent Subcommittee on Investigations, chaired by Senator Richard Blumenthal. *See* Bates No. LOKKEN-PLT-0000001-LOKKEN-PLT-0000054.
4. Consultations with over 150 individuals who had similar experiences as Plaintiffs and believe their claims were reviewed and denied by naviHealth and the nH Predict tool. The identities of and confidential information provided by these individuals to Plaintiffs' counsel is protected by attorney-client and work

product privileges.

5. The individuals identified in Plaintiffs' response to Interrogatory No. 2 may also have information supporting this allegation.

**INTERROGATORY NO. 8:**

Identify each and every Person, Document, and fact that supports, and describe in detail the basis for, the allegation that "Plaintiffs and Class members had their post-acute care coverage wrongfully terminated or denied entirely by Defendants using the nH Predict AI Model." *See* ECF 34 ¶ 11.

**RESPONSE TO INTERROGATORY NO. 8:**

Plaintiffs object to this Interrogatory on the basis that it is premature because, due to Defendant's refusal to meaningfully participate in discovery, Plaintiffs have not had the opportunity to obtain discovery about the allegations in the First Amended Complaint. Plaintiffs further object to this Interrogatory on the grounds that it seeks information protected by attorney-client privilege. Plaintiffs further object to this Interrogatory to the extent that it seeks mental impressions, conclusions, opinions, and legal theories of Plaintiffs' counsel, which are protected under the work-product doctrine and not subject to discovery. Therefore, Plaintiffs will limit responses to non-privileged information.

Subject to the foregoing objections, Plaintiffs reiterate that the allegations in the First Amended Complaint are based upon the following sources:

1. Investigative journalism conducted by Casey Ross and Bob Herman at STAT News. *See* Bates No. LOKKEN-PLT-0000294-LOKKEN-PLT-0000309.
2. Information provided by former naviHealth employees: Dr. Monica

Finocchiaro, Derek Dawes, and Claire Harvey.

3. Investigation, testimony, and reporting by the United States Senate Permanent Subcommittee on Investigations, chaired by Senator Richard Blumenthal. *See* Bates No. LOKKEN-PLT-0000001-LOKKEN-PLT-0000054.
4. Consultations with over 150 individuals who had similar experiences as Plaintiffs and believe their claims were reviewed and denied by naviHealth and the nH Predict tool. The identities of and confidential information provided by these individuals to Plaintiffs' counsel is protected by attorney-client and work product privileges.
5. The individuals identified in Plaintiffs' response to Interrogatory No. 2 may also have information supporting this allegation.

**INTERROGATORY NO. 9:**

Identify each and every Person, Document, and fact that supports, and describe in detail the basis for, the allegation that "Defendants failed to use reasonable standards in evaluating the individual claims of Plaintiffs and Class members and instead allowed their medical needs to be wholly determined by AI." *See* ECF 34 ¶ 11.

**RESPONSE TO INTERROGATORY NO. 9:**

Plaintiffs object to this Interrogatory on the basis that it is premature because, due to Defendant's refusal to meaningfully participate in discovery, Plaintiffs have not had the opportunity to obtain discovery about the allegations in the First Amended Complaint. Plaintiffs further object to this Interrogatory on the grounds that it seeks information protected by attorney-client privilege. Plaintiffs further object to this Interrogatory to the

extent that it seeks mental impressions, conclusions, opinions, and legal theories of Plaintiffs' counsel, which are protected under the work-product doctrine and not subject to discovery. Therefore, Plaintiffs will limit responses to non-privileged information.

Subject to the foregoing objections, Plaintiffs reiterate that the allegations in the First Amended Complaint are based upon the following sources:

1. Investigative journalism conducted by Casey Ross and Bob Herman at STAT News. *See* Bates No. LOKKEN-PLT-0000294-LOKKEN-PLT-0000309.
2. Information provided by former naviHealth employees: Dr. Monica Finocchiaro, Derek Dawes, and Claire Harvey.
3. Investigation, testimony, and reporting by the United States Senate Permanent Subcommittee on Investigations, chaired by Senator Richard Blumenthal. *See* Bates No. LOKKEN-PLT-0000001-LOKKEN-PLT-0000054.
4. Consultations with over 150 individuals who had similar experiences as Plaintiffs and believe their claims were reviewed and denied by naviHealth and the nH Predict tool. The identities of and confidential information provided by these individuals to Plaintiffs' counsel is protected by attorney-client and work product privileges.
5. The individuals identified in Plaintiffs' response to Interrogatory No. 2 may also have information supporting this allegation.

**INTERROGATORY NO. 10:**

Identify each and every Person, Document, and fact that supports, and describe in detail the basis for, the allegation that "Defendants use the nH Predict AI Model to deny

prior authorization requests, regardless of the patients' actual conditions or doctors' recommendations." *See* ECF 34 ¶ 37.

**RESPONSE TO INTERROGATORY NO. 10:**

Plaintiffs object to this Interrogatory on the basis that it is premature because, due to Defendant's refusal to meaningfully participate in discovery, Plaintiffs have not had the opportunity to obtain discovery about the allegations in the First Amended Complaint. Plaintiffs further object to this Interrogatory on the grounds that it seeks information protected by attorney-client privilege. Plaintiffs further object to this Interrogatory to the extent that it seeks mental impressions, conclusions, opinions, and legal theories of Plaintiffs' counsel, which are protected under the work-product doctrine and not subject to discovery. Therefore, Plaintiffs will limit responses to non-privileged information.

Subject to the foregoing objections, Plaintiffs reiterate that the allegations in the First Amended Complaint are based upon the following sources:

1. Investigative journalism conducted by Casey Ross and Bob Herman at STAT News. *See* Bates No. LOKKEN-PLT-0000294-LOKKEN-PLT-0000309.
2. Information provided by former naviHealth employees: Dr. Monica Finocchiaro, Derek Dawes, and Claire Harvey.
3. Investigation, testimony, and reporting by the United States Senate Permanent Subcommittee on Investigations, chaired by Senator Richard Blumenthal. *See* Bates No. LOKKEN-PLT-0000001-LOKKEN-PLT-0000054.
4. Consultations with over 150 individuals who had similar experiences as Plaintiffs and believe their claims were reviewed and denied by naviHealth and

the nH Predict tool. The identities of and confidential information provided by these individuals to Plaintiffs' counsel is protected by attorney-client and work product privileges.

5. The individuals identified in Plaintiffs' response to Interrogatory No. 2 may also have information supporting this allegation.

**INTERROGATORY NO. 11:**

Identify each and every Person, Document, and fact that supports, and describe in detail the basis for, the allegation that "Defendants have deliberately created a process that systematically fails to have a doctor determine individual coverage for post-acute care in a thorough, fair, and objective manner, instead using the nH Predict AI Model to supplant real doctors' recommendations and patients' medical needs." *See* ECF 34 ¶ 38.

**RESPONSE TO INTERROGATORY NO. 11:**

Plaintiffs object to this Interrogatory on the basis that it is premature because, due to Defendant's refusal to meaningfully participate in discovery, Plaintiffs have not had the opportunity to obtain discovery about the allegations in the First Amended Complaint. Plaintiffs further object to this Interrogatory on the grounds that it seeks information protected by attorney-client privilege. Plaintiffs further object to this Interrogatory to the extent that it seeks mental impressions, conclusions, opinions, and legal theories of Plaintiffs' counsel, which are protected under the work-product doctrine and not subject to discovery. Therefore, Plaintiffs will limit responses to non-privileged information.

Subject to the foregoing objections, Plaintiffs reiterate that the allegations in the First Amended Complaint are based upon the following sources:

1. Investigative journalism conducted by Casey Ross and Bob Herman at STAT News. *See* Bates No. LOKKEN-PLT-0000294-LOKKEN-PLT-0000309.
2. Information provided by former naviHealth employees: Dr. Monica Finocchiaro, Derek Dawes, and Claire Harvey.
3. Investigation, testimony, and reporting by the United States Senate Permanent Subcommittee on Investigations, chaired by Senator Richard Blumenthal. *See* Bates No. LOKKEN-PLT-0000001-LOKKEN-PLT-0000054.
4. Consultations with over 150 individuals who had similar experiences as Plaintiffs and believe their claims were reviewed and denied by naviHealth and the nH Predict tool. The identities of and confidential information provided by these individuals to Plaintiffs' counsel is protected by attorney-client and work product privileges.
5. The individuals identified in Plaintiffs' response to Interrogatory No. 2 may also have information supporting this allegation.

**<u>INTERROGATORY NO. 12</u>:**

Identify each and every Person, Document, and fact that supports, and describe in detail the basis for, the allegation that "Defendants wrongfully delegate their obligation to evaluate and investigate claims to the nH Predict AI Model in breach of the insurance agreement." *See* ECF 34 ¶ 41.

**<u>RESPONSE TO INTERROGATORY NO. 15</u>:**

Plaintiffs object to this Interrogatory on the basis that it is premature because, due to Defendant's refusal to meaningfully participate in discovery, Plaintiffs have not had the

opportunity to obtain discovery about the allegations in the First Amended Complaint. Plaintiffs further object to this Interrogatory on the grounds that it seeks information protected by attorney-client privilege. Plaintiffs further object to this Interrogatory to the extent that it seeks mental impressions, conclusions, opinions, and legal theories of Plaintiffs' counsel, which are protected under the work-product doctrine and not subject to discovery. Therefore, Plaintiffs will limit responses to non-privileged information.

Subject to the foregoing objections, Plaintiffs reiterate that the allegations in the First Amended Complaint are based upon the following sources:

1. Investigative journalism conducted by Casey Ross and Bob Herman at STAT News. *See* Bates No. LOKKEN-PLT-0000294-LOKKEN-PLT-0000309.
2. Information provided by former naviHealth employees: Dr. Monica Finocchiaro, Derek Dawes, and Claire Harvey.
3. Investigation, testimony, and reporting by the United States Senate Permanent Subcommittee on Investigations, chaired by Senator Richard Blumenthal. *See* Bates No. LOKKEN-PLT-0000001-LOKKEN-PLT-0000054.
4. Consultations with over 150 individuals who had similar experiences as Plaintiffs and believe their claims were reviewed and denied by naviHealth and the nH Predict tool. The identities of and confidential information provided by these individuals to Plaintiffs' counsel is protected by attorney-client and work product privileges.
5. The individuals identified in Plaintiffs' response to Interrogatory No. 2 may also have information supporting this allegation.

**<u>INTERROGATORY NO. 13</u>:**

Identify each and every Person, Document, and fact that supports, and describe in detail the basis for, the allegation that Plaintiffs "had their coverage automatically and illegally diminished by Defendants' nH Predict AI Model without individualized evaluation of their medical records by Defendants' medical directors." *See* ECF 34 ¶ 178.

**<u>RESPONSE TO INTERROGATORY NO. 13</u>:**

Plaintiffs object to this Interrogatory on the basis that it is premature because, due to Defendant's refusal to meaningfully participate in discovery, Plaintiffs have not had the opportunity to obtain discovery about the allegations in the First Amended Complaint. Plaintiffs further object to this Interrogatory on the grounds that it seeks information protected by attorney-client privilege. Plaintiffs further object to this Interrogatory to the extent that it seeks mental impressions, conclusions, opinions, and legal theories of Plaintiffs' counsel, which are protected under the work-product doctrine and not subject to discovery. Therefore, Plaintiffs will limit responses to non-privileged information.

Subject to the foregoing objections, Plaintiffs reiterate that the allegations in the First Amended Complaint are based upon the following sources:

1. Investigative journalism conducted by Casey Ross and Bob Herman at STAT News. *See* Bates No. LOKKEN-PLT-0000294-LOKKEN-PLT-0000309.
2. Information provided by former naviHealth employees: Dr. Monica Finocchiaro, Derek Dawes, and Claire Harvey.
3. Investigation, testimony, and reporting by the United States Senate Permanent Subcommittee on Investigations, chaired by Senator Richard Blumenthal. *See*

Bates No. LOKKEN-PLT-0000001-LOKKEN-PLT-0000054.

4. Consultations with over 150 individuals who had similar experiences as Plaintiffs and believe their claims were reviewed and denied by naviHealth and the nH Predict tool. The identities of and confidential information provided by these individuals to Plaintiffs' counsel is protected by attorney-client and work product privileges.
5. The individuals identified in Plaintiffs' response to Interrogatory No. 2 may also have information supporting this allegation.

**INTERROGATORY NO. 14**:

Identify and every Person, Document, and fact that supports, and describe in detail the basis for, the allegation that "Defendants further breached each agreement by making coverage determinations based upon the prediction of the nH Predict AI Model, rather than 'the appropriateness of care and service and existence of coverage.'" *See* ECF 34 ¶ 190.

**RESPONSE TO INTERROGATORY NO. 14:**

Plaintiffs object to this Interrogatory on the basis that it is premature because, due to Defendant's refusal to meaningfully participate in discovery, Plaintiffs have not had the opportunity to obtain discovery about the allegations in the First Amended Complaint. Plaintiffs further object to this Interrogatory on the grounds that it seeks information protected by attorney-client privilege. Plaintiffs further object to this Interrogatory to the extent that it seeks mental impressions, conclusions, opinions, and legal theories of Plaintiffs' counsel, which are protected under the work-product doctrine and not subject to discovery. Therefore, Plaintiffs will limit responses to non-privileged information.

Subject to the foregoing objections, Plaintiffs reiterate that the allegations in the First Amended Complaint are based upon the following sources:

1. Investigative journalism conducted by Casey Ross and Bob Herman at STAT News. *See* Bates No. LOKKEN-PLT-0000294-LOKKEN-PLT-0000309.
2. Information provided by former naviHealth employees: Dr. Monica Finocchiaro, Derek Dawes, and Claire Harvey.
3. Investigation, testimony, and reporting by the United States Senate Permanent Subcommittee on Investigations, chaired by Senator Richard Blumenthal. *See* Bates No. LOKKEN-PLT-0000001-LOKKEN-PLT-0000054.
4. Consultations with over 150 individuals who had similar experiences as Plaintiffs and believe their claims were reviewed and denied by naviHealth and the nH Predict tool. The identities of and confidential information provided by these individuals to Plaintiffs' counsel is protected by attorney-client and work product privileges.
5. The individuals identified in Plaintiffs' response to Interrogatory No. 2 may also have information supporting this allegation.

**INTERROGATORY NO. 15:**

Identify and every Person, Document, and fact that supports, and describe in detail the basis for, the allegation that Defendants "breached their duty of good faith and fair dealing" by "[i]mproperly delegating their claims review function to the nH Predict system which uses an automated process to improperly deny claims." *See* ECF 34 ¶ 196.a.

**RESPONSE TO INTERROGATORY NO. 15:**

Plaintiffs object to this Interrogatory on the basis that it is premature because, due to Defendant's refusal to meaningfully participate in discovery, Plaintiffs have not had the opportunity to obtain discovery about the allegations in the First Amended Complaint. Plaintiffs further object to this Interrogatory on the grounds that it seeks information protected by attorney-client privilege. Plaintiffs further object to this Interrogatory to the extent that it seeks mental impressions, conclusions, opinions, and legal theories of Plaintiffs' counsel, which are protected under the work-product doctrine and not subject to discovery. Therefore, Plaintiffs will limit responses to non-privileged information.

Subject to the foregoing objections, Plaintiffs reiterate that the allegations in the First Amended Complaint are based upon the following sources:

1. Investigative journalism conducted by Casey Ross and Bob Herman at STAT News. *See* Bates No. LOKKEN-PLT-0000294-LOKKEN-PLT-0000309.
2. Information provided by former naviHealth employees: Dr. Monica Finocchiaro, Derek Dawes, and Claire Harvey.
3. Investigation, testimony, and reporting by the United States Senate Permanent Subcommittee on Investigations, chaired by Senator Richard Blumenthal. *See* Bates No. LOKKEN-PLT-0000001-LOKKEN-PLT-0000054.
4. Consultations with over 150 individuals who had similar experiences as Plaintiffs and believe their claims were reviewed and denied by naviHealth and the nH Predict tool. The identities of and confidential information provided by these individuals to Plaintiffs' counsel is protected by attorney-client and work

product privileges.

5. The individuals identified in Plaintiffs' response to Interrogatory No. 2 may also have information supporting this allegation.

**INTERROGATORY NO. 16:**

Identify each and every one of the "over 150" potential class members with whom you have spoken regarding the Action, as counsel for Plaintiffs represented during a June 30, 2025 call with Defendants' counsel.

**RESPONSE TO INTERROGATORY NO. 16:**

Plaintiffs object to this Interrogatory on the grounds that it improperly seeks discovery from Plaintiffs' counsel, rather than Plaintiffs, and Plaintiffs incorporate their general objection 7.a on the grounds that this Interrogatory seeks to expand the scope of discovery beyond what is permitted by the Federal Rules of Civil Procedure. Plaintiffs further object to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, including through application of the confidential communications exception, and the attorney work-product doctrine. *See, e.g., United States v. Sindel*, 53 F.3d 874, 876 (8th Cir. 1995).

Based on the foregoing objections, Plaintiffs do not agree to respond to this Interrogatory.

**INTERROGATORY NO. 17:**

Identify each and every former employee of Defendants with whom you have spoken regarding the Action, including but not limited to the two care coordinators and one medical director referred to by counsel for Plaintiffs during a June 30, 2025 call with

Defendants' counsel.

**RESPONSE TO INTERROGATORY NO. 17:**

Plaintiffs object to this Interrogatory on the grounds that it improperly seeks discovery from Plaintiffs' counsel, rather than Plaintiffs, and Plaintiffs incorporate their general objection 7.a on the grounds that this Interrogatory seeks to expand the scope of discovery beyond what is permitted by the Federal Rules of Civil Procedure. Plaintiffs further object to this Interrogatory as it seeks mental impressions, conclusions, opinions, and legal theories of Plaintiffs' counsel, which are protected under the work-product doctrine and not subject to discovery. Therefore, Plaintiffs will limit responses to non-privileged information.

Subject to the foregoing objections, Plaintiffs respond to this Interrogatory as follows:

1. Dr. Monica Finocchiaro.
2. Derek Dawes, R.N.
3. Claire Harvey, OTR/L.

Dated: September 4, 2025

*/s/ Glenn A. Danas*

Glenn A. Danas (CA #270317)
Ryan J. Clarkson (CA #257074)
Zarrina Ozari (CA #334443)
Michael A. Boelter (CA #353529)
*Pro Hac Vice*
CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
rclarkson@clarksonlawfirm.com

gdanas@clarksonlawfirm.com
zozari@clarksonlawfirm.com
mboelter@clarksonlawfirm.com

Karen Hanson Riebel (#0219770)
David W. Asp (#0344850)
Derek C. Waller (#0401120)
Emma Ritter Gordon (#0404000)
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Ave. South, Ste. 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
khriebel@locklaw.com
dwasp@locklaw.com
dcwaller@locklaw.com
erittergordon@locklaw.com

James Pizzirusso (DC #477604)
Nicholas Murphy (DC #90011138)
*Pro Hac Vice*
HAUSFELD LLP
888 16th St., NW, Ste. 300
Washington, DC 20006
Tel: (202) 540-7200
jpizzirusso@hausfeld.com
nmurphy@hausfeld.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2025, a true and correct copy of the foregoing **Plaintiffs' Responses to Defendants' First Set of Interrogatories** was served on the following parties via email.

**DORSEY & WHITNEY LLP**
Nicole Engisch (#0215284)
engisch.nicole@dorsey.com
Michelle S. Grant (#0311170)
grant.michelle@dorsey.com
Shannon L. Bjorklund (#0389932)
bjorklund.shannon@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

**DORSEY & WHITNEY LLP**
Nicholas J. Pappas (*pro hac vice*)
Pappas.nicholas@dorsey.com
51 West 52nd Street
New York, NY 10019-6119
Telephone: (212) 415-9387

Attorneys for Defendants

Dated: September 4, 2025

Jolen Medwid

# EXHIBIT B

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| THE ESTATE OF GENE B. LOKKEN, GLENNETTE KELL, DARLENE BUCKNER, CAROL CLEMENS, THE ESTATE OF FRANK CHESTER PERRY, THE ESTATE OF JACKIE MARTIN, JOHN J. WILLIAMS, AS TRUSTEE OF THE MILES AND CAROLYN WILLIAMS 1993 FAMILY TRUST, and WILLIAM HULL, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITEDHEALTH GROUP, INC., UNITED HEALTHCARE, INC., NAVIHEALTH, INC., and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 23-CV-03514 (JRT/SGE) |

**PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANTS**

Pursuant to Federal Rules of Civil Procedure 26 and 34, Plaintiffs the Estate of Gene B. Lokken, Glennette Kell, Darlene Buckner, Carol Clemens, the Estate of Frank Chester Perry, the Estate of Jackie Martin, John J. Williams, as trustee of the Miles and Carolyn Williams 1993 Family Trust, and William Hull ("Plaintiffs"), on behalf of themselves and all others similarly situated, and by and through their counsel, hereby request that Defendants UnitedHealth Group, Inc., United Healthcare, Inc., naviHealth, Inc., and Does

1-50 (collectively "Defendants" or "UHC") produce and permit Plaintiffs, by their attorneys, to inspect and copy the Documents listed in this Second Set of Requests for Production of Documents ("Requests") described below. Plaintiffs request that Defendants respond to these Requests within 30 days of service and produce the requested documents to the law office of Lockridge Grindal Nauen PLLP, 100 Washington Avenue South, Suite 2200, Minneapolis, Minnesota 55401, or via secure file transfer. Plaintiffs request that such production be made in accordance with the "DEFINITIONS," "INSTRUCTIONS," and "RELEVANT TIME PERIOD" set forth below.

## DEFINITIONS

Unless otherwise indicated, the following definitions shall be applicable to these Requests without regard to capitalization.

1. General Definitions:

   a. The masculine, feminine, or neutral pronouns do not exclude any other genders.

   b. "Including" means "including but not limited to."

   c. The present tense shall be construed to include the past tense and vice versa.

   d. "And" and "or" shall be construed either disjunctively or conjunctively, whichever is appropriate to have the broadest reach.

   e. "Any" means one or more, "Each" means each and every, and "All" means all and any.

   f. "Concerning" means relating to, referring to, describing, evidencing or constituting.

   g. "Including" means including but not limited to and including without limitation.

   h. "Relate" or "related" or "relating" means, without limitation, refer to, discuss, describe, memorialize, reflect, consider, pertain to, analyze,

evaluate, constitute, study, survey, record, summarize, criticize, comment, or otherwise involve, in whole or in part.

i. References to employees, officers, directors, or agents include both current and former employees, officers, directors, or agents.

2. "Action" or "Actions" refers to the above-captioned action, which is pending in the United States District Court for the District of Minnesota.

3. "Communication" means the transmission, sending, or receipt of information of any kind (in the form of facts, ideas, thoughts, symbols, opinions, data, inquiries, or otherwise) by one or more persons and/or between two or more persons by or through any means and includes, without limitation, oral and written communications of any kind, such as correspondence, memoranda, letters, notes, reports, presentations, comments, face-to-face, conversations, telephone conversations, text messages, instant messages, voice messages, negotiations, agreements, inquiries, understandings, meetings, letters, notes, telegrams, mail, email, and postings of any type, including on social media. Communication includes instances where one party addresses the other party, but the other party does not necessarily respond.

4. "Defendant(s)," "UHC," "You," or "Your" refers to the entire corporate family to which these Requests are sent and includes UnitedHealth Group, Inc., United Healthcare, Inc., and naviHealth, Inc. and their current or former predecessors, successors, parents, subsidiaries, divisions, affiliates, directors, officers, agents, managing agents, current and former employees, and all other persons acting on behalf of, or at the direction of, such entities.

5. "Document" is synonymous in meaning and equal in scope to the usage of the term in Federal Rule of Civil Procedure 34(a)(1)(A) and shall have the broadest possible meaning and interpretation ascribed to the term "documents" under the Federal Rules of Civil Procedure. "Document" is defined to include, without limitation, any document and electronically-stored data or information stored in any medium, including

electronic or computerized data compilations, electronic chats, instant messaging, email communications, other ESI from personal computers, audio and video recordings, photographs, and hard copy documents. Drafts and non-identical duplicates constitute separate documents. Attachments, exhibits, appendices, schedules, and enclosures to documents are considered part of the same document.

6. "Electronically Stored Information" or "ESI" means information that is stored electronically, regardless of media or whether it is in the original format in which it was created.

7. "Employee" means, without limitation, any Person who worked for You as an independent contractor or who You employ or employed during the Relevant Time Period, including, without limitation, any current or former officer, director, executive, manager, secretary, assistant, staff member, messenger, consultant, contractor, sales personnel, or agent, or any other person paid directly or indirectly by an entity for any reason. "Employee" and "personnel," as used herein, shall have the same meaning and scope.

8. "Identity," "Identify" or "identifying" means, depending on whether the Request seeks to identify persons, documents, or transactions or occurrences:

a. When referring to a person, these terms mean to provide the full name, last known residence address, home telephone number, email address, and, with respect to Your employees, the last known job title or position, job title or position when working in the relevant position, tenure of employment with Defendant(s) (if applicable), business address(es), business telephone number(s) and business email address(es) during the relevant time period, and a detailed description of the area of responsibility while in the relevant position.

b. When referring to Documents, these terms mean to state the type of document, its title, author, recipients, date, and Bates-stamp numbers (if

any), the location of the document, and to identify the custodian of the Document.

c. When referring to a transaction or occurrence, these terms mean to provide the date of the transaction or occurrence and identify each person who was a party to the transaction or occurrence.

9. "Insureds" means plan members, patients, insureds, participants, and beneficiaries that are members of any proposed class in this Action.

10. "Medical Directors" means physician medical professionals reviewing insurance claims for Defendants.

11. "Person" means, without limitation, any natural person, entity, individual, or group of individuals, or any business, partnership, joint venture, unincorporated association, corporation, firm, estate, legal or governmental entity, or association.

12. "Skilled nursing care" means the medical treatment and rehabilitation that takes place in a skilled nursing facility ("SNF").

13. "nH Predict" means naviHealth's software program, tool, or AI algorithm developed and used by You in making coverage determinations.

14. "SICCs" means Your Skilled Inpatient Care Coordinators employed by naviHealth.

## INSTRUCTIONS

1. You are requested to produce all documents in your possession, custody, or control that are described below.

2. As the term "possession" relates to emails, the term includes without limitation: (a) "deleted" or "archived" emails which have not been permanently deleted, including all subdirectories irrespective of the title of such subdirectories; (b) "sent" emails, including all subdirectories irrespective of the title of such subdirectories; (c) "received" emails, including all subdirectories irrespective of the title of such subdirectories; and (d) draft emails, even if unsent.

3. Unless otherwise indicated, the Documents to be produced include all Documents prepared, sent, dated, or received, or those that otherwise existed, during the Relevant Time Period.

4. In producing Documents, you are requested to produce each original Document together with all non-identical copies and drafts of that Document.

5. All documents shall be produced as they are kept in the usual course of business, organized, and labeled to correspond with each Request. Documents produced in response to one Request need not be produced again in subsequent Requests, provided they are clearly designated as being responsive to the subsequent Request.

6. A Document with handwritten, typewritten, or other recorded notes, editing marks, etc., is not and shall not be deemed to be identical to one without such modifications, additions, or deletions.

7. All electronically stored information must be produced in a form consistent with any court-ordered ESI Protocol in this case.

8. Documents not otherwise responsive to a Request shall be produced if such Documents refer to or explain the Documents that are called for by the Request, or if such Documents are attached to (or the parent document of) Documents called for by the Request.

9. If any Document sought by the Requests is known to have existed but no longer exists, has been destroyed, or is otherwise unavailable, you must identify the Document, the reason for its loss, destruction or unavailability, the name of each person known or reasonably believed by you to have present possession, custody, or control of the original and any copy thereof (if applicable).

10. If You object to any Request or to any portion of any Request, state the grounds for the objection with specificity, as required by Fed. R. Civ. P. 34(b)(2)(B), so that Plaintiffs can understand how the objection relates to their request, and respond to the remainder.

11. If You assert an objection to any request, You must nonetheless respond and produce any responsive Documents that are not subject to the stated objection. If you object to any Request or to any portion of any Request, state whether any responsive materials are being withheld on the basis of the objection, as required by Fed. R. Civ. P. 34(b)(2)(C). In particular, state clearly—for each Request—what categories of Documents are being produced, and what categories of Documents (if any) are being withheld based on the objection(s). If no Document or ESI responsive to a Request exists, please state that no responsive Document or ESI exists. This will allow Plaintiffs to understand your responses and streamline the meet and confer process.

12. This Request for Production is continuing in nature. In accordance with Fed. R. Civ. P. 26(e), supplemental responses and production should be promptly provided as additional Documents are found or become available during the litigation. If a Document described by a Request is not in existence or in your possession, custody, or control at the time of the first response to the Request, but later comes into existence or into your possession, custody, or control, you must immediately produce that Document. Plaintiffs reserve the right to propound additional document requests.

13. If You assert a claim of privilege as to one or more Documents or portions of Documents sought in this Request for Production, you should submit a privilege log that lists, for each such Document for which privilege is claimed: (i) the number and particular part of the Document request to which the supposed privileged information is responsive; (ii) the Bates range, file name, or Document ID number as applicable; (iii) the Document title, or in the case of emails, subject line, (iv) the type of Document (e.g., letter, memorandum, account statement, etc.); (v) the Document's date and the date of any meeting, conversation, or event reflected or referred to in the Document; (vi) the signatory or signatories, author(s), addressee(s), and/ or each other person who sent or received a copy of the Document or to whom the contents of the allegedly privileged communication contained in the Document have been disclosed, either orally or in writing; (vii) a

description of the subject matter of the Document; (viii) the Document's location and custodian; and (ix) the basis for the claim of privilege. Such information should be supplied in sufficient detail to permit Plaintiffs to assess the applicability of the privilege claimed. To the extent the parties enter into a stipulation concerning a privilege log and/or its format (or the Court orders one), and/or any related requirements, You shall produce a privilege log in accordance with those requirements.

14. When a Document contains both privileged and non-privileged material, the non-privileged material must be disclosed to the fullest extent possible. If a privilege is asserted with regard to part of the material contained in a Document, you should clearly indicate the portions as to which the privilege is claimed. When a Document has been redacted in any fashion, you should identify as to each Document the reason for the redaction using the procedures set forth in the paragraph above. Any redaction should be clearly visible on the redacted Document.

15. Unless otherwise ordered by the Court or provided in a protocol entered into by the Parties, if one or more members of a Document family are wholly withheld as privileged, the entire family shall be produced with the wholly withheld privileged document(s) identified with a Bates stamped slipsheet placeholder TIFF.

16. If You claim ambiguity in interpreting a request (or definition or instruction), Your claim shall not be utilized as a basis for refusal to respond to the request, and You shall set out in Your response the language deemed ambiguous and the interpretation used in responding to that request.

## RELEVANT TIME PERIOD

Unless otherwise specifically indicated, the relevant time period for each document request is November 14, 2017, through the present (the "Relevant Time Period"), and shall include all Documents and information that relate to such period, even if prepared or published outside of it. If a Document prepared before this period is necessary for a correct or complete understanding of any Document covered by a Request, you must produce the

earlier Document as well. If any Document is undated and the date of its preparation cannot be determined, the Document shall be produced if otherwise responsive to the Request.

## SPECIFIC DOCUMENT REQUESTS

### REQUEST FOR PRODUCTION NO. 20:

All Documents constituting a Medicare Advantage bid made to CMS or other relevant entities relating to Defendants' Medicare Advantage plans from plan year 2017 to the present, or documents included with or attached to such a bid.

### REQUEST FOR PRODUCTION NO. 21:

All Documents and Communications relating to the development, drafting, analysis, or creation of, Defendants' Medicare Advantage bids as relates to post-acute care and post-acute care utilization, from plan year 2017 to the present, and the relevant underlying data supporting the portions of such bids relevant to post-acute care.

### REQUEST FOR PRODUCTION NO. 22:

All Documents or Communications constituting non-investigatory (i.e., not disclosures made as part of an affirmative investigation by the government) disclosures made to the CMS or other relevant government entities about Defendants' use of naviHealth or use of nH Predict.

Dated: March 24, 2026

*/s/ Glenn A. Danas*
Ryan J. Clarkson (CA #257074)
Glenn A. Danas (CA #270317)
Zarrina Ozari (CA #334443)
Michael A. Boelter (CA #353529)
*Pro Hac Vice*
CLARKSON LAW FIRM, P.C.
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
rclarkson@clarksonlawfirm.com

gdanas@clarksonlawfirm.com
zozari@clarksonlawfirm.com
mboelter@clarksonlawfirm.com

Karen Hanson Riebel (#0219770)
David W. Asp (#0344850)
Derek C. Waller (#0401120)
Simeon A. Morbey (#0391338)
Emma Ritter Gordon (#0404000)
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Ave. South, Ste. 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
khriebel@locklaw.com
dwasp@locklaw.com
dcwaller@locklaw.com
samorbey@locklaw.com
erittergordon@locklaw.com

James Pizzirusso (DC #477604)
Nicholas Murphy (DC #90011138)
*Pro Hac Vice*
HAUSFELD LLP
1201 17th St., NW, Ste. 600
Washington, DC 20006
Tel: (202) 540-7200
jpizzirusso@hausfeld.com
nmurphy@hausfeld.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2026, a true and correct copy of the foregoing **Plaintiffs' Second Set of Requests for Production of Documents** was served on the following parties via email.

**DORSEY & WHITNEY LLP**
Nicole Engisch (#0215284)
engisch.nicole@dorsey.com
Michelle S. Grant (#0311170)
grant.michelle@dorsey.com
Shannon L. Bjorklund (#0389932)
bjorklund.shannon@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

**DORSEY & WHITNEY LLP**
Nicholas J. Pappas (*pro hac vice*)
Pappas.nicholas@dorsey.com
51 West 52nd Street
New York, NY 10019-6119
Telephone: (212) 415-9387

Attorneys for Defendants

Dated: March 24, 2026

Jolen Medwid

EXHIBIT C

**Simeon A. Morbey**
samorbey@locklaw.com
Phone: 612.596.4023

**MINNEAPOLIS**
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401-2179
P: 612.339.6900

May 5, 2026

**VIA EMAIL**

Nicole Engisch
Michelle S. Grant
Shannon L. Bjorklund
DORSEY & WHITNEY LLP
500 South 6th Street, Suite 1500
Minneapolis, MN 55402
Engisch.Nicole@dorsey.com
Grant.Michelle@dorsey.com
Bjorklund.Shannon@dorsey.com

Nicholas J. Pappas
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, NY 10019
Pappas.Nicholas@dorsey.com

Re: ***The Estate of Gene B. Lokken, et al v. UnitedHealth Group, Inc., et al.***, Case No. 23-CV-03514 (JRT/SGE)

Dear Counsel:

I write on behalf of Plaintiffs to follow up on the meet and confer held April 30, 2026, between Plaintiffs and Defendants ("You") regarding Defendants' Objections and Responses to Plaintiffs' Second Set of Requests for Production of Documents, dated April 23, 2026 ("RFP"), Nos. 20–22.[1]

1. **RFP No. 20 (Medicare Advantage Bids)**

As a preliminary matter, Plaintiffs served their Second Set of Requests for Production of Documents to Defendants on March 24, which included RFP No. 20. During our meet and confer, we were surprised to learn that, over a month later, You were unfamiliar with the contents of Medicare Advantage bids or how they are submitted to the Centers for Medicare & Medicaid Services ("CMS"). This type of plodding response to our discovery requests follows an unfortunate

[1] Plaintiffs will respond regarding Defendants' redactions separately.

pattern of delay by Defendants. It also prejudices our ability to make our class certification expert declaration disclosure in a timely manner and is contrary to Federal Rule of Civil Procedure 1. Plaintiffs may need to seek relief from the Court unless You promptly provide substantive responses.

We understand that You have two principal objections to RFP No. 20: (a) the scope of individual Medicare Advantage bids and (b) the burden of producing the purported 6,000+ bids within the relevant time period. You told us that bids are not submitted to CMS in a format that could be easily replicated and produced in discovery, and you require Plaintiffs to identify specific forms within the bids in order for Defendants to even respond to Plaintiffs' requests. Following that discussion, we consulted with our experts and provide the following information to You.

*Scope*. Bids are developed and submitted using the federally required Bid Pricing Tool ("BPT"), which, for MAPD plans, consists of both a medical (MA) BPT and a Part D (PD) BPT. Together with the supporting documentation, these materials contain the complete set of inputs and calculations used to price a plan, with the final premium generated on the MA BPT based in part on inputs from the PD BPT. These materials operate as an integrated whole. Isolating select portions (*e.g.*, only those you deem "premium-related") would render the production incomplete and potentially unreliable for purposes of calculating damages. Further, as you are aware, supporting documentation is not standardized across carriers. Thus, there is no consistent way to identify discrete "exhibits" for targeted production. As such, your proposal to limit production to selected subcomponents is not workable.

*Burden*. Contrary to your representations during our call, our experts described to us that bids are submitted to the Health Plan Management System ("HPMS"), CMS's centralized system, as complete packages. Although desk review communications may occur via email, all revisions must be uploaded into HPMS. As a result, we believe it is more efficient and less burdensome for You to produce the complete bid packages submitted to HPMS than to parse and selectively extract individual components.

We also understand that bids undergo a desk review process during which revisions are commonly made. Plaintiffs are entitled to both the originally submitted bids and any updated versions generated during this process, including any desk-review correspondence submitted.

In short, Plaintiffs' RFP No. 20 properly seeks complete bids (including MA and PD BPTs, supporting documentation, and desk review correspondence) as submitted to CMS. Your objections do not justify withholding or narrowing that production. However, we are willing to discuss reasonable approaches to manage volume, including a structured sampling methodology. We will not agree to a document-type limitation that compromises the integrity of the requested data.

Defendants' delay in even analyzing what information is available to respond to this request creates significant risk of delaying upcoming dates in the case schedule. Please confirm that Defendants will produce the bid documents and provide a date by which they will be produced.

2. **RFP No. 21 (Post-Acute Care Analysis)**

You have made blanket objections on relevance and burden grounds to this RFP. We asked that you propose reasonable narrowing alternatives and request that You provide that proposal by close of business on May 8, 2026. Absent a meaningful proposal, Plaintiffs will seek relief from the Court.

3. **RFP No. 22 (CMS Disclosures Regarding naviHealth/nH Predict)**

We understand You have agreed to search for and produce responsive materials. Please provide an estimated timeline for production.

* * *

Plaintiffs reserve all rights with respect to their discovery negotiations.

Sincerely,

LOCKRIDGE GRINDAL NAUEN PLLP

***s/Simeon A. Morbey***

Simeon A. Morbey

SAM/seg
cc: Plaintiffs' Counsel

# EXHIBIT D

DORSEY
DORSEY + WHITNEY LLP

**MICHELLE S. GRANT**
**Partner; Local Department Co-Head Trial**
**(612) 340-5671**
**FAX (612) 340-8738**
**grant.michelle@dorsey.com**

May 14, 2026

**VIA EMAIL**

Simeon Morbey
LOCKRIDGE GRINDAL NAUEN PLLP
100 Washington Ave. South, Ste. 2200
Minneapolis, MN 55401
samorbey@locklaw.com

Re: *Estate of Gene B. Lokken, et al. v. UnitedHealth Group, Inc., et al.*
Civil No. 0:23-cv-3514 (JRT/SGE)

Counsel:

I write in response to your letter dated May 5, 2026, and in follow-up to our discussion on April 30, 2026. As you know, we had planned to speak again today, but in light of the new proposed schedule circulated by Plaintiffs yesterday late afternoon, and the desire to respond in writing to the letter in order to make the conference more productive, we requested rescheduling.

We have a foundational question regarding Plaintiffs' Second Set of Requests for Production—their relevance, if any, to any existing claim. Plaintiffs have not articulated any reasonable connection between the requested documents and the breach of contract or breach of the implied covenant of good faith and fair dealing claims remaining in this case. When we asked how this was relevant to Plaintiffs' contract claims, the sole basis stated was that it is relevant to Plaintiffs' damages theory. Plaintiffs assert that these Medicare Advantage bids are relevant to Plaintiffs' theory of damages related to "price premiums." You stated that your experts need to "look[] for all of the parameters that go into calculating the premiums for all care involved in setting of price premium" to determine whether the parameters and inputs were properly disclosed to CMS. You also stated that you need documents going back to 2017 to compare the "before and after" when naviHealth began providing utilization management services to UHC to "see how utilization rates changed." On the call, you stated, "we think UHC is defrauding CMS and consumers, and what goes into the disclosures is relevant to our claims for breach of contract and breach of duty of good faith and fair dealing." Plaintiffs' argument appears to be that the utilization rates or expected utilization rates provided in the bids were not accurate. We have considered this response, and conducted additional legal research, and we fail to understand how these requests relate to any relevant legal theory. If you would kindly supply your legal authority to support how the requested documents support a claim for breach of contract or breach of the covenant of good faith and fair dealing, that would help us to further assess this request.

DORSEY
DORSEY+WHITNEY LLP



Plaintiffs do not have a fraud claim in this case, and Plaintiffs' bad faith and unfair practices claims were dismissed by the Court as preempted. Dkt. 91 at 24. The Medicare Advantage bid process, including the completion of the bid pricing tool and the documents and information required to be submitted is governed by regulations, guidance, and instructions from CMS and the Court has already found that Plaintiffs' claims "are preempted by the Medicare Act if they regulate the same subject matter as the Medicare standards or otherwise frustrate the purpose of a Medicare standard." Dkt. 91 at 18. Thus, we do not understand how the bid documents or any alleged misstatements to a regulator (which we strenuously deny exist) would be relevant to the contract-based claims between Plaintiffs and Defendants. Do you have authority supporting the notion that discovery relating to claims for breach of contract and the covenant of good faith and fair dealing is co-extensive with discovery for a claim for fraud or misrepresentation?

Further, Defendants do not see how the bid documents could be relevant to any cognizable damage theory for a contract-based claim. It appears that Plaintiffs are seeking some sort of disgorgement theory of damages (i.e., obtaining funds allegedly overpaid to Defendants), but disgorgement is not a cognizable theory of damages for breach of contract or breach of the duty of good faith and fair dealing claims. *Gofo, Inc. v. Chengle Wang*, 2025 Cal. Super. LEXIS 81504, at *20 (Cal. Sup. Ct. Dec. 22, 2025) (noting that disgorgement is an equitable remedy and not allowed as a form of contract damages); *U.S. Fire Ins. Co. v. Minn. State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981) ("Having held the contract valid, we must now consider appellants' claim for equitable relief based on unjust enrichment. We deny this relief for two reasons. First, equitable relief cannot be granted where the rights of the parties are governed by a valid contract."). Further, the filed rate doctrine prohibits a party from recovering damages measured by comparing the filed rate and the rate that might have been approved absent the conduct in issue. *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577-79 (1981).

Defendants have been investigating the steps for complying with your requests and will be prepared to discuss those during our next call. To be clear, we are not refusing to produce information, we are seeking information regarding any potential relevancy so we can adequately assess, and discuss, proportionality. As you know, proportionality within the meaning of Rule 26 requires evaluation of not only burden, but also the degree of relevancy and importance of the information sought. Receiving information regarding relevancy will meaningfully progress our discussions.

As noted above, during the April 30, 2026 call, Plaintiffs disclosed that at least one of their damage theories is that utilization rates in CMS bids were overstated by Defendants, resulting in alleged loss to Plaintiffs. The Second Amended Complaint did not give Defendants notice that Plaintiffs would rely on this theory for relief for their claims for breach of contract or the breach of the covenant of good faith and fair dealing. Given Plaintiffs' theory of damages relating to their surviving claims, Defendants plan to assert a defense based upon the "filed rate doctrine." *See Ark. La. Gas Co.*, 453 U.S. at 577-79.

While Defendants do not concede that this must be asserted as an affirmative defense, Defendants plan to move to amend their answer to identify this defense. Please let us know whether we can indicate that this motion is unopposed. If it would be helpful to confer via phone or video conference, we suggest that this be addressed at the next conference on these document requests.

Very truly yours,

Michelle S. Grant

EXHIBIT E

**Simeon A. Morbey**
samorbey@locklaw.com
Phone: 612.339.6900

**MINNEAPOLIS**
100 Washington Avenue South
Suite 2200
Minneapolis, MN 55401-2179
P: 612.339.6900

June 22, 2026

**VIA E-MAIL**

Michelle Grant
Nicole Engisch
Shannon Bjorklund
Dorsey + Whitney LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
grant.michelle@dorsey.com
engisch.nicole@dorsey.com
bjorklund.shannon@dorsey.com

Nicholas J. Pappas
Dorsey + Whitney LLP
51 West 52nd Street
New York, NY 10019
pappas.nicholas@dorsey.com

Re: *Estate of Gene B. Lokken, et al. v. UnitedHealth Group Inc., et al*
Case No. 0:23-cv-3514 (JRT/SGE)

Counsel:

I write on behalf of Plaintiffs in response to Defendants' June 16, 2026, letter concerning Plaintiffs' Second Set of Requests for Production. Plaintiffs are willing to accept Defendants' offer of production with respect to Request No. 22 and reserve all rights. However, Defendants' letter confirms that the parties are at an impasse with respect to Request Nos. 20-21. There, the production Defendants propose would not satisfy these requests. It excludes critical categories of requested documents, including complete bid packages, supporting documentation, CMS desk-review exchanges, HPMS submissions, supplemental submissions, revisions, and related underlying data.

These exclusions prejudice Plaintiffs. As Plaintiffs have repeatedly explained, the excluded materials are necessary to evaluate how Defendants priced post-acute care utilization into the Medicare Advantage plans at issue and how that pricing compares to the care made available after Defendants implemented naviHealth and nH Predict. For MAPD plans, the MA BPT and Part D

BPT must be evaluated together because inputs from the Part D BPT flow into the MA BPT and inform the final premium. The supporting documentation, CMS desk-review materials, HPMS submissions, revisions, and related data provide the context needed to understand the assumptions and inputs behind the BPTs. A production limited to selected components would strip the bid materials of the context necessary for expert analysis.

Defendants' assertion that Plaintiffs have not identified what they need is incorrect. Plaintiffs have identified the materials necessary for their damages analysis, including the complete bid-file materials and the related CMS communications, revisions, submissions, and underlying data. Defendants are the sole source of these documents. Plaintiffs cannot obtain Defendants' bid packages, HPMS submissions, supporting documentation, CMS desk-review materials, internal post-acute care analyses, or non-investigatory CMS disclosures from any other source.

Defendants' proposed conditions are unreasonable. Defendants ask Plaintiffs to agree that an incomplete production would fully resolve Plaintiffs' Second Set of Requests. Plaintiffs cannot agree to that. Moreover, Defendants' proposal would largely confine production to Named Plaintiff materials and an undefined sample of additional BPTs, even though the Court has already rejected Defendants' attempt to limit discovery to the Named Plaintiffs. Defendants cannot use a purported compromise to obtain the same limitation the Court declined to impose.

Nor can Plaintiffs agree not to oppose Defendants' motion to amend their Answer to add an untimely filed-rate doctrine defense as the price of receiving a deficient production. Defendants' discovery obligations do not depend on Plaintiffs waiving opposition to a new affirmative defense. That condition is especially inappropriate given that Plaintiffs served these requests nearly three months ago, and Defendants still have not agreed to produce the requested documents.

Defendants have made abundantly clear that they will not produce the requested discovery absent Court intervention. Plaintiffs therefore consider the parties to be at an impasse and will request an informal discovery conference call with the Court. *See* Amended Pretrial Scheduling Order (ECF No. 134) at 5. Plaintiffs do not agree to informal dispute resolution of this matter.

Finally, Plaintiffs' position is that the parties' April 30, 2026, telephonic meet-and-confer, together with the parties' subsequent correspondence regarding Request Nos. 20–21, satisfies Plaintiffs' good-faith conferral obligations under LR 7.1(a).

Sincerely,

LOCKRIDGE GRINDAL NAUEN PLLP

*s/ Simeon A. Morbey*

Simeon A. Morbey

SAM/seg
cc: All counsel of record

# EXHIBIT F

**From:** Morbey, Simeon A.
**Sent:** Monday, July 27, 2026 9:29 AM
**To:** bjorklund.shannon@dorsey.com; Glenn Danas; Ritter Gordon, Emma; Asp, David W.; Girard, Samantha E.; Waller, Derek C.; mboltax@hausfeld.com; nmurphy@hausfeld.com; Derek Brandt; Larkin Turner; Michael Boelter; jpizzirusso@hausfeld.com; Adrian Barrio
**Cc:** Grant.Michelle@dorsey.com; Pappas.Nicholas@dorsey.com; Engisch.Nicole@dorsey.com
**Subject:** RE: Lokken, et al. v. UnitedHealth Group, Inc., et al. - Civil File No. 23-CV-03514: Amendment to Answer

Shannon,

Thank you for the email. We do not consent to the amendment.

Regards,

SAM

---

**From:** bjorklund.shannon@dorsey.com <bjorklund.shannon@dorsey.com>
**Sent:** Friday, July 24, 2026 12:23 PM
**To:** Glenn Danas <gdanas@clarksonlawfirm.com>; Ritter Gordon, Emma <erittergordon@locklaw.com>; Asp, David W. <dwasp@locklaw.com>; Girard, Samantha E. <segirard@locklaw.com>; Waller, Derek C. <dcwaller@locklaw.com>; mboltax@hausfeld.com; nmurphy@hausfeld.com; Derek Brandt <dbrandt@clarksonlawfirm.com>; Morbey, Simeon A. <samorbey@locklaw.com>; Larkin Turner <lturner@clarksonlawfirm.com>; Michael Boelter <mboelter@clarksonlawfirm.com>; jpizzirusso@hausfeld.com; Adrian Barrio <abarrio@clarksonlawfirm.com>
**Cc:** Grant.Michelle@dorsey.com; Pappas.Nicholas@dorsey.com; Engisch.Nicole@dorsey.com
**Subject:** Lokken, et al. v. UnitedHealth Group, Inc., et al. - Civil File No. 23-CV-03514: Amendment to Answer

Counsel,

I write regarding Defendants' proposed amendment to the answer to add the •led rate doctrine defense. In your June 22 letter (among other communications), you indicated that Plainti•s did not consent to amendment. Please con•rm by Monday EOD that the parties are at an impasse on this issue.

**Shannon L. Bjorklund**
**Partner, Co-Head of IP Litigation**

DORSEY always ahead

DORSEY & WHITNEY LLP
Suite 1500, 50 South Sixth Street | Minneapolis, MN 55402-1498
**P:** 612.492.6636 **F:** 612.677.3086 **M:** 651.253.2914

CONFIDENTIAL/PRIVILEGED COMMUNICATION

EXHIBIT G

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

THE ESTATE OF GENE B. LOKKEN, GLENNETTE KELL, DARLENE BUCKNER, CAROL CLEMENS, THE ESTATE OF FRANK CHESTER PERRY, THE ESTATE OF JACKIE MARTIN, JOHN J. WILLIAMS, AS TRUSTEE OF THE MILES AND CAROLYN WILLIAMS 1993 FAMILY TRUST, and WILLIAM HULL, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

UNITEDHEALTH GROUP INC., UNITED HEALTHCARE, INC., NAVIHEALTH, INC. and DOES 1-50, inclusive,

Defendants.

Civil File No. 23-CV-03514 (JRT/SGE)

**DEFENDANTS' OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

TO: Plaintiffs Estate of Gene B. Lokken; Glennette Kell; Darlene Buckner; Carol Clemens; Estate of Frank Chester Perry; Estate of Jackie Martin; John T. Williams; as Trustee of the Miles and Carolyn Williams 1993 Family Trust; and William Hull, and their attorneys David W. Asp, Derek C. Waller, Emma Ritter Gordon, and Karen Hanson Riebel, of Lockridge Grindal Nauen PLLP, 100 Washington Ave. South, Suite 2200, Minneapolis, MN 55401; Glenn Danas, Michael August Boelter, Ryan Clarkson, and Zarrina Ozari of Clarkson Law Firm, P.C., 22525 Pacific Coast Highway, Malibu, CA 90265; James J. Pizzirusso and Nicholas Murphy of Hausfeld LLP, 1200 17th Street, NW Suite 600 Washington, DC 20036; and Steven M. Nathan of Hausfeld LLP, 33 Whitehall Street, Ste 14th Floor, New York, NY 10004.

Defendants UnitedHealth Group Incorporated, UnitedHealthcare, Inc. ("UHC"), and naviHealth, Inc. ("naviHealth") (collectively, "Defendants"), by counsel, and pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, hereby make the following responses and objections to Plaintiffs' Second Set of Requests for Production ("Requests"):

## GENERAL OBJECTIONS

1. Defendants object to the Requests, Definitions, and Instructions to the extent that they seek to impose obligations beyond those required by the Federal Rules of Civil Procedure and the Local Rules of the District of Minnesota.

2. Defendants object to the Requests because they are not, as required by Rule 26(b)(1) of the Federal Rules of Civil Procedure, limited to discovery that is "relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." This burden is highlighted by the fact that the Requests seek "all" documents or communications on a particular topic. Such Requests are disproportionate to the needs of the case. Except as otherwise expressly stated herein, Defendants will produce non-objectionable documents responsive to the Requests in Defendants' possession, custody, or control that can be located through a reasonable search of files likely to contain discoverable information.

3. To the extent that any Request seeks: (a) information which is readily available to Plaintiffs from their own records; (b) the identification or production of documents or information that Plaintiffs already have in their possession; or (c) publicly available documents or information where the burden of collecting or compiling such documents or information is the same for all parties, Defendants object on the grounds that the burden of deriving or ascertaining such information and/or documents is substantially the same for Plaintiffs as for Defendants and, therefore, such Requests are unduly burdensome, go beyond any legitimate need for discovery, and exceed the scope of discovery.

4. Defendants object to the Requests to the extent that they seek information subject to the attorney-client privilege, work product doctrine, or by any other privilege, protection, or immunity available under applicable law. Defendants specifically object to the definition of "person" as overbroad to the extent that it includes a legal entity and seeks information protected by attorney-client privilege and/or the work product doctrine within the scope of any Request. Defendants will not produce documents or information protected from disclosure by the attorney-client privilege or the attorney work-product doctrine. Any response by Defendants shall not constitute a waiver of any such privilege or protection.

5. Defendants object to the Requests as unduly burdensome to the extent they purport to require Defendants, in responding to a Request, to search electronically-stored information ("ESI") that is not reasonably accessible or that would require undue burden or cost in accessing such information. Defendants' agreement as to production of any ESI is subject to negotiation of an applicable ESI protocol.

6. Defendants object to the definitions of "Defendant(s)," "UHC," "You," or "Your" as overly broad, unduly burdensome, vague and ambiguous. For the purpose of Defendants' responses to the Requests, the terms "Defendant(s)," "You," and "Your" will mean UnitedHealth Group Incorporated, UnitedHealthcare, Inc., and naviHealth, Inc., excluding any other parents, affiliates, or subsidiaries; and the term "UHC," will mean UnitedHealthcare, Inc., excluding any other parents, affiliates, or subsidiaries.

7. Defendants object to the definition of "Insureds" as overly broad, unduly burdensome, vague, and ambiguous because it encompasses insureds who, to Defendants' knowledge, have not received any post-acute care and are outside the scope of the allegations in Plaintiffs' Amended Complaint. Defendants further object to the definition as overly broad as it encompasses members of proposed putative classes for Counts III through VII of the Amended Complaint that have been dismissed by the Court.

8. Defendants object to the definition of "Medical Claims" as overly broad, unduly burdensome, vague, and ambiguous because it encompasses "Medical Claims" for patients who, to Defendants' knowledge, have not received any post-acute care and are outside the scope of the allegations in Plaintiffs' Amended Complaint.

9. Defendants object to the definition of "nH Predict" as overly broad and inaccurate. nH Predict is a software tool and is not used to make coverage determinations.

10. Defendants object to the "Relevant Time Period" of time as overbroad, causing the Requests to seek information that is irrelevant and imposing an undue burden on Defendants. The Requests for Documents seek information from November 14, 2017 to the present, which is two years before the time period for any alleged putative class and

before naviHealth began providing certain post-acute care management and utilization review services to United HealthCare Services, Inc.

11. Defendants object to the Requests to the extent they seek information relating to claims that have been dismissed by the Court. In granting, in part, Defendants' Motion to Dismiss, the Court narrowed the case to the two Remaining Claims: Count 1 (Breach of Contract) and Count 2 (Breach of the Implied Covenant of Good Faith and Fair Dealing). *See* ECF 91. The Court stated that "in analyzing these claims the Court would only be required to investigate whether UHC complied with its own written documents," and that it "need only review insurance documents to resolve these claims." ECF 91 at 19, 2. The Court clarified that the two "claims thus effectively arise out of UHC's evidence of coverage documents because the question would be whether UHC complied with its statement that claim decisions would be made by 'clinical services staff' and 'physicians' when it allegedly used artificial intelligence." *Id.* at 19. The Court dismissed the remaining claims because they were preempted by the Medicare Act. *See generally id.* The Court's subsequent Clarification Order confirmed the narrow scope of the remaining claims, noting that Counts 1 and 2 survived preemption "due to their independence from the Medicare Act, which limited the Court's analysis to the Evidence of Coverage ('EOC') documents provided by UHC. Accordingly, the contract claims are *limited to breaches of EOC terms*." ECF 104 at 2 (emphasis added). As a result of the rulings, the remaining claims distill down to "whether UHC complied with its statement that claim decisions would be made by 'clinical services staff' and 'physicians' when it allegedly used artificial intelligence." ECF 91 at 19. Put simply, the remaining claims depend on whether Defendants breached the

EOC terms by making coverage determinations based on nH Predict instead of an individualized investigation, as alleged in the Amended Complaint. ECF 34 ¶¶ 38, 190, 196-197.

12. Counsel for Defendants invite discussion with Plaintiffs' counsel with respect to Defendants' objections and responses to Plaintiffs' Requests, with the expectation that discussion between counsel may eliminate or modify objections, reduce burdens on Defendants, or otherwise result in a mutually satisfactory resolution.

13. Defendants state that nothing herein shall be construed as a waiver of these General Objections or an admission by Defendants as to the relevance or admissibility at trial of any document or information that Defendants provide as a response to the Requests.

14. Defendants will make reasonable efforts to respond to each Request, to the extent the Request has not been objected to, as Defendants understand and interpret the Request. In the event that Plaintiffs subsequently assert an interpretation of a Request that differs from that of Defendants, Defendants reserve the right to amend and/or supplement their Responses but undertake no obligation to do so.

15. Defendants are continuing to gather information and reserve the right to supplement, revise, correct, clarify, or amend any of the following responses or objections.

16. The foregoing General Objections are incorporated into each Response for each of Plaintiffs' Requests set forth below. All specific objections to a Request are made subject to, and without waiver of, the foregoing General Objections, even if a General Objection is not explicitly repeated.

## RESPONSES TO SECOND SET OF REQUEST FOR PRODUCTION

**REQUEST FOR PRODUCTION NO. 20:** All Documents constituting a Medicare Advantage bid made to CMS or other relevant entities relating to Defendants' Medicare Advantage plans from plan year 2017 to the present, or documents included with or attached to such a bid.

**RESPONSE:** Defendants object to this Request as overly broad, unduly burdensome, disproportionate to the needs of the case, and seeking documents and information not relevant to the remaining breach of contract claims in this action. The request for "*[a]ll* documents constituting a Medicare Advantage bid made to CMS "or other relevant entities" relating to Defendants' Medicare Advantage plans" purports to require Defendants to engage in extremely broad, costly, and overreaching document searches over a nine-year period. Defendants have submitted approximately 6,000 bids over the time period of Plaintiffs' request. Each bid packet contains extensive documentation, with information irrelevant to the issues in this case.

Defendants additionally object to the phrase "or other relevant entities" as vague, ambiguous, and undefined. Defendants further object to this Request as seeking irrelevant and highly confidential, proprietary, and sensitive business information not proportional to the needs of the case.

Subject to and without waiving the foregoing general and specific objections, Defendants are willing to meet and confer with Plaintiffs regarding the scope of a reasonable and proportional production of documents relevant to the parties' claims and defenses in response to this Request, including a potential representative or exemplar sample of responsive bid packages submitted to CMS.

**REQUEST FOR PRODUCTION NO. 21:** All Documents and Communications relating to the development, drafting, analysis, or creation of, Defendants' Medicare Advantage bids as relates to post-acute care and post-acute care utilization, from plan year 2017 to the present, and the relevant underlying data supporting the portions of such bids relevant to post-acute care.

**RESPONSE:** Defendants object to this Request as overly broad, unduly burdensome, disproportionate to the needs of the case, and seeking documents and information not relevant to the remaining breach of contract claims in this action. Defendants further object to this Request as vague, ambiguous insofar as it seeks documents "relating to" Defendants' Medicare Advantage bids and "the relevant underlying data supporting the portions of such bids relevant to post-acute care." The request for "*[a]ll* documents relating to the development, drafting, analysis, or creation of, Defendants' Medicare Advantage bids" purports to require Defendants to engage in extremely broad, costly, and overreaching document searches for a nine-year period for all documents underlying Defendants' Medicare Advantage bids relating to post-acute care and post-acute care utilization. Defendants specifically incorporate their objection to Plaintiffs' definition of "Post-acute care." Defendants further object to the term "Post-acute care" as vague, ambiguous, and undefined. Defendants further object to the extent the Request intends to seek documents and information regarding inpatient rehabilitation facilities, long term acute care hospitals, or other post-acute care other than skilled nursing facilities. Defendants further object to this Request to the extent that it requires the production of information protected from disclosure by attorney-client or work product privileges. Defendants additionally object to the phrase "other relevant entities" as vague, ambiguous, and undefined. Defendants further object to this Request as seeking irrelevant

and highly confidential, proprietary, and sensitive business information not proportional to the needs of the case.

Based on the foregoing general and specific objections, Defendants do not agree to produce documents in response to this Request.

**REQUEST FOR PRODUCTION NO. 22:** All Documents or Communications constituting non-investigatory (i.e., not disclosures made as part of an affirmative investigation by the government) disclosures made to the CMS or other relevant government entities about Defendants' use of naviHealth or use of nH Predict.

**RESPONSE:** Defendants object to this Request as overbroad, unduly burdensome, disproportionate to the needs of this case, and as encompassing irrelevant documents and information because the Request, as served seeks discovery of "All Documents or Communications constituting non-investigatory (i.e., not disclosures made as part of an affirmative investigation by the government) disclosures made to the CMS or other relevant government entities about Defendants' use of naviHealth or use of nH Predict" unrelated to Medicare Advantage plans for the putative class and unrelated to the remaining breach of contract claims. Defendants further object to this Request on undue burden, overbreadth, and proportionality grounds because the Request seeks "All Documents and Communications constituting non-investigatory…disclosures" when a smaller number of representative or exemplar documents would be sufficient. Defendants additionally object to the terms "non-investigatory," "affirmative investigation," and "other relevant government entities" as vague, ambiguous, and undefined. Defendants further object to this Request as seeking highly confidential, proprietary, and sensitive business information not proportional to the needs of the case.

Subject to and without waiving the foregoing general and specific objections, Defendants will conduct a reasonable search for and, if located, produce responsive non-investigatory disclosures made to CMS regarding utilization management services provided by naviHealth, Inc. or the use of nH Predict for UHC Medicare Advantage Plans from July 1, 2019, to present. Beyond that production, and based on the foregoing general and specific objections, Defendants do not agree to produce further documents in response to this Request.

Dated: April 23, 2026

DORSEY & WHITNEY LLP

By ______________________________

Nicole Engisch (#0215284)
engisch.nicole@dorsey.com
Michelle S. Grant (#0311170)
grant.michelle@dorsey.com
Shannon L. Bjorklund (#0389932)
bjorklund.shannon@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

Nicholas J. Pappas (*pro hac vice*)
Pappas.nicholas@dorsey.com
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, NY 10019-6119
Telephone: (212) 415-9387

*Attorneys for Defendants*

# EXHIBIT H

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

THE ESTATE OF GENE B. LOKKEN, GLENNETTE KELL, DARLENE BUCKNER, CAROL CLEMENS, FRANK CHESTER PERRY, THE ESTATE OF JACKIE MARTIN, JOHN J. WILLIAMS, AS TRUSTEE OF THE MILES AND CAROLYN WILLIAMS 1993 FAMILY TRUST, and WILLIAM HULL, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

UNITEDHEALTH GROUP, INC., UNITEDHEALTHCARE, INC., NAVIHEALTH, INC. and DOES 1–50, inclusive,

Defendants.

Civil File No. 23-cv-3514-JRT/DJF

---

**PLAINTIFFS' RULE 26(a)(1) INITIAL DISLCOSURES**

---

Pursuant to Federal Rule of Civil Procedure 26(a)(1), Plaintiffs the Estate of Gene B. Lokken, Glennette Kell, Darlene Buckner, Carol Clemens, Frank Chester Perry, the Estate of Jackie Martin, John J. Williams, as Trustee of the Miles and Carolyn Williams 1993 Family Trust, and William Hull (collectively "Plaintiffs"), by and through their counsel, hereby make the following initial disclosures:

## I. Introductory Statement

These initial disclosures represent the best efforts of Plaintiffs and their counsel at this early stage based on non-privileged, non-work product information reasonably available to Plaintiffs at this time relating to Plaintiffs' claims. At this early stage of litigation, Plaintiffs have not yet completed their investigation, and fact discovery has just commenced. These initial disclosures are without prejudice to Plaintiffs' right to identify or rely on facts or information provided by witnesses, documents, and other sources of discovery not specifically identified herein. Plaintiffs expressly reserve their right to clarify, amend, supplement, or otherwise modify these initial disclosures pursuant to the Federal Rules.

These initial disclosures shall not be deemed an admission of a fact in dispute or a waiver of any right that Plaintiffs may assert with respect to any claim or defense in this litigation. Plaintiffs do not waive and expressly reserve any applicable objections to the use of any information in these initial disclosures, including but not limited to: (a) attorney-client privilege, (b) work product doctrine, (c) privacy, (d) any other applicable privilege or protection under federal or state law, (e) relevance, (f) undue burden, (g) overbreadth, (h) admissibility, and (i) any other valid objection to items mentioned in these disclosures

or the subject matter thereof.

## II. Rule 26(a)(1)(A)(i): Individuals Likely to Have Discoverable Information

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(i), and subject to the Introductory Statement set forth above, Plaintiffs hereby identify the following individual(s): (1) who is (are) likely to have discoverable information in this action under Rule 26; and (2) whom Plaintiffs may call as a witness to support Plaintiffs' claims, except to the extent said individual(s) may be called solely for impeachment purposes. Plaintiffs expressly reserve the right to assert any applicable privilege or other objection(s) to any testimony that any person listed below may offer at any deposition, hearing, or trial in this case.

### A. Plaintiffs/Putative Class Members.

The following individuals likely have discoverable information regarding Defendants' use of nH Predict to make coverage determinations for Plaintiffs' claims and the losses/injuries that resulted from Defendants' misconduct.

#### 1. Plaintiff The Estate of Gene B. Lokken

| | | |
|---|---|---|
| Pamela Lokken | Contact Through Undersigned Counsel | Ms. Lokken may have information related to Defendants' use of nH Predict to make coverage determinations with respect to Mr. Gene Lokken. |

**2. Plaintiff Glennette Kell**

| | | |
|---|---|---|
| Glennette Kell | Contact Through Undersigned Counsel | Mrs. Kell may have information related to Defendants' use of nH Predict to make coverage determinations with respect to Mrs. Glennette Kell. |
| John Kell | Contact Through Undersigned Counsel | Mr. Kell may have information related to Defendants' use of nH Predict to make coverage determinations with respect to Mrs. Glennette Kell. |

**3. Plaintiff Darlene Buckner**

| | | |
|---|---|---|
| Darlene Buckner | Contact Through Undersigned Counsel | Mrs. Buckner may have information related to Defendants' use of nH Predict to make coverage determinations with respect to Mrs. Darlene Buckner. |
| Peter Buckner | Contact Through Undersigned Counsel | Mr. Buckner may have information related to Defendants' use of nH Predict to make coverage determinations with respect to Mrs. Darlene Buckner. |

**4. Plaintiff Carol Clemens**

| | | |
|---|---|---|
| Carol Clemens | Contact Through Undersigned Counsel | Mrs. Clemens may have information related to Defendants' use of nH Predict to make coverage determinations with respect to Mrs. Carol Clemens. |

| | | |
|---|---|---|
| John Clemens | Contact Through Undersigned Counsel | Mr. Clemens may have information related to Defendants' use of nH Predict to make coverage determinations with respect to Mrs. Carol Clemens. |

5. **Plaintiff Frank Chester Perry**

| | | |
|---|---|---|
| Frank Chester Perry | Contact Through Undersigned Counsel | Mr. Perry may have information related to Defendants' use of nH Predict to make coverage determinations with respect to Mr. Frank Chester Perry. |
| Mary Marfisee | Contact Through Undersigned Counsel | Ms. Marfisee may have information related to Defendants' use of nH Predict to make coverage determinations with respect to Mr. Frank Chester Perry. |

6. **Plaintiff The Estate of Jackie Martin**

| | | |
|---|---|---|
| Robby Martin | Contact Through Undersigned Counsel | Mr. Robby Martin may have information related to Defendants' use of nH Predict to make coverage determinations with respect to Mr. Jackie Martin. |

7. **Plaintiff John J. Williams, as Trustee of The Miles and Carolyn Williams 1993 Family Trust**

| | | |
|---|---|---|
| John J. Williams | Contact Through Undersigned Counsel | Mr. Williams may have information related to Defendants' use of nH Predict to make coverage determinations with respect to Mrs. Carolyn Williams. |

8. **Plaintiff William Hull**

| | | |
|---|---|---|
| William Hull | Contact Through Undersigned Counsel | Mr. Hull may have information related to Defendants' use of nH Predict to make coverage determinations with respect to Mr. William Hull. |

**B. Defendants.**

Plaintiffs also anticipate that information regarding the following subject matters is in the possession, custody, and control of Defendants, UnitedHealth Group, Inc., UnitedHealthcare, Inc., and naviHealth, Inc. as well as their current or former affiliates, subsidiaries, officers, directors, employees, agents, representatives, and other third parties who have not yet been identified. Plaintiffs have identified in Attachment A the addresses of these Defendants and/or their counsel.

**a.** **Classes.** Names and contact information for putative Class members;

**b.** **Complaints**, **Demands, Inquiries.** Complaints, demands, and inquiries from consumers, competitors, industry self-regulatory groups, governmental regulatory agencies, and consumer advocacy groups regarding Defendants' unlawful conduct;

**c.** **Contracts, Records, and Operational Policies, Procedures, and Practices.** Defendants' contracts, Plaintiffs' and Class members' records, Defendants' records about Plaintiffs' claims, and Defendants' operational policies, procedures, and practices throughout the applicable statute of limitations period, governing the: (1) purchase and/or creation,

implementation, use, and application of nH Predict; (2) training, including training materials and/or guidance, provided to Defendants' employees related to the implementation, use, and application of nH Predict; (3) identities and contact information for the putative Class members; (4) complaints, demands and inquiries regarding the unlawful conduct alleged; and (5) financial figures (costs of review, costs of claims paid, and profit margins); and

d. **Record Keeping.** Defendant's record keeping and retention policies, procedures, and practices throughout the applicable statute of limitations period, applicable to the: (1) creation, implementation, use, and application of nH Predict; (2) training, including training materials and/or guidance, provided to Defendants' employees related to the implementation, use, and application off nH Predict; (3) identities and contact information for the putative Class members; (4) complaints, demands and inquiries regarding the unlawful conduct alleged; and (5) financial figures (costs of review, costs of claims paid, and profit margins).

C. **Defendants' Identified Witnesses.** Without waving any objections, all witnesses listed and disclosed by Defendant in its Fed. R. Civ. P. 26(a) disclosures, responses to discovery, document productions, and/or deposition testimonies;

D. **Custodians of Records.** All necessary custodians of records;

E. **Foundational Witnesses.** All necessary foundational witnesses;

F. **Witnesses Revealed Through Discovery.** Without waiving any objections,

all witnesses revealed through discovery; and

**G. Others Unknown.** Without waiving any objections, all other third parties whose identities are presently unknown to Plaintiffs.

**Reservation of Rights.** Plaintiffs reserve the right to supplement and/or amend the information contained herein as the materiality of issues, facts, witnesses, and documents become apparent, and as discovery and investigation continue.

## III. Rule 26(a)(1)(A)(ii): Supporting Documents, Electronically Stored Information, and Tangible Things

Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(ii), and subject to the Introductory Statement set forth above, Plaintiffs identify the following documents, electronically stored information, and/or tangible things, and said materials' location, currently in Plaintiffs' possession, custody, and/or control, except to the extent the use of said material(s) is (are) limited to impeachment. This disclosure of documents is based on information currently available and Plaintiffs reserve the right to supplement this disclosure based on additional information discovered in the course of this litigation and to offer additional documents at trial or otherwise in this proceeding:

**A. Plaintiffs' Possession.** Documents in possession of Plaintiffs.

1. **Articles, Websites, Other Publications:** Articles, websites, and other publications expressly cited in the First Amended Complaint (FAC) filed in this action that support various propositions set forth therein.

2. **Notices of Medicare Non-Coverage:** Letters Defendants sent to

Plaintiffs notifying Plaintiffs that their post-acute care coverage was being terminated.

3. **Decisions on Appeal to Administrative Reviewers:** Letters sent to Plaintiffs by administrative reviewers (including Quality Improvement Organizations and Administrative Law Judges) rendering decisions on appeal from Defendants' termination of benefits.

4. **Financial Records:** Documents related to any time or money spent by Plaintiffs to mitigate the effects of Defendants' termination of their post-acute care coverage.

**B. Relevant Documents Not in Plaintiffs' Possession, Control, or Custody.** Documents believed by Plaintiffs to exist and be in Defendants' possession, custody, or control, whether or not in Plaintiffs' possession, custody, or control, that Plaintiffs also believe may be relevant to the subject matter of this action, and proportional to the needs of the case, including documents regarding the following topics:

1. **Websites:** Defendant's active and archived websites and social media accounts, including writings, images, videos, and audio recordings downloadable therefrom, that may be accessed at the URLs identified below and/or identified in the FAC, which include, but are not necessarily limited to, the following:
https://www.uhc.com
https://www.unitedhealthgroup.com
https://www.navihealth.com

https://www.homeandcommunity.com

2. **Classes**. Names and contact information for the putative Class members;

3. **Complaints, Demands, Inquiries.** Complaints, demands, and inquiries from consumers, competitors, industry self-regulatory groups, governmental regulatory agencies, and consumer advocacy groups regarding Defendants' unlawful conduct;

4. **Financial Figures.** The financial figures relating to Defendants' Medicare Advantage plans, particularly as relates to post-acute care, throughout the applicable statute of limitations period, including the costs of reviewing post-acute care claims before and after the use of nH Predict, the amounts paid for post-acute care claims before and after the use of nH Predict, and profit margins;

5. **Contracts, Records, and Operational Policies, Procedures, Practices.** Defendant's contracts, Plaintiffs' and Class members' records, Defendants' records about Plaintiffs' claims, and Defendants' operational policies, procedures, and practices throughout the applicable statute of limitations period, governing the: (1) creation, implementation, use, and application of nH Predict; (2) training, including training materials and/or guidance, provided to Defendants' employees related to the implementation, use, and application off nH Predict; (3) identities and contact information for the putative Class

members; (4) complaints, demands and inquiries regarding the unlawful conduct alleged; and (5) financial figures (costs of review, costs of claims paid, and profit margins);

6. **Record Keeping.** Defendant's record keeping and retention policies, procedures, and practices throughout the applicable statute of limitations period, applicable to the: (1) creation, implementation, use, and application of nH Predict; (2) training, including training materials and/or guidance, provided to Defendants' employees related to the implementation, use, and application off nH Predict; (3) identities and contact information for the putative Class members; (4) complaints, demands and inquiries regarding the unlawful conduct alleged; and (5) financial figures (costs of review, costs of claims paid, and profit margins);

7. **Operational Information.** Those who have knowledge of Defendants' business and operations relating to the conduct alleged in the operative complaint, which includes, but is not necessarily limited to, research and development; testing and quality control; customer relations; and legal compliance.

8. **Documents Related to Reasonableness of Use of nH Predict.** Documents, including internal and external studies, analyses, investigations or reviews, concerning the use, implementation, and application of nH Predict to evaluate Plaintiffs' and Class members'

claims, including analysis of any known error rate and communications with any regulatory agencies concerning the use, implementation, and application of nH Predict.

**C. Documents Revealed Through Discovery.** Without waiving any objections, all writings, images, videos, audio recordings, and other tangible or physical things revealed through continuing discovery; and

**D. Others Unknown.** Without waiving any objections, all writings, images, videos, audio recordings, and other tangible or physical things, the identity of which are presently unknown to Plaintiffs.

**Reservation of Rights.** Plaintiffs reserve the right to supplement and/or amend the information contained herein as the materiality of issues, facts, witnesses, and documents become apparent, and as discovery and investigation continue.

## IV. Rule 26(a)(1)(A)(iii): Computation of Damages

A detailed computation of Plaintiffs' damages is premature at this time. Plaintiffs and Class members continue to experience the harmful effects of the unlawful conduct alleged and the damages are ongoing. In addition, Defendants have not yet provided any financial figures or Class discovery and expert testimony may be necessary to calculate class wide damages. However, pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(iii), and subject to the Introductory Statement set forth above, Plaintiffs provide the following computation of each category of damages claimed in this action, including the basis of each computation, and the identification of materials that bear upon the nature and extent of said damages:

**A. Damages/Restitution/Disgorgement:** Economic losses in this type of action may generally be measured by the price premium that consumers have paid for their Medicare Advantage plans where Defendants made coverage determinations based the output of a flawed algorithm without appropriate, individualized claims investigation and payment procedures, or by restitution of the unjust profits retained as a result of Defendants' unlawful conduct. The requested pre- and post-judgment interest shall be based thereon. Additionally, Plaintiffs will request punitive damages consistent with permissible law. Currently, it is premature to reasonably estimate the amount of punitive damages sought in this action.

**B. Attorneys' Fees and Costs:** Currently, it is premature to reasonably estimate the amount of attorneys' fees and costs sought in this action. At the appropriate time, Plaintiffs will file a motion or application for said fees and costs, with all requisites supporting facts and documents.

**C. Injunctive/Declaratory Relief:** Plaintiffs seek that Defendant ceases and desists from using nH Predict in the unlawful manner described herein. Currently, it is premature to reasonably estimate the monetary value of an order declaring Defendants' conduct, which is the subject of Plaintiffs' operative complaint, unlawful and/or an order requiring Defendants to immediately cease and desist therefrom.

**D. Statutory Penalties:** Currently, it is premature to reasonably estimate the monetary value of statutory penalties (e.g., fines, treble damages) for Defendant's fraudulent, malicious, and/or oppressive conduct giving rise to Defendant's liability in this action. Said damages and penalties will be calculated based upon the reprehensibility of

Defendant's conduct and other statutory methods provided (e.g., fines per violation).

**E. All Just & Proper Relief:** Plaintiffs seek other and further relief as the Court deems just and proper.

**F. Reservation of Rights.** Plaintiffs reserve the right to supplement and/or amend the information contained herein as discovery and investigation continue. Additionally, Plaintiffs reserve the right to amend, revise, or supplement its computation of damages. At the appropriate time, Plaintiffs will disclose expert testimony on this topic pursuant to Rule 26(a)(2) and the Court's scheduling order.

## V. Rule 26(a)(1)(A)(iv): Liability Insurance/Indemnity Agreements

Plaintiffs do not currently have any information regarding any insurance or indemnity agreements that may cover Defendants' liability for all or some of a possible judgment in this action. Said information should be in the possession, custody, and/or control of Defendants.

**Reservation of Rights.** Plaintiffs reserve the right to supplement and/or amend the information contained herein as the materiality of issues, facts, witnesses, and documents become apparent, and as discovery and investigation continue.

DATED: July 25, 2024

**CLARKSON LAW FIRM, P.C.**

By: */s/ Glenn A. Danas*
Glenn A. Danas, Esq.
Ryan J. Clarkson, Esq.
Zarrina Ozari, Esq.
Michael A. Boelter, Esq.
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
rclarkson@clarksonlawfirm.com
gdanas@clarksonlawfirm.com
zozari@clarksonlawfirm.com
mboelter@clarksonlawfirm.com

**LOCKRIDGE GRINDAL NAUEN PLLP**
Karen Hanson Riebel (#0219770)
David W. Asp (#0344850)
Derek C. Waller (#0401120)
Emma Ritter Gordon (#0404000)
100 Washington Ave. South, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
khriebel@locklaw.com
dwasp@locklaw.com
dcwaller@locklaw.com
erittergordon@locklaw.com

**HAUSFELD LLP**
James Pizzirusso
Nicholas Murphy
888 16th St., NW
Ste. 300
Washington, DC 20006
Tel: (202) 540-7200
jpizzirusso@hausfeld.com
nmurphy@hausfeld.com

*Attorneys for Plaintiffs*

**ATTACHMENT A**

DORSEY & WHITNEY LLP
Michelle S. Grant (#0311170)
grant.michelle@dorsey.com
Shannon L. Bjorklund (#0389932)
bjorklund.shannon@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402
Telephone: (612) 340-2600
Facsimile: (612) 340-2868

DORSEY & WHITNEY LLP
Nicholas J. Pappas
pappas.nicholas@dorsey.com
*Pro Hac Vice*
51 West 52nd Street
New York, NY 10019-6119
Telephone: (212) 415-9387

*Attorneys for Defendants UnitedHealth Group, Inc., UnitedHealthcare, Inc., and naviHealth, Inc.*